# Exhibit 2



**Interim Policy and Procedures for
Responding to Allegations of Research Misconduct**
*August 2021*

## I. Basis for Policy

Integrity in scholarship and research is one of Harvard University's—and Harvard Business School's—fundamental values. Allegations of misconduct in scholarship and research must be treated with the utmost seriousness, and examined carefully and responsibly in a timely and effective manner.

Toward that end, HBS has established this **Policy and Procedures for Responding to Allegations of Research Misconduct**[1] to guide its efforts in reviewing, investigating, and reporting allegations of research misconduct.[2]

## II. Scope

This Policy applies to allegations of research misconduct—including fabrication, falsification, or plagiarism in proposing, performing, or reviewing research, or in reporting research results—involving any person who, at the time of the alleged research misconduct, was employed by, was an agent of, or was affiliated by contract or agreement with HBS, including without limitation tenured and non-tenured faculty, teaching and support staff, researchers and research associates, research coordinators, post-doctoral and other fellows, students, volunteers, officials, technicians. The Policy may be applied to any individual no longer affiliated with HBS if the alleged misconduct occurred while the person was employed by, an agent of, or affiliated with the School. This Policy does not apply to authorship or collaboration disputes. It applies only to allegations of research misconduct that occurred within six years of the date HBS received the allegation, unless: the respondent has continued or renewed an incident of alleged research misconduct through the citation, republication, or other use for the potential benefit of the respondent of the research record in question; or HBS determines that the alleged misconduct would possibly have a substantial adverse effect on the health or safety of the public.

## III. General Policies and Principles

### A. Research Misconduct Prohibited, Standard of Proof

HBS prohibits research misconduct and investigates and responds to allegations of research misconduct in accordance with this Policy. Throughout the research misconduct process, which begins at the time an allegation is made, all participants shall bear in mind the importance, both in fact and in appearance, of thoroughness, fairness, and objectivity.

---

[1] See Appendix 1 for a glossary of terms and definitions.
[2] See Appendix, here and throughout, for additional specifications and requirements when researchers have received federal or other external funding for their research.

A finding of research misconduct requires that:

- There be a significant departure from accepted practices of the relevant research community;
- The respondent committed the research misconduct intentionally, knowingly, or recklessly; and
- The allegation be proven by preponderance of the evidence.

The destruction of research records, absence of research records, or respondent's failure to provide research records adequately documenting the questioned research is evidence of research misconduct where the institution establishes by a preponderance of the evidence that the respondent intentionally, knowingly, or recklessly had research records and destroyed them, had the opportunity to maintain the records but did not do so, or maintained the records and failed to produce them in a timely manner and that the respondent's conduct constitutes a significant departure from accepted practices of the relevant research community.

HBS bears the burden of proof for making a finding of research misconduct. A respondent has the burden of proving, by a preponderance of the evidence, any and all affirmative defenses raised (such as honest error).

Individuals subject to this policy found to have committed research misconduct may be subject to sanctions up to and including termination.

**B.      Responsibility to Report Misconduct**

All individuals subject to this Policy will report observed, suspected, or apparent research misconduct to the Research Integrity Officer (RIO).[3] If an individual is unsure whether a suspected incident falls within the definition of research misconduct, that individual may meet with or contact the RIO to discuss the suspected research misconduct informally, which may include discussing it anonymously and/or hypothetically. If the circumstances described by the individual do not meet the definition of research misconduct, then the RIO may refer the individual or allegation to other offices or officials, where appropriate.

**C.      Cooperation with Research Misconduct Proceedings**

All individuals subject to this Policy shall cooperate with the RIO and other institutional officials in the review of allegations and the conduct of inquiries and investigations. All individuals subject to this Policy, including respondents, have an obligation to provide evidence relevant to research misconduct allegations to the RIO or other institutional officials.

**D.      Duty to Maintain Confidentiality**

Because of the potential jeopardy to the reputation and rights of a respondent, the RIO and all Committee members (as defined in this Policy) as well as all others at HBS who may be involved in the research misconduct proceeding shall to the extent possible: (1) limit disclosure of the identity of respondents and complainants to those who need to know in order to carry out a thorough, competent, objective, and fair research misconduct proceeding; and (2) except as otherwise prescribed by law, limit

---

[3] For the 2021-2022 academic year, the Research Integrity Officer is Alain Bonacossa (abonacossa@hbs.edu; 617.496.6348).

