# Exhibit 1

**From:** Amabile, Teresa <tamabile@hbs.edu>
**Sent:** Monday, October 9, 2023 6:40 AM
**To:** Cunningham, Jean <jcunningham@hbs.edu>
**Subject:** Fwd: Addressing some of your questions

Hi Jean,

Srikant may also have been a recipient of this email. I have no idea how many people she sent it to.

All the best,
Teresa

Teresa Amabile
Sent from my iPhone

Begin forwarded message:

**From:** Francesca Gino <francescabgino@gmail.com>
**Date:** October 8, 2023 at 7:53:36 PM EDT
**To:** Francesca Gino <francescabgino@gmail.com>
**Subject: Addressing some of your questions**

> Some people who received this message don't often get email from francescabgino@gmail.com. Learn why this is important

Hi colleague,

I am writing this note to all my collaborators. This letter is overdue.

For more than a year, HBS was investigating me, but banned me from telling anyone (not to mention, as I discuss below, consulting coauthors, RAs, and experts who might help clear my name). Then when Data Colada began criticizing me publicly and HBS put me on involuntary leave, my life quickly came unwound – from basics like where to get health insurance for my kids, to hostile emails from strangers, to an unexpected but unavoidable focus on preparing for litigation as the last resort way to defend my innocence.

Meanwhile, multiple collaborators wanted to end projects in progress. Before I had a chance to reply in substance, many of my prior collaborators concluded I was guilty or found it difficult to see a way forward in research that involved me.

What you may have read may seem compelling: Data Colada wrote their posts persuasively. And Harvard conducted an 18-month long process, which produced a ~1,200 page report. It is easy to assume the investigation was both fair and comprehensive, when in fact it was not. There is another side to this story. About a week ago, I launched a website to explain it: https://www.francesca-v-harvard.org/

I hope you'll read the analyses I've conducted to prove that both Data Colada and HBS **reached conclusions that are wrong**. So far, I posted the analyses for one paper (see here and here). I hope to post the others soon. This work takes significant time, and while litigation complicates what I can share at times, I am committed to showing, without any shadow of doubt, that **I am innocent**.

1

People exhibit motivated skepticism: when we hold a positive bias towards someone, we sift through more data, hoping for some redeeming quality. But if we harbor negative feelings, we quickly make up our minds after only skimming a few pieces of information. I hope you'll read my side of the story with an open mind, avoiding motivated skepticism and its close cousin from behavioral science, confirmation bias.

Here are some of the most important things I wanted to share with you about the HBS investigation that you may not know from the information available to date:

**The HBS investigative committee only focused on those 4 studies:** Data Colada referenced in their posts a ~1,200 page report. You, like many others, may have interpreted this as evidence that HBS conducted an investigation about all my work, or at least more papers than the four studies included in the allegations Data Colada had against me. That's incorrect. The HBS investigative committee focused *only* on those 4 studies.

**It is easy to confuse length for depth, but the final report was actually only 41 pages:** So, you may ask, why is it that the report is so long? Much of the report consists of supporting documents, like the integrity research policy (48 pages, as the policy was included three times), the allegations received from Data Colada which track closely with their blog posts (18 pages), the papers with the four studies in question (233 pages, as the papers were included more than once), transcripts of interviews (251 pages). Even the cover pages, separating parts of the document, add surprising length (94 pages). And there's a considerable duplication within the file (78 pages that appear twice). The final report itself was only 41 pages long, and even there, there's surprisingly little at the heart of the matter.

**HBS opted to significantly limit who they interviewed:** Despite considerable data available, little of it was used. For example, I provided the names of RAs who helped with my research over the last decade. The list included over 300 people. The committee interviewed only two of them.

**Harvard's investigation did not examine raw datasets and correct research records:** The committee hired a forensics firm to analyze my files and data. They did not ask me for the files the firm should use as a basis for their analyses. I pointed to some, but inexplicably they ended up using others without consulting with me on their relevance. And I'm finding more and more evidence that some of the files they chose weren't what they thought they were and didn't mean what they thought they meant.

**The investigation process was broken and limited by ability to access the tools I needed to defend myself:** The process the investigative committee followed was broken – including, outrageously, disallowing me from consulting appropriate experts not to mention my coauthors and RAs. (Read more about process problems here and here.) Now that I've gotten forensics help, I've begun a fair and comprehensive analysis of the four studies in question. I won't rest until the truth is out.

When the news broke in mid-June, I felt isolated and confused. Few people reached out to check on me and ask questions. Everyone seemed to jump to conclusions based on incomplete information.

I've since learned that a lot has been happening in the field – journals are not printing papers accepted for publications if my name is on them; editors want published papers to be audited, no matter when they were published; co-authors want to remove me from R&Rs in fear that otherwise reviewers will be negative.

I was sad to learn about these many problems. It feels wrong to take my name off completed projects I contributed to. At the same time, these developments helped me see how much my situation created headaches for you, as well as my other collaborators.

When I first heard about the Many Co-Authors project I was excited: I thought this would be an opportunity for everyone to realize I've always used rigor in my work and have not engaged in research misconduct. But I soon learned I was being optimistic: the project was set up without any guardrails for me, and collaborators could use this as a moment to throw me under the bus for data in studies they had issues with, even if I neither collected the data nor handled it in any way. Sad enough, as I learned, this is in fact happening.

Despite all that, I hope this becomes a moment for everyone to reflect on common practices in our field and make it better. How we collect and share data. How we check for data quality. What record we keep of every step of the research process. I've seen some of the efforts taking place and they give me considerable hope of something good coming from this situation.

As for me, I am still very much committed to you, as my collaborators, and your success. In due time, I will audit all my papers. For now, I am limited in the way I can engage in research. Placed on involuntary leave, I cannot use any HBS resources for research, limiting my ability to continue my passion. But I'll work hard to make sure the type of analyses I've done on those four studies are analyses I carry out for other studies as well.

Some may say my lawsuit is not the right way to address allegations of data misconduct. Actually I agree: The normal way is normal correspondence, scientific inquiry, and good science. Unfortunately, that became impossible here – when Data Colada went to HBS without coming to me first; when HBS's process was beyond sloppy and not a search for the truth. With no other opportunity to defend my work, this is the path I am left with. I count myself fortunate that no matter the allegations, the actual facts are on my side.

With appreciation,
francesca