UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

FRANCESCA GINO,                                )
                                               )
        Plaintiff,                             )
                                               )
v.                                             )        C.A. No. 23-cv-11775-MJJ
                                               )
PRESIDENT AND FELLOWS OF                       )
HARVARD COLLEGE, SRIKANT                       )
DATAR, URI SIMONSOHN,                          )
LEIF NELSON, JOSEPH SIMMONS,                   )
JOHN DOES 1-10 AND JANE DOES 1-10,             )
                                               )
        Defendants                             )
_____)

**RESPONSE OF DEFENDANTS URI SIMONSOHN, LEIF NELSON,
AND JOSEPH SIMMONS TO MOTION OF DEFENDANTS
PRESIDENT AND FELLOWS OF HARVARD COLLEGE AND SRIKANT DATAR
FOR LEAVE TO FILE PARTIALLY UNDER SEAL**

Defendants Uri Simonsohn, Leif Nelson, and Joseph Simmons (the "Data Colada

Defendants") submit this response to the motion of Defendants Harvard University and Srikant

Datar (collectively, "Harvard") to file Exhibit 5 to the Declaration of Jenny K. Cooper partially

under seal. In support of this response, the Data Colada Defendants state as follows.

1.      Subject to their review of Harvard's proposed redactions, the Data Colada

Defendants have no objection to Harvard's motion. The proposed redactions appear to be

narrowly tailored to material as to which there is good cause for an order to seal. Below, the Data

Colada Defendants respond to the anticipated arguments of plaintiff Francesca Gino that the

Court should preclude the exhibit from being filed at all, or require it to be filed entirely under

seal. The Court should deny both such requests, if made.

4621810

2.      Proposed Exhibit 5 to the Cooper Declaration is the final report of the Harvard

Business School's investigation committee into whether Plaintiff Francesca Gino committed

research misconduct.[1] (Cooper Decl., ¶ 7) (the "Final Report") (see Memo in Support of Motion

to Dismiss, Doc. 19 at 6). The report sets forth the investigation committee's findings of

misconduct and its evaluation of Gino's defenses. (*Id.*). Harvard proposes to file the Final Report

in support of its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Harvard's Memo in

Support of Motion to Dismiss at 3, n. 5).

3.      The Data Colada Defendants understand that Gino intends to ask the Court to

enter an order prohibiting Harvard from filing the Final Report at all, on the ground that the

document cannot be considered on Harvard's Rule 12(b)(6) motion. If that is Gino's position, it

is erroneous. Absent a protective order or some other legal restriction, there is no basis for an

order preventing Harvard from even *filing* a document, whether or not the Court ultimately

decides to consider it.[2]

4.      Regardless, it is perfectly clear that the Court may consider the Final Report in

ruling on Harvard's motion to dismiss without converting it to one for summary judgment. When

"a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a

document (the authenticity of which is not challenged), that document effectively merges into the

pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."

---

[1] The document has not yet been filed, apparently by virtue of Local Rule 7.2(c).

[2] If the report were deemed to constitute material outside the pleadings for the purposes of Harvard's Rule 12(b)(6) motion (and as explained *infra,* it doesn't) the remedy would be either to refuse to consider the document or to convert the motion to one for summary judgment–not to reject the filing of the document. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

4621810

*Beddall v. State St. Bank & Tr. Co*., 137 F.3d 12, 17 (1st Cir. 1998). Gino's Amended Complaint quotes, characterizes, and purports to paraphrase the Final Report at great length, because her claims against Harvard depend on its content. (Am. Compl. ¶¶ 158-167). She alleges, among other things, that the report was the culmination of an "unfair and biased investigation," (Am. Compl. ¶ 345(k)), that it evidences Harvard's failure to adhere to the terms of the "Interim Policy" that allegedly governs, (Am. Compl., ¶ 166), and that it shows the knowing falsity of Harvard's allegedly defamatory retraction notices. (*Id.*, ¶ 362).

