# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANCESCA GINO, | ) |
| Plaintiff, | ) |
| v. | ) |
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE, SRIKANT DATAR, URI SIMONSOHN, LEIF NELSON, JOSEPH SIMMONS, JOHN DOES 1-10, AND JANE DOES 1-10, | ) Case No. 1:23-cv-11775-MJJ |
| Defendants. | ) |

**REPLY IN SUPPORT OF DEFENDANTS PRESIDENT AND FELLOWS OF HARVARD COLLEGE AND SRIKANT DATAR'S PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

I. PLAINTIFF'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED .................... 1

II. PLAINTIFF'S IMPLIED COVENANT CLAIM FAILS ....................................................... 2

III. PLAINTIFF'S DEFAMATION CLAIMS FAIL.................................................................. 4

IV. PLAINTIFF'S OTHER MISCELLANEOUS CLAIMS MUST BE DISMISSED ............... 5

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Comeau v. Town of Webster, Mass.*,
    881 F. Supp. 2d 177 (D. Mass. 2012) ...................................................................................5

*Lluberes v. Uncommon Prods., LLC*,
    663 F.3d 6 (1st Cir. 2011) .....................................................................................................4

*McKee v. Cosby*,
    874 F.3d 54 (1st Cir. 2017) ...................................................................................................4

*Pollalis v. Harvard Univ.*,
    No. 1681-cv-30985, 2018 WL 7199754 (Mass. Sup. Ct. Apr. 24, 2018) ...............................2

*Salmon v. Lang*,
    57 F.4th 296 (1st Cir. 2022) ..............................................................................................4, 5

*Schaer v. Brandeis Univ.*,
    735 N.E.2d 373 (Mass. 2000) ................................................................................................1

*Sonoiki v. Harvard Univ.*,
    37 F.4th 691 (1st Cir. 2022) ..................................................................................................5

Plaintiff's Complaint[1] selectively quotes from and mischaracterizes the documents it attaches or incorporates and contains other fatal legal shortcomings. Rather than squarely addressing those deficiencies in her Opposition to Harvard's Motion, Plaintiff attempts to bolster the Complaint's vague and conclusory allegations with even more (unpled) vague and conclusory assertions. Ultimately, nothing in the Opposition overcomes the multiple dispositive defects in the Complaint, and dismissal of Plaintiff's claims is required.

## I. PLAINTIFF'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED

The Opposition cannot escape repeating the Complaint's faulty premise, based on selective quotations and mischaracterizations of Harvard's policies, that Plaintiff's status as a tenured professor insulates her from all discipline, including measures falling short of tenure revocation or termination of employment. Plaintiff argues that the Discipline Policy provides that it "'shall apply to *the discipline*' of tenured professors," Doc. No. 40 at 10 (quoting Doc. No. 6-12 at 1), but the provision Plaintiff quotes plainly limits its application to cases "involving grave misconduct or neglect of duty arising under the Third Statute"—that is, cases in which tenure removal is sought—and the Discipline Policy's prefatory note confirms that it provides "the applicable procedures for cases *involving the removal of a tenured appointment*." Doc. No. 6-12 at 1. Accordingly, nothing in the applicable policies required Harvard to appoint a screening committee to recommend, and a hearing committee to conduct, a hearing (*see* Doc. Nos. 6-11, 6-12) before a Dean of a Faulty could impose lesser consequences, such as a time-limited administrative leave and removal of a named professorship. Thus, there is nothing objectively reasonable about Plaintiff's expectation that her tenured position insulates her from all discipline. *See Schaer v. Brandeis Univ.*, 735

---

[1] Capitalized terms have the meanings ascribed to them in Harvard's Memorandum of Law in Support of its Partial Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 19) (the "Motion"). "Opposition" refers to Plaintiff's Memorandum of Law in Opposition to Harvard's Partial Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 40). Unless indicated otherwise, internal quotation marks and citations are omitted and emphasis is added.

N.E.2d 373, 381 (Mass. 2000) (dismissing breach of contract claim where student could not allege that reasonable expectations were not met).

