UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FRANCESCA GINO,

                Plaintiff,

                v.

PRESIDENT AND FELLOWS OF HARVARD COLLEGE, SRIKANT DATAR, URI SIMONSOHN, LEIF NELSON, JOSEPH SIMMONS, JOHN DOES 1-10, AND JANE DOES 1-10,

                Defendants.

No. 1:23-CV-11775-MJJ

**PROPOSED BRIEF OF AMICI CURIAE AMERICAN CIVIL LIBERTIES UNION AND AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC. IN SUPPORT OF NEITHER PARTY**

Tyler Takemoto*
Vera Eidelman*
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
ttakemoto@aclu.org

*Pro hac vice motion pending*

Kirsten V. Mayer (BBO # 641567)
Jessie J. Rossman (BBO # 670685)
Ruth A. Bourquin (BBO # 552985)
Rachel E. Davidson (BBO # 707084)
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org

## CORPORATE DISCLOSURE STATEMENT

The American Civil Liberties Union and the American Civil Liberties Union of Massachusetts, Inc., have no parent corporations. They have no stock, so therefore no publicly held company owns 10% or more of their stock.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

INTEREST OF AMICI CURIAE ............................................................................................ 1

INTRODUCTION ................................................................................................................... 2

ARGUMENT ........................................................................................................................... 3

    I.    The First Amendment protects statements of opinion based on disclosed, nondefamatory facts. …………………………………………………………………….3

    II.   Ensuring that statements of opinion based on disclosed nondefamatory facts are protected from defamation liability is essential for robust scientific inquiry and academic debate…………………………………………………………………...5

    III.  Robust First Amendment protections are particularly important at the motion to dismiss stage of defamation lawsuits because the prospect of costly litigation chills protected speech………………………………………………...……….....8

CONCLUSION ........................................................................................................................ 9

CERTIFICATE OF COMPLIANCE ....................................................................................... 9

CERTIFICATE OF SERVICE ............................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Ayyadurai v. Floor64, Inc. d/b/a Techdirt*, 270 F. Supp. 3d 343 (D. Mass. 2017) ................ *passim*

*Dulgarian v. Stone*, 420 Mass. 843 N.E.2d 603 (1995) .................................................................. 4

*Dunn v. Gannett New York Newspapers, Inc.*, 833 F.2d 446 (3d Cir. 1987) .................................. 4

*Fry v. Lee*, 408 P.3d 843 (Colo. Ct. App. 2013) ............................................................................. 8

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ..................................................................... 3, 4

*Gray v. St. Martin's Press, Inc.*, 221 F.3d 243 (1st Cir. 2000) ....................................................... 4

*Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222 (7th Cir. 1993) ........................................................ 5

*Marder v. TEGNA Inc.*, 2020 WL 3496447 (S.D. Fla. 2020) ........................................................ 8

*McKee v. Cosby*, 874 F.3d 54 (1st Cir. 2017) ................................................................................ 9

*Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995) .................................................................... 6

*Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724 (1st Cir. 1992) ........................... 5

*Piccone v. Bartels*, 785 F.3d 766 (1st Cir. 2015) ........................................................................... 2

*Pyle v. S. Hadley Sch. Comm.*, 55 F.3d 20 (1st Cir. 1995) ............................................................. 1

*Riley v. Harr*, 292 F.3d 282 (1st Cir. 2002) ................................................................................... 4

*Roth v. United States*, 354 U.S. 476 (1957) ................................................................................... 3

*Scholz v. Delp*, 473 Mass. 242 (2015) ................................................................................... 3, 4, 5

*Stewart v. Sun Sentinel Co.*, 695 So. 2d 360 (Fla. 4th DCA 1997) ................................................ 8

*Underwager v. Salter*, 22 F.3d 730 (7th Cir. 1994) ....................................................................... 6

*Yohe v. Nugent*, 321 F.3d 35 (1st Cir. 2003) .................................................................................. 4

