UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANCESCA GINO,<br><br>    Plaintiff,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF<br>HARVARD COLLEGE, SRIKANT<br>DATAR, URI SIMONSOHN,<br>LEIF NELSON, JOSEPH SIMMONS,<br>JOHN DOES 1-10 AND JANE DOES 1-10,<br><br>    Defendants | C.A. No. 23-cv-11775-MJJ |

**REPLY OF URI SIMONSOHN, LEIF NELSON, AND JOSEPH SIMMONS
IN SUPPORT OF THEIR MOTION TO DISMISS**

Jeffrey J. Pyle (BBO #647438)
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
(617) 456-8000 (tel)
(617) 456-8100 (fax)
jpyle@princelobel.com

Date:  November 29, 2023

I. **THE DATA COLADA DEFENDANTS ARE NOT LIABLE FOR DEFAMATION, NOTWITHSTANDING THAT WHETHER GINO'S STUDIES INCLUDED FALSIFIED DATA MAY BE PROVED TRUE OR FALSE.**

Plaintiff Francesca Gino's opposition to the Data Colada Defendants' motion to dismiss is notable for what it does not say.[1] (Doc. No. 52). It does not deny that Gino was responsible for collecting the data that the Data Colada Defendants discussed in their allegedly defamatory report and blog posts. It does not dispute that the data included the anomalies the Data Colada Defendants identified, or argue that they described the anomalies inaccurately. And it does not deny (or even address) the fact that the anomalous data entries strongly supported Gino's hypothesis in each of the four studies, as one would expect if the data had been falsified.

Instead of attempting to show the falsity of these facts, which provide the nondefamatory foundation for the Data Colada Defendants' conclusions, Gino argues that their conclusions don't qualify for First Amendment protection because the question of whether she committed fraud "is sufficiently factual to be proved true or false." (Doc. No. 52 at 11). Gino overlooks that "<u>even a provably false statement is not actionable</u> if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts."[2] *Riley v. Harr*, 292 F.3d 282, 289 (1st Cir. 2002)

---

[1] As in the motion to dismiss, the "Data Colada Defendants" is used as shorthand for defendants Uri Simonsohn, Leif Nelson, and Joseph Simmons.

[2] It is true that much of the First Amendment "opinion" caselaw focuses on whether the allegedly defamatory statement is provably false. As the Second Circuit has observed, however, the traditional dichotomy between statements that are provable as false, on the one hand, and those too subjective to be subject to proof, on the other, is "not entirely helpful" in cases involving "scientific academic discourse." *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 496-498 (2d Cir. 2013). This is partly because "[m]ost conclusions contained in a scientific journal article are, in principle, 'capable of verification or refutation by means of objective proof.'" *Id.*, quoting *Phantom Touring, Inc. v. Affiliated Publ'ns,* 953 F.2d 724, 728 n. 7 (1st Cir.1992). "Indeed, it is the very premise of the scientific enterprise that it engages with empirically verifiable facts about the universe." *Id.* at 496. Still, "while statements about contested and contestable scientific hypotheses constitute assertions about the world that are in principle matters of verifiable 'fact,' for purposes of the First Amendment and the laws relating to . . . defamation, they are more closely akin to matters of opinion, and are so understood by the relevant scientific communities." *Id.*

(internal quotations and citations omitted). "[W]hen an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment." *Id.,* quoting *Partington v. Bugliosi*, 56 F.3d 1147, 1156–57 (9th Cir.1995); *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 359 and n. 8 (D. Mass. 2017) ("disclosing the factual basis for a statement of opinion is a separate basis on which statements may be protected under the First Amendment," distinct from the ground that the "statements at issue are incapable of being proved false by virtue of the language that they use.").

