**UNITED STATES DISTRICT**
**DISTRICT OF MASSACHUSETTS**


**FRANCESCA GINO,                    )**
**          Plaintiff,              )**
**          vs                       )   No. 1:23-CV-11775-MJJ**
**PRESIDENT and FELLOWS OF HARVARD)**
**COLLEGE, LEIF NELSON, JOSEPH     )**
**SIMONS, JOHN DOES 1-10, AND JANE)**
**DOES 1-10,                       )**
**          Defendants.            )**


BEFORE THE HONORABLE MYONG J. JOUN
UNITED STATES DISTRICT JUDGE
MOTION HEARING


John Joseph Moakley United States Courthouse
Courtroom No. 20
One Courthouse Way
Boston, Massachusetts  02210

FRIDAY, MARCH 8, 2024
11:00 A.M.


Catherine L. Zelinski, RPR, CRC
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 7205
Boston, Massachusetts  02210
Email: CAL.Zelinski.Steno@gmail.com


Mechanical Steno - Computer-Aided Transcript

**APPEARANCES:**

Julie Ann Sacks
Nesenoff & Miltenberg, LLP
101 Federal Street
19th Floor
Boston, MA 02110
617-209-2188
Email: Jsacks@nmllplaw.com
for Plaintiff.

Tara Jill Davis
Nesenoff & Miltenberg LLP
363 Seventh Avenue
5th Floor
New York, NY 10001
212-736-4500
Email: Tdavis@nmllplaw.com
for Plaintiff

Regina M. Federico
Nesenoff & Miltenberg LLP
101 Federal Street, 19th Floor
Boston, MA 02110
617-209-2127
Email: Rfederico@nmllplaw.com
for Plaintiff.

Jenny K. Cooper
Ropes & Gray - MA
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
617-951-8473
Email: Jenny.cooper@ropesgray.com
for Defendants Harvard and Datar.

Elena W. Davis
Ropes & Gray - MA
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
617-951-7017
Email: Elena.davis@ropesgray.com
for Defendants.

**Appearances Continued on the Following Page:**

**APPEARANCES:   (Continued)**

            Douglas E. Brayley
            Ropes & Gray LLP - MA
            Prudential Tower
            800 Boylston Street
            Boston, MA 02199-3600
            617-951-7119
            Email: Douglas.brayley@ropesgray.com
            for Defendants.


            Jeffrey Jackson Pyle
            Prince Lobel Tye, LLP
            One International Place
            Suite 3700
            Boston, MA 02110
            617-456-8143
            Fax: 617-456-8100
            Email: Jpyle@princelobel.com
            for Simmons, Nelson, and Simonsohn.


            KatieLynn B. Townsend
            Reporters Committee for Freedom of the Press
            and the New Yorker
            1156 15th St. NW
            Suite 1020
            Washington, DC 20005
            202-795-9300
            Email: Ktownsend@rcfp.org


            Rob Bertsche
            Reporters Committee for Freedom of the Press
            and the New Yorker
            Klaris Law PLLC
            6 Liberty Square #2752
            Boston, MA 02109
            857-303-6938
            Email: Rob.bertsche@klarislaw.com

```
1                    P R O C E E D I N G S

2            THE CLERK:  All rise.

3            (The Honorable Court Entered.)

4            THE CLERK:  United States District Court for the

5    District of Massachusetts is now in session.  The Honorable

6    Myong J. Joun presiding.  You may be seated.

7            Today is March 8, 2024.  We're on the record in the

8    matter of Gino V. Presidents and Fellows of Harvard College, et

9    al.  Case number is 23-CV-11775.

10           Will counsel please identify themselves for the

11   record, starting with the plaintiff.

12           MS. SACKS:  Julie Sacks for Plaintiff.

13           THE COURT:  Good morning.

14           MS. T. DAVIS:  Good morning, your Honor.  Tara Davis

15   for the plaintiff.

16           THE COURT:  Good morning.

17           MS. FEDERICO:  Good morning, your Honor.  Regina

18   Federico for the plaintiff.

19           THE COURT:  Good morning.

20           MS. COOPER:  Good morning, your Honor.  Jenny Cooper

21   on behalf of the defendants Harvard and Srikant Datar.

22           MS. E. DAVIS:  Good morning, your Honor.  Elana Davis

23   on behalf of the defendants.

24           THE COURT:  Good morning.

25           MR. BRAYLEY:  Good morning.  Douglas Brayley on behalf
```

1    of the Harvard Defendants.

2            THE COURT:  Good morning.

3            MR. PYLE:  Good morning, your Honor.  Jeffrey Pyle for

4    Joseph Simmons, Leif Nelson, and Uri Simonsohn.

5            THE COURT:  Good morning.

6            All right --

7            MS. TOWNSEND:  Good morning -- excuse me, good

8    morning, your Honor.  Katie Townsend and Rob Bertsche on behalf

9    of the Reporters Committee for Freedom of the Press and the New

10   Yorker Magazine.

11           THE COURT:  Gotcha.  All right.

12           Good morning, everyone.  I am still a little bit under

13   the weather, so just excuse me if I'm coughing or I'll try to

14   keep that to a minimum.

15           So we're here on the various motions that have been

16   filed to seal or impound what the parties call the final

17   report.  I didn't schedule the motions to dismiss for argument

18   today, in part because depending on the outcome of the decision

19   here today, I wanted the parties to take sometime to think

20   about whether the decision on this will change the -- sort of

21   the calculus on the motions to dismiss and to give the parties

22   an opportunity to either amend or append their filings on the

23   motion to dismiss.  But today what I'll do is I'll hear from

24   the Harvard Defendants first and then I'll allow the Data

25   Colada defendants to add anything to that.  And then I'll hear

1    from the media interveners and then I'll hear from the

2    plaintiff.

3            So, Ms. Cooper, are you arguing for Harvard?

4            MS. COOPER:  I am, your Honor, yes.

5            THE COURT:  All right.

6            So I know you make the argument in your brief that

7    because of the extensive references and discussion of the

8    report by Professor Gino, that the report is central to the

9    complaint.  I'm having a little difficulty understanding

10   exactly why given what the claims are in the complaint and

11   given the standard on a motion to dismiss.

12           MS. COOPER:  Okay.

13           THE COURT:  Trying to understand why I have to rely on

14   the final report.

