**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**Civil Action No. 1:23-cv-11775-MJJ**

FRANCESCA GINO,

     Plaintiff,

v.

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE, et al.,

     Defendants.

---

**NON-PARTY RESPONDENT NESENOFF & MILTENBERG LLP'S OPPOSITION TO URI SIMONSOHN, LEIF NELSON, AND JOSEPH SIMMONS' MOTION FOR SANCTIONS**

---

     Plaintiff Francesca Gino's ("Plaintiff" and/or "Professor Gino") former legal counsel Nesenoff & Miltenberg LLP ("Non-Party Respondent" and/or "N&M"), by and through their undersigned counsel, hereby files this Opposition to Uri Simonsohn, Leif Nelson, and Joseph Simmons' (the "Data Colada Defendants") Motion for Sanctions ("Motion for Sanctions") and states as follows.

## I.     <u>INTRODUCTION</u>

     The Motion for Sanctions cites to no conduct that rises to the level of egregiousness required to trigger this Court's inherent power to award attorneys' fees on a discretionary basis. Nor does it set forth any allegation that N&M failed to meet its legal duty to perform due diligence and a proper factual and legal analysis of Plaintiff's claims against the Data Colada Defendants.[1]

---

[1] The Motion for Sanctions states that the Data Colada Defendants "seek sanctions against both Gino and Nesenoff & Miltenberg LLP, notwithstanding the withdrawal of that firm's counsel from this case." However, neither of the two cases relied on by the Data Colada Defendants supports bringing a claim against N&M. Both are New York cases. Both are Rule 11 sanctions cases, which is not what is sought in this matter. The Court found in *Dangerfield* that

A court "may exercise its inherent power to sanction an attorney with an assessment of attorneys' fees only if the attorney has engaged in misconduct that threatens the fair administration of justice and the sanction is necessary to preserve the judge's authority to administer justice." *Wong v. Luu*, 34 N.E.3d 35, 38 (Mass. 2015). Simply prevailing on a motion to dismiss does not entitle a litigant to attorneys' fees and, certainly, does not rise to this standard. At no point prior to the filing of the Motion for Sanctions did the Data Colada Defendants assert a Rule 11 defense or file such a motion – presumably because they know that N&M did not file meritless claims. This Court's decision on the Data Colada Defendants' Motion to Dismiss (the "Decision"), although it disagrees with Plaintiff's arguments regarding the defamatory nature of the subject blog posts and December 3, 2021 report provided to Harvard from the Data Colada Defendants (the "December Report"), does not find that the claims were filed with no basis in law or fact. (Doc. No. 74).Moreover, the Motion for Sanctions does not focus on the legal requirements for such an award and, particularly, does not include any arguments that N&M did not adhere to its professional obligations.

The Motion for Sanctions also misguidedly relies on the findings of the Harvard Report to support its groundless request for attorneys' fees. (Doc. No. 99 at pp. 3-8, 13-15). The Harvard Report has not been established as "truth" and, regardless, was not the basis for Professor Gino's causes of action against the Data Colada Defendants. The Decision also does not rely on the Harvard Report findings in dismissing the defamation claim or related claims. The Court focused on whether the statements made were constitutionally protected "opinion" on a matter of public concern, not that Harvard's conclusions of misconduct were "true."

---

counsel filed a RICO claim without showing a required predicate act for RICO purposes. *Dangerfield v. Merrill Lynch Pierce, Fenner & Smith*, 2003 WL 22227956, *8 (S.D.N.Y. Sept. 26, 2003). That is distinguishable from this matter where there is no RICO claim and where all the causes of action are well-plead. In *Gold*, the court held that an attorney may be liable under Rule 11 sanctions after withdrawing, but Mr. Webb had filed a motion to withdraw after the motion for sanctions had been filed against him. *Gold v. The Last Experience*, 1999 WL 156005, at *4 (S.D.N.Y. Mar. 22, 1999). In contrast, here, the motion for sanctions was brought long after N&M had withdrawn from the case and the holding in *Gold* is inapplicable.

