UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FRANCESCA GINO,<br><br>          Plaintiff,<br>    v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE, SRIKANT DATAR, JOHN DOES 1-10, AND JANE DOES 1-10,<br><br>          Defendants. | Case No. 1:23-cv-11775-MJJ |

**STIPULATION AND [PROPOSED] ORDER FOR THE PRODUCTION OF DOCUMENTS AND ESI**

Plaintiff Francesca Gino and Defendants President and Fellows of Harvard College and Srikant Datar (each a "Party" and collectively, the "Parties") hereby stipulate and agree that this Stipulation and [Proposed] Order for the Production of Documents and ESI (the "ESI Protocol") shall govern any production of electronically stored information ("ESI") and other documents by the Parties in the above-captioned case (the "Action"). For purposes of this ESI Protocol, a "Producing Party" is any party or third party that produces information, documents, or ESI in this Litigation, and a "Receiving Party" is any party or third party that receives information, documents, or ESI produced in this Litigation.

This ESI Protocol shall also govern productions made by any third party who is subpoenaed in the Action unless otherwise agreed to by the Receiving Party and the third party. Accordingly, the ESI Protocol shall be attached to any subpoena issued in the Action.

**I.    PRESERVATION**

    **A.**    Each party will take reasonable and proportionate steps to preserve responsive ESI

-2-

in compliance with duties to preserve material under the Federal Rules of Civil Procedure.

  **B.** Nothing in this Stipulation and Order prevents any party from asserting, in accordance with the Federal Rules of Civil Procedure, that certain categories of Documents or ESI are not reasonably accessible. In addition, by preserving ESI for the purpose of this Litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege or other protection.

## II.  SOURCES OF ESI

  **A.** Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents are in fact relevant to the Receiving Party's request, or from performing a privilege review of documents determined to be relevant. Nothing in this Order shall limit a Producing Party's right to use technology-assisted review or a similar tool (collectively, "TAR") to prioritize search term hits or identify responsive documents. The Parties will not seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

  **B.** The Parties agree that production of custodial files shall constitute production of documents as maintained in the ordinary course of business. As such, Parties need not identify specific document requests to which each produced document corresponds.

  **C.** Parent-child relationships (the association between an attachment and its parent document) shall be preserved.

## III.  FORM OF ESI PRODUCTION

  **A.** Documents shall be produced to the Receiving Party as single-page TIFF image files imaged at 300 dpi and made searchable via optical character recognition ("OCR") (for documents originating as paper documents) and all extracted text (for documents originating as ESI), including header, footer, and document body information and any hidden content, along with

load files, with the following metadata and non-metadata fields, to the extent the information is readily available:

- BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, ATTACHMENT COUNT, CUSTODIAN, ALL CUSTODIAN(S), ALL FILE PATH(S), AUTHOR, FILE EXTENSION, PAGE COUNT, CREATE DATE AND TIME, DATE AND TIME LAST MODIFIED, DATE AND TIME SAVED, DATE AND TIME PRINTED, PARENT DATE AND TIME, TIME ZONE, DOC TITLE, NATIVE LINK, FILE NAME, FILE PATH, HASH VALUE, PRODUCTION VOLUME, CONFIDENTIALITY, REDACTED, FILE SIZE, APPLICATION, RECORD TYPE

For email, the following additional fields should also be produced:

- FROM, TO, CC, BCC, DATE AND TIME SENT, TIME ZONE, EMAIL SUBJECT, ATTACHMENT COUNT, DATE AND TIME RECEIVED, MESSAGE ID, FAMILY ID, IMPORTANCE RANKING (*i.e.*, if a message has been marked with a priority indicator such as "important," "high importance," or "low importance")

For scans of paper documents, the parties will be required to provide only a limited set of metadata:

- BEGBATES, ENDBATES, CUSTODIAN, ADDITIONAL CUSTODIAN, PAGE COUNT, PRODUCTION VOLUME

   **B.** Text, images, and native files should each be delivered as subfolders in a folder named "DATA." Single page TIFF images shall be delivered in a subfolder named "IMAGES." Multiple text files (one text file per document), shall be delivered in a subfolder named "TEXT." Native files shall be delivered in a subfolder named "NATIVES."

   **C.** Document families must be produced, even if only the parent email or an attachment to an email is responsive, except (1) junk files and non-user created content routinely excluded during processing (for example, embedded images), and (2) documents that are withheld

on the basis of attorney-client privilege or work product protection. If any document in a family is withheld, then the Producing Party shall produce a one-page slipsheet TIFF image stating, "Document Withheld," and bearing the unique Bates number that is immediately after the Bates number assigned to the preceding member of the family. The Receiving Party reserves the right to challenge the withholding and/or redaction of Documents. The parties shall meet and confer in good faith to resolve any disputes regarding the withholding and/or redaction of documents. Any intractable disagreements in this regard shall be raised with the Court.

