UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


_____

FRANCESCA GINO,

                    Plaintiff,        Civil Action
                                      No. 23-CV-11775-MJJ
V.
                                      January 14, 2026

PRESIDENT and FELLOWS OF HARVARD
COLLEGE, ET AL,

                    Defendants.
_____




BEFORE THE HONORABLE MYONG J. JOUN

UNITED STATES DISTRICT COURT

JOHN J. MOAKLEY U.S. COURTHOUSE

1 COURTHOUSE WAY

BOSTON, MA  02210




JAMIE K. HALPIN, CRR, RMR, RPR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 7-204
Boston, MA  02210
jkhhalpin@gmail.com

APPEARANCES:

FOR THE PLAINTIFF:

Patrick J. Hannon
Hartley Michon Robb Hannon LLP
101 Federal Street
Suite 1810
Boston, MA 02110
617-723-8000
Email: Phannon@hmrhlaw.com

FOR THE DEFENDANTS:

Douglas E. Brayley
        &
Elena W. Davis
        &
Jenny K. Cooper
Ropes & Gray LLP - MA
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
617-951-7119
Email: Douglas.brayley@ropesgray.com

P-R-O-C-E-E-D-I-N-G-S

THE CLERK:  The United States District Court for the District of Massachusetts is now in session.  The Honorable Myong J. Joun presiding.  Today is January 14, 2026.  We're on the record in the matter of *Francesca Gino v. President and Fellows of Harvard College, et al.  Case Number is 23-CV-11775.* Will counsel please identify themselves for the record.

MR. HANNON:  Good afternoon.  Patrick Hannon on behalf of the plaintiff.

THE COURT:  Good afternoon.

MR. BRAYLEY:  Good afternoon.  Douglas Brayley on behalf of the defendants.

THE COURT:  And good afternoon to all of you sitting at the table.

MS. DAVIS:  Good afternoon.

MS. COOPER:  Good afternoon.

THE COURT:  So Mr. Brayley, why don't we start with you.  Are all of the things that you laid out in your letter, are they still outstanding or have any of them resolved?

MR. BRAYLEY:  Thank you for asking, your Honor.  They are all still outstanding, and I think illustrating why this conference is necessary, we have not heard from Mr. Hannon or Mr. Hannon's office since December 30.  You know, to the extent -- I know there are a lot of issues outlined in the letter.  I am not sure that it would be good for the court to

spend time dealing with all of them.  I think from our perspective, we would focus your attention most urgently on the issue of the forensic imagining of the devices, number one, and number two, this is kind of a global point that covers many of the other categories, we are still in the dark about the processes and protocols by which the plaintiff has been gathering responsive documents and we have reason to believe that there may be some missing and so we are lacking insight. Those are the top two things I would focus on, though, every single point from our letter remains outstanding.

THE COURT:  All right.  So from the letter, there is a number of things.  There is a desktop computer, there is an external hard drive, several USB drives and several different accounts.  And you talk about a Mr. McGowen, who is he?

MR. BRAYLEY:  Mr. McGowen was the plaintiff's expert, computer forensic expert, in the tenure revocation proceedings that took place at Harvard last year or I suppose 2024.

THE COURT:  So what is the issue, Mr. Hannon?

MR. HANNON:  With respect to the protocol, your Honor?

THE COURT:  Well, having read through the e-mails, it looks like you proposed possibly using a third-party vendor to conduct, I guess, term searches but that was back in July or August and it appears that Mr. Brayley has been trying to follow up on that but there hadn't been any response from you.

MR. HANNON:  That's not accurate, your Honor.  So I

had raised the issue, I think, over the summer that if they wanted to do some kind of forensic searching we would be agreeable to that provided there is some kind of a protocol that protected privileged work product information.  We had the conference with your Honor back in November.  As a result of that, I committed to take the laboring pen and draft a proposed protocol which I did.  I sent it to the defendants.  I forget -- I think it was the first week of December and they proposed a very, very different approach and then we had several meet and confers regarding that and then I think it was shortly before Christmas that they came back, again, kind of rejecting the position that I had proposed and again advancing what they thought the right approach was.

So I think where we're at, your Honor, is we just have two competing views about the appropriate way to conduct this search and to protect sort of privileged information and that we're at an impasse with respect to that, and I'd be happy to outline for the Court what I think that impasse is.

THE COURT:  Why don't I check in with Mr. Brayley.  What's the problem from your point of view?

MR. BRAYLEY:  Well, I suppose this is the first time I'm hearing from Mr. Hannon that we're at an impasse.  We thought that he was coming back to us with further comment so that's a surprise to me.  I think the issue fundamentally is that we have reason to believe based on the testimony submitted

during the third statute tenure proceeding that Francesca Gino altered the metadata of certain files in order to backdate them and make them look like they were created earlier than they were.

