# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


_____

FRANCESCA GINO,

                    Plaintiff,          Civil Action
                                        No. 23-CV-11775-MJJ
V.
                                        February 25, 2026

PRESIDENT AND FELLOWS OF HARVARD
COLLEGE, et al

                    Defendants.
_____




BEFORE THE HONORABLE MYONG J. JOUN

UNITED STATES DISTRICT COURT

JOHN J. MOAKLEY U.S. COURTHOUSE

1 COURTHOUSE WAY

BOSTON, MA  02210






JAMIE K. HALPIN, CRR, RMR, RPR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 7-204
Boston, MA  02210
jkhhalpin@gmail.com

THE COURT:  So, Mr. Hannon, it seems like a very simple statement that Harvard wants Ms. Gino to either admit or deny.  I mean, was it ever in her custody, control, possession?

MR. HANNON:  Yes, but just to clarify what the defined term that you see here in the request for admission July 16 OG file, that's actually different from what Ms. Kirk just described.

THE COURT:  I am looking at the request now.  It says, "Admit that the July 16 OG file exists in your possession, custody or control."

MR. HANNON:  Correct.  So that's referring to a very specific version of a file, and so part of the complexity in this case is that there are a whole bunch of files with sort of the same exact file name and after this file was discovered by Professor Gino, it was provided to others as part of sort of discovery and whatnot, and candidly speaking, she does not on her own have the ability to confirm precisely which file she has is that file that she found.

THE COURT:  But that wasn't your objection.  Your objection here was it was not relevant.

MR. HANNON:  That was initially an objection, correct, and I believe at the time that we objected on relevance grounds, Harvard had not asserted a counterclaim.  So this is an alleged act that occurred during the third statute proceeding.

14

THE COURT:  Let me just ask Ms. Kirk and Ms. Cooper then.  Are there multiple versions of the July 16 OG file?

MS. KIRK:  We don't know.  That's our trouble here. What we do know, your Honor, is that what we discovered by way of forensics in the third statute hearing is that on the heavily redacted Harvard laptop that we got in 2024, we found evidence that there is what we call for purposes of this conversation the July 16 OG file.  We know, and Professor Gino's forensic expert in that hearing agreed, we know that that July 16 OG file, also you could think of it, Judge, as another version of the tax study file, was on an unknown device, everybody recognizes that, and then it was transferred via a very specific USB with a serial number.  So plaintiff has that USB, should be able to track that path.  It then goes on the Harvard laptop, Judge, and it replaces the original and accurate 2010 tax study document.  So to answer your question, are there multiple versions of the July 16 OG version file, that is precisely something we want to figure out in forensics.

MS. COOPER:  Your Honor, if I may?  I apologize.  I know it can be confusing to have multiple people speaking. This issue I think does relate both very much and identifies sort of the way in which the outstanding discovery issues are related to the forensic images that we had been seeking, but in case it is helpful, and I want to be very clear, the document, and Mr. Hannon referred to the way it was defined in purposes

of requests for admission, and this is the subject of Harvard's counterclaim for defamation.  So this is a specific file that she spoke publicly about on her website.  That is what we're asking about.  She told the world about this file that she found that exonerated her.  The discovery is related to a statement that she makes that is related to a counterclaim.  We actually, as Mr. Hannon noted, since the time of the plaintiff's initial response, the counterclaim has been filed so it is the file that she spoke about, published about, on her website.

THE COURT:  So, Mr. Hannon, I am going to allow the motion to compel on Request Number 4.  I mean, she acknowledges that she made or caused statements about this July 16 OG file to be posted publicly on her website.  That's a website that she owns.  If the concern is which July 16 OG file, then in your answer in admitting or denying this, you can specify to the extent that you can what versions are in her possession custody or control.

MR. HANNON:  Yes, Judge.

THE COURT:  So let's go to Request Number 6.  I think I am going to grant this one as well.  I mean, that's also a very simple request, "Did she or did she not provide the July 16 OG file to Harvard anytime since the investigation?"  I am not sure what you mean when you say that she doesn't have enough information for her to admit or deny this.  Either she

did or she didn't, right?

MR. HANNON:  Well, the complexity comes from this point, your Honor, is that in the course of the third statute proceeding, Harvard was provided access to various electronic devices and so this July 16 OG file issue, this came up at the sort of eleventh hour in the third statute proceeding, kind of after all the expert work had been done and everything had been submitted.  This was sort of tangential issue that's been dropped in, and as a result of that, there was no analysis done of all these various devices specifically looking for this particular file and so that is the reason why it's sort of impossible to say without actually going back and looking at everything that was produced whether or not sort of a copy of that file was contained in any of those devices that was produced.

THE COURT:  And you're not able to look at it now?

