**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| FRANCESCA GINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| PRESIDENT AND FELLOWS OF | )    Case No. 1:23-cv-11775-MJJ |
| HARVARD COLLEGE, SRIKANT DATAR, | ) |
| JOHN DOES 1-10, AND JANE DOES 1-10, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF HARVARD'S MOTION TO COMPEL**
**NON-PRIVILEGED TESTIMONY**

Pursuant to Fed. R. Civ. P. 37, Defendant President and Fellows of Harvard College ("Harvard") submits this memorandum of law in support of its motion to compel non-privileged deposition testimony in this action from Benjamin Edelman ("Edelman"), Gregory Burd ("Burd"), and Plaintiff Francesca Gino that has been improperly refused on the basis of privilege and work product, as well as for its expenses incurred in making this motion.[1]

**INTRODUCTION**

Forensic evidence—gathered both before and in connection with this proceeding—indicates that, on September 23, 2023, Plaintiff (or someone acting on her behalf) created a backdated file to fabricate supposedly exculpatory evidence and overwrote the original data file in order to destroy it.  Plaintiff's own privilege log indicates that she was in close collaboration with

---

[1] The parties conferred in good faith, in accordance with Local Rules 7.1(a)(2) and 37.1(a), and were unable to resolve or narrow this dispute.  The Court subsequently granted Harvard leave to file this motion to compel in its May 19, 2026 order.  *See* Docket No. 201.

1

another former HBS faculty member, Benjamin Edelman, on that very data file on that very date. When questioned about the backdated file during her tenure revocation proceedings, Plaintiff refused to answer, asserting privilege. Now, during Burd and Edelman's depositions, as well as her own, Plaintiff continues to lodge legally untenable privilege objections to prevent Defendants from accessing the information to which they are entitled. Moreover, Plaintiff's deposition has made clear that Edelman's testimony will be key to understanding how and why the fabrication occurred, as Plaintiff has confirmed that only she, Edelman, and her husband had possession of the file at the relevant time, but has denied that she falsified or backdated any files and/or had the technical expertise to do so.

Plaintiff's assertion of privilege cannot shield her, Burd, or Edelman from having to answer these questions for the following reasons. First, Edelman's assistance with Plaintiff's website and with the technical details of file manipulation was neither legal advice nor work product made in anticipation of litigation. Second, Plaintiff waived any privilege regarding these matters by sharing her communications with a third party and by publishing the fruits of those communications on her public website. Third, to the extent Plaintiff used her communications with Edelman to engage in evidence spoliation and fraud, the crime-fraud exception to attorney-client privilege applies. Furthermore, Edelman's communications with Burd are not privileged for all those same reasons plus the fact that Burd is not Edelman's client. Defendants therefore request that the Court compel Edelman, Burd, and Plaintiff to provide testimony on these topics.

## BACKGROUND

### A.    Harvard's Counterclaim

In its counterclaim, Harvard alleges that Plaintiff defamed it by making false statements concerning the investigation the Harvard Business School ("HBS") conducted into research

2

misconduct allegations against Plaintiff.  *See* Docket No. 154 ("Counterclaim").  Plaintiff's false statements were made in an October 1, 2023 post (the "October 1 Website Post") published on her public website about this litigation, francesca-v-harvard.org.  *Id.* ¶ 1.

Plaintiff stated in the October 1 Website Post that, during HBS' investigation into the research misconduct allegations against her, Harvard failed to identify or consider an exculpatory data file that Plaintiff referred to as the "July 16 OG File."  *Id.* ¶¶ 58-73.  This file, according to Plaintiff, was a version of the dataset for the study at issue in Allegation 4b (one of the five research misconduct allegations against Plaintiff that HBS had investigated).  *Id.*  Plaintiff described the July 16 OG File in the October 1 Website Post, but she did not make it available on her website or provide it to Harvard at that time.  *Id.*

During the internal academic proceeding that Harvard undertook to consider revoking Plaintiff's tenure, Plaintiff provided to Harvard a copy of her HBS laptop's data, made by her expert in January 2024.  *Id.* ¶ 75.  This same HBS laptop had been copied by HBS at the outset of its investigation in late 2021.  *Id.* ¶ 27.  On the 2024 copy of the laptop, however, Harvard discovered a new file not contained in the 2021 copy that bore a striking similarity to the file Plaintiff claimed to be the "July 16 OG File" on her website, but which Harvard's forensic expert determined had been manually backdated to appear as though it was an original data file from 2010, when the study at issue in Allegation 4b was conducted (the "2023 Cover-Up File").  *Id.* ¶¶ 77-80.  Moreover, Harvard's expert determined that this file was first placed on Plaintiff's HBS laptop on September 23, 2023—eight days before Plaintiff published the October 1 Website Post and nearly two years after HBS had forensically copied the laptop.  *Id.* ¶ 79.

