UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FRANCESCA GINO,

     Plaintiff,

         v.

PRESIDENTS AND FELLOWS OF HARVARD COLLEGE, SRIKANT DATAR, JOHN DOES 1-10, AND JANE DOES 1-10,

     Defendants.

Civil Action No. 1:23-cv-11775-MJJ

## PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL "NON-PRIVILEGED TESTIMONY"

The instant motion rests on the false—and completely unsupported—premise that someone "created a backdated file to fabricate supposedly exculpatory evidence and overwrote the original data file in order to destroy it." Motion at 1. Defendants offer no actual evidence in support of this outlandish claim. Indeed, the declaration they submit from their purported expert says nothing about any files being backdated and only asserts in conclusory fashion that he believes the file at issue contains unspecified "falsified data." Ackert Decl. ¶¶ 8-12. Moreover, as Defendants tacitly admit in their brief, no evidence was actually "destroyed." The file that was allegedly overwritten in 2023 had already been preserved at the outset of Harvard's internal investigation in 2021, and it remains safe and sound to this day.

Unfortunately, Defendants' lack of evidence has not deterred them from throwing significant mud. And that mud is conveniently directed at a person who is 3,000 miles away and unable to defend himself before this Court—Attorney Benjamin Edelman.

The aspersions against Attorney Edelman are unwarranted, unfounded and fundamentally unfair. He was deposed in his home state of Washington,[1] and pursuant to Fed. R. Civ. P. 45, any motion seeking to compel additional testimony from him was required to be brought in the Western District of Washington. Creative Machining & Molding Corp. v. CRC Polymer Sys., Inc., 2018 WL 1440320, at *2 (D. Mass. Mar. 22, 2018) (noting that motion to compel should have been filed in district where deposition would have occurred); Hammer v. City of Sun Valley, 2019 WL 958360, at *5-6 (D. Idaho Feb. 26, 2019) (applying the rule in the context of a privilege dispute). As Defendants failed to do so, the instant motion must be summarily denied on that basis alone.[2]

But even if the Court were to address the merits, Defendants' motion must be denied. The claims of privilege and work product with respect to Attorney Edelman's involvement in this matter are amply supported by the record, there was no waiver, and there is absolutely no basis for application of the crime-fraud exception.

## I.    FACTUAL BACKGROUND

Mr. Edelman is an attorney. See Edelman Tr. (attached as Exhibit B), pp. 23-24. His primary professional activity is the practice of law. Id. Mr. Edelman agreed to represent Professor Gino in this matter in June of 2023, shortly after Harvard leaked the outcome of its "investigation" to a group of bloggers known as Data Colada. Gino Aff. ¶ 6. Their posts ignited a public firestorm that impacted Professor Gino in countless ways, including cancellation of lucrative contracts and a death threat from an unknown individual. Id.

---

[1] A true and accurate copy of the subpoena is attached as Exhibit A.

[2] While Defendants assert in passing that they are also seeking to compel testimony from Professor Gino and her husband, Greg Burd, Defendants do not identify what testimony is being sought from them, or on what basis Defendants' claim it has been improperly withheld. Accordingly, any such claim has been waived.

Professor Gino retained Mr. Edelman because he is an attorney. Id. ¶ 7. And all of the advice and counsel she has sought from him over the past three years has been of a legal nature. Id. Given the complexity of Professor Gino's situation, this advice has touched upon numerous subjects, including the content of public statements; the analysis of forensic evidence; and overall strategy for vindicating Professor Gino's legal rights. Id. ¶ 8. But in all instances, Professor Gino has sought Mr. Edelman's advice on matters primarily because of his legal training and acumen. Id.

Defendants' suggestion that Mr. Edelman may have assisted Professor Gino in data fabrication and evidence destruction is completely false. Id. ¶ 2. Neither Professor Gino, nor anyone acting on her behalf, created a backdated file to fabricate evidence. Id. Nor did Professor Gino, or anyone acting on her behalf, overwrite any file data in an effort to destroy evidence. Id.

The so-called "July 16 OG" file is a genuine file that Professor Gino found in or about the summer of 2023 when searching through materials that had been stored in her former office at Harvard. Id. ¶ 3. Further, Defendants claim that Professor Gino placed a file on her Harvard laptop in September 2023 to destroy existing evidence and fabricate new evidence simply makes no sense. Id. ¶ 4. As of September 2023, Defendants had led Professor Gino to believe that Harvard made a forensic image of her laptop in 2021, when it "sequestered" data at the outset of Harvard's purported investigation. Id. As such, Professor Gino believed that Harvard already possessed every file from her computer, and it would be impossible for her to either destroy or fabricate any evidence on that device. Id.

