# EXHIBIT 1

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| FRANCESCA GINO, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 1:23-cv-11775-MJJ |
| ) | |
| PRESIDENT AND FELLOWS OF ) | |
| HARVARD COLLEGE, SRIKANT DATAR, ) | |
| JOHN DOES 1-10, AND JANE DOES 1-10, ) | |
| ) | |
| Defendants. ) | |

**EXPERT REPORT OF JULIAN ACKERT**

**May 27, 2026**

**TABLE OF CONTENTS**

Page

I. QUALIFICATIONS AND EXPERIENCE ........................................................................ 1

    A. **Qualifications** .................................................................................................. 1

    B. **Assignment** ..................................................................................................... 2

    C. **Materials Considered** .................................................................................... 3

    D. **Summary of Opinions** ................................................................................... 4

II. ALLEGATION 4B AND THE JULY 16 OG FILE .......................................................... 5

    A. **Timeline of Relevant Files** ........................................................................... 7

    B. **Narrative of Events Supported by Forensic Data** ..................................... 10

III. EVIDENCE OF DATA FABRICATION:  THE 2023 COVER-UP FILE AND THE JULY 16 OG FILE .................................................................................................................... 13

    A. **Document #7 – The 2023 Cover-Up File** .................................................... 13

    B. **Differences in Content and Metadata Between Document #3 and the 2023 Cover-Up File** ................................................................... 14

    C. **Metadata in the 2023 Cover-Up File Was *Manually* Backdated** ............ 16

    D. **The 2023 Cover-Up File and the USB Device** ........................................... 17

    E. **Additional Evidence Tampering** ................................................................. 23

## I.      QUALIFICATIONS AND EXPERIENCE

### A.      Qualifications

1.      I am a Senior Managing Director at iDiscovery Solutions, Inc. ("iDS"), an expert services and consulting firm that provides independent computer forensics, electronic discovery expert testimony and analysis, original authoritative studies, and strategic consulting services to the business and legal community.

2.      I have over 25 years of experience in consulting and litigation technologies that focus on computer forensics and electronic discovery.  My curriculum vitae, attached hereto as **Appendix A,** describes that experience, including all articles and testimony I have completed over the last ten years.

3.      Specifically, I have extensive experience creating and implementing preservation and collection strategies and performing computer forensics and metadata analysis on electronic data.

4.      I have performed preservation, collection, and analysis of electronic data in hundreds of matters.  The opinions I express in this report are offered within a reasonable degree of professional certainty and are based on my education, training, years of experience, and the information provided to date.

5.      My rate is $650 per hour, depending on the services provided.  My fees are not contingent on the outcome of this case.

6.      When I state "I," "Myself," or "iDS," I mean this work was done by me, or by people working at my direction and supervision within iDS.

**B.    Assignment**

7.    I have been retained by counsel for President and Fellows of Harvard College and Srikant Datar (collectively, "Harvard") to provide my impartial professional analyses of and opinions on the forensic evidence of data files and emails relating to claims brought by Plaintiff Francesca Gino ("Gino") in this litigation as well as a counterclaim brought by Harvard.

8.    Specifically, I have been asked to analyze and provide my expert opinion on the forensic evidence that relates to Harvard's counterclaim that Gino falsified and backdated a data file.  I also have analyzed forensic evidence in connection with reviewing testimony provided by Gino's forensic expert during the course of a University-level faculty-led disciplinary proceeding to determine whether Gino's tenure should be revoked (the "Third Statute Proceeding").

9.    In 2024, I was retained on behalf of Harvard Business School ("HBS") to provide my impartial forensic analyses and opinions in connection with the Third Statute Proceeding.

10.    My written testimony ("Rebuttal Third Statute Testimony")[1] was provided to the Third Statute Hearing Committee, comprised of seven tenured Harvard faculty members, on September 27, 2024, in response to the testimony of Gino's forensic expert, Michael McGowan ("McGowan").  After receiving additional forensic evidence that the Hearing Committee ordered Gino to provide, I provided a supplemental written statement on October 29, 2024 ("Supplemental Rebuttal Third Statute Testimony,"[2] and, together with the Rebuttal Third Statute Testimony, the "Third Statute Testimony").  My Third Statute

---

[1] *See* Ex. A, HARV00022577.
[2] *See* Ex. B, HARV00069707.

Testimony is attached hereto as Exhibits A and B, respectively.  In addition, I testified under oath at the hearing held in connection with the Third Statute Proceeding on November 15, 2024.

11.    My opinions are based on the available forensic evidence and may evolve based on the production of new forensic artifacts.  I reserve the right to update my report and opinions if new forensic evidence becomes available to me, if I am asked to perform additional analysis, or in response to any further submissions by Gino in this matter.

**C.    Materials Considered**

12.    I have prepared this report based on the images, data, and other evidence available to me to date.

13.    I understand that in October 2021, HBS sequestered Gino's relevant research records in connection with the research misconduct process it undertook to investigate five allegations of research misconduct against Gino (the "Allegations").[3]  As part of that sequestration process, HBS sequestered data from Gino's 2016 MacBook Pro, serial #C02T2CB6GTF1, which Gino purchased using HBS funds (the "HBS Laptop").  I have reviewed the copy of the HBS Laptop sequestered in 2021, which I will call the "Sequestered Laptop Copy."

14.    I further understand that, in January 2024, during the Third Statute Proceeding, Gino's expert McGowan created another copy of the HBS Laptop, which was provided to HBS as part of the Third Statute Proceeding.  I have reviewed this 2024 copy of the HBS Laptop, which I will call the "2024 Laptop Copy."

---

[3] Defs.' Am. Answer, Docket No. 154.

15. I have also reviewed forensic data from several of Gino's devices and data storage locations that were provided by Gino pursuant to a forensic search protocol entered into by the parties in this action.[4]

16. A complete list of the materials I have considered, which includes the materials considered in connection with my Third Statute Testimony, is included in **Appendix B.** In addition, I have relied on my education and professional experience.

### D.    Summary of Opinions

17. As I discuss in detail in the remainder of this report and attached exhibits, I have formed the following opinions:[5]

18. First, McGowan's expert statement submitted in the Third Statute Proceeding provides no forensic evidence to support Gino's various defenses to the Allegations at issue in this litigation and obfuscates inconvenient forensic details that undermine his criticisms of the sequestration process undertaken by HBS. The bases for this opinion are set forth in my Third Statute Testimony.[6]

19. Second, I have found significant forensic evidence that supports the opinions of Professor Jeremy Freese (set forth both in Prof. Freese's expert testimony submitted in the Third Statute Proceeding and his Expert Report dated May 27, 2026, submitted in this action) that there were modifications to the data at issue in connection with the Allegations and that those modifications were made by someone with access to Gino's computers,

---

[4] Forensic Search Protocol (March 5, 2026).
[5] Unless already defined, capitalized terms in this subsection are defined in the main body of this report.
[6] Exs. A and B.

accounts, and passwords. The bases for this opinion are set forth in my Third Statute Testimony.[7]

20.    Third, additional forensic evidence further establishes my prior opinion that, after the HBS investigation had concluded and, importantly, *after* Gino filed this litigation, Gino or someone using her devices, accounts, and passwords falsified and backdated a key data file relevant to Allegation 4b, and placed the backdated file on her HBS Laptop, overwriting a pre-existing version of this key data file. Forensic evidence obtained in this litigation further establishes that, shortly after overwriting the key data file described above, Gino uploaded to her Google Drive a second copy of the key data file that was similarly backdated, this time to reflect metadata that matched the metadata of a file Gino later claimed on her website to have found. I discuss the bases for this opinion in detail in the remainder of this report.

## II.    ALLEGATION 4B AND THE JULY 16 OG FILE

21.    I understand that Harvard has filed a counterclaim in this case alleging that Gino defamed Harvard by making certain false statements.[8] I understand that Harvard alleges that, in September 2023, after Gino sued Harvard, she launched a website about her case (francesca-v-harvard.org). There, Gino claimed that she possessed another version of the data for Allegation 4b that Harvard had neglected in its investigation, and which would have weighed against a finding that she committed research misconduct. She referred to this on her website as the "July 16 OG File."[9]

---

[7] *Id.*
[8] *See* Docket No. 154 ("Counterclaim").
[9] *Id.* at 139–41.

22. Harvard claims that the "July 16 OG File" is not a genuine file, but instead a file that Gino attempted to fabricate after the HBS research misconduct process concluded, and after Gino filed this litigation.[10]  Harvard claims that, upon receiving a copy of the HBS Laptop during the Third Statute Proceeding, it discovered a key data file relevant to Allegation 4b that had not been on the copy of the same laptop that was sequestered by HBS at the beginning of the research misconduct process.[11]  Harvard calls this file the "2023 Cover-Up File."  Harvard further asserts that the 2023 Cover-Up File contained the altered data used in the published paper, and gave the appearance of a raw data file from July 2010, when the study in question was conducted.[12]  In other words, if the 2023 Cover-Up File were genuine, it would appear to support Gino's claim that she was not responsible for the falsified data in the study underlying Allegation 4b.

