# EXHIBIT 14

**Exhibit 2**

**Notice of Inquiry Sent to Respondent on October 27, 2021**



# HARVARD | BUSINESS | SCHOOL

**ALAIN BONACOSSA**
RESEARCH INTEGRITY OFFICER

**Confidential**

October 27, 2021

RE: Notice of Inquiry Related to Allegations of Research Misconduct

Dear Professor Gino,

As the Research Integrity Officer for the Harvard Business School (HBS), I am writing to inform you that HBS will conduct an inquiry (Inquiry) into concerns that have been raised as to whether you falsified and/or fabricated data in the following publications (Appendix B):

> Gino, F., Kouchaki, M., & Casciaro, T. (2020). Why connect? Moral consequences of networking with a promotion or prevention focus. Journal of Personality and Social Psychology, 119(6), 1221–1238 ("*2020 JPSP Paper*")

> Gino, F., Kouchaki, M., & Galinsky, A. D. (2015). The moral virtue of authenticity: How inauthenticity produces feelings of immorality and impurity. Psychological Science, 26(7), 983–996 ("*2015 Psychological Science Paper*")

> Gino, F., & Wiltermuth, S. S. (2014). Evil genius? How dishonesty can lead to greater creativity. Psychological Science, 25(4), 973–981 ("*2014 Psychological Science Paper*")

> Shu, L. L., Mazar, N., Gino, F., Ariely, D., and Bazerman, M. H. (2012). Signing at the beginning makes ethics salient and decreases dishonest self-reports in comparison to signing at the end. Proceedings of the National Academy of Sciences of the United States of America, 109, 15197–15200 ("*2012 PNAS Paper*")

The specific allegations can be found in Appendix A to this letter. The Inquiry will be conducted in accordance with the HBS Interim Policy and Procedures for Responding to Allegations of Research Misconduct ("HBS Policy;" see Appendix C), which defines research misconduct as "fabrication, falsification, or plagiarism in proposing, performing, or reviewing research, or in reporting research results." Fabrication is defined as "making up data or results and recording or reporting them," and falsification is defined as "manipulating research materials, equipment, or processes, or changing or omitting data or results such that the research is not accurately represented in the research record." (HBS Policy, Appendix C).

The Inquiry will be carried out by a faculty committee, appointed by Dean Datar, which shall be charged with assessing whether an investigation is warranted.[1] Dean Datar has proposed to appoint the following faculty members to serve on the Inquiry Committee: Teresa Amabile (Chair) and Robert (Bob) Kaplan. Per the HBS Policy, you are afforded five (5) calendar days to lodge objections based upon a proposed committee member's alleged personal, professional, or financial conflict of interest. If you wish to lodge an objection, please do so in writing to me by Monday, November 1, 2021. The Dean or their designee will make the final determination as to whether a conflict exists.

The Inquiry Committee will want to interview you and others who may have relevant information, and I will reach out to you to set up a date and time. Any interviews will be audio recorded and transcribed and you will be given the opportunity to review and correct the transcript of your interview. Per HBS policy, you may choose up to two personal advisors for support during the process. Personal advisors may be attorneys but may not be principals or witnesses in the research misconduct matter. Personal advisors may be present at any proceedings or interviews that the respondent attends but may not question witnesses or otherwise take part in the research misconduct proceedings. In lieu of or in addition to an interview, you also may wish to submit a written statement to the Committee.

At the conclusion of the Inquiry, the Committee will prepare a draft report with its conclusions and recommendations. You will be provided with a copy of the draft report and given the opportunity to review and make comments for the Committee to consider before the report is finalized. The Inquiry Committee's final report, along with all exhibits and any comments you provided to the draft report, will be reviewed by the Dean or their designee, who will make a written determination as to whether an investigation is warranted. For further information regarding the Inquiry process, and research misconduct proceedings more generally, please refer to the HBS Policy (Appendix C).

It is essential that all materials, including documents, other physical things, and electronically-stored information, that relate in any way to the issues under review be produced at this time. If such information is located on the HBS campus, or on its computers and data and information systems, I ask that you promptly direct me to the location(s) of such information to facilitate sequestration as required by the HBS Policy. If you have in your possession any materials that relate to the issues under review, I ask that you contact me immediately to make arrangements to deliver them to me. Please note that no materials relevant to the Inquiry should be altered or destroyed, even in the course, for example, of routine disposal of old papers or electronic files, extra copies, or drafts of documents. Under the HBS Policy, the destruction of research records, absence of research records, or failure to provide research records adequately documenting the questioned research may be evidence of research misconduct.

We already have sequestered certain research records and other materials relating to your research in a secure manner. As part of the sequestration process, we also need to access and copy your HBS-issued devices and any other devices you may have used to conduct your research so as to complete the sequestration process. If you have not already done so, please bring the following devices to the HBS campus as soon as possible but no later than 5pm on Wednesday, October 27, 2021:

---

[1] An Inquiry's purpose is to decide if the allegations warrant an investigation. An investigation is warranted if there is: (i) a reasonable basis for concluding that the allegation falls within the definition of research misconduct and (ii) preliminary information-gathering and preliminary fact-finding by the faculty panel at Inquiry indicates that the allegation may have substance. If this matter proceeds to investigation, an investigation panel will charged with conducting the investigation; this panel may include members of the inquiry panel at the Dean's discretion.

