# EXHIBIT 16

**Exhibit 1**
**Inquiry Report**

**H A R V A R D** | **B U S I N E S S** | **S C H O O L**

**Confidential Memorandum**

| | |
|---|---|
| To: | Srikant Datar<br>Harvard Business School Dean of the Faculty |
| From: | Teresa Amabile, Chair - Inquiry Committee<br>Robert (Bob) Kaplan, Inquiry Committee Member |
| Re: | Report of Inquiry Committee Concerning Allegations against Dr. Francesca Gino –<br>Case RI21-001 |
| Date: | April 8, 2022 |

## I.      INTRODUCTION

The following is the report of an inquiry committee (the "Committee") established to examine four allegations of research misconduct reported to HBS related to the work of Dr. Francesca Gino ("Respondent") in case RI21-001. Below are the relevant publications and allegations:

**Relevant Publications**

Gino, F., Kouchaki, M., & Casciaro, T. (2020). Why connect? Moral consequences of networking with a promotion or prevention focus. *Journal of Personality and Social Psychology*, 119(6), 1221–1238 ("*2020 JPSP Paper*")

Gino, F., Kouchaki, M., & Galinsky, A. D. (2015). The moral virtue of authenticity: How inauthenticity produces feelings of immorality and impurity. *Psychological Science*, 26(7), 983–996 ("*2015 Psychological Science Paper*")

Gino, F., & Wiltermuth, S. S. (2014). Evil genius? How dishonesty can lead to greater creativity. *Psychological Science*, 25(4), 973–981 ("*2014 Psychological Science Paper*")

1

**THIS DOCUMENT IS CONFIDENTIAL AS REQUIRED BY FEDERAL REGULATIONS AND INSTITUTIONAL POLICIES FOR REVIEW OF ALLEGATIONS OF RESEARCH MISCONDUCT. DISCLOSURE OF THIS DOCUMENT OR OF ANY OF THE INFORMATION IT CONTAINS IS PROHIBITED EXCEPT AS PERMITTED BY THOSE POLICIES OR AS REQUIRED BY LAW.**

Shu, L. L., Mazar, N., Gino, F., Ariely, D., and Bazerman, M. H. (2012). Signing at the beginning makes ethics salient and decreases dishonest self-reports in comparison to signing at the end. *Proceedings of the National Academy of Sciences of the United States of America*, 109, 15197–15200 ("*2012 PNAS Paper*")

**Allegation 1**

Dr. Gino falsified and/or fabricated the dataset for ***Study 3a in the 2020 JPSP Paper*** by altering observations to affect the significance of findings of the study in the hypothesized direction. In particular:

- In the promotion-focus condition, by changing extreme values of "7" to "1" to drive the expected effect. Specifically, for 9 observations there seems to be a mismatch between participants' impurity ratings and the words participants chose to describe how they felt;
- In the prevention-focus condition, by changing some values of "1" to either "2" or "3" to drive the expected effect. A number of observations also show a mismatch between participants' impurity ratings and the words participants chose to describe how they felt.

**Allegation 2**

Dr. Gino falsified and/or fabricated the datasets for ***Study 4 in the 2015 Psychological Science Paper*** by altering a number of observations. Notably, 20 observations substantially contribute to the significance of the hypothesized effects, and these same 20 observations presented an anomalous response pattern, in which study participants seemingly entered "Harvard" as their response to a question asking them to indicate "Year in School," in contrast to the vast majority of research participants who correctly answered this question.

**Allegation 3**

Dr. Gino falsified and/or fabricated the datasets for ***Study 4 in the 2014 Psychological Science Paper*** by altering a number of observations. In particular, when sorted by whether participants cheated on the task they were asked to perform and by how many uses for a newspaper they found, it appears there are 13 observations out of sort within the cheating condition. These observations substantially contribute to the significance of the hypothesized effects. When these observations are corrected with the values implied by the sort, the effect in the expected direction is no longer significant (from p=.0003 to p >.17).