2

the disclosure of any records or evidence from which research subjects might be identified to those who need to know in order to carry out a research misconduct proceeding. Where communications about research misconduct proceedings may be considered necessary or advisable, University officials should be guided by the Guiding Principles for Communication in Research Misconduct Proceedings.[4] Inappropriate dissemination of information may result in sanctions up to and including termination.

### E.   Rights and Responsibilities of Complainant

The complainant is responsible for making allegations in good faith, maintaining confidentiality, and cooperating with the inquiry and investigation. If the inquiry committee deems it necessary, the complainant may be interviewed at the inquiry stage and, if so, will be given the transcript or recording of the interview for correction. The complainant ordinarily will be interviewed during the investigation phase, and given the transcript or recording of the interview for correction. After making an allegation of research misconduct, the complainant is responsible for providing evidence and information in connection with the research misconduct process but is not entitled to receive information about the status or outcome of that process.

### F.   Rights and Responsibilities of Respondent

The respondent is responsible for maintaining confidentiality and cooperating with the conduct of an inquiry and investigation. The respondent is entitled to the procedural rights and protections set forth in this Policy. Respondents may choose up to two personal advisors for support during the process. Personal advisors may be attorneys; they may not be principals or witnesses in the research misconduct matter. Personal advisors may be present at any proceedings or interviews that the respondent attends but may not question witnesses or otherwise take part in the research misconduct proceedings.

The respondent should be given the opportunity to admit that research misconduct occurred and that they committed the research misconduct. With the advice of the RIO and/or other institutional officials, the Dean or their designee may end HBS's review of an allegation that has been admitted.

### G.   Protecting Complainants, Witnesses, the RIO, and Committee Members

HBS community members may not retaliate in any way against complainants, witnesses, the RIO, or committee members. Any alleged or apparent retaliation against complainants, witnesses, the RIO, or committee members should be reported immediately to the
RIO (or to the Dean's Office, as applicable), who shall review the matter and, as necessary, make all reasonable and practical efforts to counter any potential or actual retaliation and protect and restore the position and reputation of the person against whom the retaliation is directed.

### IV.   Preliminary Assessment of Allegations

Upon receiving an allegation of research misconduct, the RIO immediately will assess the allegation to determine whether the allegation:

---

[4] https://files.vpr.harvard.edu/files/vpr-documents/files/guiding_principles_for_communication_in_research_misconduct_proceedings.pdf

3

- Falls within the definition of research misconduct, and
- Is sufficiently credible and specific so that potential evidence of research misconduct may be identified.

An inquiry must be conducted if these criteria are met.

If, upon receipt on the allegation, it appears that the RIO has any unresolved personal, professional, or financial conflicts of interest with those involved in the allegations, then another qualified individual shall be appointed by the Dean or their designee to serve as Interim RIO with respect to reviewing the allegation and conducting any research misconduct proceeding.

The assessment period should be brief, preferably concluded within a week. Where it is not feasible to conclude the assessment within a week, the process should proceed expeditiously. In conducting the assessment, it is not necessary to interview the complainant, respondent, or other witnesses, or to gather data beyond any that may have been submitted with the allegation, except as necessary to determine whether the allegation is sufficiently credible and specific so that potential evidence of research misconduct may be identified. The preliminary assessment shall be documented and all records pertaining to the review of allegations will be retained by the RIO for a period of seven (7) years following the completion of the proceeding.

## V.     Sequestration of Research Records and Notice to Respondent

### A.     Sequestration of Research Records

This Policy governs access to research records, including without limitation email records, for purposes of conducting research misconduct proceedings.[5] Those engaged in administering this Policy have all rights necessary to access research records created or maintained by individuals subject to this Policy.[6]

As to timing, on or before the date on which the respondent is notified, or the inquiry begins, whichever is earlier, the RIO must take all reasonable and practical steps to obtain custody of all the research records and evidence needed to conduct the research misconduct proceeding. The RIO also shall sequester any additional research records that become pertinent to an inquiry or investigation after the initial sequestration.