5.      The Final Report is also central to Gino's defamation claims against the Data Colada Defendants because Gino alleges that it establishes the falsity of their allegedly defamatory Blog Posts. In paragraph 269 of the Amended Complaint, for example, Gino alleges that the statements in each of the Blog Posts that Harvard had "presumably vetted" whether data fraud existed in her studies was false, because "[i]n fact, Harvard did not establish that data manipulation occurred, and also did not establish that Professor Gino was responsible for data manipulation." (Am. Compl., ¶ 269); (*see also* ¶¶ 251, 257, 266-267, 269). By contrast, Harvard states the Final Report did, in fact, find that Gino was responsible for data manipulation. According to Harvard, the committee found:

> 'by a preponderance of the evidence' that Plaintiff had 'intentionally, knowingly, or recklessly' engaged in research misconduct. ¶ 157; Ex. 5 at 1. For each allegation, the Committee discussed at length its findings and its evaluation of Plaintiff's arguments (including that witnesses uniformly identified Plaintiff as responsible for the anomalous data, Ex. 5 at 17-39, that data cleaning by Plaintiff's research associates did not persuasively explain the anomalies, id. at 10, and that Plaintiff's bad actor theory was highly implausible, id. at 10-16). For some allegations, the Plaintiff acknowledged the data anomalies but could offer no explanation.

(Harvard Memo re Motion to Dismiss at 6).

6.      Whichever characterization of the Final Report is accurate, the document is plainly relevant to the truth of the Data Colada Defendants' statements. And, as is well known, truth is an absolute defense to libel. *Taylor v. Swartwout,* 445 F.Supp.2d 98, 102 (D.Mass.2006) ("The lodestar of Massachusetts defamation law is the axiom that truth is an absolute defense to defamation."); *Reilly v. Associated Press,* 59 Mass. App. Ct. 764, 770 (2003) (allegedly defamatory statement "need not state the precise truth" to be deemed "substantially true," and thus immune from liability), citing *Dulgarian v. Stone,* 420 Mass. 843, 847; *Tartaglia v. Townsend,* 19 Mass. App. Ct. 693, 698 (1985); see also *Masson v. New Yorker Mag., Inc.,* 501 U.S. 496, 516-17 (1991) ("Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'"), quoting *Heuer v. Kee,* 15 Cal.App.2d 710, 714 (1936). The Final Report may therefore be considered on a Rule 12(b)(6) motion by the Data Colada Defendants.

7.      The Data Colada Defendants understand that Plaintiff intends to argue in the alternative that the Court should impound the Final Report in its entirety until the close of discovery. That, however, would violate the public's First Amendment and common law right of access to judicial documents.

8.      The public has a presumptive right of access to civil judicial documents under the First Amendment and the common law. *Courthouse News Serv. v. Quinlan*, 32 F.4th 15, 21 (1st Cir. 2022) (holding that delays in providing the public with access to newly-filed civil complaints can violate First Amendment right of access); *In re Guantanamo Bay Detainee Litig.,* 624 F. Supp. 2d 27, 36 (D.D.C. 2009) (the courts have "uniformly held that the public has a First Amendment right of access to civil proceedings and records"), and collecting cases; *In re Salem Suede, Inc*., 268 F.3d 42, 45 (1st Cir. 2001) ("[T]here is a strong common law presumption

favoring public access to judicial proceedings and records."); *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987). "A 'judicial document' or 'judicial record' is a filed item that is 'relevant to the performance of the judicial function and useful in the judicial process.'" *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016), quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir.2006) (internal quotation marks omitted). The public's right of access to judicial documents "stems from the premise that public monitoring of the judicial system fosters the important values of 'quality, honesty and respect for our legal system.'" *Siedle v. Putnam Invs., Inc.,* 147 F.3d 7, 9-10 (1st Cir. 1998), quoting *Standard Fin. Mgmt.*, 830 F.2d at 410. While the common law access right is "not unfettered," *id.* at 10, "[t]he citizens' right to know is not lightly to be deflected," and "'[o]nly the most compelling reasons can justify non-disclosure of judicial records.'" *Standard Fin. Mgt.*, 830 F.2d at 410, quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983). A court faced with a question of whether to seal a judicial record "must carefully balance the competing interests that are at stake in the particular case." *Siedle*, 147 F.3d at 10.