Moreover, Plaintiff fails to cite a single case holding that discipline falling short of removal violated a tenure policy; to the contrary, every case Plaintiff cites involved the revocation or denial of tenure.  *See* Doc. No. 40 at 9.  Plaintiff's reliance on the importance of "strong procedural protections to prevent the wrongful dismissal of a tenured professor" is therefore irrelevant.  *Id.* at 9-10.  As the Complaint admits, Plaintiff remains "employed by [Harvard] as a tenured Professor." *E.g.*, Doc No. 6 at ¶ 1.  Plaintiff alleges (and *can* allege) only that she has been disciplined for violating Harvard policy and identifies no contract breached by the imposition of such discipline.

## II.     PLAINTIFF'S IMPLIED COVENANT CLAIM FAILS

The Opposition's attempt to resuscitate Plaintiff's implied covenant claim similarly fails. The assertion that Harvard was required to "vet the new [Interim Policy and Procedures] with HBS faculty," Doc. No. 40 at 12, not only is absent from the Complaint but also is premised on a misreading of the Appointment Letter, which plainly states only that Plaintiff's tenure is "subject to such terms, conditions and policies as are stipulated by the Faculty of Business Administration." Doc. No. 6-10 at 2.  Nothing in the Appointment Letter mandates the method by which such "terms, conditions and policies" must be "stipulated" or gives Plaintiff (or any individual faculty member) veto power over policy revisions.  In any event, the 2013 Policy, the legitimacy of which Plaintiff accepts, states that the "Dean has principal responsibility" for HBS' research misconduct policy and may adopt procedures at his discretion.  Doc. No. 6-1 at 2-3.  Thus, HBS expressly was authorized to adopt the Interim Policy and Procedures, barring Plaintiff's implied covenant claim. *See Pollalis v. Harvard Univ.*, No. 1681-cv-30985, 2018 WL 7199754, at *9 (Mass. Sup. Ct. Apr. 24, 2018) (implied covenant "cannot override" express terms of the contract).

The Opposition also confirms Plaintiff's failure to plead an implied covenant breach with respect to HBS' investigation. Plaintiff asserts that a subsequent use of the Papers published more than six years before the investigation extends the lookback period of misconduct subject to review only if the benefit of such use was more than "lightweight" (Doc. No. 40 at 15), but this colloquialized interpretation—for which Plaintiff offers no authority whatsoever—is a misreading of the Interim Policy and Procedures' plain terms, which require only that the misconduct be renewed through "the citation, republication, *or other use for the potential benefit of the respondent*." Doc. No. 6-2 at 2. The Opposition also continues to misconstrue the relevant standard for a finding of research misconduct set forth in the Interim Policy and Procedures and fails to address the finding that Plaintiff acted "intentionally, knowingly, or recklessly." *See* Doc. No. 40 at 15-16.[2] Indeed, Plaintiff's claim that Harvard "found her responsible" without applying the "preponderance of the evidence standard" (Doc. No. 40 at 15) confirms that this Court should consider the Final Report, which shows the opposite. Doc. No. 20-5 at 1.

Finally, Plaintiff argues that Harvard's alleged "failure to safeguard Plaintiff's confidentiality resulted in [the publication of] erroneous findings against her," but does not explain how this constitutes a breach of the implied covenant. Doc. No. 40 at 17. To the contrary, she claims that Harvard policies "specifically promised" (*id.*) certain (unspecified) confidentiality obligations, meaning that she must be claiming a breach of the Interim Policy and Procedures (the only policy she cites that is applicable), as opposed to a breach of any implied promise. But the confidentiality restriction in the cited policy expressly permits "communications about research

---

[2] Plaintiff also contends that HBS failed to find that Plaintiff significantly departed from accepted practices of the relevant research community. Doc. No. 40 at 15-16. However, the first page of the Final Report clearly states that Plaintiff "significantly departed from accepted practices of the relevant research community . . . *with regard to all five allegations examined herein*." Doc. No. 20-5 at 1. Plaintiff cites no support for her claim that HBS was required to explain this departure for each allegation, and indeed such an explanation would be needless given that data manipulation is an obvious departure from accepted practices.

3

proceedings" where they are "necessary or advisable." Doc. No. 6-2 at 4. The Opposition does not identify any facts in the Complaint supporting a reasonable inference that Harvard's alleged disclosures to certain HBS faculty members, doctoral students, and co-authors (who were informed only *after* the investigation had concluded) were not "necessary or advisable."