**Other Authorities**

David Boies, *The Chilling Effect of Libel Defamation Costs: The Problem and Possible Solution*,

   39 St. Louis U. L.J. 1207 (1994) ............................................................................................... 8

**INTEREST OF AMICI CURIAE**[1]

The American Civil Liberties Union (ACLU) is a nationwide, nonprofit, nonpartisan organization dedicated to defending the principles embodied in the Constitution and our nation's civil rights laws. Since its founding in 1920, the ACLU and its affiliates have frequently appeared before courts throughout the country in First Amendment cases, both as direct counsel and as amicus curiae. This includes appearing in defamation cases, *see, e.g., Frese v. Formella*, 53 F.4th 1 (1st Cir. 2022), and specifically filing at the motion-to-dismiss stage in defamation cases in an effort to preserve a pleading standard that satisfies the First Amendment. *See, e.g.*, Brief of ACLU as Amicus Curiae, *Coral Ridge Ministries Media v. Amazon*, No. 19-14125 (11th Cir. March 30, 2020); Order, *Energy Transfer Equity, LP v. Greenpeace International*, No. 1:17-cv-00173-BRW (D. N. Da. Feb. 14, 2019); *Green Grp. Holdings, LLC v. Schaeffer*, No. CV 16-00145-CG-N, 2016 WL 6023841 (S.D. Ala. Oct. 13, 2016).

The American Civil Liberties Union of Massachusetts (ACLUM) is a state affiliate of the national ACLU dedicated to protecting the civil rights and civil liberties of residents of the Commonwealth of Massachusetts. ACLUM regularly appears and files amicus briefs in cases involving First Amendment issues. *See, e.g., Project Veritas Action Fund v. Rollins*, 982 F.3d 813 (1st Cir. 2022); *Doe v. Hopkinton Pub. Schs.*, 19 F.4th 493 (1st Cir. 2021); *Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008); *Pyle v. S. Hadley Sch. Comm.*, 55 F.3d 20, 22 (1st Cir. 1995). *See also* Brief of ACLUM as Amicus Curiae Supporting Neither Party, *L.M. v. Middleborough*, Nos. 23-1535, 23-1645 (1st Cir. appeal docketed Aug. 11, 2023).

---

[1] Amici confirm that no party or counsel for any party authored this brief in whole or in part and that no person other than amici or their counsel made any monetary contribution intended to fund the preparation or submission of this brief.

## INTRODUCTION

It is black letter law that the First Amendment protects statements of opinion based on disclosed nondefamatory facts from defamation liability. This doctrine protects even stated views that could be read as facts—including potentially damaging or upsetting facts—as long as the bases for the views are disclosed and are not themselves defamatory. *Piccone v. Bartels*, 785 F.3d 766, 771 (1st Cir. 2015).

This doctrine, which is essential for many areas of public debate, is also critical to scientific discussions and academic inquiry. It ensures that people can disagree about scientific findings, the validity of research methodologies and statistical models, and the interpretation of data without fear of defamation liability—as long as they disclose the factual basis for their stated opinions. It also ensures that members of the public can make up their own minds, without being limited to what judges and juries deem "true." And such public conversation should ultimately improve the state of science and our understanding of the world.

Without this protection, individuals who engage in reasoned disagreements about science and academic research would be too easy to silence through defamation lawsuits. Already, researchers who question seemingly established results, scientific orthodoxy, or prominent scholars are targets of defamation lawsuits, and that has a chilling effect not only on them, but on their peers and the rest of the academic community. This includes scientists who, notwithstanding the lack of incentives in traditional academia to do so, are committed to revisiting published results to independently replicate, verify, assess—and, where they believe they have reason to do so, criticize—the underlying research.

So long as they disclose the factual basis on which they rely, researchers must be free to independently opine on academic and scientific findings—including, crucially, on the veracity of

2

research methodologies, analyses, and conclusions—without fear that doing so will subject them to costly litigation. A culture where researchers self-censor ultimately deprives the public of the benefits that come with robust academic and scientific collaboration, debate, and independent review.