Gino asserts in passing that the Data Colada Defendants rested their conclusions on "erroneous" facts, but, tellingly, she provides no examples. (Doc. No. 52 at 12). She directs most of her effort at arguing that the Data Colada Defendants drew the wrong inferences from the facts, because (in her view) the data anomalies don't constitute "'evidence of fraud.'" (Doc. No. 52 at 10); *ONY, Inc.*, 720 F.3d at 497. As we have explained, however, Gino's disagreement with the Data Colada Defendants' interpretation of unchallenged, disclosed, non-defamatory facts does not make out a defamation claim, and "[w]hether [the court] deem[s] the[] underlying facts to be probative is immaterial, so long as the facts presented for the readers' consideration are not both false and defamatory." *McKee v. Cosby*, 874 F.3d 54, 63 (1st Cir. 2017) (statement accusing plaintiff of lying protected because it was based on disclosed nondefamatory facts).

Otherwise, Gino's opposition newly attempts to include in her defamation claim statements that are neither defamatory nor false. (Doc. No. 52 at 10-14). These include:

---

In words equally applicable to this case, the court continued: "it is relevant that plaintiff does not allege that the data presented in the article were fabricated or fraudulently created. . . . Rather, plaintiff alleges that the inferences drawn from those data were the wrong ones, and that competent scientists would have included variables that were available to the defendant authors but that were not taken into account in their analysis." *Id.* at 497-98. Such a complaint, the court held, does not state a claim of defamation.

"A small number of individuals raised concerns to us and asked for our involvement in trying to reconcile those concerns." (Doc. No. 52 at 10, citing Doc. No. 6 at 103; Doc. No. 43-1 at 2).

"In collaboration, we have collectively tried to identify some of the biggest issues." (*Id.,* citing Doc. No. 6 at 103 and Doc. No. 43-1 at 2)

"We believe that Harvard University has access to the Qualtrics file that could have perfectly verified (or disputed) our concerns. We told them which file to get, which cells to check, and which values they would find in the Qualtrics file if we were right. We don't know if they did this, or what they found if they did. All we know is that, 16 months later, they requested that the article be retracted." (Doc. No. 52 at 14)

Statements that individuals "raised concerns" with the Data Colada Defendants, or that they tried to "identify some of the biggest issues," are no basis for a libel claim because they are not "susceptible to defamatory meaning," *i.e.* they do not tend to hold Gino "up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community." *Amrak Prods., Inc. v. Morton*, 410 F.3d 69, 72 (1st Cir. 2005). Further, the Amended Complaint does not allege facts showing either of these statements, or the statement about Harvard's access to Qualtrics data files, to be false, another essential element of a claim for defamation. *Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 108 (1st Cir. 2000) (plaintiff has a "constitutional burden to show the falsity of each statement . . .").

However, even if the Court were to determine that one or more of the Data Colada Defendants' statements is actionable, it should still (1) dismiss the Amended Complaint to the extent it is based on non-actionable statements or publications, and (2) as explained below, hold that Gino has failed plausibly to allege facts showing that the Data Colada Defendants harbored subjective doubts about the truth of any statement they made. *See Lewis v. Abramson*, No. 22-CV-126-PB, 2023 WL 3322009, at *14 (D.N.H. May 9, 2023) (partially dismissing defamation claim based on 41 separate allegedly defamatory statements, deeming some to be protected opinions and others to be actionable); *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 366-371

3

(D. Mass. 2017) (dismissing claim based on 84 allegedly defamatory statements, deeming all to be non-actionable, and finding that the complaint failed to plausibly allege actual malice.)

## II.    GINO CANNOT SHOW ACTUAL MALICE BY MISCHARACTERIZING THE DATA COLADA DEFENDANTS' STATEMENTS.

In the absence of facts showing the Data Colada Defendants' reckless or knowing falsity, Gino attempts to carry her burden by aggressively mischaracterizing what they said.[3] She asserts that in the December Report, they stated "that they had 'direct evidence' that <u>Plaintiff</u> committed 'data tampering.'" (Doc. No. 52 at 4, citing Doc. No. 6 at ¶ 104) (emphasis supplied). The December Report says no such thing. (Doc. No. 43-1). Rather, it reads: "We report direct evidence of data tampering in four different datasets from four different published articles," without tying the evidence of tampering to Gino personally. (*Id.* at 1). Indeed, a mere two paragraphs after the passage Gino misquotes, it states: "[A]lthough the evidence can, in most of these cases, rule out malfeasance by co-authors, <u>it cannot definitively rule in malfeasance by Professor Gino</u>. It may be that some research assistant or otherwise unnamed person/people was/were responsible for producing these anomalies." (Doc No. 43-1 at 1) (emphasis supplied). Nonetheless, Gino uses her inaccurate quotation as the foundation for her assertion that Simonsohn later acknowledged the falsity of the Data Colada Defendants' statements.[4] (Doc. No.