15           And the second thing is if you could sort of respond

16   to the case that Professor Gino cites, too, in their reply

17   brief.  It was a -- it's called *Doe v Harvard*, and it was

18   decided by a different session of this Court.

19           MS. COOPER:  Happy to, your Honor.

20           THE COURT:  Thank you.

21           MS. COOPER:  Sorry for the pause.  I wasn't sure if

22   you had another question.

23           THE COURT:  No, that's it.

24           MS. COOPER:  Okay, thank you.

25           So, it sounds as though your Honor would like to start

1   with the issue that is not squarely within the motion to seal

2   but the question of whether the final report, which has not yet

3   been submitted to your Honor, can be considered or should be

4   considered in connection with the motion to dismiss; is that

5   right?

6              THE COURT:  Right.

7              MS. COOPER:  Okay.

8              So in terms of the complaint's reliance on it, and

9   perhaps it is helpful to start, your Honor, with the legal

10  framework that applies here, because in her arguments, in the

11  plaintiff's arguments, she takes the position that the final

12  report cannot be considered by your Honor because it's not a

13  written instrument.  But the question of whether the final

14  report is a written instrument has nothing to do with whether

15  the Court can consider an exhibit -- the exhibit to the Harvard

16  Defendants' partial motion to dismiss.  As I'm sure your Honor

17  is aware, on a motion to dismiss there are four types of

18  documents well established in the case law that courts can

19  consider in the context of a motion to dismiss and without

20  conversion to a motion for summary judgment.  And three of

21  those four categories apply here.

22             That is, the documents, the final report.  And when I

23  do refer to it, this is likely apparent, I am referring to the

24  multiple exhibits that also comprise the report.  So there's

25  the report of the committee itself and then multiple documents

1    that are exhibits.  Those documents are not of disputed

2    authenticity.  They are central to the plaintiff's claims, and

3    it sounds like maybe that's the question that your Honor is

4    raising, and they are sufficiently referenced in the complaint.

5         The plaintiff, in her pleadings, does not address

6    these factors or the case law at all.  And so to start with

7    some of the cases that she does cite, the Autila case that is

8    relied upon for the proposition that the report is not a

9    written instrument, is about whether an exhibit to a complaint,

10   not an extrinsic -- not a document extrinsic to the complaint

11   that is relied upon in a motion to dismiss.  But an exhibit to

12   a complaint as part of the pleadings for purposes of a motion

13   to strike.  It's an entirely separate inquiry than

14   consideration of extrinsic documents on a motion to dismiss.

15        In the *Ironshore* case, the First Circuit case that the

16   plaintiff also cites, ostensibly in support of the notion that

17   your Honor should not consider the final report in its

18   exhibits, that case plainly supports the conclusion that the

19   Court should consider the final reports and its exhibits in

20   adjudicating the motion to dismiss.

21        In *Ironshore*, the district court, considered a

22   contract among the parties to the litigation that was not

23   included in the complaint, but was appended to motions to

24   dismiss that both defendants in that case submitted to the

25   Court.  The district court considered that contract and the

1    plaintiff appealed and argued that it was err for the district

2    court to have done so.  And on appeal the First Circuit upheld

3    the district court's action noting that when a complaint's

4    factual allegations are expressly linked to a document, the

5    Court can review it on a motion to dismiss.

6           And if it's helpful for your Honor if I focus a bit on

7    the reasons that -- the manner in which the final report is

8    incorporated into the complaint and the reasons why

9    consideration substantively of the final report is appropriate

10   in context, I'd like to address those things.

11          So, claims that are subject to the partial motion to

12   dismiss, in particular the implied covenant claims, but also

13   the breach of contract claims, are essentially about fairness

14   and alleged procedural violations by Harvard, by the Harvard

15   Defendants.  Violations of its own policies are alleged.

16   Harvard's position, in its motion to dismiss, is that the final

17   report and its exhibits, many of which the plaintiff cites, and

18   with your Honor's indulgence, I'm happy to go through the well

19   more than 60 paragraphs of the complaint that refer to it and

20   incorporate it, quote, characterize -- the complaint quotes and

21   characterizes the documents that are the -- that comprise the

22   final report on their face demonstrate the falsity of the

23   plaintiff's allegations.  The Court, contrary to Plaintiff's

24   argument, the Harvard Defendants are not asking your Honor to

25   adopt the factual conclusions contained in the report.  And I

1    think that's the primary issue that's raised in the _Doe_ case,

2    that your Honor has asked about, which I will address.  Harvard

3    is not asking the Court to adopt all of the factual

4    allegations, but rather is arguing and relies heavily on in its

5    motion to dismiss that the face of the documents themselves are

6    at odds with the plaintiff's allegations.

7            THE COURT:  And so, basically what you're asking me to

8    do is weigh the evidence here.  You're asking me to Hey, look,

9    look at the allegations in the complaint and compare it to

10   what's in the report, aren't you?

11           MS. COOPER:  Yes, there is a request to look at the

12   allegations in the complaint and compare them to the statements

13   that are in the documents.  But that's not necessarily weighing

14   the evidence.  In multiple courts in this district, including,

15   including Judge Talwani in the _Doe versus Harvard_ case, have

16   considered documents incorporated to the extent that these

17   documents are not for the truth of the matter asserted and not

18   in lieu of accepting the well-pleaded facts, but in looking at

19   the documents and making findings that are consistent with the

20   documents themselves.  And I'm happy to speak to those cases.

21           Does your Honor have a question about the extent to

22   which the complaint incorporates --

23           THE COURT:  No.

24           MS. COOPER:  Okay.  Because -- I won't address that

25   then.  It would take sometime to go through all of those

1   paragraphs, but the references and incorporation are extensive.

2         The cases that I would direct your Honor to, that are

3   similar, and that are all in the First Circuit and actually

4   from this court.  Multiple examples of this court considering

5   documents that are attached to a motion to dismiss, where just

6   like here, the authenticity is not disputed, and the documents,

7   just like here, are intertwined with the plaintiff's claims and

8   referred to extensively in the complaint.

9         A case cited in our papers is *Doe versus Western New*

10  *England University*.  In that case the Court -- and this is a, a

11  claim brought by a former student.  So somewhat, somewhat

12  similar circumstance.  Proceedings were held under the

13  university's code of conduct and findings were made.  A student

14  brought claims.  And the Court considered a summary of the

15  complaint in its interviews.  That's exactly what's included in

16  the final report, Plaintiff's own testimony that in her

17  complaint, you know, she describes, she asserts she wasn't

18  given a chance to respond.  But many, many, many pages of

19  testimony and written submissions from her demonstrate on their

20  face without regard to the substance that she in fact

21  responded, for example.