The Data Colada Defendants claim that sanctions should be imposed against N&M and Plaintiff because, the Data Colada Defendants posit, there was "no hope of prevailing on the claim" and there was no evidence to support the factual allegations for the claims.  (Doc. 99, pp. 2-3)  For all of the claims asserted against the Data Colada Defendants, however, N&M acted in good faith and provided factual and legal bases and evidence to support the factual allegations made in the pleadings. (Complaint, Doc. No. 1; First Amended Complaint, Doc. 6) (hereinafter collectively, "Complaint and amendments"). The Motion for Sanctions does not and, indeed, cannot demonstrate that N&M did not properly investigate its client's position or failed to properly cite applicable caselaw and apply the allegations in drafting the Complaint and amendments. Moreover, as is well-established in deciding a Motion to Dismiss, a Court is required to take all the factual allegations in the complaint as true, and all reasonable inferences are drawn in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021). Per this standard, the Decision,  does not, and cannot, make any conclusions that the facts as alleged are false or were not vetted or analyzed by N&M. Allowing an award of sanctions against a law firm here, where the pleadings substantially allege facts in support of all of the causes of action, would set a dangerous precedent for the legal community where there is no demonstration of bad faith or vexatious, wanton or oppressive reasons for filing the claims. Such an award would further encourage such baseless motions in every instance where a motion to dismiss is granted. For these and the reasons set forth below, the Motion for Sanctions should be denied.

## II.    ARGUMENT

### A.  The Pleadings Drafted by N&M Do Not Rise to the Level of Conduct Required for the Court to Exercise its Inherent Power to Award Sanctions.

The Motion for Sanctions does not cite to any statutory authority and, instead, relies on this Court's inherent power to award sanctions.[2] (Doc. 99 at pp. 12-13).  That power is limited to egregious circumstances. *Whitney Bros. Co. v. Sprafkin*, 60 F.3d 8, 13 (1st Cir. 1995). Courts have an inherent power to impose attorneys' fees as sanctions in egregious circumstances, such as when a party or attorney "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (*citing Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 (1975)). A court "may exercise the court's inherent power to sanction an attorney with an assessment of attorney's fees only if the attorney has engaged in misconduct that threatens the fair administration of justice and the sanction is necessary to preserve the judge's authority to administer justice." *Wong*, 34 N.E.3d at 38.

A court's inherent power to assess attorneys' fees as sanctions "must be broad enough to enable a judge to ensure the fair administration of justice…but the exercise of these powers to assess attorney's fees must be limited to those cases where the imposition of such sanctions is *necessary* to preserve the court's authority to accomplish justice." *Wong*, 34 N.E.3d at 44. Accordingly, "a court should exercise restraint and discretion both in determining whether the rule of necessity permits the imposition of sanctions under a court's inherent powers and, where it does, in determining whether to impose a sanction in a particular case and the severity of the sanction." *Id.*

---

[2] This is not a Rule 11 motion.

Although courts have held that attorneys' fees may be imposed as sanctions when a party has acted in bad faith, "'bad faith' alone is too vague a standard to establish the scope of a judge's inherent power to assess attorney's fees against an attorney who is not in violation of a court order, statute, or rule of procedure." *Id.* at 44. The court in *Wong v. Luu* held that the imposition of sanctions may be appropriate in the following circumstances: (1) an attorney fails to comply or there is undue delay in complying with a court order; (2) an attorney knowingly makes false misrepresentations or conceals information from the court to intentionally mislead the court; (3) an attorney's misconduct in the courtroom "interferes with the judge's ability to manage the court room fairly, efficiently, and respectfully;" and (4) the court's exercise of the inherent power "is necessary to punish, deter, or remedy misconduct that threatens a judge's ability to ensure the fair administration of justice." *Id.* at 45-46.

The Motion for Sanctions does not show that N&M violated any of the *Wong* factors. To the contrary, in drafting the Complaint and amendments in this matter, N&M accurately cited applicable caselaw regarding defamation, intentional interference with contractual relations and civil conspiracy and applied the facts alleged to those cases, adequately and professionally arguing Professor Gino's case. Nowhere is there any evidence of egregious conduct or failure of counsel to act with the utmost integrity and adherence to the law. That the Data Colada Defendants were successful on a motion to dismiss does not demonstrate that this Court was not able to "ensure the fair administration of justice."

**B.** **The Claims Against Data Colada Defendants Were Filed in Good Faith and Were Supported by Factual and Legal Bases Such That It Was Plausible the Claims Would Succeed.**