      **D.**      Bates numbers should be placed in the lower right corner of each page unless to do so would obscure the underlying image. In such cases, the Bates number should be placed as near to that position as possible while preserving the underlying image. Bates numbers should contain no spaces, hyphens, or underscores.

      **E.**      When the image file is produced, the Producing Party must preserve the integrity of the electronic document's contents to the extent possible, including the original formatting of the document, its metadata and, where applicable, its revision history. Spreadsheets (*e.g.*, Excel files) and slide presentations (*e.g.*, PowerPoint files), when stored electronically, should be produced in the native format where possible. No alteration shall be made to file names or extensions for responsive native electronic files unless the file names contain information protected by the attorney-client privilege, work product privilege, or other immunity or protection. A document's confidentiality designation should not be included with the document's Bates numbered file name.

      **F.**      *Password Protected Files and Media*. The Producing Party shall either remove any protections or produce passwords for any password-protected files and media to the extent the passwords are reasonably available.

G. *Data Load Files.* Documents should be provided with an Opticon (.OPT) Cross-Reference File and Concordance data load file (.DAT) using standard Concordance delimiters:

- Field Separator: ASCII character 20 O");
- Quote: ASCII character 254 ("p"); and
- New Line: ASCII character 174 ("®").

Concordance-compatible image and data load files should be provided in a "Data" folder.

H. *Deduplication.* Documents may be globally deduplicated at the family-group level provided that the Producing Party identifies the additional custodians in an Additional Custodian field ("ALL CUSTODIAN(S)") and the Producing Party identifies all of the file path information in an All Paths ("ALL FILE PATH(s)") field. Parties should deduplicate responsive ESI across custodians by the use of MD5, SHA-1, or SHA-256 hash values at the parent level. Nothing in this ESI Protocol shall prohibit the Parties from seeking non-deduplicated materials where appropriate including with respect to forensic images or copies of hard drives, solid state disks, removable storage devices, cloud storage, written or paper records, or other electronic or physical storage media.

I. *Unitizing Documents.* In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records. All paper documents should be logically unitized. For example, documents stored in a binder, folder, or similar container (each a "container") should be produced in the same order as they appear in the container. The Parties will undertake reasonable efforts, or cause their vendors to undertake reasonable efforts, to logically unitize documents, and will commit to address situations of improperly unitized documents.

J. *Date Format.* Dates and times must be concatenated into a single field, with a format of MM/DD/YYYY HH:MM:ss (zzz). If a time is not available, a uniform and automated

date and time stamp should be assigned and disclosed to the Receiving Party.

    **K.**    *Time Zone.*  To the extent reasonably practicable, ESI items shall be processed using "UTC (Coordinated Universal Time)".

    **L.**    *Production Media.* The preferred means of producing documents is via secure file transfer protocol ("SFTP") site or similar secure file sharing technology.  However, documents may also be produced via flash drive or hard drive.  All physical media should be encrypted before production.

    **M.**    *Naming Convention for Production Media.* Whether produced via secure FTP, file share, or physical media, the files produced should be combined into an encrypted compressed file such as .zip, .rar, etc.  The encrypted compressed file should be named so as to indicate the Producing Party and the sequence of the production (e.g., "Defendant's Production 001").  If the production is made using physical media, the media should be labeled to include (i) text referencing that it was produced in the Action and (ii) the Bates Number range of the materials contained on the media.

    **N.**    *Protective Order.* All productions are subject to the Protective Order agreed and entered into by the Parties.

**IV.**    **PRIVILEGE**

    **A.**    *Privileged Materials and Privilege Logs.*  For Documents withheld from production on the basis of attorney-client privilege, work product doctrine, and/or any other applicable privilege or protection (collectively "privilege"), the Producing Party shall prepare a summary log containing, for each document (except as agreed upon by the parties) claimed as privileged, an export of all or a subset of the metadata fields listed below (as agreed upon by the parties) to the extent such information exists and has not been suppressed or redacted for privilege. The export should include, at a minimum, the following information from the top line email and

from any attachment, in separate entries:

- BEGNO (if not produced) or BEGBATES (if produced)
- ENDNO (if not produced) or ENDBATES (if produced)
- BEGATTACH (if not produced) or BEGBATESATTACH (if produced)
- ENDATTACH (if not produced) or ENDBATESATTACH (if produced)
- RECORD TYPE
- NUMBER_OF_ATTACHMENTS
- ALL CUSTODIAN(S)
- FROM
- TO
- CC
- BCC
- PARENT DATE
- EMAIL SUBJECT/ FILENAME
- SENTDATE
- RECEIVEDDATE
- FILEXT
- CREATEDDATE
- REDACTED

  **B.** *Document and Claim Descriptions.* In addition to the fields described in paragraph IV.A, the Producing Party's log should include two additional fields for each Document on the summary log: (a) the subject matter of the Document, and (b) the basis of the privilege claim.

  **C.** *Rolling Privilege Logs.* The parties agree to a rolling privilege log such that privilege logs are due 30 days after production for the set of requests is largely complete or 30 days after the close of fact discovery for requests issued within the last 60 days of the close of fact discovery.