THE COURT:  I get that.

MR. BRAYLEY:  So the -- sorry.  And so the issue, why we're at an impasse, is our position is that it is critical for us to receive forensic images of the entire devices at issue, not simply certain files or redacted files from those devices. It's actually the underlying metadata and system logs that are crucially important, and our agreement to Mr. Hannon's proposal has been the inverse, that as opposed to producing entire images subjected to redaction to privileged information, he or his expert would undertake the search and send certain information to us from those devices.

THE COURT:  Right.  So how do you propose that you address Mr. Hannon's concern which is if Ms. Gino had used some of these devices in communicating with counsel, for example, that attorney-client privilege material are not being disclosed?

MR. BRAYLEY:  We actually laid all of this out in our proposed protocol.  First of all, I don't think that there is any plausible argument that the underlying system log data that we are seeking is privileged information.

To the extent that there is privileged information,

our proposal is essentially that there would be a bucket of documents that would be identified by plaintiff's counsel as containing potentially privileged information.  We have no interest in looking at privileged communications between counsel.  It truly is the images of the devices and the system logs themselves that we are focused on.

THE COURT:  I don't want this to drag on so I will give the parties until the end of next week to come to some sort of an agreement on how to proceed.  If the parties are unable to come to an agreement, then I would like to see each side's respective proposal about how to proceed.  I will take a look at it and then I will fashion an order just so that we can keep moving.

MR. BRAYLEY:  Thank you.

MR. HANNON:  Thanks, Judge.

THE COURT:  With regard to all of the other matters that are raised in Mr. Brayley's letter, what is going on, Mr. Hannon, why don't you tell me?

MR. HANNON:  Sure.  So I don't think what we've heard is correct in terms of these issues having being addressed.  So a couple of the items identified that we -- as noted in the letter there, was a mistake in terms of the date ranges provided to my client to conduct certain searches, and as a result of that, there was some additional documents located in late December that we promised to produce.  We did produce

those as promised on December 30 and I don't understand why Mr. Brayley is claiming that that somehow has not been resolved.

MR. BRAYLEY:  Well, with respect, we actually do -- we have not heard from your office since December 30 which is also the date on which we sent this letter.  So that production that your office sent to us on December 30, it's not clear to us actually whether it fully resolves any of these categories because we still don't have information about -- not even a basic letter about what parameters or searches that were used. So I truly don't know that there are any of these that we can take off the table.

THE COURT:  All right.  So why don't we do this, I think it's only fair, Mr. Hannon, that Mr. Brayley gets an answer when there is a production that this is a complete production.  If you anticipate that there are some items that you are still trying to procure, your client is trying to get you some information and she's working on her part and so you need some more time, then you need to communicate that fact.

I am reading through the e-mail chain and what I see a pattern of is you not responding to Mr. Brayley's or his colleague's e-mails or when you do respond, you promise something by a certain date and that date comes and goes and nothing happens and then they e-mail you back saying, hey, what's going on and then it starts again.  No response.  No

response.  Oh, I will get it to you.

And so what I am going to order is that whatever is outstanding, that all of that gets produced by the end of next week.  If you feel that this is a complete production and the answers to the interrogatories are complete, then you are to communicate that to Mr. Brayley and his team that this is all you're getting.  That way everyone understands where they stand, and if they feel, despite your assertion that this is a complete production, if they disagree, then they can then take that next step, whatever that next step is, but this ambiguity that you create by the piecemeal production and then not confirming that more is coming or that it's complete, it creates problems.

As far as any objections that the plaintiff could have made, I am going to deem that all of those objections are waived unless it's privileged information, and if you feel like there is certain things that are withheld on either attorney-client or work product grounds, then you need to produce a privilege log by the end of next week.

Whatever does not get produced by the end of next week, Mr. Brayley, in your judgment, whatever you think is still outstanding, I want an updated letter and then I will entertain whatever motions or sanctions that you think is appropriate.  We're going to have to come to some sort of a resolution on these issues and we can't keep going like this.

So the other thing that I wanted to check in with the parties is what depositions are still outstanding?

MR. BRAYLEY:  On our side, we have not yet deposed the plaintiff and we have not done so because we feel that we need to see these documents, in particular the forensic images, before we can reasonably do so, and we have one-third party witness who we had sought to depose but she had medical issues so we're trying to reschedule that for February.

THE COURT:  So you have two left?

MR. BRAYLEY:  Correct.

THE COURT:  And from your point of view, Mr. Hannon, how many depositions are left?

MR. HANNON:  I believe we have five left, your Honor.