MR. HANNON:  We are, but, again, that requires expert sort of analysis.  Again, there is lots of complexity here because we're talking about different versions of files and a lot of different devices as well.

MS. COOPER:  Your Honor.

THE COURT:  Go ahead.

MS. COOPER:  If I may, I am not sure how that -- she's the one that published her website with the statement about the file.  I hope she knew what file she was talking about at the

time.  Also, there was not analysis of this file in the tenure proceedings because plaintiff refused to answer any questions about it and she withheld information on the ostensible basis of privilege.  It was not that it was raised at the eleventh hour.  It's that the plaintiff refused to engage or any questions or permit her expert to and there was no judge to decide whether privilege applied.

MR. HANNON:  That's not accurate, your Honor.

THE COURT:  The request for Number 6 is granted.

Looking at Number 7, I don't know how she can admit whether or not these eight individuals had handled the data. How would she know?

MS. COOPER:  Your Honor, we have -- that is a request that we had followed up on maybe back in November but we agree with your Honor, we're not pursuing that further at this time. If it's helpful, 4 and 6, which you have addressed, 8 through 11 and 15.  Sorry, your Honor.

THE COURT:  Say that again.  Are you withdrawing?

MS. COOPER:  With respect to our Request for Admission Number 7.

THE COURT:  Yep, okay, but not the others?

MS. COOPER:  Not the others, not 8 through 11 or 15.

THE COURT:  So 7 is withdrawn.

MS. COOPER:  And 12, I'm sorry.  I have them grouped because some relate to data and Number 12 is a different issue.

also mention various privilege logs and challenges to them.

MS. COOPER:  Yes, and one thing to be clear that we had raised earlier by way of a discovery dispute, if it's okay, your Honor, there are some redacted text messages.

THE COURT:  Yep.

MS. COOPER:  That we were hoping to resolve with your Honor today.

THE COURT:  Sure.

MS. COOPER:  Questions about those.  And specifically, and this is an issue that was outlined both earlier but also in our January 23 letter to the Court and we did discuss this a bit in the January 14 conference.  So there are two different text messages with two different third-parties that the plaintiff has produced in discovery.  Those text messages contain redactions in different places throughout and we believed that redacting for attorney-client privilege was not appropriate since these were communications with third-parties. In the July -- I'm sorry, not July.  In the January 14th hearing, Mr. Hannon, I am confident that I am speaking correctly, although he can speak for himself, indicated agreement that attorney-client privilege had been waived but said that he thought that work product protection would not have been waived.  We had somewhat thought, and it was after that conference, your Honor, that Professor Gino completed what she considered all of her remaining discovery productions.

There were no changes; that is, we didn't receive any revised production of the text messages.  All of the redactions that were there originally -- we have, in fact not gotten any other documents, but in the produced documents, several redactions are marked only attorney-client privilege and some are marked attorney-client and work product.  We gather that the plaintiff's position now is that all of the communications constitute work product because none of the redactions had been removed.  This seems odd given the way they were produced.  In January, Mr. Hannon suggested maybe these messages could be produced to your Honor for review in camera, but it seems like it might be appropriate to move this along.  We're not sure what the basis of work product protection would be with these two individuals, but certainly, to the extent there are redactions just based on privilege, it seems appropriate.

THE COURT:  And who are these two individuals, like research assistants or co-researchers?

MS. COOPER:  They are not, to my knowledge, co-researchers, at least specifically in connection with any of the papers that were at issues in these proceedings.  They are colleagues or former colleagues.  Frances Frei is one HBS professor with whom she was texting.  Ms. Frei, also appears in over 200 entries on plaintiff's privilege log.  She is someone with whom the plaintiff has collaborated and conferred related to claims and the other is another professor named Laura Wang.

THE COURT:  I see.

MS. COOPER:  Who is another third-party.

THE COURT:  Mr. Hannon.

MR. HANNON:  So, yes, the redactions are being withheld on the basis of work product.  I believe that's identified on our privilege log as being work product.  To the extent this says attorney-client privilege on the actual redaction themselves, that's probably a function of how much room there was, but you know, in terms of why they're work product, these were individuals that were assisting Ms. Gino in terms of organizing her defense and communicating with counsel and so we do believe that these are work product and would have no objection for submitting them for an in camera review.  Candidly, there is nothing terribly interesting, but that might be the quickest way to resolve this.

THE COURT:  All right.  Send it to me.

MR. HANNON:  Judge, mechanically, can we circle back with Mr. York and find out the mechanics for doing that?

THE COURT:  Yes.

MR. HANNON:  Okay, thank you.

THE COURT:  So what are these privilege logs?  You know what, I don't think we can resolve this today, right?  I mean, you need some time to go through them.

MS. COOPER:  I think that's correct, your Honor.  There was just one issue that I think might be ripe in terms of