Thus, Harvard contends that Plaintiff made a knowingly false public statement that Harvard failed to identify and review the July 16 OG File, because she knew at the time she made the

statement that no such file existed at the time of Harvard's investigation, since she had fabricated the July 16 OG File approximately a week before publishing the October 1 Website Post.

**B.      Edelman's Involvement with Plaintiff's Website and the Creation of the July 16 OG File**

Forensic and document discovery have established that Edelman was involved in Plaintiff's attempts to draw public attention to her dispute with Harvard through a website and podcast, as well as with the fabrication of the July 16 OG File that underlies Harvard's counterclaim.

Edelman is a former HBS professor who also has a law degree. Ex. 1 at 32:5-33:17; 37:12-19. In February 2023, Edelman sued Harvard after he was denied tenure in 2018. *See Edelman v. President and Fellows of Harvard College*, No. 2384CV00395-BLS2, (Mass. Super., filed Feb. 14, 2023).[2] The same day that Edelman filed suit against Harvard, he published a website, edelman-v-harvard.org, where he has since periodically published posts about developments in the litigation. Ex. 1 at 58:5-21. In July 2023, after HBS placed Plaintiff on administrative leave, she engaged Edelman as counsel. *Id.* at 78:2-24. On August 2, 2023, Plaintiff filed this lawsuit. Docket No. 1.

Documents produced by HBS professor Frances Frei ("Frei"), a third-party to this dispute, establish that, beginning in August 2023, Edelman worked with Plaintiff to create her website, including by instructing her as to how to organize posts, proposing topics about which she should write, and assisting her with digital forensic research. Ex. 2; Ex. 3.[3] For example, Gino wrote in a comment to Edelman on August 5, 2023, "█████████████████████████████

---

[2] On February 17, 2026, the Massachusetts Superior Court granted Harvard's motion for summary judgment on all counts brought by Edelman. *See Edelman v. President and Fellows of Harvard College*, No. 2384CV00395-BLS2, 2026 WL 490066 (Mass. Super. Feb. 17, 2026).

[3] Plaintiff has also produced an unredacted version of this document. GINO_013239.

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ " Ex.

3 at 1.  Edelman replied later the same day, "████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████ " *Id.* (emphasis added).

In another document produced by Frei, Edelman made comments indicating that he was

interested in locating and analyzing the metadata of Plaintiff's data files that had not been located

during HBS' approximately 18-month-long investigation: "█████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████ " Ex. 4 at 13, 24 (emphasis

added).

More recently, Edelman has assisted Plaintiff and Harvard Law School Professor Lawrence

Lessig (also an attorney) in creating a publicly available podcast series chronicling Plaintiff's

grievances with Harvard's investigation into her research misconduct and her eventual removal

from the faculty.  Plaintiff characterized the podcast in her deposition as "███████████

███ " Ex. 5 at 11:24-12:3.  Edelman ████████████████████████ *See* Ex. 6.  Several episodes

of the podcast were structured as conversations between Lessig, as host, and an anonymized

interlocutor voiced by a human actor or AI. Documents recently produced by Plaintiff show that

Edelman █████████████████████████████████████████ *See* Ex. 7; Ex. 8.

In addition to helping with Plaintiff's website and podcast, Edelman also has shared his technical expertise. For example, Burd—Plaintiff's husband and a software developer with more than 30 years' experience in the industry—testified in his deposition that ████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████. Ex. 9 162:18-163:4. Discovery documents in this case show that Edelman used his technical skills to analyze Plaintiff's data, primarily housed in Microsoft Excel spreadsheets, in significant detail, as exemplified in the following comment: ███████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████" *See* Ex. 3 at 6. Indeed, Plaintiff relied on Edelman's technical expertise and sought to learn from him. She responded to the above comment, "██████████████████████████████ █████████████" *Id.*