3

## II.    ARGUMENT

A.  Defendants Brought Their Motion in the Wrong Court.

Rule 45 requires that any motion to compel deposition testimony of a non-party witness be filed in the "court for the district where compliance is required." Creative Machining & Molding Corp. v. CRC Polymer Sys., Inc., 2018 WL 1440320, at *2 (D. Mass. Mar. 22, 2018). Rule 37 contains the same requirement. Fed. R. Civ. P. 37(a)(2) ("A motion for an order to a nonparty must be made in the court where discovery is or will be taken."). The purpose of this rule is the protection of non-parties. See Adv. Comm. Notes to 2013 Amend. to Rule 45.

As reflected in the subpoena attached as Exhibit A, Mr. Edelman was subpoenaed to testify in Seattle, Washington. Thus, the Western District of Washington is the "the district where compliance is required," and the Rules required that the motion be filed in that Court.

While Defendants may argue that this case presents a unique circumstance, as the dispute concerns Professor Gino's claim of privilege, that distinction is neither unique nor material. Hammer v. City of Sun Valley, 2019 WL 958360, at *5-6 (D. Idaho Feb. 26, 2019) (applying the rule in the context of a privilege dispute). Indeed, Rule 45 expressly contemplates that privilege disputes will be determined by "the court for the district where compliance is required." See Fed. R. Civ. P. 45(e)(2)(B). And while the Rule contemplates that there might be instances where a different court should ultimately determine the dispute, the authority to make such an exception is expressly reserved to "the court where compliance is required." Fed. R. Civ. P. 45(f) ("When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances.").

Accordingly, the instant motion must be denied.

B. Plaintiff's Communications with Attorney Edelman Are Protected by The Attorney Client <u>Privilege and Work Product Doctrine.</u>

"[T]he attorney-client privilege is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observations of law and the administration of justice." <u>Swidler & Berlin v. United States</u>, 524 U.S. 399, 403 (1998). While a communication must concern the provision of <u>legal</u> advice to fall within the scope of the privilege, legal advice can be given on essentially any subject matter. <u>See</u> <u>id.</u> at 407 ("Clients consult attorneys for a wide variety of reasons.").

As confirmed in the accompanying Affidavit of Professor Gino, all of the advice and counsel that she sought from Attorney Edelman was of a legal nature. Gino Aff. ¶ 7. She retained Attorney Edelman specifically because he is a lawyer, and she sought his advice on matters primarily because of his legal acumen and training. <u>Id.</u> ¶ 8. While his advice touched upon numerous different subjects, including the content of Professor Gino's planned public statements, that in no way suggests that Mr. Edelman was serving in some capacity other than lawyer. Again, "Clients consult attorneys for a wide variety of reasons," and advice concerning the content and potential ramifications of public statements is a subject on which clients can—and often should— get legal advice from a lawyer.

The advice and counsel that Professor Gino sought from Attorney Edelman on the "topics" at issue here all fall squarely within the scope of "legal advice:"

- With respect to Professor Gino's website, Mr. Edelman's counsel was appropriately sought for the legal ramifications of her statements, all of which were being crafted in anticipation of Professor Gino's pending lawsuit with Harvard. Gino Aff. ¶ 8(a).

- With respect to any communications concerning the "July 16 OG" file, the Gino Affidavit confirms that all of the materials she provided to Mr. Edelman, or

otherwise provided him access to, were for the purpose of facilitating his rendering of legal advice. Id. ¶ 8(b) ("As a lawyer, and particularly as a lawyer with some specialized knowledge in forensic matters, I sought his advice and counsel concerning the strengths and weaknesses of various pieces of evidence.").

- With respect to Attorney Edelman's "modification of the content or metadata of files on any of Plaintiff's devices," the Gino Affidavit demonstrates that one of the ways in which Mr. Edelman communicated his legal advice to Professor Gino was by redlining and adding comments to documents. Id. ¶ 8(c). Part of the legal analysis also included examining allegations made in the Data Colada blog about how different portions of an excel spreadsheet may have been modified, and what evidence of those modifications could be found in the file metadata. Id. Accordingly, any "modification" that he made of any files was for the purpose of rendering legal advice. Id.

- Lastly, with respect to the alleged subject of Attorney Edelman's "involvement with the backdating of the 2023 Cover-Up File," the Gino Affidavit confirms that this "simply never happened." Id. ¶ 8(d).

In addition to the attorney-client privilege, the work product doctrine also prohibits Defendants from obtaining discovery concerning the work performed by Attorney Edelman in this matter. The work product doctrine protects (1) documents or other things, (2) prepared in anticipation of litigation, (3) by or for a party or a party's representative. See Fed. R. Civ. P. 26(b)(3).