23. But Harvard claims that the 2023 Cover-Up File is not genuine because forensic analysis showed that this file first was added to the HBS Laptop in September 2023 (shortly before Gino made statements about the "July 16 OG File" on her website), and also showed that certain metadata of the file were backdated manually to make it appear as though the file last was modified in July 2010.[13]  Accordingly, Harvard asserts, the 2023 Cover-Up File "represents an abortive attempt by [Gino] to intentionally manufacture evidence that would appear to exonerate her."[14]

24. Based on my review of the available forensic images and data files relevant to this claim, I have formed the opinion that: (i) on or prior to September 23, 2023, Gino or someone

---

[10] *Id*.
[11] *Id*. at 158–61.
[12] *Id*.
[13] *Id*. at 141.
[14] *Id.* at 160.

using her devices, accounts, and passwords falsified and manually backdated the 2023 Cover-Up File so as to appear to match the metadata of an original data file for Allegation 4b; and (ii) on September 23, 2023, Gino or someone using her devices, accounts and passwords placed the backdated 2023 Cover-Up File on her HBS Laptop, overwriting the original data file.  I have further formed the opinion that, after this overwriting occurred, Gino or someone using her devices, accounts, and passwords uploaded to Gino's Google Drive another copy of the 2023 Cover-Up File that was manually backdated so as to appear to have the metadata of the "July 16 OG File" that Gino described on her website, claiming that Harvard had overlooked it during its investigation.

### A.      Timeline of Relevant Files

25.    My analysis begins with six key files relevant to Allegation 4b.  I present and number them here (**Figure 1**) and will reference them by number or name as necessary:



Figure 1: This is a graphical representation of six key files I reviewed, as further detailed below. The green box indicates data that originated from Jennifer Fink and were emailed by Fink to Gino. The red box indicates data found on Gino's devices and accounts.

7

26.    **Document #1 (July 13, 2010):**  "Taxstudy.xlsx," a file attached to an email sent from Jennifer Fink to Gino on July 13, 2010 at 5:50 p.m.[15]  The file contains raw data[16] from 50 participants, terse column headings (for example, "CS1", "CS2", "1", "2", *etc.*), and no Excel formulae.  According to Ms. Fink's email, the file contains the data from the initial day of the experiment at issue in Allegation 4b.[17]

27.    **Document #2 (July 16, 2010):**  "Taxstudy.xlsx," a file attached to an email sent from Ms. Fink to Gino on July 16, 2010 at 4:57 p.m.[18]  This file contains raw data from 98 participants, terse column headings, and no Excel formulae.  According to Ms. Fink's testimony to the Investigation Committee, July 16, 2010 is the date on which data collection for the experiment at issue in Allegation 4b was completed.[19]

28.    **Document #3 (July 17, 2010):**  "Taxstudy.xlsx," a file on the Sequestered Laptop Copy of the HBS Laptop but not on the 2024 Laptop Copy.  This file is an exact copy[20] of Document #2.  File system Created Date and Modified Date metadata reflect that the file was saved at 6:43:30 p.m. on July 17 from the attachment to Ms. Fink's July 16 email.

29.    **Document #4 (July 18, 2010):**  "Tax Study summary of results 2010-07-18.docx," a file saved in a Microsoft Word document and attached to an email from Gino to Max Bazerman, Lisu Shu, and Mihir Desai. This file contains an analysis that summarizes

---

[15] *See* HARV00042956.  Unless otherwise noted herein, all times are provided in Eastern Standard Time.  I understand that, in July 2010, Ms. Fink was a lab manager at the University of North Carolina whose duties included running experiments for Gino.  *Id*.

[16] I am using "raw data" to represent the Study 1 data (Study 1 is the study underlying Allegation 4b) that was entered by Jennifer Fink into an Excel spreadsheet with the file name "Taxstudy.xlsx".  Jennifer Fink did not include Excel formulae in the raw data.

[17] *See* HARV00066756, ¶ 395(2); *see also* HARV00042956.

[18] *See* HARV00042947–48.

[19] HARV00072139 at -147.

[20] Exact copy by MD5 hash value.  MD5 Hash values are akin to digital fingerprints for electronic files.

results of the experiment at issue in Allegation 4b based on statistics reflecting 101 participants and data that are different from the raw data in Documents #1, #2, and #3 (which I will call the "modified data").[21]  Application metadata reflects that the analysis was last saved at 4:21 p.m., and Gino's email was sent at 4:30 p.m.[22]

30.  **Document #5 (July 27, 2010):**  "Taxstudy.xlsx," a file attached to a July 27, 2010 email from Ms. Fink to Gino.  The file contains the same raw data from 98 participants as in Document #2, and additionally contains raw data from 28 participants in connection with another study that was eventually published in the same paper.  The file also contains terse column headings and no Excel formulae.[23] These attributes are consistent with Document #5 being a later-saved version of Document #2.

31.  **Document #6 (July 18, 2010):**[24]  "Tax Study STUDY 1 2010-07-13.xlsx,"[25] a file on both the Sequestered Laptop Copy and the 2024 Laptop Copy of the HBS Laptop.  The file contains 101 participants and modified data.  The file has Creation Date application metadata of July 13, 2010, which ties it back to the *first* "Taxstudy.xlsx" file created by Fink (Document #1).  The Last Author application metadata is "Francesca  Gino" (two spaces between "Francesca" and "Gino").

---

[21] *See* HARV00045218.  I am using "modified data" to represent alterations made to the raw data that Jennifer Fink sent and which underlie the published study.  Those alterations include additional participants, modified data values, and Excel formulae.

[22] *See* HARV00074471.

[23] *See* HARV00042949.

[24] The Created Date file system metadata for Document #6 is November 13, 2011.  For this reason, I have sequenced it after Document #5.  However, as explained below in paragraphs 34 through 38, based on the forensic evidence, it is my opinion that this file was saved on July 18, 2010, and that this date is the relevant one for purposes of this report.

[25] *See* HARV00045248–49.

### B.    Narrative of Events Supported by Forensic Data

#### 1.  Documents #1, #2, #3, and #4

32.    On July 13, 2010, while the study underlying Allegation 4b was still in progress, Ms. Fink emailed Gino attaching a spreadsheet with 50 participants and raw data (Document #1). On July 16, 2010, after the study was completed, Gino received another email from Ms. Fink attaching a spreadsheet with 98 participants (the same first 50 participants from Document #1, along with 48 more), and this spreadsheet again contained raw data (Document #2).  Gino then saved Ms. Fink's attachment (Document #3) to her laptop on Saturday July 17, 2010 at 6:43:30 p.m.  She then issued her draft analysis reflecting 101 participants and statistics derived from modified data (Document #4) on Sunday July 18, 2010 at 4:30:33 p.m., within 22 hours of saving Fink's spreadsheet to her computer.  Thus, during that period, the forensic data indicates that Gino opened Document #3 and edited as follows: (i) added 3 participants, (ii) modified values, and (iii) added Excel formulae.[26] Gino then saved the file as Document #6 and calculated the preliminary results for her analysis.[27]

#### 2.  Document #5

33.    My opinion is that Ms. Fink's email and attachment (Document #5), sent on July 27, 2010 at 7:26:55 p.m., show that Ms. Fink was still working with the raw (*i.e.*, unmodified, with terse columns and no Excel formulae) data after July 18, 2010.  If Ms. Fink had participated in a modification of the raw data for Gino's July 18, 2010 draft write-up, it is implausible

---

[26] *See* HARV00069595 at -9689–706.

[27] *See* HARV00045248–49.  Freese has testified that this file contains the data underlying the published study.  Freese also testified that the results Gino sent on July 18, 2010 were based on the modified data in this file.  Therefore, this modified data must have existed on July 18, 2010 before Gino sent Document #4.  *See* HARV00069595 at -9689–706.

that she would continue using the raw data or not have markings in her spreadsheet reflecting changes to the raw data, which she does not.  Notably, none of the Fink email attachments (Documents #1, #2, or #5) contain the same participant count seen in Documents #4 and #6; nor, importantly, do they contain formulae, as does Document #6; nor do they contain the modified data, as present in Document #4 and Document #6, that eventually were used in the published paper.

### 3.  Document #6

34.   The metadata of Document #6 reveal additional details about how Document #6 fits into the sequence of events.

35.   **Figure 2** below depicts a graphical representation of the metadata for Document #6.  There are two types of metadata for a document—the file system metadata (blue box) and the application metadata (green box).



Figure 2:  File system and application metadata for Document #6.

11

36.    The Created Date application metadata for Document #6 (see the green box in **Figure 2** above) is July 13, 2010 10:39 a.m.  The Created Date application metadata provides the date that the file was first created on a computer.  In this case, that would be when Ms. Fink created the *first* "Taxstudy.xlsx" file on July 13, 2010, presumably on her computer as the original Author application metadata is "Jennifer Fink."

37.    The Created Date file system metadata for Document #6 (see the blue box in **Figure 2** above) is November 13, 2011.  This 2011 date has nothing to do with the timeline of events in July 2010, and does not undermine the conclusion below that the modified data in this file existed as of July 18, 2010.  The Created Date file system metadata provides the date that the file first existed on the computer in use by Gino in November 2011, which I understand to be a ███████████████████████████████.[28]  The data migration process from the laptop she used in July 2010 to the laptop used in November 2011 did not preserve Created Date file system metadata.[29]

38.    Based on the Created Date application metadata and the Created Date file system metadata, combined with the words "Tax Study" and "2010-07-13" in the file name, it is my opinion to a reasonable degree of forensic certainty that:

- Document #6 is a derivative of Document #3;

- Gino, during the 22-hour window mentioned above, opened Document #3,

---

[28] *See* GINO_000351.