- Apple MacBook Pro – Serial# C02T2CB6GTF1
- Apple Mac Pro – Serial# F5NG0HAF694
- Dell Latitude E4310 – Serial# C98V0P1
- Apple Mac Pro – Serial# C02MR2DMFD59
- Apple MacBook Air – Serial# C02XQ15WJK7M

You should contact Christopher Pringle, HBS Information Security Officer, to coordinate this access ████████████ or ██████████. If there are extenuating circumstances that make it impossible for you to meet this deadline, please let me know as soon as possible. HBS will take a copy of these devices for the purposes of this review process and then will return them to you so that your work may continue with as little disruption as possible.

In addition to what is located at HBS, or on its computers and data and information systems, you also may have information relevant to the matters under review in third-party email services, on personal computers at home or elsewhere, in paper files in your personal possession, or otherwise located outside of HBS. As stated above, no materials relevant to the Inquiry should be altered or destroyed, even in the course, for example, of routine disposal of old papers or electronic files, extra copies, or drafts of documents. All such information must be preserved until HBS informs you that the review of the allegations has concluded and must be provided to the Inquiry Committee if requested.

Please understand that you are to take no steps to retaliate against anyone who came forward with the allegations or against anyone who may participate in the Inquiry process.

We consider this to be a confidential matter and will make every effort to ensure that confidentiality is maintained. Under the HBS Policy, you also are responsible for maintaining confidentiality and cooperating with the conduct of an inquiry. Please be assured that we are committed to a fair, thorough and objective process.

To ensure confidentiality, I will be your main point of contact throughout these proceedings and will be available to answer any questions you may have—about the policy and the process, as well as other issues that might arise—at any time. I can be reached at ████████████████████.

Sincerely,

Alain Bonacossa

# APPENDIX A
# ALLEGATIONS

**Relevant Publications:**

Gino, F., Kouchaki, M., & Casciaro, T. (2020). Why connect? Moral consequences of networking with a promotion or prevention focus. Journal of Personality and Social Psychology, 119(6), 1221–1238 ("*2020 JPSP Paper*")

Gino, F., Kouchaki, M., & Galinsky, A. D. (2015). The moral virtue of authenticity: How inauthenticity produces feelings of immorality and impurity. Psychological Science, 26(7), 983–996 ("*2015 Psychological Science Paper*")

Gino, F., & Wiltermuth, S. S. (2014). Evil genius? How dishonesty can lead to greater creativity. Psychological Science, 25(4), 973–981 ("*2014 Psychological Science Paper*")

Shu, L. L., Mazar, N., Gino, F., Ariely, D., and Bazerman, M. H. (2012). Signing at the beginning makes ethics salient and decreases dishonest self-reports in comparison to signing at the end. Proceedings of the National Academy of Sciences of the United States of America, 109, 15197–15200 ("*2012 PNAS Paper*")

**Allegation 1:**

Dr. Gino falsified and/or fabricated the dataset for Study 3a in the *2020 JPSP Paper* by altering observations to affect the significance of findings of the study in the hypothesized direction. In particular:

(a) in the promotion-focus condition, by changing extreme values of "7" to "1" to drive the expected effect. Specifically, for 9 observations there seems to be a mismatch between participants' impurity ratings and the words participants chose to describe how they felt;

(b) in the prevention-focus condition, by changing some values of "1" to either "2" or "3" to drive the expected effect. A number of observations also show a mismatch between participants' impurity ratings and the words participants chose to describe how they felt.

**Allegation 2:**

Dr. Gino falsified and/or fabricated the datasets for Study 4 in the *2015 Psychological Science Paper* by altering a number of observations. Notably, 20 observations substantially contribute to the significance of the hypothesized effects, and these same 20 observations presented an anomalous response pattern,

in which study participants seemingly entered "Harvard" as their response to a question asking them to indicate "Year in School," in contrast to the vast majority of research participants who correctly answered this question.

**Allegation 3:**

Dr. Gino falsified and/or fabricated the datasets for Study 4 in the *2014 Psychological Science Paper* by altering a number of observations. In particular, when sorted by whether participants cheated on the task they were asked to perform and by how many uses for a newspaper they found, it appears there are 13 observations out of sort within the cheating condition. These observations substantially contribute to the significance of the hypothesized effects. When these observations are corrected with the values implied by the sort, the effect in the expected direction is no longer significant (from $p=.0003$ to $p >.17$)

**Allegation 4:**

With respect to Study 1 in the *2012 PNAS Paper:*

(a) Dr. Gino falsified and/or fabricated the results by removing part of the description of study instructions to research participants from a draft of the manuscript submitted for publication, thus misrepresenting the study procedures in the final publication. Such instructions pointed to a significant flaw in the execution of the data collection for Study 1, which called into question the validity of the study results.

(b) Dr. Gino falsified and/or fabricated the datasets by altering a number of observations. In particular, when sorted by "experimental condition" and by "participant ID number," the dataset for Study 1 appears to include 1 duplicate observation and 8 observations where the "participant ID number" is out of sort. The out of sort observations substantially contribute to the significance of the hypothesized effects.