**THIS DOCUMENT IS CONFIDENTIAL AS REQUIRED BY FEDERAL REGULATIONS AND INSTITUTIONAL POLICIES FOR REVIEW OF ALLEGATIONS OF RESEARCH MISCONDUCT. DISCLOSURE OF THIS DOCUMENT OR OF ANY OF THE INFORMATION IT CONTAINS IS PROHIBITED EXCEPT AS PERMITTED BY THOSE POLICIES OR AS REQUIRED BY LAW.**

**Allegation 4**

With respect to *Study 1 in the 2012 PNAS Paper*:

a)  Dr. Gino falsified and/or fabricated the results by removing part of the description of study instructions to research participants from a draft of the manuscript submitted for publication, thus misrepresenting the study procedures in the final publication. Such instructions pointed to a significant flaw in the execution of the data collection for Study 1, which called into question the validity of the study results.

b)  Dr. Gino falsified and/or fabricated the datasets by altering a number of observations. In particular, when sorted by "experimental condition" and by "participant ID number," the dataset for Study 1 appears to include 1 duplicate observation and 8 observations where the "participant ID number" is out of sort. The out of sort observations substantially contribute to the significance of the hypothesized effects.

## II.     INQUIRY PROCESS

These allegations were submitted to the Harvard Business School ("HBS") Research Integrity Officer ("RIO") on October 12, 2021, by a complainant who wishes to remain anonymous. Upon receiving the allegation, the RIO conducted a preliminary assessment to determine whether each allegation fell within the definition of research misconduct and was sufficiently credible and specific so that potential evidence of research misconduct may be identified. The RIO concluded his preliminary assessment and shared it with Dean Datar, the HBS Deciding Official, on October 15, 2021. On that day, Dean Datar asked the RIO to start an official inquiry into the allegations following the Harvard Business School's Interim Policy and Procedures for Responding to Allegations of Research Misconduct ("HBS Policy" – Exhibit 1).

The RIO sent the Respondent a notice of inquiry related to allegations of research misconduct on October 27, 2021 (Exhibit 2). Dean Datar proposed appointing Professor Teresa Amabile (Chair) and Professor Robert (Bob) Kaplan to the inquiry committee, pending any objections lodged by the Respondent based upon a proposed committee member's alleged personal, professional, or financial conflict of interest. The Respondent had no such objections. Upon confirmation of the Committee

3

THIS DOCUMENT IS CONFIDENTIAL AS REQUIRED BY FEDERAL REGULATIONS AND INSTITUTIONAL POLICIES FOR REVIEW OF ALLEGATIONS OF RESEARCH MISCONDUCT. DISCLOSURE OF THIS DOCUMENT OR OF ANY OF THE INFORMATION IT CONTAINS IS PROHIBITED EXCEPT AS PERMITTED BY THOSE POLICIES OR AS REQUIRED BY LAW.

members, the official inquiry started on November 5, 2021. The summary table below provides a chronology of the inquiry, including the six meetings of the inquiry committee.[1]

| Event Date | Description |
|---|---|
| October 19-22, 2021 | Sequestration of the Respondent's electronic research records, from sources other than her HBS-issued personal computers, including: HBS email; O365 OneDrive data; HBSFiles Project work space; HBSFiles home space; Qualtrics survey data. |
| October 27, 2021 | Notice of Inquiry sent to the Respondent (Exhibit 2). |
| October 27, 2021 | Sequestration of Dr. Gino's HBS-issued personal computers. |
| November 5, 2021 | Committee Meeting:<br>• Orientation, review of charge and allegations;<br>• Formulation of a set of questions for the complainant to be addressed in writing;<br>• Request for Dr. Gino to produce the raw datasets associated with each allegation. |
| November 16, 2021 | Dr. Gino provided to the RIO the location, within the sequestered materials, of the raw datasets associated with each allegation. |
| December 3, 2021 | Complainant provided to the RIO a written response to the Committee's questions, describing each allegation in detail (Exhibit 3). |
| January 6, 2022 | Committee Meeting:<br>• Review of the complainant's written response;<br>• Discussion of the Committee's independent analysis of the raw and Open Science Framework ("OSF") datasets associated with each allegation. |

---

[1] All meetings were conducted through the Zoom platform unless otherwise stated.