The RIO is responsible for inventorying the records and evidence and sequestering them in a secure manner.[7] Where appropriate, HBS shall give the respondent copies of, or reasonable supervised access to, the research records.

---

[5] For clarification, Harvard's Policy on Access to Electronic Information specifically states that it does not apply to reviews of research misconduct allegations.  Section I, Internal Investigations of Misconduct, p. 4.

[6] Harvard's Research Data Ownership Policy makes clear that "the University asserts ownership over research data for all projects conducted at the University, under the auspices of the University, or with University resources," and further states that "[w]hen it is necessary to secure access (e.g. during a research misconduct proceeding) the University may take custody of research data."  Policy and Procedures, Section 1.B, p. 2.

[7] However, where the research records or evidence encompass scientific instruments shared by a number of users, custody may be limited to copies of the data or evidence on such instruments, so long as those copies are

4

B.  **Notice to Respondent**

At the time of or before beginning an inquiry, the RIO must make a good faith effort to notify the respondent in writing, if the respondent is known. If the inquiry subsequently identifies additional respondents, they must be notified in writing.

VI. **The Inquiry**

A.  **Initiation and Purpose of the Inquiry**

The purpose of the inquiry is to conduct an initial review of the available evidence to determine whether to conduct an investigation. An inquiry does not require a full review of all the evidence related to the allegation.

B.  **Appointment of the Inquiry Committee**

The inquiry committee will be appointed by the Dean or their designee, in consultation with other institutional officials as appropriate, and will consist of one or more individuals who do not have unresolved personal, professional, or financial conflicts of interest with those involved with the research misconduct proceeding. The inquiry committee should include individuals with the appropriate subject-matter expertise to: evaluate the evidence and issues related to the allegation; interview the principals and key witnesses; and conduct the inquiry. When necessary to secure the necessary expertise or to avoid conflicts of interest, the Dean or their designee may select committee members from outside the institution.

Prior to the initiation of the Inquiry, the respondent will be notified in writing of the inquiry committee's membership and shall be afforded five (5) calendar days to lodge objections based upon a committee member's alleged personal, professional, or financial conflict of interest. The Dean or their designee will make the final determination of whether a conflict exists.

C.  **Charge to the Committee and First Meeting**

The RIO will prepare a charge for the inquiry committee that sets forth the purpose of the inquiry and the expected timeframe, the committee's responsibilities, the allegations, and any related issues identified during the preliminary assessment. The charge also shall inform the committee that an investigation is warranted if the committee determines, based on its review during the inquiry, that: (1) there is a reasonable basis for concluding that the allegation falls within the definition of research misconduct; and (2) the preliminary information-gathering and preliminary fact-finding from the inquiry indicates that the allegation may have substance.

At the committee's first meeting, the RIO will review the charge with the committee, discuss the allegations, any related issues, and the appropriate procedures for conducting the inquiry, assist the committee with organizing plans for the inquiry, and answer any questions raised by the committee. The RIO will be present or available throughout the inquiry to advise the committee as needed.

---

substantially equivalent to the evidentiary value of the instruments.

**D.      Inquiry Process**

The inquiry committee ordinarily will interview the complainant, if any, the respondent, and key witnesses as well as examine relevant research records and materials. Any interviews will be recorded or transcribed, with recordings or transcripts provided to the interviewee for correction. Then the inquiry committee will evaluate the evidence, including the testimony obtained during the inquiry. In consultation with the RIO, the committee members will decide whether an investigation is warranted based on the criteria in this Policy.

The scope of the inquiry is not required to and does not normally include deciding whether misconduct definitely occurred, determining definitely who committed the research misconduct, or conducting exhaustive interviews and analyses.[8] However, if a legally sufficient admission of research misconduct is made by the respondent, misconduct may be determined at the inquiry stage if all relevant issues are resolved.

**E.      The Inquiry Report**

A written inquiry report must be prepared that includes the following information: (1) the name and position of the respondent; (2) a description of the allegations of research misconduct; (3) the funding support, including without limitation any grant numbers, grant applications, contracts and publications listing all support; (4) the basis for recommending or not recommending that the allegations warrant an investigation; (5) any comments on the draft report by the respondent.