9.      The Final Report is plainly a "judicial document" to which the presumption of access applies. The courts have held that "[t]he more important the document is to the core judicial function of determining the facts and law applicable to the case, the stronger the presumption of public access and the higher the burden to overcome it." *Bradford & Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 447 (D. Mass. 2015). As such, the public's right of access is particularly strong with respect to documents that "will relate to and provide the foundation for dispositive motions." *Id.* at 449 (emphasis supplied)("For such documents, the public interest in access is strong and the tradition of public access is robust.") Accordingly, to seal documents submitted in connection with a motion to dismiss, a party "must establish an

overriding interest in sealing and must ensure that any sealing is narrowly tailored to shield as little from public view as possible." *Id.*

10.     Here, Gino cannot establish an "overriding interest in sealing" the Final Report. *Id.* Quite apart from the public's interest in assessing the consideration and outcome of Harvard's motion to dismiss, which is based in part on the Final Report, the public has a significant interest in Harvard's finding of research misconduct itself, as shown by the extensive media coverage already given to this matter. *See, e.g.,* Noam Scheiber, "Harvard Scholar Who Studies Honesty Is Accused of Fabricating Findings," *New York Times,* June 24, 2023[3]; Alex Koller, "Studies Retracted After Harvard Professor Who Researches Honesty Faces Allegations of Fraud," *Boston Globe,* July 30, 2023[4], Mara Yang, "Harvard Professor Who Studies Honesty Accused of Falsifying Data in Studies," *The Guardian,* June 25, 2023.[5] Commentators have suggested that the apparent falsification here, in combination with other recent controversies, presents the unsettling question of whether "scientific fraud is much more common than the number of known cases might lead one to believe." Jacob Stern, "An Unsettling Hint at How Much Fraud Could Exist in Science," *The Atlantic,* Aug. 2, 2023.[6] As the *Wall Street Journal* recently noted, the existence of misleading studies "is more than academic." It "can lead to faulty corporate decisions about consumer behavior or misguided government rules and policies. Errant medical research risks harm to patients. Researchers in all fields can waste years and millions of dollars

---

[3] https://www.nytimes.com/2023/06/24/business/economy/francesca-gino-harvard-dishonesty.html

[4] https://www.bostonglobe.com/2023/07/28/metro/studies-retracted-after-harvard-professor-who-researches-honesty-faces-allegations-fraud/

[5] https://www.theguardian.com/education/2023/jun/25/harvard-professor-data-fraud

[6] https://www.theatlantic.com/science/archive/2023/08/gino-ariely-data-fraud-allegations/674891/

in grants trying to advance what turn out to be fraudulent findings." Nidhi Subbaraman, "The Band of Debunkers Busting Bad Scientists," *Wall Street Journal,* Sept. 24, 2023.[7]

11.     On the other side of the ledger, Gino has no right to expect the Final Report to remain private, much less can she show an "overriding interest in sealing." *Bradford & Bigelow, Inc.*, 109 F. Supp. 3d at 449. The mere fact that a document may "embarrass, incriminate or create further litigation for a party is not enough to compel a court to seal the documents." *Bryntensen v. Camp Auto., Inc*., No. 2:13-CV-00491-BLW, 2015 WL 2035812, at *2 (D. Idaho May 1, 2015). And, as Harvard points out, Gino has waived any interest in keeping the Final Report confidential by publicly discussing, characterizing, and criticizing it at length in an attempt to prove her innocence in the court of public opinion. On her new website devoted to this purpose, francesca-v-harvard.org, she has posted an article under the heading "Innocence" in which she confidently states: "if you read HBS's investigative report, you will see error-after-error-after-error in its handling of this matter." Francesca Gino, "Refutation of Data Reconciliation Claims by HBS," https://www.francesca-v-harvard.org/hbs-data-reconciliation-1. The public should be able to assess Gino's claims for itself, as she has invited it to do. It is highly dubious (and revealing) that Gino is now trying to have it both ways.

For the foregoing reasons, and subject to the Data Colada Defendants' review of Harvard's proposed redactions, the Data Colada Defendants state that they have no objection to the limited redactions proposed by Harvard, but that any request by Gino to seal Exhibit 5 to the Cooper Affidavit, or for an order precluding its filing, should be denied.

---

[7] https://www.wsj.com/science/data-colada-debunk-stanford-president-research-14664f3

4621810

Respectfully Submitted,

URI SIMONSOHN, LEIF NELSON,
AND JOSEPH SIMMONS,

By their attorney,

*/s/ Jeffrey J. Pyle*
Jeffrey J. Pyle (BBO# 647438)
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
(617) 456-8000 (tel)
(617) 456-8100 (fax)
Date:  October 24, 2023                           jpyle@princelobel.com

## CERTIFICATE OF SERVICE

I hereby certify that the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first-class mail to any non-registered participants.

*/s/ Jeffrey J. Pyle*
Jeffrey J. Pyle

4621810