## III.     PLAINTIFF'S DEFAMATION CLAIMS FAIL

Plaintiff's Opposition similarly fails to cure the numerous fatal defects of her defamation claims. *First*, Plaintiff's claim that she is not a public figure for purposes of this litigation is incorrect. As the Motion explained, the Complaint itself touts Plaintiff as "one of the world's most influential management thinkers," with global reach through publications in "The Atlantic, The Boston Globe, Business Week, The Economist, The Financial Times, National Public Radio, Scientific America, The Wall Street Journal, and the New York Times." Doc. No. 6 at ¶¶ 40-41. Through such access, she "assumed [a] role[] of prominence" and the "public scrutiny that came with it." *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 17 (1st Cir. 2011). The Opposition's conclusory assertion that "Plaintiff's public profile . . . does not establish her as a 'public figure'" (Doc. No. 40 at 18) does not establish otherwise. Equally meritless is Plaintiff's claim that this question may not be determined on this motion (*id.* at 19); to the contrary, courts routinely have determined public figure status as a matter of law. *See, e.g.*, *McKee v. Cosby*, 874 F.3d 54, 61 (1st Cir. 2017) (determining public-figure status at pleading stage); *see also* Doc. No. 42 at 14 & n.14. Accordingly, Plaintiff's defamation claims against Harvard must be dismissed due to her failure to allege facts plausibly showing actual malice—which the Opposition concedes is required if Plaintiff is a public figure (Doc. No. 40 at 18-19), and which is the only defamation element the Opposition addresses with respect to the administrative leave claim (*id.* at 23).

*Second*, the Opposition entirely ignores that the alleged defamatory statements in the Retraction Notices are non-actionable opinion because they amount to Harvard's "conclusions

4

about the information presented." *Salmon v. Lang*, 57 F.4th 296, 323 (1st Cir. 2022); Doc. No. 19 at 21-22.  Instead, it erroneously asserts that the Retraction Notices were defamatory because they used the phrase "original dataset."  Doc. No. 40 at 21.  While Harvard disputes that such language was inaccurate, it is immaterial in any event:  The Retraction Notices make clear that Harvard's conclusion did *not* depend on a finding that the "original dataset" examined was in fact the original; rather, it depended on the finding that a comparison of the dataset underlying the published study with an *earlier* version of the same dataset revealed significant discrepancies all in the direction of the hypothesized and reported results.  Doc. Nos. 6-3, 6-4, 6-5.  The statements containing the term "original dataset"—whether or not that earlier dataset was, in fact, the "original" or merely an earlier version—thus were "substantially true" and nonactionable.  *Salmon*, 57 F.4th at 320.

## IV.  PLAINTIFF'S OTHER MISCELLANEOUS CLAIMS MUST BE DISMISSED

Recognizing the weakness of her estoppel, conspiracy, tortious interference, and invasion of privacy claims, Plaintiff barely makes any effort to explain how these claims are sufficiently pled.  For example, Plaintiff's claim that she may assert both estoppel and breach of contract claims based on the same policies flatly contradicts the caselaw on which Plaintiff relies.  *See Sonoiki v. Harvard Univ.*, 37 F.4th 691, 717 (1st Cir. 2022) (affirming dismissal of estoppel claim in the alternative at motion to dismiss stage).  As to Plaintiff's tortious interference claim concerning Harvard Business Publishing, even under Plaintiff's own case law, Doc. No. 40 at 19, Plaintiff must plead actual malice, which she has not.  And even if an interference with advantageous relations claim "does not require Plaintiff to establish a breach of contract," Doc. No. 40 at 24, Plaintiff has failed to plead "a breaking of the relationship," *Comeau v. Town of Webster, Mass.*, 881 F. Supp. 2d 177, 190 (D. Mass. 2012), which her own authority confirms is required.  These four claims must also be dismissed.

Dated: November 14, 2023                     Respectfully submitted,

*/s/ Douglas E. Brayley*
Douglas E. Brayley (BBO# 676821)
Jenny K. Cooper (BBO# 646860)
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Douglas.Brayley@ropesgray.com
Jenny.Cooper@ropesgray.com

*Counsel for Defendants President and Fellows of Harvard College and Srikant Datar*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2023, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: November 14, 2023

/s/ Douglas E. Brayley
Douglas E. Brayley