Here, the Plaintiff has brought defamation claims against three researchers ("the Data Colada Defendants") who opined that at least four of her authored studies include faked or manipulated data. In evaluating these claims on a motion to dismiss, this Court should rigorously apply the longstanding rule that statements of opinion based on disclosed nondefamatory facts are not actionable because they are protected by the First Amendment.

## ARGUMENT

### I. The First Amendment protects statements of opinion based on disclosed, nondefamatory facts.

The First Amendment was designed to "assure unfettered interchange of ideas." *Roth v. United States*, 354 U.S. 476, 484 (1957). Accordingly, "[u]nder the First Amendment there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974). *See also Scholz v. Delp*, 473 Mass. 242, 249–50 (2015) ("[T]o be actionable, [a] statement must be one of fact rather than of opinion."). In a democracy, it is fundamental that individuals must be able to draw their own conclusions about the world and share those conclusions with others. The same is true for scientific inquiry.

When it comes to competing ideas, including competing opinions that might arise in academic or scientific debates, the public square, not the courtroom, is the appropriate forum to contest conclusions. "However pernicious [an idea] may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz*, 418 U.S. at 339–40. Nothing could be more fundamental to the process of collective scientific inquiry than the

ability of individuals to form, test, and hold their own hypotheses, analyses, and conclusions, often based on the same set of facts. Indeed, paradigm shifts in scientific understanding throughout history—including the heliocentric theory, the theory of evolution, and the theory of relativity—have been driven by thinkers whose ideas ran contrary to accepted wisdom, and who criticized theories advanced by their more powerful and better respected contemporaries.

The First Amendment's protection extends to statements of opinion based on disclosed, nondefamatory facts. As the First Circuit and the Supreme Judicial Court of Massachusetts have made clear, "[a]n expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation." *Yohe v. Nugent*, 321 F.3d 35, 42 (1st Cir. 2003). *See also Scholz*, 473 Mass at 251 (same) (citing *Dulgarian v. Stone*, 420 Mass. 843, 850 (1995). This reaches even statements that could be read as statements of fact—including "provably false statement[s]"—as long as "'it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts.'" *Riley v. Harr*, 292 F.3d 282, 289 (1st Cir. 2002) (quoting *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 248 (1st Cir. 2000)).

And the rule extends to all statements of opinion accompanied by their nondefamatory factual bases, "no matter how unjustified or unreasonable [or derogatory] the opinion may be," *Yohe*, 321 F.3d at 42, because "readers can interpret the factual statements and decide for themselves whether the writer's opinion was justified." *Dunn v. Gannett New York Newspapers, Inc.*, 833 F.2d 446, 454 (3d Cir. 1987). Applying this principle in *Scholz*, for example, the Massachusetts Supreme Judicial Court found that even statements in a publication's headlines that appeared to imply that the defamation plaintiff was responsible for a third party's suicide were protected because they "could not have been understood by a reasonable reader to have been

4

anything but opinions regarding the reason [that third party] committed suicide[,]" and the logical nexus between the nondefamatory facts disclosed in the article and the opinion based on those facts was sufficiently clear. *Scholz*, 473 Mass. at 251, 253 . Similarly, the Seventh Circuit held that a narrative historian was offering protected opinion when he characterized a defamation plaintiff as a criminally neglectful parent and blamed the plaintiff's habitual alcohol use for the loss of a job because he accompanied those statements with factual information gleaned from interviews with the plaintiffs' family members and public records. *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993). And a court in this District held that a publication expressed a protected opinion where it challenged the veracity of a defamation plaintiff's claims that he had invented e-mail because the speaker was working from a universe of disclosed facts. *Ayyadurai v. Floor64, Inc. d/b/a Techdirt*, 270 F. Supp. 3d 343, 363–64 (D. Mass. 2017).