---

[3] Gino half-heartedly argues that she is not a public figure for purposes of statements about her "award-winning" and "influential" published research, which she has presented "at some of the most prestigious colleges and universities in the world." (Doc. No. 6 at ¶¶ 37, 39, 40; Doc. No. 52 at 16-17). As we have explained, there's no such thing as an "internationally renowned" private figure. (Doc. No. 6 at ¶ 2; Doc. No. 42 at 13-14); *see Dilworth v. Dudley,* 75 F. 3d 307, 309 (7th Cir. 1996) (plaintiff, an "obscure engineer," deemed a public figure for purposes of statement about his published article because, "[b]y publishing your views you invite public criticism and rebuttal; you enter voluntarily into one of the submarkets of ideas and opinions and consent therefore to the rough competition of the marketplace.")

[4] "[A]ctual malice . . . must be shown separately as to each defendant." *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 252 (1st Cir. 2000). Gino's opposition says nothing about the mental states of defendants Leif Nelson or Joseph Simmons.

52 at 19 ("In their December Report, Defendants represented to Plaintiff's employer in 2021 that they had 'direct evidence' of fraud by Plaintiff, but two years later, after defaming her in four blog posts, Defendant Simonsohn acknowledged that Defendants did not have such evidence.")) (emphasis supplied).

Gino "cannot seek to establish actual malice by challenging statements that defendants did not publish." *Portnoy v. Insider, Inc.*, No. CV 22-10197-FDS, 2022 WL 16748583, at *7 (D. Mass. Nov. 7, 2022), appeal dismissed, No. 22-1880, 2023 WL 3444838 (1st Cir. Feb. 2, 2023). The December Report and Blog Posts do not state that Gino, as opposed to a "research assistant or otherwise unnamed person/people," did any falsification, (Doc. No. 43-1 at 1), and Gino cannot rest her claim on allegations about the content of a document that are contradicted by its text. *Id.,* citing *Cheng v. Neumann*, 51 F.4th 438, 445 (1st Cir. 2022). Nor can Gino rely on the argument that the December Report *implies* she committed fraud, because an inference of knowing or reckless falsity cannot reasonably be drawn where the "defendants carefully *avoid* making an express defamatory accusation." *Id.* at *7, n. 6.

Accordingly, Gino has not shown that any of the Data Colada Defendants "entertained serious doubts as to the truth of [their] publication[s]."[5] *Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018). For this reason, as well as those set forth above and in the Data Colada Defendants' Memorandum of Law, the claims against them must be dismissed.

---

[5] Notably, Gino does not explain how the Data Colada Defendants could have published the Blog Posts with knowing or reckless falsity when she affirmatively alleges that Harvard's issuance of retraction requests and its public placement of Gino on administrative leave – both of which occurred before the Data Colada Defendants published the Blog Posts – led third parties "reasonably" to understand "that Professor Gino had falsified or fabricated data." (Doc. No. 6 at ¶ 200; *see* Doc. No. 42 at 16). Accordingly, all claims based on the Blog Posts must be dismissed.

5

        Respectfully submitted,

        URI SIMONSOHN, LEIF NELSON, AND JOSEPH SIMMONS,

        By their attorney,

        /s/ *Jeffrey J. Pyle*
        Jeffrey J. Pyle (BBO #647438)
        PRINCE LOBEL TYE LLP
        One International Place, Suite 3700
        Boston, MA 02110
        (617) 456-8000 (tel)
        (617) 456-8100 (fax)
        jpyle@princelobel.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first-class mail to any non-registered participants.

        /s/ *Jeffrey J. Pyle*
        Jeffrey J. Pyle