22         The notices to the plaintiff that were given in that

23  case and e-mails exchanged with the plaintiff were all

24  considered in the context of a motion to dismiss because of

25  their incorporation into the complaint.

```
 1              Somewhat similarly the Kader case and the U.S. versus

 2   DePuy Orthopaedics case are also in our papers, your Honor.  A

 3   case that isn't in our papers, but is I think helpful is

 4   another case from this court, from Judge Hillman, it's Bray

 5   versus Worcester Polytech Institute.  The cite for that case is

 6   596 F. Supp. 3d 143, and it's a 2022 decision.  In the Bray

 7   case, the Court considered documents like those included in the

 8   report, in the final report, university policies that were

 9   incorporated by reference, and also detailed investigative

10   summaries and reports, not for the truth of the matter asserted

11   therein, but for the extent to which they conflicted with the

12   plaintiff's bare assertions.  So the Court, Judge Hillman

13   considered notices of charges, e-mail correspondence with the

14   individual that was subject of the disciplinary proceedings, a

15   prehearing packet that was prepared for the hearing panel.  So

16   evidence submitted by the parties to the proceedings, which

17   were incorporated and referred to in the complaint.  And the

18   Court specifically noted that the Court did accept the

19   plaintiff's well-pleaded facts as true and did not consider the

20   documents for the truth of the matter asserted, but rather to

21   the extent that the allegations in the complaint conflicted

22   with the face of those documents, the Court, Judge Hillman,

23   made findings, factual findings, in accordance with the

24   documentary evidence.  And similar to this case, not, not

25   completely analogous proceedings, but it was another student
```

1    discipline matter where internal university proceedings

2    occurred in a manner somewhat similar to the proceedings here.

3         And, your Honor, again, I mentioned it briefly, but

4    the *Doe versus Harvard* case that you asked about, Judge

5    Talwani's decision, it is absolutely true, as the plaintiff

6    notes in the papers, that Judge Talwani did not consider the

7    final report of the investigation committee in that case for

8    the truth of the statements set forth therein, but for the

9    limited purpose of determining whether the plaintiff's

10   citations to the final report in the complaint conflicted with

11   the actual text of the documents.  And there's, there's not

12   extensive discussion in the opinion about exactly what Judge

13   Talwani considered and what she didn't.  But there's one

14   example in a footnote where the allegation in the complaint --

15   and I can pull the case to make sure I have this exactly

16   correct.  But where there's an allegation in the complaint that

17   characterizes what was submitted by a party in the report.  And

18   Judge Talwani notes in her footnote that the characterization

19   was overly broad because the face of the document was clear

20   that there was a representation, you know, in a more narrow

21   regard than the complaint alleged.  And she considered the

22   final report itself in that type of situation where there was

23   simply a conflict on the face of the document, the exhibit,

24   with the nature of the allegation or the characterization of it

25   that we've made.  And the complaint here is full of

```
 1    characterization after characterization of the burden of proof
 2    that was applied, of alleged violations of the policies that
 3    occurred, of the nature of testimony that was given by
 4    individuals, of the facts that allegedly the committee in its
 5    report utterly failed to consider any evidence that was
 6    submitted, and that in itself constituted an unfair process or
 7    a sham investigation.  When without even considering the truth
 8    of the matter your Honor can read the documents, which are
 9    extensive, it's true -- it's true that it's extensive -- can
10    read the documents, the report itself and its exhibits, and see
11    the very testimony that is characterized.  See the
12    opportunities that were given to the plaintiff to respond.  See
13    the fact that the committee, in its own internal procedures at
14    the university, which your Honor I'm sure is aware entitled to
15    some level of deference by the Court, not for the substance of
16    what they found, but where the committee articulated the
17    process that it was going through, evaluated evidence that was
18    submitted completely contrary to the bald assertions that are
19    made in the complaint that they failed to do so and they didn't
20    do that at all.  And, again, just to circle back to the _Doe_
21    case, the _Harvard_ case that you asked about, the action that
22    Judge Talwani took in that case I think is completely
23    consistent with what the Harvard Defendants are asking your
24    Honor to do in this case.
25              THE COURT:  Do you say that the plaintiff relies on
```

1    the report as a basis for a liability on any of the claims?

2              MS. COOPER:  I do believe that --

3              THE COURT:  Which claims?

4              MS. COOPER:  That the complaint -- so the breach of

5    contract claims and the applied covenant claims, they all

6    relate to the process itself and her characterizations of what

7    procedures were and were not followed, of whether evidence was

8    or was not considered.  Whether she was or was not given notice

9    in a timely way.  Whether she was or was not permitted to

10   respond.  The final report is essentially a record --

11             THE COURT:  So these would be the policy that was in

12   place, I can sort of look at the report --

13             MS. COOPER:  That's right.  Vis-à-vis --

14             THE COURT:  Okay.

15             MS. COOPER:  Vis-a-vis the policy that's in place and

16   the actions that the committee took.  She characterizes all of

17   those things in her complaint.

18             And the final report, if I may, your Honor, in

19   addition to containing conclusions, right, which we're not

20   asking your Honor to adopt or assess, is literally a record of

21   everything that occurred.  That that's what the final report

22   contained.  So, it demonstrates adherence to policies.  It

23   demonstrates notice, the exact dates of the notices, right,

24   that she says she wasn't given.  It demonstrates the acceptance

25   of evidence and the assessment of it.  All things that she, in

1    her claims, relies upon to, you know, in her claims that

2    Harvard is liable to her for failure to meet its obligations.

3            THE COURT:  All right, thank you.

4            MS. COOPER:  Thank you.

5            THE COURT:  Mr. Pyle.

6            MS. COOPER:  And I'm so sorry, but I assume that your

7    Honor's asked for the things that you would like to hear from

8    me from.  I certainly have argument on the sealing issue, but

9    is it right that you just wanted me to address those questions?

10           THE COURT:  I don't think I have -- I'm not wrestling

11   with that sealing issue --

12           MS. COOPER:  Okay.

13           THE COURT:  -- like, what portion to seal.  I'll

14   address that with the plaintiffs.