An attorney has a duty to investigate the factual basis for a complaint and a court may assess attorneys' fees as sanctions if it determines that "a litigant's filing of a frivolous lawsuit for

an improper purpose constitutes bad faith and warrants sanctions." *See Galanis v. Szulik,* 841 F.Supp.2d 456, 461 (D. Mass 2011)*, adhered to on reconsideration,* 863 F. Supp. 2d 123 (D. Mass. 2012). The claims do not need to be guaranteed to succeed, they just need a reasonable inquiry into the factual and legal bases for claims. *See Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 39–40 (1st Cir. 2005) ("the wheels of justice would grind to a halt if lawyers everywhere were sanctioned every time they made unfounded objections, weak arguments, and dubious factual claims") (*citing Obert v. Republic W. Ins. Co.,* 398 F.3d 138, 146 (1st Cir. 2005), *as revised* (Mar. 24, 2005)). The fact that a claim ultimately fails does not support the imposition of sanctions for the filing of a frivolous action and "if every failed legal argument were sanctionable, sanctions would be the rule rather than the exception." *Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P.*, 171 F.3d 52, 58 (1st Cir. 1999); *see also Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1398 (Fed. Cir. 1996) ("in virtually every case, an appellate court finds one party's arguments and authorities unpersuasive, but that is not remotely sufficient to make the losing party's conduct sanctionable."); *Eldridge v. Gordon Brothers Group, L.L.C.*, 863 F.3d 66, 88 (1st Cir. 2017) ("it is not enough that the filer's 'claim lacked merit' – it must be 'so plainly unmeritorious as to warrant the imposition of sanctions.'").

The Court's dismissal of the claims against the Data Colada Defendants does not establish that the defamation claims were frivolous or improper. *See Fite v. Digital Equipment Corp.*, 66 F. Supp. 2d 232, 233-234 (D. Mass. 1999) (the court determined that even though a jury found in favor of defendant, "the Court cannot assume that [plaintiff] Fite acted in bad faith or that his suit was frivolous."); *see also Tang v. Rhode Island, Dep't of Elderly Affairs*, 163 F.3d 7, 13 (1st Cir. 1998) (a court "must avoid the post-hoc reasoning that, because the plaintiff did not ultimately prevail, the claim must have been frivolous, unreasonable or without foundation."). Even if a judge

decides "that one party's version of events is more credible than the other party's," this is not sufficient on its own to "justify an award of attorneys' fees." *Roth v. Pritkin,* 787 F.2d 54, 58 (2nd Cir. 1986).

In *Wong v. Luu*, the court denied a motion for sanctions even after the attorney caused the settlement to breakdown. *Wong*, 34 N.E. at 49. The court in *Wong* determined that because the attorney's actions did "not threaten the judge's ability to ensure the fair administration of justice," that sanctions were not warranted, even though the attorney's actions caused unnecessary expenditure of time and attorneys' fees. *Id.* at 47-49. Additionally, the court determined that even though the attorney may have violated Massachusetts Rules of Professional Conduct 3.3 and 4.2, such conduct may not "be sanctioned through the inherent powers of the court." *Id.* at 48.

Here, N&M did not violate any court orders, act inappropriately in a courtroom, or engage in any egregious misconduct. As shown with the example above, the imposition of sanctions under the inherent powers of the court should be reserved for extraordinary circumstances where it is necessary to "ensure the fair administration of justice." *Id.* at 49. Such extraordinary circumstances do not exist in this case, as demonstrated herein.

## C. The Pleadings and Briefing in the Opposition to the Motion to Dismiss Set Forth the Law on Which the Defamation Claims Were Based.

### 1. Credible Arguments Were Made That the Statements Were Defamatory Because They Were Factual Assertions Capable of Being Proved True or False.

The Motion for Sanctions conveniently ignores that the defamation claim in the First Amended Complaint was drafted by N&M based on its reasonable interpretation of the language in the December Report and blog posts accusing Professor Gino of "fraud" to established caselaw. N&M also participated in lengthy interviews and meetings with Professor Gino and others with knowledge. Nothing in the record, other than the Data Colada Defendants' own opinion, indicates

that N&M filed a claim without hope of prevailing or for any oppressive reason. Not a single fact is set forth by the Data Colada Defendants showing that N&M sought to assist Gino to punish the Data Colada Defendants for "blowing the whistle on her apparent academic fraud." (Doc. No. 99 at p. 2). Moreover, the Motion for Sanctions fails to state any reason why N&M would want to risk its professional reputation by doing so. Plaintiff's claims were not "made up" or "with reckless disregard for their truth." (Doc. No. 99 at p. 15). Rather, N&M vetted, analyzed and applied each allegation to the law to make a valid and factually supported legal argument. That the Data Colada Defendants do not agree with the facts as stated in the pleadings does not mean they are "made up" or are not the "truth."

For example, statements made in the Motion for Sanctions that the defamation claim is meritless because "when Harvard confronted Gino with its findings, she acknowledged, and could not credibly explain, the massive discrepancies between her original and published datasets" do not equate to any egregious behavior on the part of N&M. (Doc. No. 99 at p. 1). The pleadings clearly show that Gino did not "know" that the studies were "riddled with falsified data." (Doc. No. 99 at 1; *see e.g.,* Doc. No. 6 at ¶¶ 3, 67, 120, 130, 150, 241).