  **D.** **Exceptions to Privilege Log Requirement**. A Producing Party need not log redacted Documents as long as the reason for the redaction is noted on the face of the Document

in the redacted area and the redaction is noted in the proper metadata field. For redacted Documents where the subject matter is not decipherable as a result of redactions, the Receiving Party may request additional information to understand the basis of the redaction. The parties shall meet and confer in good faith to resolve requests for additional information, and any intractable disagreements in this regard shall be raised with the Court. The parties further agree that attorney-client communications solely between the Parties and their respective current or former counsel from October 27, 2021 to present may be excluded from the production and privilege log requirements included herein.

      **E.**      **Clawback Mechanism**. The parties agree that inadvertent disclosure of documents or ESI not relevant to this Action or protected by the attorney-client privilege, attorney work product doctrine, or any other such protection ("Inadvertently Disclosed ESI") obligates the Receiving Party, upon request, to return or destroy the inadvertently disclosed material.

      1.      If a Receiving Party discovers that Inadvertently Disclosed ESI has been produced, the Receiving Party is obligated to inform the Producing Party in writing within five (5) business days, regardless of whether a challenge to such privilege or protection is anticipated.

      2.      Within five (5) business days from the date on which (a) the Receiving Party notifies the Producing Party of Inadvertently Disclosed ESI, or (b) the Producing Party identifies Inadvertently Disclosed ESI, the Producing Party shall notify the Receiving Party in writing (the "Notice"), identifying the Inadvertently Disclosed ESI and directing the Receiving Party to promptly return, destroy, and/or make inaccessible the inadvertently disclosed information/documents and all copies.

      3.      Within three (3) business days of receipt of the Notice, the Receiving Party shall inform the Producing Party that compliance will be effectuated or challenge the Notice in a formal responsive writing. If the Notice is not challenged, the Receiving Party shall destroy, return, and/or disable all access to the specified document/information within ten (10) business days or as agreed by the Parties.

      4.      Where the Inadvertently Disclosed ESI is in the form of a disc or access to a password-protected server, the Producing Party must replace, upon receipt of intent to comply with the Notice, a replacement of the

       production containing all documents/information but for those identified in the Notice.

5. The Receiving Party will endeavor in good faith to retrieve any copies of the identified documents/information to return, destroy, or otherwise dispose of the materials, and take all steps necessary to prevent further sharing of those materials.

6. Any use of the identified Inadvertently Disclosed ESI prior to receipt of the Notice is not a violation of this ESI Protocol but may be subject to the provisions of the Stipulated Protective Order entered by the Parties, dated September 18, 2025.

7. If the Receiving Party challenges the Notice, it will return, destroy, or disable all copies of the documents/information, but may retain one copy for the purpose of challenging the designation or inadvertency of the disclosure.

8. The Parties will meet and confer within seven (7) business days to resolve the dispute if the Notice is challenged and, if not resolved, the Receiving Party shall promptly, but in no event no later than ten (10) business days following the Parties' meet and confer, move to compel the production of the Inadvertently Produced ESI.

9. Under all circumstances, the Producing Party must preserve all documents/information subject to the Notice until any dispute has been resolved by the Parties' agreement or court order.

## V.   GOOD FAITH RESOLUTION OF DISPUTES

The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a Producing Party, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be unreasonable, such Party shall inform the Receiving Party in writing a reasonable time before the date of production as to why compliance with the ESI Protocol is impossible or unreasonable. No Party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected parties.

|  | Respectfully submitted, |
|---|---|
| */s/ Patrick J. Hannon* | */s/ Douglas E. Brayley* |
| Barbara A. Robb (BBO# 639976) | Douglas E. Brayley (BBO# 674478) |
| Patrick J. Hannon (BBO# 664958) | Jenny K. Cooper (BBO# 646860) |
| Hartley Michon Robb Hannon LLP | Elena W. Davis (BBO# 695956) |
| 101 Federal Street, Suite 1810 | Ropes & Gray LLP |
| Boston, MA 02210 | 800 Boylston Street |
| Tel: (617) 723-02210 | Boston, MA 02199-3600 |
| brobb@hmrhlaw.com | Tel: (617) 951-7000 |
| phannon@hmrhlaw.com | Douglas.Brayley@ropesgray.com |
|  | Jenny.Cooper@ropesgray.com |
|  | Elena.Davis@ropesgray.com |
| *Counsel for Plaintiff Francesca Gino* | *Counsel for Defendants President and Fellows of Harvard College and Srikant Datar* |

**IT IS SO ORDERED:**

_____

Honorable Myong J. Joun
United States District Judge

DATED:_____, 2025

-11-

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2025, a true copy of the above document was filed through the ECF System of the United States District Court for the District of Massachusetts and will be served electronically on the Registered Participants identified in the Notice of Electronic Filing.

Dated:  September 18, 2025

                                           */s/ Douglas E. Brayley*
                                           Douglas E. Brayley