THE COURT:  So you haven't taken any?

MR. HANNON:  No, we have.  We have taken five in the last six weeks or so.

THE COURT:  And you need to take five more?

MR. HANNON:  Correct, your Honor.

THE COURT:  So the current deadline to complete discovery, I believe it's in the end of February.

MR. BRAYLEY:  Correct, we agree.

THE COURT:  And are you going to be able to meet that deadline?

MR. HANNON:  I see no problem, your Honor.

THE COURT:  All right.

MR. BRAYLEY:  I think the only problem from our perspective would be if we don't get the documents that we need, in particular these forensic images, but assuming that we get compliance, then we also have no problem with that deadline.

THE COURT:  All right.  One way or the other, I mean, it's going to have to move forward, right.  I mean, you're going to get the information and then you're going to be able to take these depositions in an adequate manner, but let's say after next week you don't get what you think you should get, then we will deal with, you know, sanctions or whether that's exclusion of evidence at trial or dismissal of certain claims, whatever.  We can cross that bridge when we need to.

MR. BRAYLEY:  Thank you, your Honor.

MR. HANNON:  I don't think that your Honor has addressed all of the issues as of yet raised by defendants.

THE COURT:  Can you specifically point me to where you think we need more discussion?

MR. HANNON:  Sure.  So first, just to kind of walk through so I'm sort of clear, so with respect to the search parameters, we've agreed to provide those and we're going to provide those by the end of this week.

The next category that they had was the medical records, and just so your Honor knows, we thought this was resolved.  They had asked us several months ago to provide a

release directly to the provider so the documents would be sent to them.  They didn't tell us they never got the documents so it wasn't until mid December or even later when they advised me they hadn't gotten those documents yet.  So we're in the process of trying to get those and I expect we will be able to get those within the time the Court has identified.

The next bullet was the research reference.  We've completed the production there.

Norms in her field, we completed the production there.

They identify an issue concerning Proton e-mail documents.  They seem to think that there are documents missing there.  We told them previously that they weren't missing.  We have gone back and double-checked.

MR. BRAYLEY:  I'm sorry.  I wanted to speak but please finish.

MR. HANNON:  I think there is potentially some confusion because I think one of the documents that they got from a third-party was something that we have withheld on work product basis so I expect when we serve our privilege log that that sort of mystery is going to be resolved, but like we've said before, the Proton e-mails have been thoroughly searched and that was all done and, again, we have already communicated that in writing.

MR. BRAYLEY:  I suppose the Proton Mail one is a good illustrative example of why we need more information about the

searches that have been run because, as Mr. Hannon alludes to, we have received from a third-party additional documents from Professor Gino's Proton Mail account that were sent to his account that Gino has not produced.  So we have been left in the dark about that discrepancy and that makes us wonder whether there are others.

THE COURT:  All right.  So I am just going to -- I am not going to repeat everything that I said earlier but I think sort of the parameters that I laid out is going to govern how we proceed.

Mr. Hannon has until the end of next week, again, from his viewpoint, what he thinks would make a complete and full production and complete and full Answers to Interrogatories and everything else.

Once you receive that or don't receive it, Mr. Brayley, then the ball is in your court to then write a letter, an updated letter, to me, cc-ing Mr. Hannon, that in your view these things are still unresolved.  If we have to have another conference like this, we will, but I don't think so.  You know, maybe I will give Mr. Hannon an opportunity to explain why those are not still outstanding and that might come in a subsequent hearing on a motion that you file, Mr. Brayley, as I said earlier.  If you feel that there ought to be some sanctions as a result of deficiencies that ought to have been provided, then I will entertain that, but I don't think we need

to go through each of these things line by line today.  I want to give Mr. Hannon one last opportunity to produce everything that he is supposed to produce.

MR. HANNON:  And, Judge, I am not trying to belabor any points, but I think there are three issues raised in the letter that sort of present an issue of whether or not something needs to be produced, and I think if we could just spend a moment on those, I think that will probably save the parties some time and sort of grief going forward.

THE COURT:  Okay.  What's the first one?

MR. HANNON:  So the first one, this is on Page 4 of defendants' letter.  They title it "Inadequate Document Formats."  There are a few documents we've produced.  They're PNG and JPEG files.

THE COURT:  I'm sorry.  Can you point to where in his letter again?

MR. HANNON:  Yes, your Honor.  It's Page 4 of their document.  So it's the second bullet, "Inadequate Document Formats."

THE COURT:  I have the November 10th letter.

MR. HANNON:  That's the old one, Judge.  That's the stuff we addressed at the last conference.

THE COURT:  Oh, sorry.  Go ahead.