Plaintiff's deposition testimony, as well as the forensic discovery in this case, have further established that Edelman was directly involved in Plaintiff's work with the 2023 Cover-Up File and July 16 OG File on September 23, 2023. Plaintiff has testified that, ████████████ ████████████████████████████████████████████████████████████ ██████. Ex. 5 at 199:16-200:17. Plaintiff has also denied ███████████████████ ██████████████████████████████. Ex. 5 at 200:18-23. But the forensic evidence from September 23, 2023 reviewed to date demonstrates that:

- At 5:16pm, the 2023 Cover-Up File is last saved in Microsoft Excel by Microsoft Office user profile "Gino, Francesca." Defendants' forensic expert has determined that, at this time, the 2023 Cover-Up File already contained falsified data. *See* Declaration of Julian Ackert dated May 26, 2026 ("Ackert Decl.") at ¶ 8.

- At 5:32pm, the 2023 Cover-Up File is copied from a USB drive onto Plaintiff's HBS laptop. The 2023 Cover-Up File is copied into a directory that contains data files related to one of the studies that HBS investigated during Plaintiff's research misconduct process. Forensic analysis has shown that copying over the 2023 Cover-Up File overwrote an existing data file with the same file name ("Taxstudy.xlsx") that contained non-falsified data. *See id.* at ¶ 9.

- At 6:22pm, Google Drive data shows that another file, containing statistical analyses related to the very same study, was last saved by Microsoft Office user profile "Ben Edelman" (the "Edelman Document"). *See id.* at ¶ 10. Plaintiff has redacted data and comments created by Edelman within this file on the basis of the attorney-client privilege and work product doctrine.

- At 6:34pm, the Edelman Document is uploaded to Google Drive and shared with Gino's Google account. *See id.* at ¶ 11.

- At 8:16pm, Plaintiff's Google account uploads a second, backdated "Taxstudy.xlsx" file (the "July 16 OG File") to Google Drive. This file was also last saved by Microsoft Office user profile "Gino, Francesca." The internal Last Saved metadata of the July 16 OG File is the same as the 2023 Cover-Up File, and the files have the same MD5 hash, meaning that their content is identical. The sole difference between the files is that the 2023 Cover-Up File has file system Last Modified metadata of July 17, 2010 at 6:43:00pm, while the

7

July 16 OG File has file system Last Modified metadata of July 16, 2010 at 4:30pm. When uploading the July 16 OG File, Plaintiff gives Edelman's Google account editorial privileges. *See id.* at ¶ 12.

- At 10:33am on September 24, 2023, Plaintiff created the first version of the October 1 Website Post that refers to the July 16 OG File. Ex. 10.

### C.    Plaintiff's Privilege and Work Product Objections

Defendants deposed Edelman on May 5, 2026 and Burd on May 8, 2026. During Edelman's deposition, Plaintiff's counsel made a near-constant stream of objections based on attorney-client privilege and/or work product protection. Several days later, during the Burd deposition, Plaintiff's counsel similarly raised ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████ Ex. 9 at 138:8-15. Most recently, during Plaintiff's own deposition, her counsel objected to, among other things, ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████. *See* Ex. 5 at 18:21-19:14. While Defendants submit that the vast majority of Plaintiff's privilege objections are groundless, Defendants focus their challenge here on the objections to questions on four topics that relate to Edelman's involvement in the events giving rise to Harvard's counterclaim: (topic 1) Edelman's involvement with the creation of Plaintiff's website, Ex. 1 at 131:11-136:8; (topic 2) Edelman's knowledge of the July 16 OG File, including its origin, contents, and current location, *id.* at 144:18-150:17; (topic 3) Edelman's modification of the content or metadata of files on any of Plaintiff's devices, *id.* at 120:11-123:10, Ex. 9. at

135:5-21; and (topic 4) Edelman's involvement with the backdating of the 2023 Cover-Up File, Ex. 1 at 144:23-154:25.[4]

### ARGUMENT[5]

Plaintiff's objections should be overruled because (i) the communications at issue were not made for purposes of securing legal advice or do not constitute attorney work product made in anticipation of litigation, (ii) Plaintiff waived any applicable privilege by disclosing the communications to a third party and publishing them publicly, and (iii) to any remaining vestige of privilege, the crime-fraud exception applies.