To determine whether materials have been prepared "in anticipation of litigation," the First Circuit follows the "because of" standard described by the Second Circuit Court of Appeals

6

in United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir.1998). See State of Maine v. U.S. Dep't of Interior, 298 F.3d 60, 68 (1st Cir. 2002) ("we therefore agree with the formulation of the work-product rule adopted in Adlman"). Under the "because of" standard, material need not have been created "primarily" for litigation to constitute work product. Id. Instead, the inquiry focuses on whether "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." Id.

Applying that standard here, the record plainly demonstrates that Attorney Edelman's advice was being provided because of the prospect of litigation. As recounted in the Gino Affidavit, the public statements on which Attorney Edelman provided advice "were being crafted in anticipation of her pending lawsuit with Harvard." Gino Affidavit ¶ 8(a). Likewise, the materials that she provided to Mr. Edelman, or otherwise provided him access to, were for the purpose of "obtaining advice and counsel concerning the strengths and weaknesses of various pieces of evidence." Id. ¶ 8(b). And any "modifications" performed by Attorney Edelman— which including redlining and adding comments—were the means by which Mr. Edelman communicated his legal advice to Professor Gino concerning these materials. Id. ¶ 8(c).

For all of these reasons, the record demonstrates that Attorney Edelman's communications with Professor Gino on these topics, as well as the work he performed to provide that advice (and the knowledge he gained for that work), is protected from discovery by both the attorney client privilege and work product doctrine.

7

C. Defendant's Waiver Argument Does not Provide a Basis for Compelling Additional Testimony from Attorney Edelman

In assessing Defendants' "waiver" argument, it is important to note the context in which this argument is being made. This is a motion to compel Attorney Edelman to answer certain questions that he declined to answer at his deposition based on Professor Gino's assertions of privilege and work product protection. Thus, to succeed on their waiver argument, it is not enough to simply show that there was waiver of privilege with respect to a particular communication—Defendants must connect that waiver of privilege to the specific question that Attorney Edelman declined to answer.

Defendants have not, and cannot, do so. Instead, Defendants are implicitly asking the Court to find that discrete disclosures made to non-attorneys has resulted in a broad subject matter waiver that essentially opens the floodgates to invading the attorney-client privilege. But the facts here fall far short of meeting the high bar in this circuit for establishing such a waiver.

To begin, a subject matter waiver can only exist when: (1) there was an initial intentional disclosure; (2) the disclosed and undisclosed communications concern the same subject matter; and (3) the undisclosed communications ought in fairness to be considered along with the disclosed communications. See Salmon v. Lang, 57 F.4th 296, 326 (1st Cir. 2022); Bear Republic Brewing Co. v. Cent. City Brewing Co., 275 F.R.D. 43, 47 (D. Mass. 2011).

It is well settled that the fairness element is only satisfied in "situations in which a party intentionally puts protected information into the litigation in a selective, misleading, and unfair manner." See, e.g., Salmon, 57 F.4th at 326–27. Indeed, the stereotypical example of such a situation would be one where a party discloses privileged communications within the litigation itself to gain an advantage, such as by testimony as to part of a privileged communication, but then seeks to protect against disclosure of other communications on the same subject matter. See In re

Keeper of Recs., 348 F.3d at 24 (noting the applicability of subject matter waiver to situation where a party offers testimony on a privileged conversation at trial or asserts an advice of counsel defense).

No such disclosure is alleged to have taken place here. Instead, Defendants argue that waiver occurred when Professor Gino disclosed privileged information to individuals that were aiding in the preparation of her claims. As there is no assertion that Professor Gino has used these "extrajudicial" disclosures to gain an unfair advantage in these proceedings, they do not support a finding of waiver. In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 24 (1st Cir. 2003) ("the extrajudicial disclosure of attorney-client communications, not thereafter used by the client to gain adversarial advantage in judicial proceedings, cannot work an implied waiver of all confidential communications on the same subject matter.").

Defendants' argument that these disclosures waived work product protection fair no better. As this Court recently observed, "disclosure of work product to a third party does not necessarily constitute waiver unless the work product was voluntarily shared with an adversary or a conduit to an adversary." Pons v. Walter Kidde Portable Equip. Inc., No. 1:25-mc-91106-JEK, 2025 WL 1424519, at *6 (D. Mass. May 16, 2025) (cleaned up) (citing cases). The disclosures at issue here were not to "an adversary or a conduit to an adversary." They were to individuals were actively supporting Professor Gino in her efforts to combat the false allegations made against her. As such, there was no waiver.

D. The Crime-Fraud Exception Does Not Apply.

Defendants also fall far short of carrying their burden to show the "crime-fraud" exception to attorney-client privilege applies. To carry their burden, Defendants must affirmatively show a reasonable basis to believe the lawyer's services were used by the client to foster a crime or fraud.