[29] The 2017 Date Added metadata also has nothing to do with the timeline of events in July 2010. The HBS Laptop was acquired by Gino in February 2017.  Because the Date Added metadata of this file, February 16, 2017, is identical to the date added metadata of thousands of other files on the HBS Laptop, all of which have retained Created Date file system metadata that predates February 16, 2017, I can conclude to a reasonable degree of forensic certainty that some type of data migration process was used to copy data from the computer in use by Gino in November 2011 to the HBS Laptop on February 16, 2017, and that that data migration process preserved the original Created Date file system metadata of the migrated files.

added participants and modified values as noted above, and re-saved the document as Document #6 on July 18, 2010; and

- Document #6 was later migrated to a Gino computer in 2011, and then again to the HBS Laptop on February 16, 2017.

## III. EVIDENCE OF DATA FABRICATION: THE 2023 COVER-UP FILE AND THE JULY 16 OG FILE

39. In addition to the six key files described above, I identified a seventh document (Document #7, or the "2023 Cover-Up File"). Unlike the six key files, my analysis of the 2023 Cover-Up File shows both evidence of metadata backdating and evidence of content alterations, both of which constitute evidence deletion, evidence fabrication, and data obfuscation.

### A. Document #7 – The 2023 Cover-Up File

40. **Figure 3** is a visual representation of how Document #7 interacts with the six key files described above.



Figure 3: This is a graphical representation of six key files I reviewed, along with Document #7. The green box indicates data that originated from Jennifer Fink and were emailed to Gino. The red box indicates data found on Gino's devices and accounts.

41.    I identified Document #7 by comparing (i) the folder structure and metadata of files on the HBS Laptop as preserved in the Sequestered Laptop Copy, saved in 2021, with (ii) the folder structure and metadata of files on the HBS Laptop preserved in the 2024 Laptop Copy, saved in 2024.  In other words, in examining the later-made 2024 Laptop Copy, I identified a new file (Document #7) that was in the exact place where Document #3 *should* have been.  The relevant file directory in both the Sequestered Laptop Copy and 2024 Laptop Copy is "/Users/fgino/Documents/Work In Progress/Max Bazerman/Tax study/".  Like Document #3, the file name of Document #7 is "Taxstudy.xlsx."  Going forward, I will refer to Document #7 as the "2023 Cover-Up File."

**B.    Differences in Content and Metadata Between Document #3 and the 2023 Cover-Up File**

42.    As to content, a review of the two files reveals stark differences.  Document #3 has 98 participants and raw data, but the 2023 Cover-Up File has 101 participants, the modified data from Gino's July 18, 2010 analysis (Document #4 and Document #6), and Excel formulae, while retaining the terse column headings from the version emailed by Ms. Fink on July 16 (Document #2).

43.    The metadata of the two files are also different.  In ordinary circumstances, metadata for files will change when a user accesses those files and makes changes to them.  Thus, it is to be expected that two copies of the same device—created more than two years apart—will have differences in the metadata for particular files that have been accessed and modified.  It is also to be expected that any differences in the metadata arising from normal access and use will result in revised metadata that is *later in time* than that preserved in the earlier image.

14

44.    However, when completing my review of the directory at /Users/fgino/Documents/Work In Progress/Max Bazerman/Tax study/, I found that the file system Date Modified metadata for the 2023 Cover-Up File in the 2024 Laptop Copy *predated* the metadata for Document #3 in the Sequestered Laptop Copy by 30 seconds (**Figure 4,** below).



Figure 4: September 23, 2023 Metadata and Content Alteration to *Taxstudy.xlsx*

45.    Microsoft Office application metadata for the 2023 Cover-Up File, which indicate the file was Last Saved on September 23, 2023, show that the file system Date Modified data have been altered.  It is highly irregular that the 2023 Cover-Up File appears to be last saved and added to the HBS Laptop on September 23, 2023, yet still reflects its original file system Date Modified metadata from 13 years earlier, let alone also shows a difference of 30 seconds (see yellow highlighting in **Figure 4** above) when compared to Document #3.

15

### C.    Metadata in the 2023 Cover-Up File Was *Manually* Backdated

46.    The file system Date Modified metadata for the 2023 Cover-Up File was manually backdated.  To backdate a document's file system Date Modified metadata, a user cannot perform this action on the document itself (*e.g.*, right clicking and accessing document properties), nor can a user backdate file system Date Modified metadata through ordinary use of a file—*e.g.*, opening, editing, saving, etc.[30]  Instead, a user would need to execute multiple steps:   (1) choose a separate application or program; (2) run that program; (3) direct that program to the document; (4) identify the specific metadata to be altered, in this case the file system Date Modified metadata; (5) enter the new file system Date Modified value in the program; and (6) execute a command to alter the metadata.  It is impossible for a user to backdate file system Date Modified metadata by mistake.

47.    Based on my professional experience and familiarity with the Mac operating system, and because Terminal both exists and had been previously used on Gino's HBS Laptop, it is likely that the metadata of the 2023 Cover-Up File were altered using Terminal.  Terminal is a built-in utility included in Mac OSX, which allows knowledgeable users (who can find the application in Mac system utility folders) to execute command-line prompts to accomplish all sorts of tasks, *including modifying metadata*.  The difference of 30 seconds between the Date Modified Times for Document #3 and the 2023 Cover-Up File is consistent with using Terminal to modify the 2023 Cover-Up File to appear to have the same file system Date Modified of Document #3, but failing to specify an optional seconds value.  In those circumstances, as appears to have happened here, the relevant Terminal command would default the Modified Date seconds value to 00 (that is, to 6:43:00 p.m.).

---

[30] Gino Dep. Tr. 210:3–211:4.

48.    Thus, there is forensic evidence of two separate fabrications.  First, the difference in content between Document #3 and the 2023 Cover-Up File shows an effort to create an altered dataset that appears to be an intermediate step between Document #2 (when Ms. Fink sent the complete set of raw data to Gino) and the modified data underlying the analysis Gino provided to her collaborators in Document #4 and that is first reflected in Document #6. Second, the altered file system Date Modified metadata attempts to give the impression that this dataset was also created or last saved at a time *between* Gino's receipt of Document # 2 from Ms. Fink on July 16 at 4:57 p.m. and transmission of Document #4, which reflects the modified data, to her co-authors on July 18 at 8:30 p.m.  Specifically, the altered file system Date Modified metadata attempts to give the impression that this dataset (containing modified data) was created and last saved on July 17, 2010, which was when Document #3 (containing raw data) was created and last saved on the HBS Laptop.

**D.    The 2023 Cover-Up File and the USB Device**

49.    After I determined that the forensic features of the 2023 Cover-Up File were consistent with a file that had been manually fabricated and backdated, I examined the available forensic evidence to determine what I could understand about *when* and *how* the 2023 Cover-Up File came to exist on the HBS Laptop in the period between the creation of the Sequestered Laptop Copy in 2021 and the 2024 Laptop Copy in 2024.

50.    My forensic analysis of the metadata of the 2023 Cover-Up File and system logs contained on the 2024 Laptop Copy and other devices establishes that the 2023 Cover-Up File was created on another device and then placed on the HBS Laptop to replace Document #3. However, as discussed further below, because Gino failed to provide certain devices for

forensic analysis in time for such analysis to be incorporated into this report, my analysis is necessarily incomplete.

51.   While there is a gap of more than two years between the creation of the Sequestered Laptop Copy and the 2024 Laptop Copy, I have found that most of the key events occurred on September 23, 2023, and more specifically within a thirty-minute window between 5:16 p.m. and 5:46 p.m.

52.   On September 23, 2023, I see interactions (*e.g.*, open, edit, save, view, etc.) with *five* copies of the 2023 Cover Up file.  The specific interactions with Copy #1 (2023 Cover-Up File) and Copy #5 (July 16 OG File) are detailed further below (and are depicted in **Figure 5** below).

- Copy #1:  Taxstudy.xlsx.  Found on the Black USB (as defined below).  As discussed above, this copy has 101 participants, modified data, Excel formulae, backdated file system Date Modified metadata, and is referred to as the 2023 Cover-Up File.

- Copy #2: Taxstudy 1.xlsx.  Found on the Black USB.  This copy is identical to the 2023 Cover-Up File and was last accessed on September 23, 2023.

- Copy #3: Data \ Taxstudy.xlsx.  Found on the Black USB.  This copy is nearly identical to the 2023 Cover-Up File but does not have backdated file system Date Modified metadata.[31]  This copy was last saved and last accessed on September 23, 2023.

---

[31] The MD5 Hash values differ between this document and the 2023 Cover-Up File.  Based on my analysis, I see the following two differences between the two files: (i) a slight, approximately three-minute difference between Last Saved application metadata; and (ii) a slight difference in Excel formulae.

- <u>Copy #4</u>:  Taxstudy.xlsx.  Found on the Black USB.  This copy is identical to Copy #3, and was also last saved and last accessed on September 23, 2023.

- <u>Copy #5</u>:  Taxstudy.xlsx.  Found on the Gino Google Drive.  This copy is identical to the 2023 Cover-Up File, but has different backdated file system Date Modified metadata, as described in detail further below.  This is referred to as the July 16 OG File.