4

**THIS DOCUMENT IS CONFIDENTIAL AS REQUIRED BY FEDERAL REGULATIONS AND INSTITUTIONAL POLICIES FOR REVIEW OF ALLEGATIONS OF RESEARCH MISCONDUCT. DISCLOSURE OF THIS DOCUMENT OR OF ANY OF THE INFORMATION IT CONTAINS IS PROHIBITED EXCEPT AS PERMITTED BY THOSE POLICIES OR AS REQUIRED BY LAW.**

| January 14, 2022 | Committee Meeting:<br><br>Discussion of the Committee's memorandum to Dr. Gino regarding allegations 1, 2, 3, and 4b (Exhibit 4). The memorandum, which was provided to Dr. Gino on January 14 following this meeting, is a combination of excerpts from the complainant's written response and the Committee's own analyses of the raw datasets from Dr. Gino's research records and the datasets posted on OSF.<br><br>Discussion of allegation 4a. Because the complainant's report did not include information on this allegation, the Committee requested that Dr. Gino's sequestered materials be searched for documents and emails relevant to this allegation. |
|---|---|
| January 24, 2022 | An addendum to the Committee's memorandum, relating to allegation 4a, was provided to Dr. Gino (Exhibit 5). |
| February 25, 2022 | Committee Meeting:<br><br>• Review of Dr. Gino's written response to the Committee's memoranda (Exhibit 6);<br>• Preparation for the Respondent interview. |
| February 28, 2022 | Respondent Interview.  On March 4, 2022, after the transcript was checked against the audio recording of the interview and corrected as necessary, a copy of the transcript was provided to Dr. Gino for her review, correction and attestation (Exhibit 7). Dr. Gino provided her corrections and attestation on March 8, 2022, including some clarifying comments (Exhibit 8). |
| March 2, 2022 | Decision Conference:<br><br>• Following a review of the information and evidence to date, the Committee conducted a decision conference. |
| March 10, 2022 | • A draft of this report was provided to Dr. Gino for review and comment. Dr Gino's response, received on April 1, 2022, is appended to this report (Exhibit 9).<br>• All documents upon which the Committee relied to make determinations are referenced and appended. |

Justification for Length of Inquiry: Per HBS Policy, an inquiry into the allegations "must be completed within 60 calendar days of initiation of the inquiry, unless the RIO determines that circumstances clearly warrant a longer period." On December 10, 2021, the RIO made an initial determination that circumstances warranted a 45-day extension, thus extending the inquiry through February 18, 2022. In making this determination, the RIO noted that the Committee needed time to study

5

THIS DOCUMENT IS CONFIDENTIAL AS REQUIRED BY FEDERAL REGULATIONS AND INSTITUTIONAL POLICIES FOR REVIEW OF ALLEGATIONS OF RESEARCH MISCONDUCT. DISCLOSURE OF THIS DOCUMENT OR OF ANY OF THE INFORMATION IT CONTAINS IS PROHIBITED EXCEPT AS PERMITTED BY THOSE POLICIES OR AS REQUIRED BY LAW.

a written report submitted by the complainant on December 3, 2022 and that Harvard University was closed for winter recess and other observed holidays from Monday, December 20, 2021 through Friday, December 31, 2021. On January 27, 2021, the RIO determined that circumstances warranted an additional 45-day extension to the inquiry and that the inquiry was expected to be completed by April 4, 2022. In making this determination, the RIO took into account the Respondent's request to have sufficient time to process the memoranda regarding the allegations that she received from the Committee on January 14, 2022 and on January 24, 2022. On March 16, 2022, the RIO determined that circumstances warranted an additional 7-day extension to the inquiry and that the inquiry was expected to be completed by April 11, 2022. In making this determination, the RIO considered the Respondent's request for additional time to provide her written response to the draft inquiry report, in addition to the 10 business days afforded to her by the HBS policy.

## III.    BACKGROUND

Dr. Gino is the Tandon Family Professor of Business Administration at Harvard Business School ("HBS"). She joined the Negotiation, Organizations, and Markets (NOM) unit at HBS as an Associate Professor of Business Administration in 2010 and became a full Professor in 2014. Before joining HBS, Dr. Gino was an Assistant Professor of Organizational Behavior at The University of North Carolina, Chapel Hill from 2008-2010. From 2006-2008, Dr. Gino was a Visiting Assistant Professor of Organizational Behavior at Carnegie Mellon University and from 2004-2006 she was a Post-Doctoral Fellow in the Technology & Operations Management unit at HBS.