The Office of General Counsel shall be available to advise the inquiry committee and the RIO with respect to the report. Modifications should be made as appropriate in consultation with the RIO and the inquiry committee.

**F.      Notification of the Results of the Inquiry; Opportunity to Comment**

The RIO shall notify the respondent as to whether the inquiry found an investigation to be warranted, include a copy of the draft inquiry report for comment within 10 business days, and include a copy of or link to this Policy.

Based on the comments, the inquiry committee may revise the draft report as appropriate and prepare it in final form. Any comments that are submitted by the respondent will be attached to the final inquiry report. The committee will deliver the final report to the RIO.

**G.      Institutional Decision and Notification**

1.   *Decision by Deciding Official* – The RIO will transmit the final inquiry report and any comments to the Dean or their designee, who will make a written determination as to whether an investigation is warranted. The inquiry is completed when this determination is made. The RIO will notify institutional officials who have a need to know of the decision.

---

[8] As noted above, an investigation is warranted if the committee determines, based on its review during the inquiry,that: (1) there is a reasonable basis for concluding that the allegation falls within the definition of research misconduct; and (2) the preliminary information-gathering and preliminary fact-finding from the inquiry indicates that the allegation may have substance.

6

2.  *Documentation of Decision Not to Investigate* – If an investigation is not warranted, the RIO shall secure and maintain for 7 years after the termination of the inquiry sufficiently detailed documentation of the inquiry to permit a later assessment of the reasons why an investigation was not conducted.

H.   **Time for Completion**

The inquiry, including preparation of the final inquiry report and the decision on whether an investigation is warranted, must be completed within 60 calendar days of initiation of the inquiry, unless the RIO determines that circumstances clearly warrant a longer period. If an extension is approved, the inquiry record must include documentation of the reasons for exceeding the 60-day period.

VII.   **Conducting the Investigation**

A.   **Initiation and Purpose**

The investigation ordinarily should begin shortly after completion of the inquiry and no later than 30 calendar days after the determination that an investigation is warranted. On or before the date on which the investigation begins, the RIO must notify the respondent in writing of the allegations to be investigated.

The purpose of the investigation is to develop a factual record by exploring the allegations in detail and examining the evidence in depth, leading to recommended findings on whether research misconduct has been committed, by whom, and to what extent. The investigation committee shall pursue diligently all significant issues and leads discovered that are determined relevant to the investigation, including any evidence of additional instances of possible research misconduct, and continue the investigation to completion. If new allegations are identified, the RIO must also give the respondent written notice of such allegations within a reasonable amount of time of deciding to pursue allegations not addressed during the inquiry or in the initial notice of the investigation.

B.   **Sequestration of Research Records**

On or before the date on which the respondent is notified, or the investigation begins, whichever is earlier, the RIO must take all reasonable and practical steps to obtain custody of and sequester in a secure manner all the research records and evidence needed to conduct the research misconduct proceeding that were not previously sequestered during the inquiry. The need for additional sequestration of records may occur for any number of reasons, including the institution's decision to investigate additional allegations not considered during the inquiry stage or identification of records during the inquiry process that had not been previously secured. The procedures to be followed for sequestration during the investigation are the same procedures that apply during the inquiry.

C.   **Appointment of the Investigation Committee**

The Dean or their designee, in consultation with other institutional officials as appropriate, will appoint an ad hoc investigation committee and committee chair. The investigation committee must consist of individuals who do not have unresolved personal, professional, or financial conflicts of interest with those involved with the investigation and should include individuals with the appropriate subject-matter

expertise to: evaluate the evidence and issues related to the allegation; interview the respondent and complainant; and conduct the investigation. Individuals appointed to the investigation committee also may have served on the inquiry committee. When necessary to secure the necessary expertise or to avoid conflicts of interest, the Dean or their designee may select investigation committee members from outside the institution.

Prior to the initiation of the Investigation, the respondent will be notified of the investigation committee's membership and shall be afforded five (5) calendar days to lodge objections based upon a committee member's alleged personal, professional, or financial conflict of interest. The Dean or their designee will make the final determination of whether a conflict exists.