Thus, even statements of opinion that may be controversial, ultimately unjustifiable, or regrettably nasty are entitled to First Amendment protection, including statements that may appear on their face to advance a harmful factual conclusion about the complainant.

## II. Ensuring that statements of opinion based on disclosed nondefamatory facts are protected from defamation liability is essential for robust scientific inquiry and academic debate.

This rule is particularly relevant to academic and scientific inquiry, where researchers commonly reach independent conclusions based on the same set of facts. When researchers show the work underlying their inferences, their statements become "a self-contained give-and-take," where conclusions, including "assertion[s] of deceit," can only be understood as "personal conclusions." *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 730 (1st Cir. 1992) (holding that a series of articles accusing complainant of deceptive marketing practices were protected because their author had provided adequate factual context for the accusations).

As courts applying the rule have noted, "[when] an author writing about a controversial occurrence . . . offers his personal perspective about some of its ambiguities and disputed facts, his statements should generally be protected by the First Amendment." *Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995). Without this protection, "there would be no room for expressions of opinion by commentators, experts in a field, figures closely involved in a public controversy, or others whose perspective might be of interest to the public." *Id.* So long as researchers work from the same or a publicly available set of facts, the field of scientific inquiry requires that they be afforded ample space to reach vastly different conclusions.

Indeed, academic and scientific advances rely on the ability of scientists and researchers to debate scientific truth, revisit and retest purportedly established scientific findings, and speak plainly when they believe past results or publications were unfounded. To do so, they must be able to express their opinions—including suspicions of data falsification—while disclosing the factual bases that led them there. Courts interpreting the First Amendment rule protecting statements of opinion based on disclosed nondefamatory facts have clearly articulated the importance of this rule for academic debate and scientific research.

For example, in *Underwager v. Salter*, the Seventh Circuit applied the rule to a dispute among social science researchers. 22 F.3d 730 (7th Cir. 1994). In that case, two coauthors of clinical psychology books sued a social science researcher for defamation after the researcher criticized their methods and literature review and accused them of misrepresenting sources and quotes and using them out of context. *Id.* at 731–32. The Seventh Circuit rejected the clinical psychologists' claim and held that the critic's statements were protected. In doing so, the Seventh Circuit made clear that "[s]cientific controversies must be settled by the methods of science rather than by the methods of litigation. More papers, more discussion, better data, and more satisfactory

6

models—not larger awards of damages—mark the path toward superior understanding of the world around us." *Id.* at 736 (internal citation omitted).

Similarly, in *Ayyadurai v. Floor64, Inc. d/b/a Techdirt*, a scientist who claimed to be the inventor of e-mail—and who had been deemed so in many reputable public sources—sued a publication for writing that he was not. 270 F. Supp. 3d 343. Without questioning widely reported facts supporting the scientist's claim—such as a relevant copyright the scientist had been the first to secure—the publication advanced an alternate conclusion: that the idea for e-mail pre-dated the scientist's implementation of the concept. *Id.* at 360–61. Applying the First Circuit's rule protecting statements of opinion on the basis of disclosed facts, a court in this district held that the publication's alternate conclusion was protected. *Id.* "[B]y providing hyperlinks to the relevant information, the articles enable readers to review the underlying information for themselves and reach their own conclusions." *Id.* Accordingly, the statements were not actionable. *Id.*

This rule is relevant to this case. For example, the complaint alleges that one statement Data Colada Defendants made to the Harvard University Inquiry Committee about "out of sort" data was defamatory because it contained "unwarranted inferences" based on "perceived anomalies" in Plaintiff's research. Compl. ¶ 105. The complaint does not allege that there were no "perceived anomalies." Instead, it alleges that Plaintiff "provided plausible explanations for the[m]" that differed from Data Colada's conclusions. *Id.* ¶ 131. This type of disagreement falls squarely within the scope of First Amendment protection: there is no cause of action for defamation where a complainant "challenges the *conclusions* drawn from the available facts," but

7

"does not challenge the underlying facts themselves." *Ayyadurai*, 22 F.3d at 361. An inference based on disclosed facts—no matter how unwarranted—is protected.[2]

### III. Robust First Amendment protections are particularly important at the motion to dismiss stage of defamation lawsuits because the prospect of costly litigation chills protected speech.