15           MS. COOPER:  Okay.

16           Thank you, your Honor.

17           MR. PYLE:  Good morning, your Honor.

18           I would start off by suggesting that this report is

19   already a judicial record, because Harvard has referenced it

20   extensively in its own motion to dismiss.  And so I would

21   suggest, your Honor, that the question of whether or not to

22   consider the report in the context of the motion to dismiss is

23   not currently before you, because what's before you today is

24   questions on whether the report will be filed with the Court

25   with certain -- with certain redactions or whether the report

1  will be filed entirely under seal as the plaintiff is

2  requesting.

3           THE COURT:  But even if I choose not to rely on it, it

4  becomes -- it's already a judicial document?

5           MR. PYLE:  Yes, your Honor, because Harvard has cited

6  to it extensively in its own motion to dismiss, and it is

7  submitted to the Court for permissible purposes, I would

8  suggest, under the motion to dismiss standard.  It is a

9  judicial document because it is part of the Harvard motion.

10 The only reason it's not currently filed with the Court is the

11 local rule, Rule 7.2 that says before you file a document even

12 partially under seal, you have to seek permission for certain

13 redactions.  And then the Court considers the question of the

14 redactions or the -- or taking it under seal.  That is what is

15 before you today, I submit, and not the question of whether to

16 rely on the report in the context of the motion to dismiss.

17 That you can decide when we have hearing on the motion to

18 dismiss, and you can consider the report.

19          But turning, you know, briefly to that question, it is

20 a cardinal rule under motions to dismiss that when an

21 allegation about a document is contradicted by the document, it

22 is the document that controls and not the allegation about the

23 document.  And Professor Gino has made lots of

24 characterizations about the content of this final report in her

25 complaint.  I understand Harvard's position to be that the

1   actual final report contradicts those allegations literally

2   about what the document says, not about the truth or falsity of

3   anything in the document.  And that is -- the same is true for

4   the Data Colada defendants that I represent.  At paragraph 269

5   of the amended complaint, Professor Gino premises part of her

6   defamation complaint.  The falsity of a statement that my

7   clients made, she alleges, is shown by the Harvard report.  My

8   client said Harvard presumably vetted this question when it

9   found her responsible.  She says, no, they didn't.  That's a

10  false statement of fact as shown by the Harvard report.

11  Harvard takes the opposite view and said, Yes, we actually find

12  this thing.  And so it is not a question of did Professor Gino

13  commit, you know, academic or scientific misconduct that the

14  Court would be considering on the motion to dismiss.  It is

15  what did the final report find?  And do Professor Gino's

16  allegations plausibly state a claim for relief based on her

17  allegations concerning the content of the final report,

18  including her claim of defamation against the Data Colada

19  defendants?

20          On the question of the motion to seal, which is

21  properly before you today, clearly this is a judicial document

22  to which there is a strong First Amendment and common law

23  presumption of access.  This document goes directly to issues

24  in a dispositive motion.  Only overriding reasons can justify

25  the redaction or wholesale sealing of a judicial record.  And

1    Professor Gino has not come close to making that kind of
2    showing.
3           Also, under the standard, any redaction has to be --
4    or sealing has to be narrowly tailored to the overriding
5    interest that's identified.  Professor Gino's overriding
6    interest is her effort to try to control the narrative about
7    what this final report found and the false -- and the faults
8    behind the final report.  That is not an overriding interest.
9    No court has ever held that a complaint that a Plaintiff's
10   desire to control the narrative of her case is an overriding
11   interest.  The Courts also hold that reputation of a Plaintiff
12   is not an overriding interest.  There's lots of embarrassing
13   things that come out in court proceedings as we see every day
14   on the news.  That is the nature of a public court proceeding.
15   My clients didn't ask to be sued by Professor Gino.  Professor
16   Gino is the one who decided to sue.  She's the one who decided
17   to incorporate all these allegations about the complaint, about
18   their final report into her complaint, and make lots of public
19   statements, including on her personal website, about how:  If
20   you read the report, ladies and gentlemen of the public, you
21   will see plainly on the face of the report how false and faulty
22   the analysis is.  But now she comes before the Court and says,
23   Oh, no, no, no, the public shouldn't see that report because it
24   would hurt my reputation.  The conflict between those two
25   positions is apparent on the record.  It shows there is no

1    overriding interest in sealing this record.  The press, the

2    public, and my clients, who have not seen this final report,

3    have a right of access to this under the First Amendment.  So

4    the motion to seal by Professor Gino should be denied.

5              Thank you, your Honor.

6              THE COURT:  All right.

7              MS. TOWNSEND:  Thank you, your Honor.  Just a few

8    things that I would add.  It think the arguments that you've

9    heard from the parties thus far really illustrate precisely why

10   my clients, members of the press, members of the public,

11   including the New Yorker who has covered this dispute

12   extensively and would like to continue to cover this dispute,

13   why we're here to begin with.  The final report is from

14   certainly the outsider's perspective, and I think these

15   arguments highlight really central to understanding this

16   litigation, to monitoring what an understanding what

17   allegations are being made by the plaintiff.  I think as

18   counsel for the Harvard Defendants indicated, and we indicate

19   in our briefing, more than 60 paragraphs of the complaint are

20   referring to, quoting, citing allegations that are being made

21   or statements made in the final report, and the Harvard

22   Defendants are arguing in turn that those are

23   mischaracterizations.  It's very difficult, if not impossible,

24   for members of the public to understand that dispute, to really

25   understand the dispute and ultimately this court's resolution

1    of that dispute without access to that really key exhibit.

2           I note just a couple of things to follow counsel for

3    the Data Colada defendants, the First Circuit has expressly

4    rejected an approach to public access that would turn on

5    whether or not a document is actually considered by a court in

6    resolution, with respect to resolving a motion.  So I would

7    point the Court to *United States against Kravetz*, which is a

8    case that I think is cited throughout all the parties' briefing

9    in this issue.  It really underscores the point that my

10   colleague was making, that this is in fact a judicial record.

11   It's already a judicial record.  And the only question before

12   the Court on the Harvard Defendants' Rule 7.2 motion is to what

13   extent that -- whether and to what extent that document will be

14   redacted when it's placed on the public docket.