The Motion for Sanctions is also mistaken in saying that the defamation claim was filed in bad faith because Gino knew the statements to be "true." (Doc. No. 99 at p. 13). To the contrary, the well-plead Complaint and amendments set forth all the factual reasons why the allegations of "fraud" were false. (Doc. No. 6 at ¶¶ 15, 232, 236-246, 249-252, 257, 263-267, 270, 273). The Motion or Sanctions attempts to redirect the analysis to focus on the "truth" of the Harvard Report. However,, the facts set forth in the Harvard Report are not the sole basis for the causes of action and those statements are disputed. (Doc. No. 99 at pp. 3-12, 14). They are based on the statements made by the Data Colada Defendants that Professor Gino committed fraud. (Doc. No. 6 at ¶¶ 405,

408, 411-413). The Harvard Report is not part of the analysis in the Decision and is not relevant to the request for sanctions.  It is also not litigated evidence found to be the "truth."

The Motion for Sanctions also argues that "Data Colada's statements were 'clearly non-actionable' because Gino had no plausible evidence of actual malice, as any reasonable attorney would have told her." (Doc. No. 99 at p. 13). To the contrary, the papers sufficiently argue that the December report can reasonably be understood to bear multiple defamatory connotations and cites specific statements in the report. (Doc. No. 6 at ¶¶ 101, 103-105; Doc. No. 52 at pp. 4, 8, 10-13). Further, read holistically, the statements were not non-actionable "opinion" but false and defamatory statements of fact. N&M vetted these facts and applied them to precedential caselaw. (Doc. No. 52 at pp. 10-16); *see Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 727 (1st Cir. 1992) (citing *Milkovich*, 497 U.S. at 21) (the relevant question is not whether the challenged language may be described as an opinion, but whether it reasonably would be understood to declare or imply provable assertions of fact."); *Reilly v. Associated Press*, 797 N.E.2d 1204, 1210 (Mass. App. Ct. 2003); *Milkovich*, 497 U.S. 1, 21 (1990) (not "the sort of loose, figurative, or hyperbolic language which would negate the impression" that a *factual statement* was being made, and evaluating the "general tenor of the article"); *Levinsky's, Inc. v. Wal-Mart Stores, Inc*., 127 F.3d 122, 128 (1st Cir. 1997) ("the First Amendment prohibits defamation actions based on loose, figurative language that no reasonable person would believe presented facts").

The Complaint and amendments assert that the Data Colada Defendants made defamatory statements about Professor Gino with actual malice or knowing or reckless disregard for the falsity of the statements, because the Data Colada Defendants "avoided and ignored contradictory information" when publishing the statements about Professor Gino and did not inquire into the accuracy of the statements. (Doc. No. 52 at pp. 18-19). To further support the position that the

Data Colada Defendants made defamatory statements intentionally, N&M cited to case law providing that a publisher has a duty to inquire into the accuracy of a story and failing to do so may constitute actual malice. (*Id.*).

The claim was also based on there being no wholesale constitutional "opinion" privilege immunizing the Data Colada Defendants' false and defamatory statements from liability. *Milkovich*, 497 U.S. at 17–19; *Lyons v. Globe Newspaper Co*., 415 Mass. 258, 266–67, 612 N.E.2d 1158, 1164 (1993). Under *Milkovich*, "the relevant question is not whether the challenged language may be described as an opinion, but whether it reasonably would be understood to declare or imply provable assertions of fact." *See Phantom Touring, Inc.*, 953 F.2d at 727 (citing *Milkovich*, 497 U.S. at 21). (Doc. No. 52 at pp. 9-16). In its Decision, the Court followed the law set forth in Plaintiff's brief wherein it must examine the statement "in its totality in the context in which it was published," and "all the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published." *Reilly*, 797 N.E.2d at 1210; (Doc. No. 74 at pp. 32-34). That the Court applied those factors in deciding the Data Colada Defendants' statements were not defamatory does not mean that the claims were drafted or brought in bad faith.

Although the Court ultimately ruled that the Data Colada Defendants' statements were their "subjective interpretation of the facts available to them," the Court did not state that Plaintiff did not plead any factual or legal support for her defamation claim. (Doc. No. 74 at p. 32). The defamation cause of action was based on valid caselaw holding that statements in the blog posts and December report referencing "fraud" met the test for susceptibility of a defamatory meaning. *Stanton v. Metro Corp*., 438 F.3d 119, 127 (1st Cir. 2006). (Doc. No. 52 at p. 8).