MR. HANNON:  So the issue with these particular files, your Honor, is they came back to us after we produced them and

they said, you know, where is the metadata.  We responded.  We double-checked.  There is no metadata for them that's available besides the sort of folder their client put it in telling us what they were which is privileged.  So they have asked us to sort of explain what they are and that's, from my perspective, that's not an appropriate document request.  You know, certainly, if we are obligated to produce the document and any metadata, but it's not an interrogatory.  They're welcome to ask for a deposition in terms of what these files are, but I don't think we have an obligation to start answering questions that they have regarding documents we've produced.

THE COURT:  All right.  Mr. Brayley.

MR. BRAYLEY:  I don't think that that's one of our top ten most important points.  We can ask about that at the deposition.

THE COURT:  All right.

MR. HANNON:  The next bullet point, your Honor, there are two text message threads that these are messages between Ms. Gino and a woman who is sort of helping her along with her defense in this matter, she's a third-party, and there were some redactions in those text messages based upon privilege and work product.  Defendants, I think they're right that since she's not a lawyer and she wasn't hired to help, that the privilege is waived, but our position would be that work product protection still remains.  Work product protection is

much harder to waive work product than attorney-client privilege.  Work product is only waived when you provide to an adversary.  So we maintain that these redactions are proper.  We'd be happy to provide them to the Court in an unredacted form.  If the Court wishes to do some kind of in an in camera review, that might be a way of just moving forward quickly, but anyhow, that was one of the issues here in this letter.

THE COURT:  Mr. Brayley?

MR. BRAYLEY:  It's hard to respond in the moment because this is the first we're hearing it.  I think we'll have to see what is logged on the privileged log and what further explanation there is.  I think one question I have, and we will work with Mr. Hannon and his log on this, is at what point in time did the communications happen.  Are they taking the position that the work product protection started because, as you know, work product protection only begins once litigation is imminent or has started, not long in advance.  We can work on that with the privilege log.

THE COURT:  Okay.

MR. HANNON:  And this is the last issue, Judge, thank you for hearing me out here, but the last issue is our responses to requests for admissions.  So we -- there are a number of requests for admissions that we did timely respond to and we identified those as ones we could not currently admit or deny at the present time.  We have had a number of back and

forth meet and confers with defendants on this, and there is really sort of two issues involved.  One is that, from our perspective, it sort of requires some help of an expert in order to admit or deny.

The backstory of this case, your Honor, is that there had been sort of just been years and years of forensic work in files and metadata and lots and lots of ESI and so there are some of these, from our perspective, that really in order to necessarily take a definitive position to admit or deny, we are going to need the help of a forensic expert.  So what we have -- so my position is that we will certainly admit or deny at some point but we're not able to at this point without having gone through the expert position.  So that's one of it.

And then there was another set that kind of deal with communications between third-parties and we're not privy to what the third-parties said, and therefore, those are things we could not admit or deny as well.  So I think that's an outstanding dispute as well.

THE COURT:  Mr. Brayley.

MR. BRAYLEY:  Nothing to add.  I mean, again, these are the sorts of answers we have been requesting.

MR. HANNON:  And, Judge, we have had this conversation with Mr. Brayley several times.

THE COURT:  All right.  Well, I don't have a copy of the admissions, I don't think, but what I said earlier still

stands.  If after next week -- again, I'm not saying one party is right or wrong at this time today, but I want to give Mr. Hannon every opportunity to fully comply with his discovery obligations, and then after the end of next week, Mr. Brayley, then you let me know what you believe in your view is still outstanding and then we can deal with them one at a time more concretely.

MR. BRAYLEY:  Thank you.

MR. HANNON:  Yes, Judge.  Thank you.

THE COURT:  All right.  I guess there is a motion pending and that has to do with the claim for declaratory relief in Count VIII.  I think I agree with the plaintiff here for all of the reasons stated in her opposition.  I don't think this is an issue that I need to decide now so I am going to deny it without prejudice, Mr. Brayley.

MR. BRAYLEY:  Understood.  Thank you.

THE COURT:  Anything else that we can do today?

MR. HANNON:  Nothing here, your Honor.  Thank you.

MR. BRAYLEY:  No, thank you.

THE COURT:  All right.  I still want to hear from either or both parties in the next couple of weeks so I'll wait for whatever you submit.

MR. HANNON:  Thank you again, Judge.

MR. BRAYLEY:  Thank you.

**(A-D-J-O-U-R-N-E-D)**

- - - - - - - - - - - -

CERTIFICATION

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter to the best of my skill and ability.


/s/Jamie K. Halpin_____        January 22, 2026____
Jamie K. Halpin, CRR, RMR, RPR          Date
Official Court Reporter