**I.      THE INFORMATION SOUGHT IS NOT PRIVILEGED BECAUSE IT DOES NOT CONSTITUTE EITHER COMMUNICATIONS MADE FOR PURPOSES OF GIVING OR RECEIVING LEGAL ADVICE OR ATTORNEY WORK DONE IN ANTICIPATION OF LITIGATION.**

Plaintiff cannot plausibly claim that information related to: Edelman's participation with the creation of Plaintiff's public website; the July 16 OG File Plaintiff discussed publicly on her website; Edelman's modification of the content or metadata of Plaintiff's files; or Edelman's involvement with backdating the 2023 Cover-Up File are privileged or protected by the work product doctrine. "In a discovery dispute, the burden to establish an applicable privilege rests with the party resisting discovery." *F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000). Plaintiff fails to do so here.

Topics 1 and 2. Plaintiff has never articulated how her communications with Edelman relating to her website or the July 16 OG File were primarily for the purpose of seeking or giving

---

[4] In addition to seeking expenses in making this motion under Rule 37, Harvard also reserves its rights to seek the costs it incurs to reopen the depositions under Rule 30(d)(2).

[5] To the extent that the Court overrules Plaintiff's assertions of attorney-client privilege and work product protection, Defendants seek production of all of Plaintiff's communications with Edelman on September 23, 2023 on Signal, an encrypted messaging application, on the same basis.

confidential legal advice. Indeed, discovery in this case has confirmed they were not. Plaintiff's communications with Edelman discussing the creation of her website show the two collaborating—together with non-attorney-client third parties—on a shared project to publicly attack Harvard, which moved forward separately from Plaintiff's then-recently-filed lawsuit.[6] *See* Ex. 2; Ex. 3. Nothing in Edelman's and Plaintiff's communications concerning the website suggests that the attorneys who were representing Plaintiff in this litigation were involved in its planning or creation. Moreover, in Gino's August 5 proposal to Edelman concerning the website,

███████████████████████████████████████████████████

██████████████████████████████ Ex. 3 at 1. The two primary topics Plaintiff proposed

to discuss on the website focus on ████████████████████████████████████

███████████████████████████████████████ *Id.* Plaintiff herself has

testified that the purpose of her website was "████████████████████████████

███████████████████████████████████████████████████

████████████████████████████ " Ex. 5 146:11-15 (emphasis added).

Courts have consistently ruled that this type of information is not privileged, because "a media campaign is not a litigation strategy." *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, No. 02-CV-7955 DLC, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003); *see also, e.g.*, *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, No. 18-CV-7889, 2023 WL 3687427, at *8 (E.D. La. May 26, 2023), *on reconsideration in part,* No. CV 18-7889, 2023 WL 4706200 (E.D. La. July 24, 2023) (ordering production of communications related to media between client and counsel

---

[6] Edelman has never made an appearance on behalf of Plaintiff in this litigation or in her tenure proceeding.

10

where the communications were not "made predominantly for the purpose of giving or obtaining legal advice or services").

Nor has Plaintiff explained how the work Edelman performed to assist Plaintiff with creating and publishing her website or the posts or files described therein could plausibly be considered work done in anticipation of litigation. *See, e.g., Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) ("[T]he purpose of the [work product doctrine] is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally."); *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 435 (S.D.N.Y. 2013) ("[P]ublic relations advice, even if it bears on anticipated litigation, generally falls outside the ambit of the work product doctrine.").

Topics 3 and 4. Similarly, Edelman's and Plaintiff's communications concerning the modification or backdating of metadata on her devices, including revisions to the metadata of the 2023 Cover-Up File or July 16 OG File, cannot be privileged or protected by the work product doctrine. Technical advice about how to modify metadata for electronic files is, quite simply, not legal advice. *Status Time Corp. v. Sharp Elecs. Corp.*, 95 F.R.D. 27, 31 (S.D.N.Y. 1982) ("[C]ommunications which are exclusively technical do not fall within the privilege[.]"); *accord Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 510-11 (D.N.H. 1996) ("a number of courts have determined that the attorney-client privilege does not protect client communications that relate only to business or technical data.") (quoting *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir.) (collecting cases)). Nor does the modification or backdating of metadata on Plaintiff's devices have any possible legitimate purpose related to this litigation. *See United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 29-30 (1st Cir. 2009) ("Nor is it enough

11

that the materials were prepared by lawyers or represent legal thinking . . . . It is only work done in anticipation of or for trial that is protected.").