In re Grand Jury Proc., 417 F.3d 18, 23 (1st Cir. 2005). "Neither speculation nor evidence that shows only a distant likelihood of corruption is enough." Id.

Here, to begin, the conduct alleged in Defendants' papers—even if true, which it is not—likely does not rise to the level of crime or fraud. The gravamen of Defendants' argument is that Professor Gino conspired with her lawyer to make misleading statements to the public on a website. Def. Mem. at 17. But Defendants cite no authority for the notion that such conduct justifies applying the crime-fraud exception. Defamation is not fraud, and Defendants do not suggest that the crime-fraud exception is so broad as to apply to intentional torts generally. Such a reading would greatly overstretch the "narrow" exception and indeed would mean it applied to conduct that is not "fraud." See Yourga v. City of Northampton, No. CV 16-30167-MGM, 2018 WL 11584148, at *3 (D. Mass. July 9, 2018) (doubting that the exception would apply, for example, to alleged actions taken for pretextual reasons in an employment context). The conduct Defendants allege here is not comparable to the actually fraudulent conduct alleged in their cited cases, e.g., (1) misleading representations by omission to state regulators in order to avoid having to reimburse certain beneficiaries hundreds of thousands of dollars, Wachtel v. Guardian Life Ins. Co., 239 F.R.D. 376, 380 (D.N.J. 2006); (2) attempting to mislead the Patent and Trademark Office for purposes of prevailing in an anticipated patent dispute, Cozy, Inc. v. Dorel Juv. Grp., Inc., No. CV 21-10134-JGD, 2023 WL 12175356, at *1 (D. Mass. Mar. 8, 2023); and (3) committing the crime of honest services fraud, United States v. Joyce, 311 F. Supp. 3d 398, 407 (D. Mass. 2018).

But even if this purported scheme could rise to the level of "fraud," Defendants offer no evidence to support their theory. As noted above, the Ackert Declaration makes no mention of any backdating of metadata. Nor does it offer any evidence or explanation to support the conclusory

assertion that the so called "Cover Up" file contained falsified data. Defendants offer nothing more than allegations and innuendo—neither of which are sufficient to meet their burden.

To the extent Defendants assert that the crime-fraud exception covers "spoliation," their theory makes little sense under their own allegations. Defendants affirmatively state that HBS copied Plaintiff's laptop in 2021, Def. Mem. at 3, and they also contend that this previous sequestration of Plaintiff's data (in 2021) made any spoliation effort by Plaintiff in 2023 "ultimately futile." Def. Mem. at 16. It is nonsensical to suggest Plaintiff intended by her actions to "deprive Harvard of the use of the unmodified file" when Harvard cadmits it already had possession of that file and was never "deprived" of that file due to a forensic preservation, which Plaintiff was aware of, that occurred two years earlier. See Def. Mem. at 16; Plaintiff's Affidavit ¶ 4. Defendants therefore do not draw a sufficient connection between what they allege and any alleged attempt to "spoliate." Their argument on spoliation does not rise above mere speculation, even as alleged. Cf. In re Grand Jury Subpoena, 273 F. Supp. 3d 296, 303 (D. Mass. 2017) (finding that government did not raise its proffer, in support of crime-fraud exception argument, above mere speculation).

Lastly, Defendants' fraud-crime argument also fails because there is no evidence that Attorney Edelman was somehow involved in any improper scheme. While Defendants try to suggest that Attorney Edelman had access to certain files at certain times, nothing they offer supports the inference that he advised Professor Gino to engage in any nefarious conduct. They posit nothing more than guilt by association—that Professor Gino is alleged to have done something bad, and therefore her attorney must be complicit in that misconduct.

Attorney Edelman deserves better. As reflected in the bits and pieces of materials submitted by Defendants in support of their motion, Attorney Edelman's advice was above-board in all

respects. He didn't advise Professor Gino to fabricate evidence, he urged her to find it. <u>See</u> Defendants' Exhibit 4 at 13 ("The key task is to FIND devices, boot them, and see what materials they have that are relevant to the studies at issue."). Nothing in that advice suggests an intention or willingness to support fraud.

For all of these reasons, the record does not support invocation of the crime-fraud exception.

### III.    CONCLUSION

Professor Gino respectfully requests that the motion to compel be denied.

Francesca Gino

By her attorneys,

*/s/ Patrick J. Hannon*
Barbara A. Robb (BBO #639976)
Patrick Hannon (BBO #664958)
Hartley Michon Robb Hannon LLP
101 Federal Street, Suite 1810
Boston, MA 02210
brobb@hmrhlaw.com
phannon@hmrhlaw.com
P: (617) 723-8000

12