53.    At 5:16 p.m. on September 23, 2023, the 2023 Cover-Up File was Last Saved on another device (that is, a device other than the HBS Laptop) by Microsoft Office profile username "Gino, Francesca".[32]  The Microsoft Office profile username "Gino, Francesca" and the Unified Log records related to laptop lid opening and closing are both key pieces of evidence that establish that Gino used another device to create and backdate the 2023 Cover-Up File.

54.    When a Microsoft Office profile is set up on a device, a username is created.  The specific spelling and spacing of the profile username serves as a fingerprint within the application metadata fields Author and Last Author for documents created or modified within Microsoft programs on that device.  Importantly, the username "Gino, Francesca" is *not* associated with the HBS Laptop.  The Microsoft Office user profile for the HBS Laptop is "Francesca  Gino" (two spaces between "Francesca" and "Gino").  Thus, the 2023 Cover-Up File must have been last saved on another device with Microsoft Office user profile "Gino, Francesca."

55.    There is reason to believe that this device is a personal laptop that Gino purchased in 2023 and was using as of September 23, 2023.  Screenshots taken July 4, 2023 show that a

---

[32] Application Last Saved metadata values are derived from the login profile of the computer user.

transfer of files for user "Gino, Francesca" was made to this personal laptop on that date.[33] And, Gino informed a friend on July 30, 2023 that she was "███████████████ ███████████████████████"[34] Because Gino has failed to provide timely access to this computer in this litigation, I will refer to this personal computer as the "Undisclosed Personal Laptop."

56.    At 5:31 p.m. on September 23, 2023, the Unified Log, which the Mac operating system uses to track a number of activities on the computer, including but not limited to laptop lid open activity and laptop lid closed activity, shows that the lid to the HBS Laptop was opened for the first time on this day.

57.    At 5:32 p.m., the Unified Log shows that a USB device with serial number 21013403D7FFA005 ("DISK_IMG" or the "Black USB") was plugged into the HBS Laptop. **Figure 5** below is an excerpt from the Unified Log showing the serial number and the name of the Black USB on September 23, 2023.

---

[33] HARV00078322–26.
[34] GINO_021615 at 21681.

| File | TimeUtc | Message |
|------|---------|---------|
| 0000000000001b79.tracev3 | 2023-09-23 21:32:30.807494 | USBMSC Identifier (non-unique): 21013403D7FFA005 0x1e3d 0x2093 0x100, 2 |
| 0000000000001b79.tracev3 | 2023-09-23 21:32:35.201752 | Pruning stale results for (    "<CacheDeleteDaemonVolume> at: / System/Volumes/Data [/dev/disk1s1 : apfs] freespace: 23765712896, initialFreespace: 23765712896PRIMARY, diskRef: 0x7fdad0f181f0",    "<CacheDeleteDaemonVolume> at: / Volumes/DISK_IMG [/dev/disk2s1 : msdos] freespace: 787107840, initialFreespace: 787107840PRIMARY, diskRef: 0x7fdad0c1fb90" ) with doNotPrune list: |

Figure 5: The first record shows the serial number 21013403D7FFA005.  The second record shows the volume name "DISK_IMG."

58.    Around 18 seconds later, the 2023 Cover-Up File was copied from the Black USB to the HBS Laptop, into the directory at /Users/fgino/Documents/Work In Progress/Max Bazerman/Tax study/.  The file "Taxstudy.xlsx" that was located on the Black USB and provided to me through the forensic search protocol confirms that the 2023 Cover-Up File was on the Black USB on September 23, 2023, as that "Taxstudy.xlsx" file matches in both metadata and MD5 hash value to the 2023 Cover-Up File.

59.    Because Document #3 already existed in that directory with the exact same file name, the Mac operating system would have given the user a warning that copying in the 2023 Cover-Up File would "replace" Document #3, as well as provided an option to "keep both" versions of the file (both Document #3 and the 2023 Cover-Up File).  The user would have had to affirmatively select "replace" when placing the 2023 Cover-Up File in this location, thus choosing to destroy Document #3.

21

60. Around 4 minutes after the 2023 Cover-Up File was copied from the Black USB to the HBS Laptop, at 5:36 p.m., the Terminal utility was opened on the HBS Laptop, and a single command was entered: mdls/Users/fgino/Documents/Work\ In\ Progress/Max\ Bazerman/Tax\ study/Tax\ Study\ STUDY\ 1\ 2010-07-13.xlsx.

61. The mdls command requests that the Mac operating system list comprehensive metadata for the target file.[35]  This command sought the metadata for Document #6.  To a reasonable degree of forensic certainty, my professional interpretation of the events on September 23, 2023 is that (i) the user had the technical sophistication to access and use the Terminal utility; and (ii) the user was confirming that the file system Date Modified was later in time for Document #6 than the 2023 Cover-Up File and, thus, that the 2023 Cover-Up File appeared to be a previous version of Document #6.

62. I noted above that the forensic evidence is consistent with the content of the 2023 Cover-Up File having been modified on a different device.  However, because the 2023 Cover-Up File was on the Black USB on September 23, 2023, and the altered file system Date Modified metadata is the same on the version of the 2023 Cover-Up File on the Black USB and the 2024 Laptop Copy, I can conclude with a reasonable degree of professional certainty that the backdating of the file also took place on a device, likely the Undisclosed Personal Laptop *before* it was transferred to the HBS Laptop.[36]

63. At 5:46 p.m., the Unified Log records that the lid of the HBS Laptop was closed.  The lid of the HBS Laptop was not opened again that day.  In contrast to Gino's testimony about

---

[35] mdls is a Terminal command that lists the metadata attributes for a specific file. https://www.unix.com/man_page/osx/1/mdls/, last visited on May 21, 2026.
[36] I have not yet analyzed the Undisclosed Personal Laptop due to Gino's late production of that device.

her use of the HBS Laptop for statistical analysis after being placed on leave, during the 15 minutes of laptop activity on September 23, 2023 between 5:31 p.m. and 5:46 p.m., there is no indication that a SAS statistical analysis program (*i.e.*, SPSS) was opened, in use, displayed in the background, and/or closed.[37]

**E.    Additional Evidence Tampering**

64.    In addition to the 2023 Cover-Up File, which as defined above was modified and backdated on another device and then placed on the HBS Laptop on September 23, 2023 via the Black USB, I identified another version of the 2023 Cover-Up File in the Google Drive account for francesabgino@gmail.com.  Based on my forensic analysis described below, I will refer to this version as the "July 16 OG File."

65.    The July 16 OG File has the exact same file content as the 2023 Cover-Up File, as they both have the same MD5 Hash value. [38]  However, the July 16 OG File differs in one very important way: the file system Date Modified metadata is dated July 16, 2010 at 4:30 p.m. This is approximately one day earlier than the 2023 Cover-Up File.

66.    The Google Drive logs for francescabgino@gmail.com indicate that the Cloud Modified metadata of the July 16 OG File is July 16, 2010 at 4:30 p.m. (the Cloud Modified date is the Google Drive equivalent of the file system Date Modified that I have described earlier in my report).  Based on the Last Saved application metadata, however, the July 16 OG File was last saved on September 23, 2023 (at the exact same time as the 2023 Cover-Up File).  It is highly irregular that the July 16 OG File appears to be last saved on September 23, 2023, yet still reflects its original Cloud Modified metadata from 13 years earlier.  As

---

[37] Gino Dep. Tr. 193:20–25.
[38] MD5 Hash values are akin to digital fingerprints for electronic files.

such, I can conclude to a reasonable degree of forensic certainty that the July 16 OG File was manually backdated in a manner similar to the 2023 Cover-Up File.

67.    As such, the July 16 OG File is a *second* backdated file located on yet another data source associated with Gino.  As discussed in paragraph 46 above, it would be impossible for a user to backdate file system Date Modified metadata on just **one** file by mistake, and in this case we now have evidence of **two** separate files that have been backdated.

68.    At 8:16 p.m. on September 23, 2023, a user logged into francescabgino@gmail.com, uploaded the July 16 OG File to Google Drive, and shared it with two other Google Drive users, one of whom appears to have been Benjamin Edelman.[39]  Because Gino had closed the lid of the HBS Laptop approximately 2 1/2 hours earlier, Gino must have uploaded this file from another device, possibly the Undisclosed Personal Laptop.

69.    I understand that it was a little over a week later that Gino published her website post described above stating that HBS overlooked the July 16 OG File in its investigation.[40]  In the website post, Gino claims that the July 16 OG File (as she defines it) was created on July 13, 2010 at 10:39 a.m. and last modified on July 16, 2010 at 4:30 p.m.  Because the July 16 OG File has the same created and modified (but backdated) metadata, I can

---

[39] Based on my review of Gino's Google Drive Activity Logs, this is the first time she uploaded a file named "Taxstudy.xslx."

[40] HARV00043075.  There is also evidence of additional interactions with a copy of the Taxstudy.xlsx file after September 23, 2023, on yet another device.  On September 28, 2023, an identical copy of the 2023 Cover-Up File was saved on the SimpleTech USB device, with serial number 0196019921036.  This copy does not have backdated file system Date Modified metadata, and was last accessed on January 29, 2024 on an undisclosed device, possibly the Undisclosed Personal Laptop.

conclude that the July 16 OG File (as Gino defined it on her website) is the same as the July 16 OG File in my report.[41]

70.    Based on the available forensic evidence, I can conclude with a high degree of professional certainty that Gino, or someone with access to Gino's devices, accounts, and passwords, manually altered the metadata of the 2023 Cover-Up File and the July 16 OG File on a device which Gino failed to produce in time for my analysis in this report, likely the Undisclosed Personal Laptop.  I can further conclude that once Gino had manually altered the metadata of the 2023 Cover-Up File, she placed the file on the HBS Laptop, in the process irrevocably deleting Document #3 from the HBS Laptop by navigating to the directory where Document #3 was located and confirming that she wanted to overwrite and destroy that file with the 2023 Cover-Up File.  Finally, after she had placed the 2023 Cover-Up File on the HBS Laptop, she then uploaded the July 16 OG File to Google Drive from another device—possibly the Undisclosed Personal Laptop—and shared it with at least one person.