Dr. Gino earned a B.A. in Business Economics from the University of Trento in Trento, Italy in 2001. She received her Ph.D. in Economics and Management from the Sant'Anna School of Advanced Studies in Pisa, Italy in 2004.

## IV.    STANDARD FOR INQUIRY

As the Committee considered each allegation, we were mindful that our review as an inquiry committee is a preliminary one. Pursuant to the HBS Policy and 42 CFR § 93.307(d), "An investigation is warranted into allegations of research misconduct following an inquiry if (i) there is a reasonable basis for concluding that the allegation falls within the definition of research misconduct;[2] and (ii) preliminary

---

[2] Research misconduct is defined under 42 CFR § 93.103 as fabrication, falsification or plagiarism in proposing, performing or reviewing research or in reporting research results.
   (a) Fabrication is making up data or results and recording or reporting them.

THIS DOCUMENT IS CONFIDENTIAL AS REQUIRED BY FEDERAL REGULATIONS AND INSTITUTIONAL POLICIES FOR REVIEW OF ALLEGATIONS OF RESEARCH MISCONDUCT. DISCLOSURE OF THIS DOCUMENT OR OF ANY OF THE INFORMATION IT CONTAINS IS PROHIBITED EXCEPT AS PERMITTED BY THOSE POLICIES OR AS REQUIRED BY LAW.

information-gathering and preliminary fact-finding from the inquiry indicates that the allegation may have substance."[3]

## V.    INQUIRY ANALYSIS & CONCLUSIONS

The Committee determined there is a reasonable basis for concluding that allegations 1, 2, 3, 4a, and 4b fall within the definition of research misconduct and that its preliminary information-gathering and preliminary fact-finding indicates that these allegations may have substance. The basis for the Committee's determination, itemized by allegation, is outlined below.

**Allegation 1**

> **Dr. Gino falsified and/or fabricated the dataset for *Study 3a in the 2020 JPSP Paper* by altering observations to affect the significance of findings of the study in the hypothesized direction. In particular:**
>
> - **In the promotion-focus condition, by changing extreme values of "7" to "1" to drive the expected effect. Specifically, for 9 observations there seems to be a mismatch between participants' impurity ratings and the words participants chose to describe how they felt;**
> - **In the prevention-focus condition, by changing some values of "1" to either "2" or "3" to drive the expected effect. A number of observations also show a mismatch between participants' impurity ratings and the words participants chose to describe how they felt.**

The Committee compared the dataset for this study that was found in Dr. Gino's sequestered research records with the publicly posted dataset on OSF. The comparison shows a clear discrepancy between the two datasets, suggesting that the data may have been fabricated or falsified. Our preliminary analysis shows that: (a) the two datasets yield averages for the two experimental conditions that are

---

(b) Falsification is manipulating research materials, equipment, or processes, or changing or omitting data or results such that the research is not accurately represented in the research record.
(c) Plagiarism is the appropriation of another person's ideas, processes, results or words without giving appropriate credit.
Research misconduct does not include honest error or differences of opinion.

[3] Following the investigation, a finding of research misconduct requires (42 CFR Sec. 93.104):
    (a) There be a significant departure from accepted practices of the relevant research community; and
    (b) The misconduct be committed intentionally, knowingly, or recklessly; and
    (c) The allegation be proven by a preponderance of the evidence.

7

**THIS DOCUMENT IS CONFIDENTIAL AS REQUIRED BY FEDERAL REGULATIONS AND INSTITUTIONAL POLICIES FOR REVIEW OF ALLEGATIONS OF RESEARCH MISCONDUCT. DISCLOSURE OF THIS DOCUMENT OR OF ANY OF THE INFORMATION IT CONTAINS IS PROHIBITED EXCEPT AS PERMITTED BY THOSE POLICIES OR AS REQUIRED BY LAW.**

completely switched in directionality (see Exhibit 4, page 9); in other words, the published data show a result that is opposite to the result yielded by the sequestered data; and (b) a comparison between the two datasets shows a clear mismatch, between otherwise identical lines of data, in the columns that contain the key dependent variable measures (see Exhibit 4, pages 10-11). Neither Dr. Gino's written response to our memos nor our interview with Dr. Gino on February 28, 2022 yielded information that, in our view, could explain these discrepancies. We therefore find that Allegation 1 of research misconduct against Dr. Gino falls within the definition of research misconduct and that our preliminary information-gathering and preliminary fact-finding indicates that the allegation may have substance. See Inquiry Committee Memo of Jan. 14, 2022, Exhibit 4, for details.