**D.      Charge to the Committee and the First Meeting**

1. Charge to the Committee – The RIO will define the subject matter of the investigation in a written charge to the committee that describes the allegations and related issues identified during the inquiry; identifies the respondent; informs the committee that it must conduct the investigation as prescribed by this Policy; defines research misconduct; and instructs the investigation committee on the burden of proof. The charge shall state that the committee is to evaluate the evidence and testimony of the respondent, complainant, and key witnesses to determine whether, based on a preponderance of the evidence, research misconduct occurred and, if so, to what extent, who was responsible, and its seriousness. Finally, the charge shall inform the committee that it must prepare a written investigation report that meets the requirements of this Policy.

2. First Meeting – At the committee's first meeting, the RIO will review the charge, the inquiry report, and the prescribed procedures and standards for the conduct of the investigation, including the necessity for confidentiality and for developing a specific investigation plan. The investigation committee will be provided with a copy of this Policy and, if applicable, federal regulations. The RIO will be present and available throughout the investigation to advise the committee as needed.

**E.      Investigation Process**

The investigation committee and the RIO must:

- Use diligent efforts to ensure that the investigation is thorough and sufficiently documented and includes examination of all research records and evidence relevant to reaching a decision on the merits of each allegation;

- Take reasonable steps to ensure an impartial and unbiased investigation to the maximum extent practical;

- Offer each respondent, complainant, and any other available person who has been reasonably identified as having information regarding any relevant aspects of the investigation, including witnesses identified by the respondent, the opportunity to be interviewed; record or transcribe each interview; provide the recording or transcript to the interviewee for correction; and include the recording or transcript in the record of the investigation; and

8

- Pursue diligently all significant issues and leads discovered that are determined relevant to the investigation, including any evidence of any additional instances of possible research misconduct, and continue the investigation to completion.

F.   **The Investigation Report**

The investigation committee and the RIO are responsible for preparing a written draft report of the investigation that:

- Describes the nature of the allegation of research misconduct, including identification of the respondent.

- Describes and documents financial support for the research subject to the allegations, including without limitation the numbers of any grants that are involved, grant applications, contracts, and publications listing support;

- Describes the specific allegations of research misconduct considered in the investigation;

- Includes the institutional policies and procedures under which the investigation was conducted;

- Identifies and summarizes the research records and evidence reviewed and identifies any evidence taken into custody but not reviewed; and

- Includes a statement of findings for each allegation of research misconduct identified during the investigation. Each statement of findings must: (1) identify whether the research misconduct was falsification, fabrication, or plagiarism, and whether it was committed intentionally, knowingly, or recklessly; (2) summarize the facts and the analysis that support the conclusion and consider the merits of any reasonable explanation by the respondent, including any effort by respondent to establish by a preponderance of the evidence that they did not engage in research misconduct because of honest error or a difference of opinion; (3) identify the specific funding support (if any); (4) identify whether any publications need correction or retraction; (5) identify the person(s) responsible for the misconduct; and (6) list any current support or known applications or proposals for support that the respondent has pending with federal agencies or external funders.

- Includes recommended institutional actions.

The Office of General Counsel shall be available to advise the investigation committee and the RIO with respect to the report. Modifications should be made as appropriate in consultation with the RIO and the investigation committee.

G.   **Comments on the Draft Report and Access to Evidence**

1. Respondent – The RIO will give the respondent a copy of the draft investigation report and exhibits for comment and, concurrently, a copy of or supervised access to the evidence on which the report is based. The respondent will be allowed 30 days from receipt of the draft report to submit comments to the RIO. The respondent's comments must be included and considered in the final report.

9

    2.    Confidentiality – In distributing the draft report to the respondent for comment, the RIO will remind the respondent of the confidentiality under which the draft report is made available and may establish reasonable conditions to ensure such confidentiality.

**H.**    **Decision by Deciding Official**

The final investigation report will be submitted to the Dean, who will make a written determination as to: (1) whether the institution accepts the investigation report, its findings, and the recommended institutional actions; and (2) the appropriate institutional actions in response to the accepted findings of research misconduct. If this determination varies from the findings of the investigation committee, the Dean will explain in detail the basis for rendering a decision different from the findings of the investigation committee. Alternatively, the Dean may return the report to the investigation committee with a request for further fact-finding or analysis.