In defamation suits, rigorously upholding First Amendment protections at the motion to dismiss stage is crucial to ensure that individuals who would otherwise engage in protected speech do not self-censor for fear of being embroiled in costly litigation. *See* David Boies, *The Chilling Effect of Libel Defamation Costs: The Problem and Possible Solution*, 39 St. Louis U. L.J. 1207 (1994). The chilling effect of potential litigation privileges the speech of the powerful and well-resourced, who can better bear the cost of vindicating their First Amendment rights at trial. *Id.* On the other hand, speakers with access to fewer resources or specialized knowledge are more likely to silence themselves rather than risk the time and expense needed to defend themselves, even from frivolous defamation claims—ultimately leading certain perspectives to be underrepresented in the marketplace of ideas. In light of this concern, trial courts adjudicating motions to dismiss in defamation cases should ensure that all claims barred as a matter of law by the First Amendment are dismissed without proceeding to trial. "[B]ecause the threat of protracted litigation could have a chilling effect on the constitutionally protected right of free speech, prompt resolution of defamation actions," including by "motion to dismiss, is appropriate . . ." *Fry v. Lee*, 408 P.3d 843, 849 (Colo. Ct. App. 2013). *See also Marder v. TEGNA Inc.*, 2020 WL 3496447 at *3 (S.D. Fla. 2020) (quoting *Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997) ("[W]here the facts are not in dispute in defamation cases, … pretrial dispositions are especially appropriate

---

[2] *Amici* do not purport to address all of the alleged defamatory statements, or whether they are necessarily covered by the doctrine of opinion based on disclosed nondefamatory facts.

8

because of the chilling effect these cases have on freedom of speech.") (internal quotations omitted).

When the only statements at issue for a particular defamation claim are statements of opinion accompanied by disclosed nondefamatory facts, for example, a court may dismiss those claims on their face. *See, e.g.*, *McKee v. Cosby*, 874 F.3d 54, 60–61 (1st Cir. 2017) (upholding a district court's dismissal of defamation claims where statements at issue were opinions accompanied by their nondefamatory factual bases); *Ayyadurai*, 270 F. Supp. 3d at 370 (granting in part a motion to dismiss defamation claims because they qualified as opinions based on disclosed facts, protected as a matter of law.).

## CONCLUSION

For the foregoing reasons, in evaluating whether the defamation claims should be dismissed, the Court should carefully and rigorously apply the longstanding principle that the First Amendment shields statements of opinion based on disclosed nondefamatory facts.

Dated: November 22, 2023

Respectfully submitted,

*/s/ Jessie J. Rossman*

Tyler Takemoto*
Vera Eidelman*
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
ttakemoto@aclu.org

*Pro hac vice motion pending

Kirsten V. Mayer (BBO # 641567)
Jessie J. Rossman (BBO # 670685)
Ruth A. Bourquin (BBO # 552985)
Rachel E. Davidson (BBO # 707084)
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 5.1 and L.R. 7.1, I certify that the Brief of Amicus Curiae American Civil Liberties Union in Support of Neither Party was prepared on a computer, using Times New Roman (proportionally spaced) typeface, 12-point type, double-spaced, with 12-point single-spaced footnotes and 12-point single-spaced block quotations. The word count, as generated by Microsoft Word, is 2,652.

Dated: November 22, 2023                                    /s/ *Jessie J. Rossman*

                                                                        Jessie J. Rossman

## CERTIFICATE OF SERVICE

      I hereby certify that on November 22, 2023, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the District of Massachusetts by using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the CM/ECF system.

                                                                 */s/ Jessie J. Rossman*

                                                                 Jessie J. Rossman