15          I recognize your Honor said you were not really

16   wrestling with the sealing issue, which is the primary reason

17   the media intervenors are here.  I'm happy to address that

18   further if your Honor has questions.  I will just say I think

19   all the parties say Plaintiff agree that this document should

20   be public to at least some extent immediately.  Placed on the

21   public docket immediately.  The dispute and where media

22   intervenors disagree with the Harvard Defendants is on this

23   question of third-party privacy rights.  I will underscore

24   that, I think, *FTC against Standard Financial Management*, which

25   I think, again, is cited throughout the briefing to your Honor,

1    is really the North Star here.  The Harvard Defendants bear the

2    burden of persuasion and proof to demonstrate that the common

3    law, setting aside the First Amendment -- the common law

4    presumption of access has been overcome by compelling reasons.

5    Those third-party privacy interests may, in appropriate

6    circumstances, be a basis for redaction.  Inappropriate

7    circumstances is the key phrase.  We don't have those here.  I

8    don't think the Harvard Defendants have met their burden either

9    from an evidentiary perspective.  There are no Affidavits that

10   have been submitted.  No, no real meaningful factual basis to

11   demonstrate either that these individuals' names are the kind

12   of private, sensitive information that has traditionally been

13   sealed or found, can be the subject of redaction, nor that any

14   harm would result from disclosure.  And that is their burden to

15   bear.  And so I would direct the Court to *FTC against Standard*

16   *Financial Management*, which I think on the sealing issue

17   controls and makes clear that the names of the third-party

18   witnesses who participated in the Harvard's investigation into

19   Plaintiff's alleged misconduct or data research misconduct,

20   that those names cannot be, cannot be redacted.

21           Thank you, your Honor.

22           THE COURT:  All right.

23           Ms. Sacks.

24           MS. SACKS:  Thank you, your Honor.  May I?

25           THE COURT:  Yes.

1          MS. SACKS:  You have questions for me you'd like me to

2     address?

3          THE COURT:  Well, there's -- it's two things that come

4     to mind immediately, which is, you know, just heard everyone

5     say how extensively Professor Gino has referenced and discussed

6     the report in the complaint.  That's one.

7          The two is how publicly she has discussed the final

8     report to Attorney Pyle's point.

9          To the New Yorker she says, Look, if you read the

10    report, you will see that, you know, it's riddled with errors.

11    But now you're saying, Oh, you know, you can't read the report.

12         And I guess there's a third thing, which is, on the

13    one hand you're saying you shouldn't consider -- that I

14    shouldn't consider this report at all.  But if I do consider

15    it, that I should impound the report in its entirety, which

16    sort of -- it's contradictory to, again, the extensive

17    references and open discussion of the report.

18         MS. SACKS:  Okay.  So I'll address these in the order

19    you've given me.

20         In terms of referencing the report in the complaint,

21    courts in our circuit and courts in other circuits distinguish

22    between referencing a report, or often it's an investigation

23    report in employment context to disparage or impugn the

24    contents of the report versus relying on a document for her

25    claims.  Professor Gino in no way, shape, or form relies on the

1   content and the conclusions and the multiple hearsay statements

2   in that report for her claims.  Rather, what she -- what she

3   disputes is the process itself.  And the report, the

4   self-serving statements in an investigative report conducted by

5   an employer don't tell us about the process.  For instance, we

6   don't know -- the report is not going to tell us what universe

7   of documents were examined.  It's not going to explain the

8   motivations for the decisions at hand -- that they made.  It's

9   not going to get to the factual reasons why certain choices

10  were made and how they arrived at conclusions.  We don't know.

11  The investigative report won't speak to "Did the committee

12  follow best practices?"  So, to the extent that it's referenced

13  in the report, the cases are very clear that it's impermissible

14  when a Plaintiff references a document to impune the contents

15  that it should be considered incorporated by reference.

16          And I would like to say with respect to this idea,

17  that I don't think Plaintiff in her memoranda indicated that an

18  exhibit to a motion to dismiss is, is -- shouldn't be

19  incorporated.  For instance, in this case Plaintiff attached

20  certain documents, like Data Colada's blog post and the policy

21  statements that represent -- that form the employment contract,

22  because they're legally operative documents.  And ultimately

23  those claims are -- I mean, sorry.  Those documents, the

24  content of those documents are what Plaintiff's claim rest on.

25  When Data Colada's counsel attached to the motion to dismiss

1   the full expanded blog post, the text which were missing in

2   Plaintiff's complaint, there were links within those blog posts

3   that expanded the text, there was no objection because that's

4   fair.  Because, your Honor, the Court should look consider the

5   entirety of the speech to determine Plaintiff's defamation

6   claims.

7           I would say also in the Doe -- the case decided by

8   Judge Talwani in this court, _Doe V. University Defendants_, it's

9   very important to recognize the parties in that case stipulated

10  to filing the investigation report under seal.  The parties

11  agreed.  And the dispute was how to use the report.  Judge

12  Talwani referenced a Dartmouth case with approval, in which,

13  just like Harvard, Dartmouth attached to its motion to dismiss

14  a copy of an investigative report.  And I'd like to -- that

15  case was _Doe V. Trustees of Dartmouth College_.  And in that

16  case, let's see, it's a 2018 Westlaw, 204-8 -- sorry, 204-8,

17  384 at page 1, District of New Hampshire, May 2, 2018.  The

18  Court made clear that just, just like Harvard in this case --

19          THE COURT:  Is that the case where the pleading was

20  struck because --

21          MS. SACKS:  It was.  It was.

22          THE COURT:  Yeah, I know it.

23          Okay, go ahead.

24          MS. SACKS:  So, same argument, that it was central to

25  the case, and the Court held it's impermissible because it's

1    not central to the claims.  What it was, was the university

2    just wanted to refute and inject its own narrative into the

3    well-pleaded complaint.  And that's improper at this stage.

4          THE COURT:  I'm not sure that that's entirely what the

5    defendants are arguing here.  They're not asking me to accept

6    the report for the truth of the matter that's asserted in

7    there.  What they're asking me to do is this is what the

8    plaintiff says in the complaint, and that's demonstrably false.