2.  The Pleadings and Opposition to the Motion to Dismiss Articulate a Valid Legal Argument Regarding Plaintiff Not Being a Public Figure for Purposes of Pleading Malice.

The Complaint and amendments set forth sufficient caselaw to support the argument that Professor Gino is not a public figure for purposes of whether or not she needed to show actual malice. *See, e.g., Hutchinson v. Proxmire*, 443 U.S. 111, 134–35 (1979) ("published writings reach a relatively small category of professionals concerned with research in human behavior"); *see Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 20 n.14 (1st Cir. 2011) (citing *Bowman v. Heller*, 420 Mass. 517, 651 N.E.2d 369, 373 (1995) ("The fame required for an individual to be a public figure for all purposes, as opposed to a limited purpose public figure, is very great; the individual must be a 'household name' on a national scale."); *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 14 (1st Cir. 2011) ("otherwise private figure who "voluntary injects himself or is drawn into a particular public controversy"); *Time, Inc. v. Firestone,* 424 U.S. 448, 457, (1976) ('while participants in some litigation may be legitimate 'public figures,' either generally or for the limited purpose of that litigation, the majority will more likely resemble respondent, drawn into a public forum largely against their will in order to attempt to obtain the only redress available to them."); (Doc. No. 52 at pp. 16-19).

Although this Court did not ultimately uphold Plaintiff's argument, it was not made in bad faith with no factual or legal support. (Doc. No. 74 at pp. 36-37). Professor Gino argued that, at the 12(b)(6) stage, it is unnecessary for the Court to determine Plaintiff's status. *See Mandel v. Boston Phoenix, Inc.*, 456 F.3d 198, 204 (1st Cir.2006) ("although status determinations normally are 'grist for the court's—not the jury's—mill,' such questions are inescapably fact-specific. In other words, a plaintiff's status, though calling for a legal determination, is heavily dependent on the underlying factual record. Consequently, there are cases in which it may not be possible to

resolve the public-figure issue until trial.") (cleaned up); *Larson v. Perry,* No. 19-CV-10203-IT, 2020 WL 1495883, at *7 (D. Mass. Mar. 27, 2020) (the inquiry is so fact specific, on a motion to dismiss, the court is not required to determine plaintiff's status) (citing *Lluberes,* 663 F.3d at 14; (Doc. No. 52 at pp. 17-18). Assuming, *arguendo*, that Plaintiff was required to allege "actual malice" at the motion to dismiss stage, she did plausibly allege that the Data Colada Defendants entertained serious doubts as to the truth of the publication or else had a subjective awareness of either falsity or probable falsity of their defamatory statements or acted with reckless disregard of their truth or falsity. *See Garrison v. Louisiana,* 379 U.S. 64, 13 (1964); (Doc. No. 52 at pp. 16-19).

The Decision considered Plaintiff's factual support regarding the malice factor. (Doc. No. 74 at pp. 36-37). Professor Gino argued that the Data Colada Defendants assert in the December Report and the four blog posts that they had "direct evidence" she had manipulated data, (1) despite knowing that data irregularities occur in behavioral science research with respect to data collection and handling, and (2) despite defendant Simonsohn's later concession that he had "no evidence" that Professor Gino had manipulated data—thereby "demonstrating Defendants' malice." (Doc. No. 74 at p. 36). Although the Court finds these "allegations are not plausible," the Court does not state that the arguments were made in bad faith or for oppressive reasons. (Doc. No. 74 at pp. 36-37).

D. **The Conspiracy and Intentional Interference Claims Against the Data Colada Defendants had Sufficient Factual and Legal Bases and Were Filed in Good Faith.**

The Motion for Sanctions states that "Gino or her counsel simply invented an alleged 'conspiracy' between the Data Colada Defendants and Harvard out of whole cloth…Their conduct warrants an award of sanctions." (Doc. No. 99 at p. 15). This statement is completely baseless. The Complaint and amendments sufficiently set forth the legal elements of each claim satisfying

the requirements for pleading under applicable law, prior to the discovery process. The claims were not, as alleged, "made up." (Doc. No. 6 at ¶¶403-415). The Complaint and amendments set forth sufficient facts in support of the conspiracy and intentional interference claims.

      1.  <u>Intentional Interference with Contractual Relations</u>.