To the extent that Plaintiff's position is that Edelman cannot testify on these topics without violating his professional duty of confidentiality to his client, the relevant disciplinary rules and case law are clear that, when information is sought from an attorney through compulsory process such as a subpoena, the attorney-client duty of confidentiality does not apply. That duty is distinct from attorney-client privilege, which is an evidentiary privilege that is much narrower in scope. *See, e.g.,* Mass. R. Prof. Conduct 1.6 cmt. 3 ("The rule of client-lawyer confidentiality . . . applies in situations *other than those* where evidence is sought from the lawyer through compulsion of law[.]" (emphasis added)); *Steffenberg v. Gilman*, No. 04- CV-40113-FDS, 2005 WL 8176506, at *10 (D. Mass. Sept. 13, 2005) ("It is obvious that Rule 1.6 is designed to serve a separate function from evidentiary privileges . . . ."); *cf. Parler & Wobber v. Miles & Stockbridge*, 359 Md. 671, 689 (Md. App. Ct. 2000) ("There is a critical distinction . . . between confidentiality required by ethical rules and the evidentiary basis of the attorney-client privilege. More protection is provided to communications within the attorney-client relationship under one than the other. The confidentiality umbrella of the ethical rule encompasses all situations except where the evidence is sought from the lawyer through compulsion of law." (internal quotation marks omitted)).

Accordingly, because none of the four topics at issue involve communications made for the purpose of seeking or providing legal advice or work done in anticipation of litigation, the Court need look no further: Plaintiff's privilege and work product objections fail as a matter of law, and Harvard's motion should be granted on this ground alone.

## II.    PRIVILEGE AND WORK PRODUCT PROTECTION OVER TOPICS 1 AND 2 WERE WAIVED.

Even if Plaintiff could establish that either the attorney client privilege or work product doctrine protected her communications with Edelman relating to her website or the July 16 OG File, Plaintiff has also waived protection over the subject matter of those communications twice over: (i) by sharing certain of those communications with third-party Frances Frei, who has since produced them to Harvard; and (ii) by publishing her website to the public.

As explained above, Frei (a current HBS faculty member) has produced several documents showing that she was included on communications between Plaintiff and Edelman concerning Plaintiff's website. *See*, *e.g.*, Ex. 2; Ex. 3; Ex. 4.  Such disclosure to a third-party indisputably waives privilege over the subject matter of those communications. *United States v. Morrell-Corrada*, 343 F. Supp. 2d 80, 86-87 (D.P.R. 2004) (client waived attorney-client privilege *in toto* by disclosing contents of communications with attorney to government without making any reservation); *Procter & Gamble Co. v. Team Technologies., Inc.*, No. 1:12-cv-552, 2013 WL 3778740, at *2–3 (S.D. Ohio July 18, 2013) (defendant waived attorney-client privilege over subject matter of opinion letters disclosed to third parties, as voluntary disclosure of privileged communications constituted a "knowing and intentional waiver" extending to "all communications related to the same subject matter").  Moreover, Plaintiff did not: (i) move to quash or modify Harvard's subpoena to Frei; (ii) object when she received a copy of Frei's production; or (iii) object when Harvard questioned Burd at his deposition on documents produced by Frei that included Plaintiff and Burd's communications with Edelman.  Plaintiff's repeated failure to object to Frei's production of these documents as well as Harvard's use of them in this litigation further supports that she has waived any privilege over the subject matter of these communications. *Hache v. AIG Claims, Inc.*, No. 20-cv-10652-PBS, 2022 WL 3867538, at *6 (D. Mass. Aug. 30, 2022) (insurers

waived attorney-client privilege and work product protection where they made no attempt to intervene or seek a protective order before or after privileged documents were introduced into evidence in state court proceedings, despite knowledge of the production and use of the documents).