---

[41] Part of this opinion is based on the testimony of Jeremy Freese regarding the substance of the 2023 Cover-Up File, which is a MD5 Hash duplicate of (*i.e.*, identical in content to) the July 16 OG File.  *See* HARV00069595 at -9696–98.

Signed on the 27th day of May 2026

Julian Ackert

# Appendix A

# JULIAN ACKERT
**Managing Director**





**iDiscovery Solutions, Inc.**

202.249.7865

jackert@idsinc.com

Profile on LinkedIn

@iDiscoveryInc

Mr. Julian Ackert, a Managing Director at iDiscovery Solutions (iDS) in Washington DC, has over 20 years of consulting and project management experience in the technology and litigation industries.

He has extensive experience with forensic data collection, computer forensic analysis, creating and implementing preservation and collection strategies, managing electronic data processing and review endeavors, analyzing complex transactional data systems, and working with large multi-national corporations to establish and develop methodologies and best practices for litigation preparedness. Mr. Ackert has written expert reports and provided testimony on the forensic preservation, acquisition, and analysis of electronic information. Additionally, he has worked on several international projects involving complex data privacy, collection, and review challenges.

Mr. Ackert is a member of The Sedona Conference, Working Group 11 (Data Security and Privacy Library) and Working Group 12 (Trade Secrets). Prior to joining iDS, he was a Principal and New York regional lead at LECG and a Manager at FTI Consulting. Mr. Ackert began his career designing, developing, and implementing Knowledge Management / Content Management applications, government middleware solutions, and E-business applications for Federal Government services at Accenture.



©2021 iDiscovery Solutions | All Rights Reserved

**SELECT CONSULTING EXPERIENCE**

- Directed a team of consultants on the identification, preservation, collection and production of structured data for an antitrust MDL.  Implemented custom preservation and collection protocols and extracted approximately 10 terabytes of structured data from proprietary client database systems for analysis and review.  Developed a structured data ESI protocol that governed the parameters of structured data productions.

- Managed a team of consultants on the analysis of 100s of millions of database records for a complex ligation in the commercial real estate industry.  Analyzed trends and patterns in the database records that assisted counsel with identifying potentially relevant employees, partner relationships, and timeframes of interest.

- Managed a team of UK and US consultants on a data preservation and email data analysis endeavor.  Established an onsite review room in the UK and worked with UK outside counsel to ensure that electronic discovery processes upheld EU data privacy laws.

- Directed a team of computer forensic consultants and contractors on forensic data preservation, backup tape recovery, email, and electronic file culling and search for approximately 100 custodians.  Established an onsite triage center at an offshore facility to handle nearly 5 terabytes of data.  Authored expert report on the methods, processes, types, and volumes of data preserved, processed, and delivered for attorney review.

- Led a data analysis engagement consisting of metadata examination on Lotus Notes database documents.  Acted as the client's Subject Matter Expert on Lotus Notes databases and authored expert testimony on the electronic discovery methods implemented during the project and subsequent project findings.

- Managed investigative team of computer forensic and complex data analysis consultants through the preservation, acquisition, and analysis of over 5 billion rows of NYSE trade data.  Analysis period covered over 5 years of transactional data focusing on the alleged fraudulent trading activity.

- Managed a data acquisition, e-file processing, and document review project in response to an SEC inquiry of over 45 custodians.  Engagement required leading a multi-city team of computer forensic professionals through the forensic acquisition, electronic data processing, and document review phase of a project with a condensed project timeline of three weeks.

- Led multi-national electronic discovery preservation and analysis team on an internal audit committee investigation of a global metallurgy company.  Engagement required managing computer forensic technicians through data preservation, forensic analysis, and automated culling of both Finnish and English enterprise email, financial data, and business documents related to the investigation.

## EDUCATION

- University of Virginia, Charlottesville, VA
- School of Engineering and Applied Sciences
- B.S. Computer Science, January 1998



info@idsinc.com  |  iDSINC.com  |  US: +1.800.813.4832  |  UK/EEA: +44 (0)20 8242 4130

©2021 iDiscovery Solutions | All Rights Reserved

## SELECT PUBLICATIONS

- "GDPR and Data Maps:  "X" Marks the Spot to Delete", Today's General Counsel, July 2018
- "5 Tips to Help Mitigate Insider Theft", Metropolitan Corporate Counsel, March 2017
- "A Practical Approach to Data Preservation and Collection", Metropolitan Corporate Counsel, May 2015
- "Big Data: The Elephant in The E-Discovery Room", Metropolitan Corporate Counsel, June 2013

## TESTIFYING EXPERIENCE

1. Trial Testimony on computer forensic analysis activities, Tony Massenburg and Lanie Nikes v. Doranna Tindle, May 2026.
2. Trial Testimony on computer forensic analysis activities, Thomas Suehr v. Proprietary Capital LLC and Craig Cohen, May 2026.
3. Declaration on computer forensic analysis activities, MyCard, Inc. d/b/a Knot v. Atomic FI, Inc., April 2026.
4. Declaration on computer forensic analysis activities, Coulson Aviation USA Inc. v. Jeffrey Cavara, April 2026.
5. Declaration on computer forensic analysis activities, Evans May Wealth, LLC v. Madeline Grace Speckman and Meridian Investment Advisors Inc., April 2026.
6. Trial Testimony on computer forensic and metadata analysis, Obsidian Financial Services, Inc. v. Richard Ray, March 2026.
7. Expert Report on computer forensic analysis activities, Donna Dickson v. Quail Creek Country Club, March 2026.
8. Declaration on computer forensic analysis activities, IJW Whisky v. David "Dukie" Morduchowitz, March 2026.
9. Declaration on forensic data analysis activities, Fatima Shaw-McDonald v. Eye Consultants of Northern Virginia, P.C. et. al. March 2026.
10. Declaration on computer forensic analysis activities, Helen Jakovljevic v. Porfolio Recovery Associates, LLC, February 2026.
11. Expert report on forensic data analysis activities, In RE: Social Media Cases, February 2026.
12. Declaration on computer forensic analysis activities, Thomas Suehr v. Proprietary Capital LLC and Craig Cohen, January 2026.
13. Deposition on computer forensic and metadata analysis, Obsidian Financial Services, Inc. v. Richard Ray, January 2026.
14. Expert report on forensic data analysis activities, In RE: Social Media Cases, January 2026.
15. Trial Testimony on computer forensic and metadata analysis, Keystone Cooperative, Inc. v. Evolve AG LLC, Brock Frasch, December 2025.
16. Deposition on forensic data analysis activities, In RE: Social Media Cases, December 2025.
17. Trial Testimony on computer forensic and metadata analysis, Everett J. Prescott, Inc., et al., v. Timothy J. Beall, December 2025.
18. Expert report on forensic data analysis activities, In RE: Social Media Cases, November 2025.
19. Declaration on computer forensic analysis activities, Erin Daley v. Maguire Insurance Agency, Inc., November 2025.
20. Declaration on computer forensic analysis activities, State of Ohio v. Michael J. Dowling and Charles E. Jones, November 2025.
21. Declaration on computer forensic analysis activities, In re the Estate of: Marcus Alongino Tageant., October 2025.
22. Deposition on computer forensic analysis activities, Plaza Marine, Inc. v. Ankora Fuels, LLC et. al., September 2025
23. Deposition on forensic data analysis activities, In RE: Social Media Cases, August 2025.
24. Expert report on forensic data analysis activities, In RE: Social Media Cases, August 2025.
25. Declaration on computer forensic analysis activities, iC-1 Solutions, LLC et. al. v. Evan Di Sivio et. al., July 2025.
26. Expert report on forensic data analysis activities, In RE: Social Media Cases, June 2025.