**Allegation 2**

> **Dr. Gino falsified and/or fabricated the datasets for Study 4 in the 2015 Psychological Science Paper by altering a number of observations. Notably, 20 observations substantially contribute to the significance of the hypothesized effects, and these same 20 observations presented an anomalous response pattern, in which study participants seemingly entered "Harvard" as their response to a question asking them to indicate "Year in School," in contrast to the vast majority of research participants who correctly answered this question.**

The Committee examined the dataset for this study that was found in Dr. Gino's sequestered research records as well as the publicly posted dataset on OSF. Both datasets include anomalous observations in which several study participants, who (according to the published paper) were all Harvard students, listed "Harvard" as their answer to a "Year in School" question (the "Harvard group"), and, unlike most other participants, provided an email address that was not "college.harvard.edu." The responses by the "Harvard group" on the key dependent variable strongly influenced the overall experimental findings in the hypothesized direction, suggesting that the data may have been fabricated or falsified. Furthermore, we also identified a discrepancy in the N (number of observations) for the dataset obtained from Dr. Gino's records and the N for the publicly posted dataset available on OSF, with the former file containing 455 observations while the latter had 491 observations (see Exhibit 4, pages 16-17), a discrepancy that we were unable to reconcile. Neither Dr. Gino's written response to our memos nor our interview with Dr. Gino on February 28, 2022 yielded information that, in our view, could explain these discrepancies. We therefore find that Allegation 2 of research misconduct against Dr. Gino falls within the definition of research misconduct and that our preliminary information-gathering and

8

**THIS DOCUMENT IS CONFIDENTIAL AS REQUIRED BY FEDERAL REGULATIONS AND INSTITUTIONAL POLICIES FOR REVIEW OF ALLEGATIONS OF RESEARCH MISCONDUCT. DISCLOSURE OF THIS DOCUMENT OR OF ANY OF THE INFORMATION IT CONTAINS IS PROHIBITED EXCEPT AS PERMITTED BY THOSE POLICIES OR AS REQUIRED BY LAW.**

preliminary fact-finding indicates that the allegation may have substance. See Inquiry Committee Memo of Jan. 14, 2022, Exhibit 4, for details.

**Allegation 3**

> **Dr. Gino falsified and/or fabricated the datasets for Study 4 in the 2014 Psychological Science Paper by altering a number of observations. In particular, when sorted by whether participants cheated on the task they were asked to perform and by how many uses for a newspaper they found, it appears there are 13 observations out of sort within the cheating condition. These observations substantially contribute to the significance of the hypothesized effects. When these observations are corrected with the values implied by the sort, the effect in the expected direction is no longer significant (from p=.0003 to p >.17).**

The Committee examined the dataset for this study that was found in Dr. Gino's sequestered research records and replicated the anomalies identified in the complainant's written response to the Committee (Exhibit 3). These anomalous, out-of-sequence observations substantially contribute to the significance of the hypothesized effects, suggesting that the data may have been fabricated or falsified, as set forth in more detail in Exhibit 4.[4] Neither Dr. Gino's written response to our memos nor our interview with Dr. Gino on February 28, 2022 yielded information that, in our view, could explain these discrepancies. We therefore find that Allegation 3 of research misconduct against Dr. Gino falls within the definition of research misconduct and that our preliminary information-gathering and preliminary fact-finding indicates that the allegation may have substance.

**Allegation 4a**

> **With respect to Study 1 in the 2012 PNAS Paper:**

> **Dr. Gino falsified and/or fabricated the results by removing part of the description of study instructions to research participants from a draft of the manuscript**

---

[4] The Committee's memorandum to Dr. Gino (Exhibit 4, page 23) stated there was an additional anomaly in the number of participants in the dataset from Dr. Gino's research records compared to number of participants in the published paper. As pointed out by Dr. Gino in her written response (Exhibit 6), the Committee came to this conclusion because it mistakenly looked at the N for a different study in the published paper. The Committee agrees that there is, in fact, no anomaly in the reporting of the number of participants.