When a final decision on the case has been reached, the respondent will be notified in writing. The Dean, in consultation with institutional officials as needed, also will determine whether relevant parties should be notified of the outcome of the case, including professional societies, editors of journals in which falsified reports may have been published, collaborators of the respondent in the work, professional licensing boards, or law enforcement agencies, .

**I.**    **Institutional Actions**

After a determination of research misconduct is made, the Dean may decide on appropriate actions to be taken, in consultation with others at the University as appropriate. Sanctions for research misconduct shall be based on the seriousness of the misconduct, including but not limited to, the degree to which the misconduct: a) was intentional, knowing, or reckless; b) was an isolated event or part of a pattern; and c) had significant impact on the research record, research subjects, other researchers, institutions, or the public welfare. The range of administrative actions includes, but is not limited to, the correction of the public record including the withdrawal or correction of all pending or published abstracts and papers emanating from the research where misconduct was found; removal of the responsible person from the particular project, special monitoring of future work, probation, suspension, leave without pay, salary reduction, or initiation of steps leading to rank reduction or termination of employment; restitution of funds as appropriate; suspension or termination of an active award; and other action appropriate to the research misconduct. For cases involving research misconduct by students, sanctions shall be determined by the appropriate student disciplinary board.

**J.**    **Time for Completion**

The investigation ordinarily shall be completed within 120 days of beginning it, including conducting the investigation, preparing the draft report of findings, providing it for comment, finalizing the report, and making necessary notifications. However, if the RIO determines that the investigation will not be completed within this 120-day period, the rationale for the delay will be documented.

**IX.**    **Interim Institutional Actions**

Throughout the research misconduct proceeding, the RIO will review the situation to determine if there is any threat of harm to the integrity of the research process. In the event of such a threat, the RIO will,

in consultation with institutional and other officials, as necessary, take appropriate interim actions to protect against any such threat.

Interim action might include: additional monitoring of the research process; reassignment of personnel; additional review of research data and results; or delaying publication.

**X.    Completion of Cases**

Generally, all inquiries and investigations will be carried through to completion and all significant issues will be pursued diligently.

**XI.    Other Considerations**

**A.    Termination or Resignation Prior to Completing Inquiry or Investigation**

The termination of the respondent's HBS employment, by resignation or otherwise, before or after an allegation of possible research misconduct has been reported, will not preclude or terminate the research misconduct proceeding or otherwise limit any of HBS's responsibilities to pursue allegations.

If the respondent, without admitting to the misconduct, elects to resign the respondent's position after HBS receives an allegation of research misconduct, the assessment of the allegation will proceed, as well as the inquiry and investigation, as appropriate based on the outcome of the preceding steps. If the respondent refuses to participate in the process after resignation, the RIO and any inquiry or investigation committee will use their best efforts to reach a conclusion concerning the allegations, noting in the report the respondent's failure to cooperate and its effect on the evidence.

**B.    Restoration of the Respondent's Reputation**

Following a final finding of no research misconduct, the RIO must, at the request of the respondent, undertake all reasonable and practical efforts to restore the respondent's reputation.

**C.    Allegations Not Made in Good Faith**

If relevant, the Dean or their designee will determine whether the complainant's allegations of research misconduct were made in good faith, or whether a witness or committee member acted in good faith. If the Dean or their designee determines that there was an absence of good faith, the Dean or their designee will determine whether any administrative action should be taken against the person who failed to act in good faith.

**D.    Maintaining Records**

HBS shall maintain the records of a research misconduct proceeding in a secure manner during its pendency and for seven (7) years after completion of the proceeding or completion of any agency oversight proceeding, or as required by any applicable record retention provision, whichever is later.

**Appendix 1: Glossary of Terms and Definitions**

*Allegation*: a disclosure of possible research misconduct through any means of communication.

*Committee member*: a member of any ad hoc committee appointed to conduct all or a portion of the research misconduct process under this Policy.

*Complainant*: a person who in good faith makes an allegation of research misconduct.

*Conflict of interest*: financial, personal, or professional relationships that may compromise, or appear to compromise a person's decisions.