9    Not about the investigation or the substance of the

10   investigation, but let's say there's an allegation that she was

11   not afforded an opportunity to respond, for example, and

12   clearly in the investigative report there is -- and you don't

13   challenge, you know, the authenticity of the report.  So I look

14   at the report and it says, you know, whatever.  Professor Gino

15   was given this opportunity, that opportunity, or -- and I can

16   just look at it from the report.  And I'm not accepting the

17   substance of the investigation, whether the -- but on that

18   point as to whether she was given an opportunity to respond, if

19   it shows in the report that she was, can't I make a finding

20   that I should just ignore this part of the allegation in the

21   complaint in order for me to decide the motion to dismiss?

22          MS. SACKS:  Well, addressing the specific question

23   before I get to the larger policy reason --

24          THE COURT:  Okay.

25          MS. SACKS:  -- that I think that's not a good tact.

1    Is that, no, it really won't, because you can't prove a

2    negative, right?  So the investigators and the committee and --

3    that report will not tell you what wasn't asked.  What

4    exculpatory evidence wasn't followed up on.  What leads weren't

5    followed up on.  The report will not tell us why or why not

6    collaborators and RAs with whom Professor Gino worked had their

7    devices examined or not.  The report is not -- the report

8    itself needs to be tested.  By itself, it cannot, it cannot

9    explain.  It's not a document that can explain itself, whether

10   or not best practices were followed, because to do that, we

11   would need to know what was the actually, the underlying

12   documents that were looked at?  For instance, one of the

13   allegations in the complaint is that Professor Gino wasn't

14   provided the underlying documents that were allegedly examined

15   by Nate Stone.  Without those underlying documents and only the

16   conclusions whether they're -- that we believe are

17   non-probative, it's ultimately not helpful.  And it's also

18   potentially very damaging to a -- an employee like Professor

19   Gino who alleges that the report is part of the -- not the

20   report, but the process and the actions taken subsequent to

21   that process are part of the wrongs and why she's bringing her

22   lawsuit.  This would be a very poor precedent in terms of

23   policy if every time an employee, like Professor Gino, brings a

24   claim for discrimination, she or he can just expect that the

25   employer will say Oh, you're suing us?  We're putting this

1    report and we're attaching it to our motion to dismiss.  When

2    the report itself should not be presumed to be a document that

3    will share, that will disclose whether or not the process

4    itself was flawed.  And that's what I think is the problem --

5         THE COURT:  Well, let me ask you this just to clear

6    things up a little bit.  Let's just give you a complete

7    hypothetical.  Let's say in the complaint a plaintiff alleges

8    that John Doe was not interviewed.

9         MS. SACKS:  Uh-huh.

10        THE COURT:  But the investigative report says -- shows

11   that he was interviewed.  On that point, can't I rely on the

12   report to make the decision that in considering the motion to

13   dismiss, that I will not consider that allegation in the

14   complaint?  Because it's -- obviously whether it was a typo or

15   something, it's just not true.

16        MS. SACKS:  I think that's fair.  I think something --

17   sure, that that is fair.  But I think there are, there's also

18   information that the report won't convey as to whether or

19   not -- and very important, for instance, whether or not devices

20   and possessions of people who collaborated with Professor Gino

21   were examined.  It will not speak to whether or not -- why

22   decisions were made in terms of what documents were given to

23   the -- to a forensics consulting company, Nate Stone.  It won't

24   make clear whether or not documents were cherry picked.  So

25   there's a lot of information about the process that won't be

1    answered.  And so what happens --

2         THE COURT:  So that may be all true, but it seems to

3    me that then, you're at least in agreement with Attorney Cooper

4    that I can compare the allegations in the complaint on the one

5    hand with the final report on the other just to see whether the

6    factual allegations do not contradict the report.

7         MS. SACKS:  I don't agree with that, your Honor.  I

8    think it would be highly prejudicial.  Because the report

9    itself is filled with hearsay, and it's --

10        THE COURT:  Yeah, I'm not accepting what's in the

11   report for, you know, the truth.  I'm just simply looking at,

12   you know, like a simple fact.  Like, John Doe was interviewed

13   or was not interviewed.

14        MS. SACKS:  I think at this stage it would not be

15   appropriate, because it's premature.  Because under our federal

16   rules we have different hurdles for a plaintiff to --

17        THE COURT:  So are you suggesting, then, that even if

18   the allegation in a complaint is false, that I have to

19   consider -- I have to accept it as true for the purpose of

20   deciding a motion to dismiss?

21        MS. SACKS:  Until Harvard files an answer with a

22   denial, I think that would be -- yes, I think that's, a

23   complaint, a well-pleaded complaint if the allegations are

24   presumed true on a motion for 12(b)(6).  The filing of the

25   report is not an answer to the allegations.  It's essentially a

1    document that the -- Harvard is asking you to weigh as evidence

2    to rebut the -- and inject into the complaint.  It's factual

3    content that's disputed.  And it's inappropriate at this stage.

4    It's appropriate at the -- on a motion for summary judgment.

5    But right now the document isn't a judicial record.  It hasn't

6    even been filed yet.  It also is not relevant to this court's

7    adjudication of whether the complaint is sufficient and viable.

8    It's -- the whole purpose of the doctrine of public access is

9    to help the public understand the Court's process, and to

10   monitor the courts.  It's traditionally been for criminal law

11   cases, but it's in civil cases, too.  But Ms. Townsend said, I

12   heard her argue, that the complaints needed -- but we want to

13   cover this story basically, and we want to understand the

14   dispute.  But understanding what was said or not said in the

15   report is not about understanding the judicial process.

16        THE COURT:  Let's move on to your argument that if I

17   do consider it, that I should impound the entire document.

18        MS. SACKS:  I'm sorry, your Honor.

19        THE COURT:  Your argument that if I do rely on the

20   report, that I should impound the entire report.

21        MS. SACKS:  At this stage it would be -- yes, we think

22   it would be prejudicial to -- for you to consider it at this

23   stage.  However, yes, I think it -- at this stage it's, it's

24   not a judicial record.  It is -- hasn't yet been filed.  It is

25   not relevant to the Court's process.  It sets a terrible policy

1    of having any employee in a case like this --

2        THE COURT:  I think all of those answers are -- I mean

3    all of those questions are answered once I make the decision

4    that I'm going to rely on it, right?  So if I am going to rely

5    on it, then what is your argument for impounding the whole

6    document?

7        MS. SACKS:  Because presuming the allegations in the

8    complaint are true, as the Court must, under the rules at this

9    stage, she has been defamed.  She's been discriminated against.