To establish a claim for intentional interference with contractual relations, plaintiff must establish: "1) it had a contract with a third party, 2) defendant knowingly induced that third party to violate the contract, 3) the interference was intentional and improper in motive or means and 4) plaintiff was harmed by defendant's actions." *Kahalas v. Schiller*, 164 F. Supp. 3d 241, 245 (D. Mass. 2016) (*citing G.S. Enters., Inc. v. Falmouth Marine, Inc.,* 571 N.E.2d 1363, 1369 (Mass. 1991)). In the Complaint and amendments, N&M stated sufficient factual and legal bases for the claim against Data Colada Defendants for intentional interference with contractual relations. (Doc. No. 6 at ¶¶ 420-424). Specifically, that the Data Colada Defendants knew that Professor Gino was a tenured professor at Harvard, as this was public knowledge and they clearly knew she was employed by Harvard when they submitted false and defamatory statements about Professor Gino to the Harvard Inquiry Committee regarding the alleged falsified data in Professor Gino's studies. (Doc. No. 99 at p. 2). By contacting Harvard with these allegations about Professor Gino and her research data, the Data Colada Defendants intentionally interfered with Professor Gino's contractual relationship (i.e., contract to be a tenured professor at Harvard) with Harvard. As a result of the Data Colada Defendants' contractual interference, Professor Gino was placed on administrative leave and later lost her tenure at Harvard, along with her compensation, job duties, and benefits. (Doc. No. 6 at ¶424). Thus, there were sufficient factual and legal bases for the intentional interference claim brought against the Data Colada Defendants, and sanctions are not warranted regarding this claim. This is especially true at the motion to dismiss stage.

The Decision does not find that Professor Gino made baseless claims but, rather, holds that: "To the extent that this claim depends on her defamation claim against the Data Colada Defendants, it cannot stand." (Doc. No. 74 at p. 38). The Court certainly does not find that any of the allegations are false. The Motion for Sanctions also misstates the Decision in that the Court does not find that the claim is "so threadbare or speculative that they fail to cross the line between the conclusory and the factual." (Doc. No. 99 at p. 16). That statement is the Court's parenthetical summary of the *Peñalbert–Rosa v. Fortuño–Burset* case cited in the Decision.[3] The Court correctly ruled in line with what is standard in evaluating a motion to dismiss – that Gino failed to "plausibly show intentional interference with the contract or business relationship for an improper purpose or by improper means as required by this tort." (Doc. No. 74 at p. 39). The Court did not find that no facts were alleged in support of the claim or issue any other finding that would trigger a sanctions discussion.

### 2. Civil Conspiracy to Commit Defamation.

As stated in the Decision: "In Massachusetts, a civil conspiracy typically exists if there is (1) a common design or agreement…between two or more persons to do a wrongful act and (2) proof of some tortious act in furtherance of the agreement." *Mullane*, 433 F. Supp. 3d at 115 (quoting *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1564 (1st Cir. 1994)). Under this claim, "there can be no liability unless another actor has committed an underlying tort." *Paquette v. Nashoba Reg'l Sch. Dist.*, No. 05-cv-40099, 2006 WL 8458640, at *10 (D. Mass. Mar. 30, 2006). Civil conspiracy further requires "proof of intentional conduct." *Robinson v. Bodoff*, 355

---

[3] Unlike in *Peñalbert–Rosa,* here the Complaint contains specific factual allegations supporting the conspiracy claim against the Data Colada Defendants. Rather than just speculating that there was some participation by the Defendants, as in *Peñalbert–Rosa*, here the Complaint and amendments provide specific facts supporting the argument that an agreement was formed between the Defendants underlying the conspiracy claim. *See Peñalbert–Rosa v. Fortuño–Burset*, 631 F.3d 592, 595 (1st Cir. 2011); *see also* Complaint, ¶¶ 404-412.

F. Supp. 2d 578, 585 (D. Mass. 2005). The Complaint and amendments describe the facts supporting the claim that Defendants were communicating with one another and that there was evidence of an agreement between the Defendants. (Doc. No. 6 at ¶¶ 407-413). There were two main factual bases for the conspiracy claim: first, that Harvard deviated from its usual policy by keeping Professor Gino in the dark about the Data Colada Defendants' allegations and creating a new policy to evaluate these allegations, and second, the temporal proximity between the conclusion of Harvard's investigation of Professor Gino and the Data Colada Defendants' publication of the blog posts. *See Id.*