Even if Frei had not produced these documents to Harvard, Plaintiff also independently waived privilege over these communications by publishing her website to the public. Plaintiff cannot claim that her communications with Edelman related to the website remain privileged to the extent some or all of the content of those communications is reflected on a *publicly available* website. Nor is Plaintiff's website the only source of public disclosure of such content: Plaintiff and Edelman, along with Lawrence Lessig, have also published the podcast discussing Plaintiff's grievances with Harvard.[7] *See* Ex. 8; Ex. 7. Both the attorney-client privilege and the work product doctrine are premised on the client maintaining the confidentiality of the communications, but Plaintiff has done the exact opposite here on multiple fronts, thereby voluntarily waiving any privilege that may have applied. *Soscia Holdings, LLC v. Town of Coventry*, No. 25-cv-274-MRD-AEM, 2025 WL 3079165, at *8 (D.R.I. Nov. 4, 2025) (attorney-client privilege waived after executive session minutes containing privileged communications were posted on town's publicly accessible website for 475 days and became subject of widespread media coverage); *see also Blattman v. Scaramellino*, 891 F.3d 1, 5 (1st Cir. 2018) ("disclosing material in a way inconsistent

---

[7] The source of this information is obfuscated in the public-facing version of the podcast, as Lessig declines to identify the second speaker and instead uses a voice actor or artificial intelligence bot as a co-host. *See, e.g.*, Lessig, Lawrence (Host). *The Law: Such as it is*, Season 3, Episode 6: "Allegation #4," https://theginocase.info/?page_id=162#gino-episode-6 ("Once again, I'm joined by an interlocutor. Like last time, the words have been written by a friend who is expert in data analysis. Like last time, for complicated reasons that continue still, that person can't talk freely about the case. But this time, they've recorded the podcast with me, and I've used fancy AI from Eleven Labs to replace their voice with an AI's voice.").

with keeping it from an adversary waives work product protection.") (quoting *United States v. MIT*, 129 F.3d 681, 687 (1st Cir. 1997)).

**III.    TO THE EXTENT THAT TOPICS 2, 3, AND 4 CALL FOR ATTORNEY-CLIENT COMMUNICATIONS OR WORK PRODUCT AS PROPERLY CONSTRUED, THOSE PRIVILEGES ARE WAIVED BECAUSE PLAINTIFF RELIED ON THOSE COMMUNICATIONS TO ENGAGE IN FRAUD.**

Plaintiff lacks any privilege or work product protection over Edelman's knowledge of and involvement with the July 16 OG File; any modification of the content or metadata of her files; and his involvement with the backdating of the 2023 Cover-Up File because, to the extent that Plaintiff relied on any *legal* advice Edelman may have provided in connection with those activities, those privileges are waived pursuant to the crime-fraud exception.

To invoke the crime-fraud exception, a party seeking information must make a two-step prima facie showing: (1) the client was engaged in (or planning) criminal or fraudulent activity at the time of the communications with the attorney; and (2) the client intended for the communications to facilitate or conceal wrongful activity. *United States v. Joyce*, 311 F. Supp. 3d 398, 406 (D. Mass. 2018). A prima facie showing requires that there be "a reasonable basis to believe that the client used the lawyer's services to foster a crime or fraud." *Cozy, Inc. v. Dorel Juv. Grp., Inc.*, No. 21-CV-10134, 2023 WL 12175356, at *3 (D. Mass. Mar. 8, 2023) (internal quotation marks and citation omitted). The attorney need not be aware that the client is intending to use the attorney's advice to further the crime or fraud: "The case law dealing with the crime-fraud exception . . . makes it transparently clear that the client's intentions control[.]" *In re Grand Jury Proc. (Gregory P. Violette)*, 183 F.3d 71, 79 (1st Cir. 1999); *cf. United States v. Ballard*, 779 F.2d 287, 292 (5th Cir. 1986) (the exception attaches "when the lawyer becomes either the accomplice or the unwitting tool in a continuing or planned wrongful act"). The crime-fraud

exception applies to Plaintiff's communications with Edelman related to these topics on two independent bases.

First, Plaintiff engaged in intentional evidence spoliation when she copied the 2023 Cover-Up File over to her HBS laptop on September 23, 2023, and overwrote an existing file with non-modified data. Fed. R. Civ. P. 37(e)(2). Plaintiff had filed suit against Harvard almost two months before these events, was represented by counsel, and had a duty to preserve evidence. Plaintiff's intent to deprive Harvard of the use of the unmodified file can be inferred from the calculated, precise nature of her actions. She connected a flash drive with the 2023 Cover-Up File to her HBS laptop, located the exact directory where the existing, non-modified file was located, and then overwrote that file. *See* Ackert Decl. at ¶ 9. If Plaintiff had saved the 2023 Cover-Up File in any other directory on her HBS laptop, she would not have overwritten the pre-existing file. And, if Plaintiff had changed the file name of the 2023-Cover-Up File by even one character, she could have copied the file into the directory with the pre-existing file without overwriting it. Thus, it could not be clearer that Plaintiff intended to destroy the existing file and replace it with the falsified and backdated version she had created.