©2021 iDiscovery Solutions | All Rights Reserved

27. Declaration on computer forensic analysis activities, Middesk, Inc. v. Osiris Ratings, Inc. et al., May 2025.
28. Trial Testimony on computer forensic and metadata analysis, Healthwell Foundation v. Alan Klein, et. al., May 2025
29. Declaration on computer forensic analysis activities, Middesk, Inc. v. Osiris Ratings, Inc. et al., April 2025.
30. Trial Testimony on computer forensic and metadata analysis, Pattern Energy Group v. Perillo, et. al., March 2025.
31. Trial Testimony on computer forensic and metadata analysis, Hall v. T3 Holdings Group, et al., March 2025.
32. Declaration on computer forensic analysis activities, R.R. Donnelley & Sons Company v. Richard "Chip" Sheridan, John Bussolari, and Prisma Graphics, LLC., March 2025.
33. Declaration on computer forensic analysis activities, Adam Taylor v. Uber Technologies, Inc., Raiser, LLC, Checkr, Inc., January 2025.
34. Expert Report on computer forensic and metadata analysis, DB Home Designs, LLC d/b/a EKB Kitchens v. Matthew Wilhelm, Leah Russo, Stephanie Hendricks, and Emmco Kitchens, Inc., December 2024.
35. Declaration on computer forensic analysis activities, G&P Group Inc. v. City National Bank, November 2024.
36. Trial Testimony on computer forensic and metadata analysis, Robin Greenwood, Senior Associate Dean for Faculty Development and Research v. Francesca Gino, Professor of Business Administration, November 2024.
37. Deposition on computer forensic analysis activities, Sunrgy, LLC v. SolarTek, Inc., October 2024.
38. Expert Report on computer forensic and metadata analysis, Sunrgy, LLC v. SolarTek, Inc., September 2024.
39. Expert Statement on computer forensic and metadata analysis, Robin Greenwood, Senior Associate Dean for Faculty Development and Research v. Francesca Gino, Professor of Business Administration, September 2024.
40. Expert Report on computer forensic and metadata analysis, Potomac Wave Consulting, Inc. v. Robert Harford, September, 2024.
41. Deposition on computer forensic analysis activities, Madison Joint Ventures, LLC v. Chemo Research S.L. Exeltis USA, Inc. and Sergio Sosa-Estani, July 2024.
42. Expert Report on computer forensic and metadata analysis, Maximus, Inc. v. Alyssha Holdren,  July 2024.
43. Declaration on computer forensic analysis activities, Madison Joint Ventures, LLC v. Chemo Research S.L. Exeltis USA, Inc. and Sergio Sosa-Estani, May 2024.
44. Declaration on computer forensic analysis activities, Potomac Wave Consulting, Inc. v. Robert Harford, May, 2024.
45. Declaration on forensic data analysis activities, In re: Isaac Halwani and Giselle Halwani and 274 Atlantic Isles, LLC, May 2024
46. Declaration on forensic data analysis activities, Linda Johnstone v. CrossCountryMortgage, LLC, April 2024
47. Declaration on forensic data analysis activities, In re: Isaac Halwani and Giselle Halwani and 274 Atlantic Isles, LLC, April 2024
48. Declaration on forensic data analysis activities, Finch Computing Corp. v. Joseph Cirka, March 2024
49. Declaration on computer forensic data analysis activities, Tyrone Brewer v. Pepperidge Farm, Inc., March 2024
50. Declaration on forensic data analysis activities, Maximus, Inc. v. Alyssha Holdren, March 2024
51. Declaration on ESI review and production effort, State of Maryland v. Monsanto Company, et. al., March 2024
52. Declaration on forensic data analysis activities, Linda Johnstone v. CrossCountryMortgage, LLC, March 2024
53. Declaration on ESI review and production effort, Michael Krantz, et. al. v. Regeneron Pharmaceuticals, Inc. and Sanofi Aventis US, LLC, February 2024
54. Declaration on computer forensic analysis activities, Nicholas Hall v. Steve Eakin, Robert Taylor, Scott Brown, T3 Holdings Group, LLC and Michelle Taylor, February 2024
55. Declaration on computer forensic data analysis activities, Tyrone Brewer v. Pepperidge Farm, Inc., February 2024
56. Declaration on computer forensic data analysis activities, Tyrone Brewer v. Pepperidge Farm, Inc. January 2024
57. Deposition on computer forensic analysis activities, Pacmar Technologies, LLC v. Goodsill Anderson Quinn & Stifel LLP et. al, January 2024



©2021 iDiscovery Solutions | All Rights Reserved

58. Declaration on computer forensic analysis activities, The Crème Shop, Inc. v. Sunna ("Olive") Kim, et. al., November 2023
59. Affidavit on computer forensic analysis activities, Spartan Medical Inc. v. Erik Gottschalk, November 2023
60. Declaration on computer forensic analysis activities, RF Depot Inc. v. Richard H. Pouliot and Applied Specialties, inc., August 2023
61. Declaration on computer forensic analysis activities, James Michael Richey v. Nevro Corp., July 2023
62. Declaration on computer forensic and metadata analysis, Alcon Inc. et. al. v. Hoya Corporation, et. al., June 2023
63. Declaration on forensic data analysis activities, Maria Fernanda Soto Leigue v. Everglades College, Inc. d/b/a Keiser University, May 2023
64. Declaration on computer forensic analysis activities, IOENGINE, LLC v. Roku, Inc., May 2023
65. Expert Report on computer forensic and metadata analysis, USA v. David Gerald Minkkinen, Sivaraman Sambasivam, May, 2023
66. Declaration on computer forensic analysis activities, Galderma Laboratories, L.P., v. Chad Tisckos, April 2023
67. Declaration on forensic data analysis activities, Maria Fernanda Soto Leigue v. Everglades College, Inc. d/b/a Keiser University, February 2023
68. Declaration on computer forensic analysis activities, Dollar Shave Club, Inc., and Michael O'Malley v. Edgewell Personal Care Company, et. al., November 2022
69. Declaration on computer forensic analysis activities, CACI, Inc. – Federal v. Clayton Shcilling, et. al., September 2022
70. Trial Testimony on computer forensic analysis activities, Medidata Solutions, Inc. and MDSOL Europe Limited v. Veeva Systems, Inc., July 2022
71. Declaration on ESI review and production effort, Joseph Bayer, Mary K. Bayer, and Gwendolyn Culverson v. Boehringer Ingelheim Pharmaceuticals, Inc. et. al., July 2022
72. Declaration on ESI search and production protocols, Trust-ED Solutions, LLC v. Gilbert, LLP, June 2022
73. Trial Testimony on computer forensic analysis activities, John C. Depp, II, v. Amber Laura Heard, May 2022
74. Deposition on computer forensic analysis activities, Icertis, Inc. v. Boccella, et al. May 2022
75. Expert report on computer forensic analysis activities, Icertis, Inc. v. Boccella, et al. May 2022
76. Declaration on computer forensic analysis activities, Julius Kennedy and Angela Kennedy v. Heding Truck Service Inc. et. al., April 2022
77. Deposition on computer forensic analysis activities, John C. Depp, II, v. Amber Laura Heard, April 2022
78. Expert report on computer forensic analysis activities, John C. Depp, II, v. Amber Laura Heard, April 2022
79. Supplemental expert report on forensic data analysis activities, Megan Enger and Sarah Infante. v. Thomas L. Cardella & Associates, April 2022
80. Declaration on computer forensic analysis activities, Dollar Shave Club, Inc. et. al. v. Edgewell Personal Care Company et. al., April 2022
81. Deposition on forensic data analysis activities, Megan Enger and Sarah Infante. v. Thomas L. Cardella & Associates, April 2022
82. Deposition on computer forensic analysis activities, Chi Nguyen v. City of Philadelphia, March 2022
83. Declaration on computer forensic analysis activities, BDO USA LLP v. Everglade Global Inc., February 2022
84. Deposition on computer forensic analysis activities, BDO USA LLP v. Everglade Global Inc., January 2022
85. Declaration on computer forensic analysis activities, Gilead Tenofovir Cases, JCCP No. 5043, December 2021
86. Declaration on computer forensic analysis activities, Michael David Testa, Individually and as Trustee of The M. David Testa Revocable Living Trust, Dated October 25, 2017 v. Town of Jupiter Island, December 2021
87. Expert report on forensic data analysis activities, Megan Enger and Sarah Infante. v. Thomas L. Cardella & Associates, November 2021
88. Declaration on collection and production of social media, In Re: Zantac (Ranitidine) Products Liability Litigation, November 2021
89. Declaration on computer forensic analysis activities, Chi Nguyen v. City of Philadelphia, October 2021



©2021 iDiscovery Solutions | All Rights Reserved

90. Declaration on computer forensic analysis activities, John C. Depp, II, v. Amber Laura Heard, October 2021

91. Declaration on computer forensic analysis activities, Marley R. Dominguez v. Iconiq Capital Management, LLC, October 2021

92. Declarartion on computer forensic analysis activities, Sunlight Financial LLC, and Sunlight Financial Holdings, Inc. v. Duncan Hinkle, and Sunstone Credit, Inc., August 2021

93. Declaration on ESI search and production, Gilead Tenofovir Cases, JCCP No. 5043, July 2021

94. Deposition on forensic data analysis activities, Lainhart et. al. and Doyle et. al. v. Louisville/Jefferson County Metro Government, July 2021

95. Expert report on forensic data analysis activities, Lainhart et. al. and Doyle et. al. v. Louisville/Jefferson County Metro Government, June 2021

96. Deposition on computer forensic analysis activities, Havana Docs Corporation v. Carnival Corporation d/b/a Carnival Cruise Line, June 2021

97. Declaration on computer forensic analysis activities, eHealthInsurance Services, Inc. v. Healthpiolt Technologies LLC., May 2021

98. Declaration on computer forensic analysis activities and spoliation issues, Medidata Solutions, Inc. and MDSOL Europe Limited v. Veeva Systems, Inc., April 2021

99. Declaration on computer forensic analysis activities, Havana Docs Corporation v. Carnival Corporation d/b/a Carnival Cruise Line, March 2021

100. Court Testimony on computer forensic analysis activities, State of Maryland v. Darrian McAfee

101. Expert report on forensic data analysis activities, Kaelin et. al. v. Louisville/Jefferson County Metro Government, January 2021