9

**THIS DOCUMENT IS CONFIDENTIAL AS REQUIRED BY FEDERAL REGULATIONS AND INSTITUTIONAL POLICIES FOR REVIEW OF ALLEGATIONS OF RESEARCH MISCONDUCT. DISCLOSURE OF THIS DOCUMENT OR OF ANY OF THE INFORMATION IT CONTAINS IS PROHIBITED EXCEPT AS PERMITTED BY THOSE POLICIES OR AS REQUIRED BY LAW.**

**submitted for publication, thus misrepresenting the study procedures in the final publication. Such instructions pointed to a significant flaw in the execution of the data collection for Study 1, which called into question the validity of the study results.**

The Committee conducted a review of study documents that were found in Dr. Gino's sequestered research records and compared these documents to the written description of the study procedures in the published paper. This review revealed inconsistencies concerning the exact procedure used in the study, between the methodology described in the published paper and the methodology described in documents located in Dr. Gino's files, documents that date back to when the study procedure and results were being summarized and the paper was being drafted. Our analyses identified two issues, having to do with: (1) a potential flaw in the study design related to the timing of the dependent variable; and (2) the description of the study's procedure in the published article, which could be seen as ambiguous or potentially misleading, as set forth in more detail in Exhibit 5. Neither Dr. Gino's written response to our memos nor our interview with Dr. Gino on February 28, 2022 yielded information that, in our view, could explain these discrepancies. We therefore find that allegation 4a of research misconduct against Dr. Gino falls within the definition of research misconduct and that our preliminary information-gathering and preliminary fact-finding indicates that the allegation may have substance.

**Allegation 4b**

**With respect to Study 1 in the 2012 PNAS Paper:**

**Dr. Gino falsified and/or fabricated the datasets by altering a number of observations. In particular, when sorted by "experimental condition" and by "participant ID number," the dataset for Study 1 appears to include 1 duplicate observation and 8 observations where the "participant ID number" is out of sort. The out of sort observations substantially contribute to the significance of the hypothesized effects.**

The Committee analyzed the dataset for this study that was found in Dr. Gino's sequestered research records as well as the publicly posted dataset on OSF. When sorted by condition and participant ID number, both datasets include out-of-sequence observations, some in one experimental condition, and some in the other experimental condition, and these observations contribute to the significance of the hypothesized effects, suggesting that the data may have been fabricated or falsified, as set forth in more

10

**THIS DOCUMENT IS CONFIDENTIAL AS REQUIRED BY FEDERAL REGULATIONS AND INSTITUTIONAL POLICIES FOR REVIEW OF ALLEGATIONS OF RESEARCH MISCONDUCT. DISCLOSURE OF THIS DOCUMENT OR OF ANY OF THE INFORMATION IT CONTAINS IS PROHIBITED EXCEPT AS PERMITTED BY THOSE POLICIES OR AS REQUIRED BY LAW.**

detail in Exhibit 4. Neither Dr. Gino's written response to our memos nor our interview with Dr. Gino on February 28, 2022 yielded information that, in our view, could explain these discrepancies. We therefore find that allegation 4b of research misconduct against Dr. Gino falls within the definition of research misconduct and that our preliminary information-gathering and preliminary fact-finding indicates that the allegation may have substance.

## VI.    RECOMMENDATIONS

As described above, we have reviewed the information presented to date relating to the allegations against Dr. Gino. In reviewing these materials, we have been mindful that our task as inquiry committee is a preliminary one. In light of the evidence referenced herein, we have determined that there is a reasonable basis for concluding that allegations 1, 2, 3, 4a, and 4b fall within the definition of research misconduct and that our preliminary information-gathering and preliminary fact-finding indicates that the allegations may have substance. Therefore, we recommend investigation of allegations 1, 2, 3, 4a, and 4b pursuant to the HBS Policy.

11

**THIS DOCUMENT IS CONFIDENTIAL AS REQUIRED BY FEDERAL REGULATIONS AND INSTITUTIONAL POLICIES FOR REVIEW OF ALLEGATIONS OF RESEARCH MISCONDUCT. DISCLOSURE OF THIS DOCUMENT OR OF ANY OF THE INFORMATION IT CONTAINS IS PROHIBITED EXCEPT AS PERMITTED BY THOSE POLICIES OR AS REQUIRED BY LAW.**