*Deciding Official (DO)*: the institutional official who makes final determinations about allegations of research misconduct and any institutional actions, ordinarily the Dean of HBS. The Deciding Official does not serve as the Research Integrity Officer and is not directly involved in the institution's preliminary assessment, inquiry, or investigation. The Deciding Official's involvement in the appointment of individuals to assess allegations of research misconduct, or to serve on an inquiry or investigation committee, is not considered to be direct involvement.

*Evidence*: any document or other record, tangible item, or testimony offered or obtained during a research misconduct proceeding that tends to prove or disprove the existence of an alleged fact.

*Fabrication*: making up data or results and recording or reporting them.

*Falsification*: manipulating research materials, equipment, or processes, or changing or omitting data or results such that the research is not accurately represented in the research record.

*Good faith*
    *As applied to a complainant or witness*: having a belief in the truth of one's allegation or testimony that a reasonable person in the same position could have, based on the information known to the person at the time. An allegation or cooperation with a research misconduct proceeding is not in good faith if made with knowing or reckless disregard for information that would negate the allegation or testimony.

    *As applied to a committee member*: cooperating with the research misconduct proceeding by carrying out the duties assigned impartially for the purpose of helping the institution meet its responsibilities under the Policy. A committee member does not act in good faith if the committee member's acts or omissions on the committee are dishonest or influenced by personal, professional, or financial conflicts of interest with those involved in the research misconduct proceeding.

*Inquiry*: preliminary information-gathering and preliminary fact-finding in accordance with the Policy to determine whether an allegation of research misconduct warrants investigation.

*Investigation*: the formal development of a factual record and the examination of that record leading to a decision about whether to recommend a finding of research misconduct, which may include a recommendation for other appropriate actions, including institutional actions.

*Plagiarism*: the appropriation of another person's ideas, processes, results, or words without giving appropriate credit.

*Preponderance of the evidence*: proof by information that, compared with that opposing it, leads to the conclusion that the fact at issue is more probably true than not.

*Research*: a systematic experiment, study, evaluation, demonstration, or survey designed to develop or contribute to general knowledge or specific knowledge by establishing, discovering, developing, elucidating, or confirming information about, or the underlying mechanism relating to, the matters to be studied.

*Research Integrity Officer (RIO)*: the institutional official responsible for: (1) reviewing allegations of research misconduct to determine if they fall within the definition of research misconduct and warrant an inquiry; and (2) overseeing inquiries and investigations.

*Research misconduct*: fabrication, falsification, or plagiarism in proposing, performing, or reviewing research, or in reporting research results. Research misconduct does not include honest error or differences of opinion.

*Research record*: the record of data or results that embody the facts resulting from scientific inquiry or other scholarly endeavors, including but not limited to research proposals, laboratory records (physical and electronic), progress reports, abstracts, theses, oral presentations, internal reports, journal articles, correspondence, and any documents and materials provided to an institutional official in the course of a research misconduct proceeding.

*Respondent*: the person against whom an allegation of research misconduct is directed or who is the subject of a research misconduct proceeding.

*Retaliation*: an adverse action taken against a complainant, witness, or committee member by an institution or one of its members in response to a good faith allegation of research misconduct or good faith cooperation with a research misconduct proceeding.

**Appendix 2: Additional Procedures for Allegations Involving Federal Funding**

*Scope*

This Policy is intended to comply with institutional responsibilities under the Public Health Service (PHS) Policies on Research Misconduct, 42 CFR Part 93. Other federal agencies have published their own research misconduct regulations; to the extent those regulations apply to an allegation of research misconduct and are inconsistent with this Policy, HBS shall comply with the applicable regulatory requirements.

This Policy does not apply to authorship or collaboration disputes and applies only to allegations of research misconduct that occurred within six years of the date HBS received the allegation, subject to the subsequent use, health or safety of the public, and grandfather exceptions articulated in 42 C.F.R. § 93.105(b).

With respect to students involved in allegations of research misconduct that involve federal funding, the appropriate student disciplinary board will be notified of the initiation of any inquiries and/or investigations and will be informed of the findings of any such inquiries and/or investigations, including receiving copies of all inquiry and/or investigation reports.  For allegations of research misconduct against students that do not involve federal funding, HBS may, at its discretion, either refer them to the appropriate student disciplinary board, or review them under this Policy and notify the appropriate student disciplinary board as described above.