10   She's brought claims for breach of contract.  Her claims don't

11   rely on the substance of the report.  Impoundment at this

12   point, when you have documents that are essentially accusations

13   against Professor Gino for research misconduct, she's already

14   been damaged.  She cannot find a job.  She has been the subject

15   of a media firestorm.  To publish this on the public document,

16   this court would essentially be assisting in the perpetuation

17   of the damage.  We know that the, the document isn't relevant.

18   It is not relevant to Harvard's motion to dismiss.  It is not

19   relevant to the adjudication of the complaint.  The desire to

20   file the document on the public docket it's, it's frankly

21   gratuitous and unnecessary.

22       The U.S. Supreme Court has held, and the First Circuit

23   has held, that every court -- and I'm citing from _Nixon V_

24   _Warner Commissions, Inc._, 435, U.S. 589, (1978).  Every court

25   has supervisory power over its own records and files and access

1    has been denied -- public access to a judicial record, if we

2    assume this to be a judicial record.  Access has been denied

3    where court files might have become a vehicle for improper

4    purposes.  For example, to ensure that its records are not used

5    to gratify private spite or promote public scandal or to serve

6    as reservoirs of libelous statements for press consumption.

7    And that's really what's happened here.

8            THE COURT:  All right, thank you.

9            I don't think it's going to take long for me to decide

10   this issue.  Do we want to schedule a date to hear the actual

11   motions to dismiss at some point now or do you want me to issue

12   the decision on this first before you guys pick a date?

13           MS. COOPER:  Your Honor, I have no objection to

14   looking to schedule the date for that hearing at this time.  I

15   was going to ask if I might respond to a couple of things that

16   Plaintiff's counsel raised.  But that's obviously up to your

17   Honor's discretion.

18           THE COURT:  Sure, if it's short.

19           MS. COOPER:  Just briefly, there -- and I appreciate,

20   and I'm going to try not to rehash things that I said earlier,

21   your Honor.  But a few things.

22           One is that there seems to be developing and equating

23   consideration of the final report to whether it can be filed at

24   all.  We have relied on it.  We cite to it extensively.  We do

25   believe it's relevant to the -- to the merits of the motion to

1  dismiss for the reasons that I have articulated.  And just to
2  say it, there's well-developed authority that accepting the
3  allegations in a well-pleaded complaint does not mean accepting
4  bald assertions or implausible ones.  And that's exactly what
5  we have spelled out in the motion to dismiss and that I have
6  discussed with your Honor today.  There are specific
7  allegations and characterizations of the committee's work.
8  While I'm not -- I don't even know that it is relevant
9  specifically to the motion to dismiss, but Ms. Sacks was
10  outlining the report won't tell you what questions they didn't
11  ask.  Yes, it does.  There are transcripts.  That's exactly
12  what's there.  So to the extent there's an allegation she
13  didn't get a chance to respond and that violated policy and it
14  was unfair, this is what the record shows.  There's a
15  transcript of every question she was asked and the answer she
16  gave.  And everything that she and her lawyers submitted in
17  response to these allegations that she's arguing now, she needs
18  a chance to respond to.  Well, she filed her complaint when she
19  chose to and she made the claims that she made, and they
20  specifically are characterizing and quoting the very things
21  that are in the documents that she's chosen not to attach.  It
22  seems to be the -- the position seems to be she should say
23  whatever she wants publicly, including these documents
24  exonerate me.  Just literally a quote from her website.  These
25  documents show errors.  These documents exonerate me.  The

1    witnesses gave testimony that exonerates me.  That's all in the

2    record.  That's all in the final report that has been

3    submitted.  And the question is not whether Harvard can file

4    it.  As your Honor is aware, it's just the local rules that say

5    if you want to file something under seal, don't give it to the

6    Court until the Court decides.  It is a judicial record.  I

7    agree with Mr. Pyle.  We have already relied on it.  And I

8    don't believe -- and your Honor should review it to decide the

9    extent to which it should consider the report and for what

10   purposes.  And the case law is not as Ms. Sacks characterized

11   that a court cannot consider a document that a complaint refers

12   to for purposes of impugning the document.  There are cases

13   that say the Court should not conclude that the plaintiff is

14   adopting all of the facts that are asserted.  That's very

15   different from considering the document.  These things are not

16   the same.

17         Again, I wanted to separate the issue of whether

18   Harvard can file its own documents.

19         THE COURT:  I think I got it.

20         MS. COOPER:  As compared to whether your Honor can

21   consider it.

22         And just -- oh, the -- I'm not -- while she cites

23   cases that says -- well, the plaintiff cites cases that say,

24   you know, a court -- there may not be public access, and, you

25   know, the intervenors and Mr. Pyle may want to speak more to

1   this than Harvard would, but that in determining or in

2   balancing the public's right of access with a party's privacy

3   interests -- and I would be happy to speak to the third-party

4   privacy interest, if that's of interest to your Honor.  We

5   brief it as well.  But there's ample authority.

6          THE COURT:  I'm good on that, yeah.

7          MS. COOPER:  The cases that she cites do not -- she

8   doesn't actually make a claim that there's an improper purpose

9   here, right?  Nor are the reputational interests that are

10  referred to in some of those cases at issue in the same way

11  here, because those cases really, for example, consider

12  criminal allegations that have been made about third parties in

13  a judicial officer's report.  That's the *Amadeo* case, for

14  example.  The *Pasco* case that talks about, you know, publicity

15  or possibly an improper purpose, what's at issue of being

16  sealed in that case, first of all, the parties agreed to have

17  it sealed.  Second of all, what's at issue are descriptions of

18  documents that were obtained by the government at the U.S.