In July 2021, the Data Colada Defendants approached Harvard with false allegations that Professor Gino had falsified data in four of her studies, but the Data Colada Defendants did not publish their concerns publicly until after Harvard concluded their own investigation into these allegations. (Doc. No. 6 at ¶ 67). In August 2021, Harvard created a special employment policy titled the "Interim Policy and Procedures for Responding to Allegations of Research Misconduct" (the "Interim Policy") for Professor Gino for investigating the allegations by Data Colada Defendants. (Doc. No. 6 at ¶¶ 6-7, 76-80). Under the Interim Policy, Harvard deviated from its usual policy terms by keeping Professor Gino in the dark about the Data Colada Defendants' allegations for about a month, where the usual policy required notice within a week of receiving allegations. (Doc. No. 6 at ¶¶ 8-9, 81-82). The Complaint and amendments also assert that the timing of the creation of the Interim Policy and the special terms of the Interim Policy allowing Harvard to delay notifying Professor Gino of the allegations by the Data Colada Defendants suggest that the Defendants reached an agreement by which the Data Colada Defendants would not make public accusations about Professor Gino and Harvard would create the Interim Policy to investigate the allegations about Professor Gino and to disclose the results of such investigation to

the Data Colada Defendants. (Doc. No. 6 at ¶¶ 70, 78). Additionally, there were numerous factors that made the investigation by Harvard into Professor Gino's work unfair and thus suggested that Harvard had an incentive to pursue the investigation, such as pressure from the Data Colada Defendants to conduct the investigation or risk negative publicity. (Doc. No. 6 at ¶¶ 69-70, 98-99, 106-113, 117-120, 128).

Harvard issued its final report on the investigation of Professor Gino on March 7, 2023. (Doc. No. 6 at ¶ 157). On June 13, 2023, Harvard issued a written decision regarding the investigation of Professor Gino stating that misconduct had been found. (Doc. No. 6 at ¶¶ 177-179). The Data Colada Defendants posted a four-part blog series about the investigation into Professor Gino's research data beginning on June 17, 2023, just four days after the decision had been reached by Harvard about the investigation of Professor Gino. (Doc. No. 6 at ¶¶ 177, 231). The temporal proximity of Harvard's conclusion of the investigation and the Data Colada Defendants' publication of their first blog post suggests that there was an agreement between the two regarding Professor Gino. *Id.* Therefore, based on the information available at the time the Complaint was filed, including witness interviews, N&M had sufficient factual and legal bases for the conspiracy claim against the Data Colada Defendants.

The two cases cited in the Motion for Sanctions do not support the Data Colada Defendants' request for an award of attorneys' fees. In contrast to *Young v. City of Providence ex rel. Napolitano*, there are no allegations or factual support showing that N&M has made any statements that could be interpreted as making misrepresentations about the Court. 404 F.3d at 37. Additionally, the *Young* case concerns sanctions pursuant to Rule 11, whereas here, the sanctions are being requested under the inherent powers of the court to impose sanctions as required for equity. Specifically in *Young*, after a trial, sanctions under Rule 11 were brought against plaintiff's

three attorneys in relation to their conduct at the trial because the district court found that they "falsely indicated that the court had ordered the stipulation to be signed" in the memorandum seeking relief from the stipulation. *Id.* That holding is completely irrelevant to the present matter.

In *Galanis v. Szulik*, the Court found that the plaintiff did not have any factual basis for their complaint since plaintiffs refused to amend the complaint when new information was discovered, or to produce any evidence supporting their factual allegations when facing sanctions. 841 F. Supp. 2d at 461. Further, the Court determined that the plaintiff filed the lawsuit for an improper purpose, to "extort a quick settlement from Szulik and intimidate him into releasing potential claims against Galanis." *Id.* That is not the situation in the present matter and *Galanis* cannot be considered in evaluating an award of sanctions. Unlike in *Galanis*, in the Complaint, First Amended Complaint, and throughout the proceedings, N&M and Professor Gino provided factual bases for each claim and cause of action asserted. Also, in contrast to *Galanis*, when opposing the Motion to Dismiss, N&M provided evidence to support the claims against the Data Colada Defendants, demonstrating that the claims brought had a factual basis. (Doc. No. 52).

Moreover, the Decision applies the allegations to the law and, again, rules in accordance with what is required in evaluating a motion to dismiss – that Gino "did not plausibly allege any facts showing the existence of an agreement, either express or implied, between the Harvard and Data Colada Defendants to defame Professor Gino." (Doc. No. 74 at pp. 39-40). The Court also dismissed the conspiracy claim because it found that the defamation claim failed – not that the claim was brought in bad faith.