The fact that Plaintiff's cover-up attempt was ultimately futile because Harvard had previously sequestered her data did not relieve her of her obligation to preserve and not to tamper with relevant evidence. The court may infer that Harvard was prejudiced by the loss of the file from Plaintiff's intentional decision to destroy it. *NuVasive, Inc. v. Day*, No. CV 19-10800-DJC, 2021 WL 9059745, at *9 (D. Mass. Aug. 23, 2021) ("A finding of intent to deprive can support an inference that the lost information was unfavorable to the party that intentionally destroyed it and also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." (cleaned up)). Moreover, while the prejudice from spoliation is generally

16

framed in terms of the loss to the party who could have relied on the destroyed evidence, this case presents a unique circumstance where the spoliating party *then replaced the destroyed evidence with falsified evidence*.  Thus, even if Harvard had not been prejudiced by the destruction of evidence standing alone, Harvard has certainly been prejudiced by the introduction of false evidence into this dispute.

Courts have long held that evidence spoliation can trigger the crime-fraud exception.  *See, e.g.*, *Wachtel v. Guardian Life Ins. Co.*, 239 F.R.D. 376, 380 (D.N.J. 2006) ("Under federal law, the [crime fraud] exception can encompass communications and attorney work product in furtherance of an intentional tort that undermines the adversary system itself[,] [which]  may include communications and work product used in furtherance of the spoliation of evidence." (cleaned up)).  Further, the timeline of events outlined above establishes that Edelman and Plaintiff were in active communication about the relevant dataset during the three-hour period in which Plaintiff copied the 2023 Cover-Up File onto her HBS laptop and uploaded a different backdated version of that file onto Google Drive on September 23, 2023.  *See* Ackert Decl. at ¶¶ 8–12.  Thus, Harvard has met its prima facie burden to show that there is "a reasonable basis to believe that the client used the lawyer's services to foster a crime or fraud[,]" and any privilege or work product protection over these communications is waived.  *Cozy,* 2023 WL 12175356, at *3.

Second, the crime-fraud exception applies because Plaintiff engaged in fraud by fabricating and then backdating a data file to provide apparent support for statements that she knew would mislead the public as to the thoroughness of Harvard's investigation of her research misconduct. *See United States v. Joyce*, 311 F. Supp. 3d 398, 407 (D. Mass. 2018) (holding crime-fraud exception applied to law firm's records related to defendant's submission of allegedly backdated invoice to state regulators).  As discussed above, the evidence reflects that Edelman and Plaintiff

were exchanging versions of this file on the day that Plaintiff created it, and thus Harvard has established "a reasonable basis to believe that the client used the lawyer's services to foster a crime or fraud." *Cozy,* 2023 WL 12175356, at *3. Any privilege or work product protection over these communications has therefore been waived.

## **CONCLUSION**

For the reasons set forth above, the Court should grant Harvard's motion to compel non-privileged testimony and award Harvard its expenses incurred in making this motion.

Dated: May 26, 2026                                  Respectfully submitted,


                                                     /s/ Douglas E. Brayley

                                                     Douglas E. Brayley (BBO# 674478)
                                                     Jenny K. Cooper (BBO# 646860)
                                                     Elena W. Davis (BBO# 695956)
                                                     ROPES & GRAY LLP
                                                     800 Boylston Street
                                                     Boston, MA 02199-3600
                                                     Tel: (617) 951-7000
                                                     Douglas.Brayley@ropesgray.com
                                                     Jenny.Cooper@ropesgray.com
                                                     Elena.Davis@ropesgray.com

                                                     Laura G. Hoey (BBO# 650643)
                                                     ROPES & GRAY LLP
                                                     191 North Wacker Drive
                                                     32nd Floor
                                                     Chicago, IL 60606
                                                     Telephone: (312) 845-1200
                                                     Laura.Hoey@ropesgray.com

                                                     *Attorneys for Defendant President and Fellows of Harvard College*

18

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2026, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: May 26, 2026

*/s/ Elena W. Davis*
Elena W. Davis