102. Declaration on computer forensic analysis activities, Sequoia Benefits & Insurance Services DBA Sequoia Consulting Group v. Sageview Advisory Group et. al., January 2021

103. Declaration on computer forensic analysis activities, Doneyda Perez v. DirectTV Group Holdings LLC, et al., December 2020

104. Declaration on ESI search and production protocols, Trust-ED Solutions, LLC v. Gilbert, LLP, November 2020

105. Declaration on computer forensic analysis activities, Smithfield Packaged Meats Sales Corp. v. Dietz & Watson, Inc. and Chris Conrad, November 2020

106. Declaration on ESI review and production effort, Gilead Tenofovir Cases, JCCP No. 5043, August 2020

107. Declaration on collection and production of social media, Adrian Holley, et al. v. Gilead Sciences, Inc., August 2020

108. Declaration on collection and production of social media, Gilead Tenofovir Cases, JCCP No. 5043, July 2020

109. Declaration on computer forensic analysis activities, Doneyda Perez v. DirectTV Group Holdings LLC, et al., July 2020

110. Expert report on forensic data analysis activities, Smithfield Packaged Meats Sales Corp. v. Dietz & Watson, Inc. and Chris Conrad, June 2020

111. Declaration on ESI review and production effort, Adrian Holley, et al. v. Gilead Sciences, Inc., May 2020

112. Declaration on ESI production protocols, Adrian Holley, et al. v. Gilead Sciences, Inc., April 2020

113. Declaration on computer forensic analysis activities, Krista Brill v. Draeger, Inc. and Miguel Angel Armendariz, April 2020

114. Deposition on computer forensic analysis activities, Medidata Solutions, Inc. and MDSOL Europe Limited v. Veeva Systems, Inc., April 2020

115. Trial Testimony on computer forensic analysis activities, Smithfield Packaged Meats Sales Corp. v. Dietz & Watson, Inc. and Chris Conrad, March 2020

116. Declaration on computer forensic analysis activities, Jesus Jiminez v. CRC Property Management West, Inc., March 2020



©2021 iDiscovery Solutions | All Rights Reserved

117. Declaration on computer forensic analysis activities, Denver Cooley v. Solar Turbines Incorporated, February 2020

118. Supplemental expert report on forensic data analysis activities, Medidata Solutions, Inc. and MDSOL Europe Limited v. Veeva Systems, Inc., February 2020

119. Declaration on ESI data types, Anthony Robles, Individually and on Behalf of Other Persons Similarly Situated v. The Coca-Cola Company, Coca-Cola Refreshments USA, Inc., and Does 1-10, February 2020

120. Declaration on computer forensic analysis activities, Smithfield Packaged Meats Sales Corp. v. Dietz & Watson, Inc. and Chris Conrad, January 2020

121. Expert report on forensic data analysis activities, Medidata Solutions, Inc. and MDSOL Europe Limited v. Veeva Systems, Inc., January 2020

122. Declaration on ESI collection and production effort, Kristopher Lawson, Vincent McCleery, and Sean McMurran, Individually and on Behalf of Other Persons Similarly Situated v. Love's Travel Stops & Country Stores, Inc., December 2019

123. Declaration on ESI review and production effort, Sandra Wolford et. al. v. Bayer Corp. et. al., December 2019

124. Declaration on ESI systems and data recovery options, In the Matter of Certain Lithium Batteries, Battery Cells, Battery Modules, Battery Packs, Components Thereof, and Processes Thereof, October 2019

125. Trial Testimony on computer forensic analysis activities, Futrend Technology Inc. v. Microhealth LLC, et. al., October 2019

126. Supplemental expert report on forensic data analysis activities, Futrend Technology Inc. v. Microhealth LLC, et. al., October 2019

127. Declaration on collection, search, and disposition process, Strategic Delivery Solutions, LLC v. Stallion Express, LLC, September 2019

128. Expert report on forensic data analysis activities, Futrend Technology Inc. v. Microhealth LLC, et. al., July 2019

129. Declaration on social media e-Discovery, Helen McLaughlin v. Bayer Essure Inc, et. al., May 2019

130. Declaration on ESI collection and search scoping, Sandra Wolford et. al. v. Bayer Corp. et. al., May 2019

131. Declaration on computer forensic analysis activities, Employee Benefit Services of Maryland, Inc. v. Nicholas Mafale, May 2019

132. Declaration on collection activities, IQVIA Inc. et. al. v. Veeva Systems, Inc., May 2019

133. Declaration on ESI collection and search scoping, Sandra Wolford et. al. v. Bayer Corp. et. al., April 2019

134. Declaration on production activities, Synchronisys, Inc. v. DataSync, Inc. et. al., February 2019

135. Declaration on collection and production activities, Catalus Capital USVI, LLC et. al. v. The Servicemaster Company, LLC, et. al., January 2019

136. Declaration on collection and search protocols, Strategic Delivery Solutions, LLC v. Stallion Express, LLC, December 2018

137. Expert Report on computer forensic analysis activities, Quandra Speights v. The Boeing Company, December 2018

138. Affidavit on computer forensic analysis activities, Futrend Technology Inc. v. Microhealth LLC et. al., October 2018

139. Affidavit on preservation, collection and search protocols, Sarah Lankford Sprecher v. Leroy E. Myers, Jr., September 2018

140. Declaration on computer forensic analysis activities, Yifat Oren et. al, v. Stefanie Cove, et. al., August 2018

141. Trial Testimony on metadata and computer forensic analysis activities, Broadcast Sports International, LLC v. Gil Pascal, et. al., June 2018



©2021 iDiscovery Solutions | All Rights Reserved

142.         Declaration on computer forensic analysis activities, Airgas, Inc. v. The Carlyle Group, Carlyle Investment Management, LLC, and Leslie Graff, June 2018

143.         Supplemental Declaration on e-Discovery deduplication and production protocols, Helen McLaughlin v. Bayer Essure Inc, et. al., May 2018

144.         Declaration on computer forensic analysis activities, Charlotte Pinckney and Kyle Pinckney v. The Pep Boys Manny Moe & Jack O/D/B/A Pep Boys, May 2018

145.         Declaration on e-Discovery deduplication and production protocols, Helen McLaughlin v. Bayer Essure Inc, et. al., March 2018

146.         Declaration on e-Discovery deduplication and production protocols, Hannah Dorman et. al. v. Bayer, Corp, et. al., February 2018

147.         Court Testimony on computer forensic analysis activities, MRP UO Partners, LLC, et. al, v. Raymond Rahbar, Jr. et. al., October 2017 – November 2017

148.         Deposition on computer forensic analysis activities, MRP UO Partners, LLC, et. al, v. Raymond Rahbar, Jr. et. al., September 2017

149.         Declaration on computer forensic analysis activities, MRP UO Partners, LLC, et. al, v. Raymond Rahbar, Jr. et. al., August 2017

150.         Deposition on computer forensic analysis activities, Broadcast Sports International, LLC v. Gil Pascal, et. al., July 2017

151.         Declaration on computer forensic analysis activities, Meridian Imaging Solutions, Inc. et. al. v. Omni Business Solutions LLC, et. al., July 2017

152.         Declaration on computer forensic analysis activities, Yadkin Bank v. George Mason Mortgage, Inc. et. al, June 2017

153.         Declaration on computer forensic analysis activities, Nichole Baibos v. ConnectYourCare LLC, May 2017

154.         Expert report on forensic data analysis activities, Broadcast Sports International, LLC v. Gil Pascal, et. al., April 2017

155.         Declaration on preservation and collection protocols, MD Helicopters, Inc. v. Aerometals, Inc., April 2017

156.         Affidavit on computer forensic analysis activities, Yadkin Bank v. George Mason Mortgage, Inc. et. al, March, 2017

157.         Court Testimony on metadata and computer forensic analysis activities, George Mason Mortgage, Inc. v. Caliber Home Loans, Inc., February 2017

158.         Deposition on computer forensic analysis and deletion activities, Medidata Solutions, Inc. v. Michael Petrarca and Bioclinica, Inc., November 2016

159.         Expert Rebuttal Report on data breach analysis, Employment Background Investigations, Inc. v. Federal Insurance Company, October 2016

160.         Expert Report on data breach analysis, Employment Background Investigations, Inc. v. Federal Insurance Company, July 2016

161.         Affidavit on computer forensic analysis activities, Compass Systems, Inc. v. Frank D. Deaton, July 2016

162.         Affidavit on computer forensic analysis activities, Broadcast Sports International, LLC v. Gil Pascal, et. al., June 2016

163.         Affidavit on forensic analysis and data recovery, Felicia M. Barlow Clar et. al, v. Kyle C. Muehlhauser, et. al, May 2016