*Inquiry Process*

If a legally sufficient admission of research misconduct is made by the respondent, misconduct may be determined at the inquiry stage if all relevant issues are resolved. In that case, HBS should promptly consult with the relevant federal agency to determine next steps. Acceptance of the admission and any proposed settlement must be approved by the relevant federal agency.

*Notification to Respondent of the Results of the Inquiry*

The RIO will provide the respondent with a link to or copy of 42 C.F.R. Part 93 (or other applicable federal regulations).

*Notification to Federal Agencies of the Results of the Inquiry*

Within 30 calendar days of the decision whether an investigation is warranted, the RIO will provide the Office of Research Integrity ("ORI")[9] (or the relevant federal agency) with the written decision and a copy of the final inquiry report (or comply with any other notice obligation to a government agency or other funder).

*Time for Completion*

If an investigation cannot be completed within 120 days of beginning it, the RIO will document the

---

[9] The Office of Research Integrity (ORI) in the U.S. Department of Health and Human Services (DHHS) is responsible for the scientific misconduct and research integrity activities of the U.S. Public Health Service (PHS).

rationale for the delay and notify federal agencies as required and in accordance with federal regulations. The RIO will ensure that periodic progress reports are filed with federal agencies and in accordance with federal regulations.

***Notice of Institutional Findings and Actions***

When the Dean reaches a final decision on the case, the investigation is complete, and the RIO will transmit to the applicable funding agency: (1) a copy of the final investigation report with all attachments; (2) a statement of whether the institution accepts the findings of the investigation report; (3) a statement of whether the institution found misconduct and, if so, who committed the misconduct; and (4) a description of any pending or completed institutional actions against the respondent.

***Interim Institutional Actions and Notifying Federal Agencies of Special Circumstances***

Throughout the research misconduct proceeding, the RIO will review the situation to determine if there is any threat of harm to public health or to federal funds and equipment. In the event of such a threat, the RIO will, in consultation with other institutional officials, and ORI, as necessary, take appropriate interim actions to protect against any such threat. Interim action might include: additional monitoring of the handling of federal funds and equipment and/or reassignment of personnel or of the responsibility for the handling of federal funds and equipment.

HBS shall, at any time during a research misconduct proceeding, notify ORI (or the relevant federal agency) immediately if there is reason to believe that any of the following conditions exist:
- Health or safety of the public is at risk, including an immediate need to protect human or animal subjects;
- Federal resources or interests are threatened;
- Research activities should be suspended;
- There is a reasonable indication of possible violations of civil or criminal law;
- Federal action is required to protect the interests of those involved in the research misconduct proceeding;
- The research misconduct proceeding may be made public prematurely and federal action may be necessary to safeguard evidence and protect the rights of those involved; or
- The research community or public should be informed.

***Completion of Cases***

For allegations that include PHS funded research, HBS must notify ORI in advance if there are plans to close a case at the inquiry or investigation stage on the basis that respondent has admitted guilt, a settlement with the respondent has been reached, or for any other reason, except: (1) closing of a case at the inquiry stage on the basis that an investigation is not warranted; or (2) a finding of no misconduct at the investigation stage, which must be reported to ORI, as prescribed in this Policy and 42 CFR § 93.315. For allegations that include non-PHS funded research, HBS must comply with any other notice obligation to a government agency or other funder.

***Restoration of the Respondent's Reputation***

Following a final finding of no research misconduct, including ORI concurrence where required by 42 CFR Part 93 (or, for non-PHS funded research, other applicable federal agency requirements), the RIO must,

15

at the request of the respondent, undertake all reasonable and practical efforts to restore the respondent's reputation.

***Maintaining Records for Review by ORI***

Unless HBS has transferred custody of the records of research misconduct proceedings (as defined by 42 C.F.R. § 93.317) to the funding agency in accordance with applicable law, HBS shall maintain the records of a research misconduct proceeding in a secure manner during its pendency and for seven (7) years after completion of the proceeding or completion of any agency oversight proceeding, or as required by any applicable record retention provision, whichever is later.