19  border when it searched, with no warrant and no reasonable

20  cause, the individual's computer.  And what the Court says is,

21  the descriptions of those photographs are not the subject of

22  any motion.  They don't relate to the party's substantive

23  rights, and the public has a low interest in seeing them and

24  I'm deciding that they can be sealed.  That has nothing to do

25  -- here the complaint is the place that the documents are

1    spoken about extensively.  And it is not to further tarnish her
2    reputation.  The fact that Harvard determined that she engaged
3    in research misconduct is already known.  That fact is known.
4    Harvard isn't publicizing it.  She filed a lawsuit about it.
5    She created a website about it.  Okay?  And she doesn't
6    identify -- I'm not taking the position, and I don't think
7    anyone would, that that fact would not be harmful to someone
8    professionally.  However, what they do not do is identify
9    anything in the report that uniquely worsens the situation or
10   invokes a particular privacy interest.  Right?  The conclusion
11   is already out there.  And frankly, what she has said is
12   Harvard's conclusion is bogus, and if you look at their work,
13   you'll see that it is.  But now she's saying nobody should get
14   to look at their work.
15            THE COURT:  Understand.  Thanks.
16            MS. COOPER:  Thank you, your Honor.
17            MS. SACKS:  May I just --
18            THE COURT:  Two minutes.
19            MS. SACKS:  Ms. Cooper just said that the report is
20   relevant to the motion to dismiss.  And I just would like to
21   point out, your Honor, that only one sentence of Harvard's
22   argument and its motion to dismiss in support of its 12(b)6)
23   motion on page 13 purports to rely on the content of the
24   report.  And it states:  Indeed, the report confirms that the
25   committee did consider exceedingly carefully the arguments in

1     evidence she considered.

2            This is obviously a fact, a self-serving factual

3     contention that really doesn't belong in a 12(b)(6) motion to

4     dismiss, and it certainly isn't the kind of, it's one more

5     reason why the report doesn't belong in a public docket.

6            And in terms of the damage as -- and I'll be brief, as

7     set forth in the memo, this is a 1200-page report.  The public

8     isn't going to necessarily be invested in reading all 1200

9     pages.  They'll see the volume.  They'll see the conclusion.

10    They'll see the imprimatur of Harvard, and it will be accepted.

11    The findings and conclusions.  And certainly the name Harvard,

12    the brand, carries some weight.  This -- it's a very poor

13    policy to put in this stage of the pleadings an employer's

14    investigatory report from public docket to essentially squelch

15    and make further public and further defame an employee in

16    Professor Gino's shoes.

17            THE COURT:  All right, thank you.

18            MS. COOPER:  Just with respect to citations and the

19    motion to dismiss, your Honor, because many of them were just

20    skipped, and I appreciate your Honor has our motion, but if I

21    may, very briefly, it is simply not the case that there's one

22    sentence that refers to the final report.  Hundreds of pages of

23    the report are cited to and relied upon in our motion to

24    dismiss.  And I won't go through it all unless your Honor would

25    like me to, but before you get to page 13, which is the

1    sentence that was just read, there is -- there are extensive

2    citations and writings on page 6.  There are extensive writings

3    in the briefing on page 11, all referring to the final report

4    and reliance on it.  As -- and I mean, I'm just looking at

5    highlighting in the document.  And there are many paragraphs

6    and many sentences and hundreds of pages cited, not just one

7    conclusionary sentence, your Honor.

8            THE COURT:  Understood, thank you.

9            MS. TOWNSEND:  Your Honor, if I may just very briefly.

10   I neglected to mention, I think I would be remiss if I did not,

11   with respect to the Harvard Defendants' third-party privacy

12   arguments.  We understand the names of the individuals that the

13   Harvard Defendants have proposed redacting are the names of

14   witnesses who were interviewed by the investigation team.  And

15   I wanted to draw your Honor's attention to a paragraph in the

16   amended complaint which is paragraph 118.  In that paragraph,

17   the plaintiff pleads that the investigation committee met with

18   and interviewed six of Professor Gino's collaborators and two

19   research assistants for the papers in question, and then

20   indicates and lists them by initials as well as what their

21   position was, research assistant or co-author -- presumably a

22   co-author on one of Professor Gino's papers.  I did want to

23   bring that to your Honor's attention, because I did want to

24   flag that in some ways, to the extent that these are the

25   individuals that the Harvard Defendants have proposed redacting

1    the names of, they are easily surmisable from information

2    that's already in the public record, including copies of

3    Professor Gino's CV.  But her articles themselves to which

4    these individuals or professors with these initials

5    co-authored, and so I wanted to flag that for your Honor and

6    neglected to do so earlier.

7            Thank you.

8            THE COURT:  Thank you.

9            Let's pick a date for a hearing on the motions to

10   dismiss.  How about the second week in April, the week of the

11   8th?

12           MR. PYLE:  Your Honor, I expect to be on trial in the

13   Superior Court in Hampden County during that entire week.  I

14   don't know if I'll be there all five days of the week, but I

15   would be nervous.  It's a criminal case.

16           THE COURT:  Okay.

17           MR. PYLE:  Certainly any date in March would work for

18   the Data Colada defendants most likely.

19           THE COURT:  Yes, I was just looking.  I don't have a

20   date in March.  Yeah, how about April 3rd?  It's a Wednesday.

21           MR. PYLE:  I apologize, your Honor, that's the date my

22   trial starts.

23           THE COURT:  Gotcha.  Okay.

24           What about April 25th?

25           MR. PYLE:  I'm not usually this difficult, your Honor.

1    I do have a Rule 12 hearing already scheduled for April 25th.

2    Any other day that week should work.  Except for Tuesday of

3    that week in the afternoon would certainly work and certainly

4    the 24th or the 26th.

5            THE COURT:  All right.  How about the afternoon of the

6    26th?  It looks like my morning is full.

7            MR. PYLE:  That's fine, your Honor, from our

8    perspective.  Thank you.

9            MS. COOPER:  That works for us, your Honor.  Friday

10   the 26th you said, yes?

11           THE COURT:  Yes.  We'll make it 2:30 in the afternoon.

12           MS. SACKS:  Yes.

13           THE COURT:  Great.  All right, thank you very much.

14           MS. COOPER:  Thank you, your Honor.

15           MS. SACKS:  Thank you, your Honor.

16           THE CLERK:  All rise.

17           (The Honorable Court Exited.)

18           THE CLERK:  Court's in recess.

19           (At 12:05 p.m., the Court Stood in Recess.)

20

21

22

23

24

25

1          **C E R T I F I C A T E**

2

3

4    **UNITED STATES DISTRICT COURT )**

5    **DISTRICT OF MASSACHUSETTS     )**

6

7

8          I, Catherine L. Zelinski, certify that the foregoing

9    is a correct transcript from the record of proceedings taken

10   Friday, March 8, 2024, in the above-entitled matter to the best

11   of my skill and ability.

12

13

14        /s/ Catherine L. Zelinski

15        Catherine L. Zelinski, RPR, CRC     4/1/2024
          Official Court Reporter
16

17

18

19

20

21

22

23

24

25