  **E.** **There is No Legal Basis to Argue That Awarding Sanctions in This Instance Will Prevent a Chilling Effect Over the Integrity of Science.**

The Data Colada Defendants argue that sanctions are merited because not doing so will "cast a profound chill over the efforts of other researchers to study and expose data fabrication,

posing a threat to the integrity of science" and conclude that the statements were opinion protected under the First Amendment. (Doc. 99 at pp. 1, 6-11, 18-20). The Data Colada Defendants ignore, however, the right of an individual to protect her reputation. The Data Colada Defendants further fail to set forth any reason why N&M should be sanctioned for advocating for its client within the confines of the law.

There is also substantial case law and facts in this matter supporting the argument that the statements underlying the defamation claim were not protected opinion. (Doc. 99 at pp. 1, 6-11, 18-20). If the statements underlying a defamation claim are purely opinion protected from defamation claims, the court can dismiss the claim, as it did in this case with the claim against the Data Colada Defendants. (Doc. No. 74at pp. 2, 31-36). The Court has the ability to evaluate whether or not the statements are protected opinion. For that reason, where a claimant has a good faith factual and legal basis to believe that statements do not constitute an opinion, that claimant has the right to assert such a claim without being punished harshly. Yet this is what the Data Colada Defendants' Motion for Sanctions claims should happen. The protections under the First Amendment regarding defamation claims must be balanced with the value of allowing an individual to pursue a defamation claim to "vindicate his good name" and seek to "redress for harm caused by such statements." *Milkovich*, 497 U.S. at 22. Furthermore, "the right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty." *Id.* (*quoting Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966)). Preventing individuals from bringing a good faith claim for defamation due to fear of being punished when the court, on a dispositive motion, determines that the underlying statements

of the claim were purely opinion, would prevent individuals from properly using the justice system to address injury to their reputation caused by statements of another. *Id.*

The statements made about Professor Gino by the Data Colada Defendants did not state that they suspected that there was some falsification of data, but rather that there was misconduct and/or fraud by Professor Gino in her research studies. (Doc. No. 100, Affidavit of Jeffrey J. Pyle, Exhibit 1 (December Report); Doc. No. 52 at pp. 10-11, 13-15 (containing a list of false and misleading statements). For example, the Data Colada Defendants titled their report under the accusatory title, "Evidence of Fraud in Academic Articles Authored by Francesca Gino." (Doc. No. 52 at p. 10; Doc. No. 43, Affidavit of Jeffrey J. Pyle in Support of Motion to Dismiss of Uri Simonsohn, Lief Nelson, and Joseph Simmons at ¶2). The implications in the Data Colada Defendants' statements were that there were facts underlying their statements (e.g., that there was evidence of data falsification), which would be defamatory. *See id.* Thus, it is not apparent whether the statements underlying the defamation claim against the Data Colada Defendants were opinions since the statements were conveyed in a manner implying that the statements were fact or were based on facts from the Data Colada Defendants' investigation. *See id.*; *see also Milkovich*, 497 U.S. at 18–19; *and see Saad*, 123 F. Supp. 3d at 178. This demonstrates that N&M had a valid legal basis for the defamation claim against the Data Colada Defendants. It was absolutely reasonable for N&M to present the argument that the statements the Data Colada Defendants made about Ms. Gino were defamatory and not opinions, and the resulting defamation claim against the Data Colada Defendants had no impact on the constitutional protections in place for opinions as part of scientific debate and sanctions are not warranted under a "chilling effect" argument. Thus, sanctions are not warranted under a "chilling effect" argument. Indeed, more chilling would be preventing law firms from assisting clients with drafting defamation claims for fear that dismissal

of that claim would open up counsel to sanctions, even where such claims were appropriately vetted and researched.

### III.    <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Nesenoff & Miltenberg LLP respectfully requests that this Court deny the Motion for Sanctions in its entirety, and for any further relief as the Court may deem just and proper.

Respectfully submitted this 23rd day June, 2025.

/s/ *Jennifer R. O'Shea*
Jennifer R. O'Shea, Esq.
BBO# 641144
Winget, Spadafora & Schwartzberg, LLP
One Boston Place, Suite 2600
Boston, MA 02108
T: (617) 544-9900
F: (617) 544-9901
Email: Oshea.J@wssllp.com
*Attorney for Non-Party Respondent*
*Nesenoff & Miltenberg LLP*

<u>**CERTIFICATE OF SERVICE**</u>

I, Andrew H. Jensen, certify that, on this 23rd day of June, 2025, I caused a true and correct copy of the foregoing *Opposition to Uri Simonsohn, Leif Nelson, and Joseph Simmons' Motion for Sanctions* to all parties/counsel who have entered an appearance in this matter via CM/ECF system.

*/s/ Andrew H. Jensen*
Andrew H. Jensen