## SELECT SPEAKING ENGAGEMENTS AND CONFERENCES

1. Sedona Conference Working Group 11 – "Biometric Privacy Primer", October 2021
2. Sedona Conference Working Group 11 – "Artificial Intelligence (AI) model transparency: Core principles in promoting transparency of AI and algorithms", October 2019



info@idsinc.com | iDSINC.com | US: +1.800.813.4832 | UK/EEA: +44 (0)20 8242 4130

©2021 iDiscovery Solutions | All Rights Reserved

3. Sedona Conference Working Group 11 – "Data Security and Privacy Legal issues in Artificial Intelligence", March 2018
4. Webinar, Metropolitan Corporate Counsel – "Data Breach Response: Orchestrating Legal & Technical Resources to Contain & Mitigate", March 2017
5. Sedona Conference Working Group 11 – "Privacy by Design", St. Petersburg, January 2017
6. CLE, ZwillGen, Cloud Computing and Mobile Devices, November 2016
7. Sedona Conference Working Group 11 – "Privacy by Design", Seattle, August 2016
8. The Exchange (Today's General Counsel Institute) – "Strategic Use of Objections and Responses Under New Rule 34", Chicago, June 2016
9. CLE Panel, "Engaging and Managing the Presentation and Preparation of Expert Witnesses in Bankruptcy and Federal Court", May 2016
10. CLE Webinar, The Knowledge Group – "Mobile Data and BYOD: Mitigating eDiscovery and Data Breach Risks", April 2016
11. CLE Webinar, The Knowledge Group – "Mobile Privacy and Security Issues in 2015: Practical Guidance to Mitigate Data Breaches", August 2015
12. The Exchange (Today's General Counsel Institute) - "The Importance of Project and Process Management", Chicago, June 2015
13. Masters Conference - "Cloud Computing and Mobile Devices – How to Be Prepared for Litigation", Philadelphia, July 2014
14. The Exchange (Today's General Counsel Institute) - "The 'eWorkplace' and its Impact on eDiscovery", New York, July 2014
15. Masters Conference - "Discussion and Debate Over Potential Changes to the Federal Rules of Civil Procedure", Chicago, May 2014
16. Masters Conference, "Predictive Analytics and Its Effect on Big Data", Chicago, May 2014
17. Chicago Association of Litigation Support Managers (CALSM-posium), "Forensic Collection Trends Now and into the Near Future", October 2013
18. CLE, Tydings & Rosenberg LLP, "E-Discovery Primer", October 2013
19. Masters Conference, "Cloud Computing and Mobile Device Usage: Challenges They Bring to Your Litigation", July 2013
20. CLE, Williams & Connolly LLP, "Mobile Forensics for Lawyers", January 2013
21. Chicago Association of Litigation Support Managers (CALSM-posium), "How to Prepare for E-Discovery Supplementation Obligations", October 2012
22. Paraben Forensic Innovations Conference, "Analyzing Structured Data", November 2010

## PROFESSIONAL AFFILIATIONS

- The Sedona Conference, Working Group 11 (Data Security and Privacy)
- The Sedona Conference, Working Group 12 (Trade Secrets)



©2021 iDiscovery Solutions | All Rights Reserved

## Appendix B – List of Documents Considered

**Bates Stamped Documents (by Bates Begin Number)**

| | | | |
|---|---|---|---|
| HARV00021802 | HARV00071735 | HARV00074066 | HARV00074850 |
| HARV00021858 | HARV00071737 | HARV00074089 | HARV00074851 |
| HARV00021906 | HARV00071781 | HARV00074107 | HARV00074865 |
| HARV00021947 | HARV00071851 | HARV00074113 | HARV00074880 |
| HARV00022577 | HARV00071872 | HARV00074122 | HARV00074899 |
| HARV00022795 | HARV00071903 | HARV00074123 | HARV00074909 |
| HARV00022796 | HARV00071928 | HARV00074124 | HARV00074912 |
| HARV00023034 | HARV00071959 | HARV00074125 | HARV00074914 |
| HARV00024150 | HARV00072098 | HARV00074126 | HARV00074917 |
| HARV00040184 | HARV00072139 | HARV00074127 | HARV00074920 |
| HARV00042947 | HARV00072165 | HARV00074128 | HARV00074923 |
| HARV00042948 | HARV00072187 | HARV00074129 | HARV00074928 |
| HARV00042949 | HARV00072204 | HARV00074131 | HARV00074935 |
| HARV00042956 | HARV00072220 | HARV00074133 | HARV00074938 |
| HARV00043074 | HARV00072565 | HARV00074135 | HARV00074940 |
| HARV00043075 | HARV00072616 | HARV00074136 | HARV00074942 |
| HARV00043174 | HARV00072621 | HARV00074137 | HARV00074945 |
| HARV00045218 | HARV00072627 | HARV00074460 | HARV00074949 |
| HARV00045231 | HARV00072630 | HARV00074463 | HARV00074950 |
| HARV00045248 | HARV00072635 | HARV00074466 | HARV00074951 |
| HARV00045250 | HARV00072639 | HARV00074467 | HARV00074971 |
| HARV00045281 | HARV00072774 | HARV00074468 | HARV00074977 |
| HARV00046941 | HARV00072814 | HARV00074469 | HARV00075051 |
| HARV00066663 | HARV00072907 | HARV00074471 | HARV00075053 |
| HARV00066756 | HARV00072910 | HARV00074472 | HARV00075056 |
| HARV00066959 | HARV00072911 | HARV00074475 | HARV00075075 |
| HARV00068731 | HARV00072914 | HARV00074476 | HARV00075205 |
| HARV00068766 | HARV00072915 | HARV00074502 | HARV00075210 |
| HARV00068798 | HARV00072918 | HARV00074503 | HARV00075211 |

| | | | |
|---|---|---|---|
| HARV00068990 | HARV00072920 | HARV00074533 | HARV00076298 |
| HARV00069595 | HARV00072925 | HARV00074534 | HARV00076317 |
| HARV00069707 | HARV00072927 | HARV00074566 | HARV00076322 |
| HARV00069707 | HARV00072929 | HARV00074567 | HARV00078316 |
| HARV00071131 | HARV00072939 | HARV00074601 | HARV00078322 |
| HARV00071143 | HARV00072942 | HARV00074602 | HARV00078323 |
| HARV00071213 | HARV00072944 | HARV00074639 | HARV00078324 |
| HARV00071355 | HARV00072945 | HARV00074640 | HARV00078325 |
| HARV00071406 | HARV00072976 | HARV00074676 | HARV00078326 |
| HARV00071412 | HARV00072981 | HARV00074677 | FREI04734 |
| HARV00071427 | HARV00073018 | HARV00074717 | GINO_000348 |
| HARV00071438 | HARV00073019 | HARV00074731 | GINO_000351 |
| HARV00071696 | HARV00073021 | HARV00074833 | GINO_003095 |
| HARV00071709 | HARV00073042 | HARV00074841 | GINO_021615 |
| HARV00071713 | HARV00074059 | HARV00074842 | |

## Forensically-Imaged Devices & ESI Repositories

- The preservation of data identified by Gino and sequestered by HBS in the Fall of 2021

- "es01_gino-francesca_redacted" forensic image of the Harvard-issued MacBook Pro laptop bearing serial number C02T2CB6GTF1, created by Michael McGowan and provided on September 13, 2024

- Partial redacted images of:

  ° Plaintiff's Harvard-issued MacBook Pro laptop bearing the serial number C02T2CB6GTF1, provided to forensic neutral Brandon Leatha

  ° Plaintiff's black, unlabeled USB drive bearing the serial number 21013403D7FFA005, provided to forensic neutral Brandon Leatha

  ° Plaintiff's MicroCenter USB drive bearing the serial number 067308185030, provided to forensic neutral Brandon Leatha

  ° Plaintiff's SimpleTech USB drive bearing the serial number 0196019921036, provided to forensic neutral Brandon Leatha

  ° Plaintiff's Western Digital 1TB external hard drive bearing the serial number WXG2ACoAZCUK, provided to forensic neutral Brandon Leatha

  ° Plaintiff's Google Drive for francescabgino@gmail.com, provided to forensic neutral Brandon Leatha

- The following metadata reports, file listings, activity history, and other forensic artifact logs provided by forensic neutral Brandon Leatha:
  ° 2026-04-06 Defendants' Requests to B. Leatha [RESPONSES 20260428].xlsx
  ° 20328.001.Gino_v_Harvard-Goolge_Drive_Metadata_REDACTED_20260429.xlsx
  ° 4 Drive_Revisions_ES09 (replacement).pdf
  ° 2026-04-06 Defendants' Requests to B. Leatha - Apr_23_2026_Alternate_Requests [RESPONSES 20260506].xlsx
  ° I.1a.Log_of_Post_20211104_Redacted_Files.xlsx
  ° Plaintiff's Privilege Log pursuant to the Forensic Search Protocol (April 28, 2026)
- The following documents provided by forensic neutral Brandon Leatha:
  ° Five versions of the "Taxstudy" spreadsheet on the black, unlabeled USB drive bearing the serial number 21013403D7FFA005
  ° One version of the "Taxstudy" spreadsheet on Plaintiff's Google Drive for francescabgino@gmail.com

**Pleadings and Written Discovery**

- Defendants' Amended Answer to Plaintiff's Third Amended Complaint and Counterclaim, Docket. No. 154 (Jan. 29, 2026)
- Forensic Search Protocol (March 5, 2026)
- Plaintiff's Supplemental Privilege Log (April 9, 2026)

**Deposition Transcripts**

- Deposition Transcript of Francesca Gino (May 22, 2026)

**Other Publicly Available Documents and Websites**

- Francesca v Harvard, https://www.francesca-v-harvard.org
- https://www.kellogg.northwestern.edu/faculty/directory/~/media/C0B677C7482F4381A5BECD404E7F9A45.ashx (archived as of July 12, 2024 at https://web.archive.org/web/20240712130940/https://www.kellogg.northwestern.edu/faculty/directory/~/media/C0B677C7482F4381A5BECD404E7F9A45.ashx)