# EXHIBIT 54

**H A R V A R D | B U S I N E S S | S C H O O L**

**Interim Policy and Procedures for
Responding to Allegations of Research Misconduct**

*Effective Date: January 2026*

## I.        Basis for Policy

Integrity in scholarship and research is one of Harvard University's—and Harvard Business School's—fundamental values. Allegations of misconduct in scholarship and research must be treated with the utmost seriousness and examined carefully and responsibly.

It is the shared responsibility of all members of our HBS community to ensure that misconduct in scholarship and research is dealt with in a timely and effective manner, and that the reputation of the University for high standards of scholarly rigor and research integrity is preserved. HBS is committed to addressing allegations of research misconduct and has established this **Interim Policy and Procedures for Responding to Allegations of Research Misconduct**[1] to guide the process of reviewing, investigating, and reporting such allegations.[2]

## II.        Scope

This Policy applies to allegations of research misconduct (as defined by this Policy) involving any person who, at the time of the alleged research misconduct, was employed by, was an agent of, or was affiliated by contract or agreement with HBS, including without limitation tenured and non-tenured faculty, teaching and support staff, researchers and research associates, research coordinators, post-doctoral and other fellows, students, volunteers, officials, technicians, and agents. This Policy may be applied to any individual no longer affiliated with HBS if the alleged misconduct occurred while the person was subject to the Policy as described in the prior sentence or if the person was subject to the Policy at the time the research activities underlying the alleged misconduct were undertaken and the work in question was conducted through HBS or by utilizing HBS's resources.

This Policy does not apply to authorship or collaboration disputes or any other allegation that is not specifically covered by this Policy. It applies only to allegations of research misconduct that occurred within six years of the date HBS received the allegation, subject to the following exceptions:

- The individual accused of research misconduct continues or renews any incident of alleged research misconduct that occurred before the six-year period through the use of, republication of, or citation to the portion(s) of the research record alleged to have been fabricated, falsified, or plagiarized, for the potential benefit of that individual ("subsequent use exception"). For alleged research misconduct that appears subject to this subsequent use exception, but that HBS determines is not subject to the exception, HBS will document its determination that the subsequent use exception does not apply and will retain this documentation for seven years after completion of the institutional proceeding.
- HBS determines that the alleged research misconduct, if it occurred, would possibly have a

---

[1] See Appendix 1 for a glossary of terms and definitions.
[2] See Appendix 2, here and throughout, for additional specifications and requirements when researchers have received federal or other external funding for their research.

1

       substantial adverse effect on the health or safety of the public.
- HBS otherwise determines in good faith that the interests of the institution warrant application of these procedures to the alleged research misconduct.

Allegations of research misconduct against students that do not involve federal funding ordinarily are not subject to this Policy and will be referred to the relevant disciplinary board.

## III.     General Policies and Principles

### A.  Research Misconduct Prohibited, Standard of Proof

HBS prohibits research misconduct and investigates and responds to allegations of research misconduct in accordance with this Policy. Throughout the research misconduct process, which begins at the time an allegation is made, all participants shall bear in mind the importance, both in fact and in appearance, of thoroughness, fairness, and objectivity. Individuals subject to this policy found to have committed research misconduct ordinarily shall be subject to sanctions up to and including termination.

A finding of research misconduct requires that:
- There be a significant departure from accepted practices of the relevant research community;
- The respondent committed the research misconduct intentionally, knowingly, or recklessly; and
- The allegation be proven by preponderance of the evidence.

The respondent's destruction of research records documenting the questioned research is evidence of research misconduct where a preponderance of evidence establishes that the respondent intentionally or knowingly destroyed records after being informed of the research misconduct allegations. The respondent's failure to provide research records documenting the questioned research is evidence of research misconduct where the respondent claims to possess the records, but refuses to provide them upon request. It is expected that all institutional members shall comply with applicable institutional policies and regulation regarding retention and storage of research records.

HBS bears the burden of proof for making a finding of research misconduct. A respondent has the burden of proving, by a preponderance of the evidence, any and all affirmative defenses raised (such as honest error). Due consideration shall be given to admissible, credible evidence of honest error or difference of opinion presented by a respondent.

### B.  Responsibility to Report Misconduct

All individuals subject to this Policy will report observed, suspected, or apparent research misconduct to the Research Integrity Officer (RIO). If an individual is unsure whether a suspected incident falls within the definition of research misconduct, that individual may meet with or contact the RIO to discuss the suspected research misconduct informally, which may include discussing it anonymously and/or hypothetically. If the circumstances described by the individual do not meet the definition of research misconduct, then the RIO may refer the individual or allegation to other offices or officials, where appropriate.

## C.    Cooperation with Research Misconduct Proceedings

All individuals subject to this Policy shall cooperate with the RIO and other institutional officials in the review of allegations and the conduct of research misconduct proceedings. All individuals subject to this Policy, including respondents, have an obligation to provide evidence relevant to research misconduct allegations to the RIO or other institutional officials.

## D.    Duty to Maintain Confidentiality

Because of the potential jeopardy to the reputation and rights of a respondent, the RIO and all Committee members (as defined in this Policy) as well as all others at HBS who may be involved in the research misconduct proceeding shall to the extent possible: (1) limit disclosure of the identity of respondents and complainants to those who need to know in order to carry out a research misconduct proceeding; and (2) except as otherwise prescribed by law, maintain confidentiality for any records or evidence from which research subjects might be identified and limit disclosure to those who need to know in order to carry out a research misconduct proceeding. The Institution will determine those who need to know consistent with a thorough, competent, objective, and fair research misconduct proceeding, and as allowed by law. Those who need to know may include institutional review boards, journals, editors, publishers, co-authors, and collaborating institutions. The limitation on disclosure no longer applies once the Institution has made a final determination of research misconduct findings, but no disclosures should be made by anyone involved in the research misconduct proceeding unless and until they are granted permission by the RIO, acting on behalf of the Institution, to make such disclosure.

Where communications about research misconduct proceedings may be considered necessary or advisable, University officials should be guided by the Guiding Principles for Communication in Research Misconduct Proceedings. Inappropriate dissemination of information may result in sanctions up to and including termination.

Nothing herein shall prevent HBS or an individual from taking steps to manage published data or to acknowledge that data may be unreliable, provided that such steps do not otherwise disclose information relating to a research misconduct proceeding in violation of this paragraph.

## E.    Rights and Responsibilities of Complainant

The complainant is responsible for making allegations in good faith, maintaining confidentiality, and cooperating with the inquiry and investigation. If the inquiry or investigation committee deems it necessary, the complainant may be interviewed at the inquiry or investigation stage and, if so, will be given the transcript or recording of the interview for correction. After making an allegation of research misconduct, the complainant is responsible for providing evidence and information in connection with the research misconduct process but is not entitled to receive information about the status or outcome of that process. If HBS chooses to notify one complainant of the inquiry results in a case, all complainants will be notified, to the extent possible.

## F.    Rights and Responsibilities of Respondent

The respondent is responsible for maintaining confidentiality as set forth herein and cooperating with the conduct of an inquiry and investigation. The respondent is entitled to the procedural rights and protections set forth in this Policy, which include that HBS will make a good faith effort to notify the

3

respondent in writing of the allegations being made against them that have been advanced to inquiry or investigation. The respondent may choose up to two personal advisors for support during the process. Personal advisors may be present at any proceedings or interviews that the respondent attends but may not question witnesses or otherwise take part in the research misconduct proceedings. The respondent should be given the opportunity to admit that research misconduct occurred and that they committed the research misconduct. With the advice of the RIO and/or other institutional officials, the Dean or their designee may end HBS's review of an allegation that has been admitted.

If additional respondents are identified during an inquiry or investigation, a separate inquiry need not be initiated for each new respondent. However, each additional respondent shall be provided notice of and an opportunity to respond to the allegations against them.

If requested and as appropriate, HBS will make reasonable and practical efforts to protect and restore the reputation of a respondent against whom no finding of research misconduct is made.

**G.  Protecting Complainants, Witnesses, the RIO, and Committee Members**

HBS will take precautions to ensure that individuals responsible for carrying out any part of the research misconduct proceeding do not have any unresolved conflicts of interest with the complainant, the respondent, or any witnesses.

HBS will take reasonable and practical steps to protect the positions and reputations of anyone participating in the research misconduct process (including without limitation complainants, witnesses, committee members, the RIO, or the Deciding Official) and to protect these individuals from retaliation by respondents or other institutional members. Any alleged or apparent retaliation should be reported immediately to the RIO or to the Dean's Office, as applicable).

**IV.      Institutional Assessment of Allegations**

Upon receiving an allegation of research misconduct, the RIO immediately will assess the allegation to determine whether the allegation:
- Falls within the definition of research misconduct; and
- Is sufficiently credible and specific so that potential evidence of research misconduct may be identified.

If these criteria are met, the RIO will promptly: (a) document the assessment; (b) sequester all research records and other evidence; and (c) initiate an inquiry as set forth below. For purposes of evaluating applicable external notification and other requirements, the assessment will also evaluate whether the allegation relates to activities involving federal or externally-funded research.

If, upon receipt of the allegation, it appears that the RIO has any unresolved personal, professional, or financial conflicts of interest with those involved in the allegations, then another qualified individual shall be appointed by the Dean or their designee to serve as Interim RIO with respect to reviewing the allegation and conducting any research misconduct proceeding.

Assessments should be completed expeditiously. In conducting the assessment, it is not necessary to interview the complainant, respondent, or other witnesses, or to gather data beyond any that may have been submitted with the allegation, except as necessary to determine whether the allegation is

sufficiently credible and specific so that potential evidence of research misconduct may be identified. An assessment is intended to be a review of readily accessible information relevant to the allegation and, where an inquiry is appropriate, to include specific allegation language suitable for notification to the respondent. All records pertaining to the review of allegations will be retained by the RIO for a period of seven (7) years following the completion of the assessment or any related research misconduct proceeding.

**V.        Sequestration of Research Records and Notice to Respondent**

**A.        Sequestration of Research Records**

This Policy governs access to research records, including without limitation email records, and other evidence needed to conduct research misconduct proceedings.[3] Those engaged in administering this Policy shall be deemed by HBS to have all rights necessary for purposes of carrying out their duties to access research records created or maintained by individuals subject to this Policy.[4]

As to timing, on or before the date on which the respondent is notified, the RIO will take all reasonable and practical steps to obtain custody of all original or substantially equivalent copies of research records and evidence needed to conduct the research misconduct proceeding. The duty to obtain, inventory, and securely sequester evidence extends to whenever additional items become known or relevant to the inquiry or investigation. The respondents and all other institutional members subject to this Policy must provide immediate assistance in response to any request by the RIO to identify and secure research records relevant to the research misconduct proceeding.

The RIO is responsible for inventorying the records and evidence and sequestering them in a secure manner, except that where the research records or evidence encompass scientific instruments shared by a number of users, custody may be limited to copies of the data or evidence on such instruments, so long as those copies are substantially equivalent to the evidentiary value of the instruments. Where appropriate, HBS shall give the respondent copies of, or reasonable supervised access to, the research records.

**B.        Notice to Respondent**

At the time of or before beginning an inquiry, the RIO will make a good faith effort to notify the presumed respondent in writing that an allegation of research misconduct has been raised against them, the relevant research records have been sequestered (if applicable), and an inquiry will be conducted to decide whether to proceed with an investigation. If additional allegations are raised, the institution will notify the respondent in writing. If additional respondents are identified, they must be notified in writing. Only allegations specific to a particular respondent are to be included in the notification to that respondent.

---

[3] For clarification, Harvard's Policy on Access to Electronic Information specifically states that it does not apply to reviews of research misconduct allegations (Section I, Internal Investigations of Misconduct, p. 4).

[4] Harvard's Research Data Ownership Policy makes clear that "the University asserts ownership over research data for all projects conducted at the University, under the auspices of the University, or with University resources," and further states that "[w]hen it is necessary to secure access (e.g. during an investigation of alleged research misconduct) the University may take custody of research data..." (Section 1.B, Policy and Procedures, p. 2).

**VI.      The Inquiry**

**A.      Purpose of the Inquiry**

The purpose of the inquiry is to conduct an initial review of the available evidence to determine whether an allegation warrants an investigation. An inquiry does not require a full review of all the evidence related to the allegation.

**B.      Appointment of the Inquiry Committee**

The inquiry committee will be appointed by the Dean or their designee, in consultation with other institutional officials as appropriate, and will consist of one or more individuals with the appropriate expertise who do not have unresolved personal, professional, or financial conflicts of interest with those involved with the research misconduct proceeding. When necessary to secure the necessary expertise or to avoid conflicts of interest, the Dean or their designee may select committee members from outside the institution.

Alternatively, in lieu of a committee, the Dean or their designee may task the RIO or another designated institutional official to conduct the inquiry, provided this person utilizes subject matter experts as needed to assist in the inquiry.

Prior to the initiation of the inquiry, the respondent will be notified in writing of the inquiry committee's membership and shall be afforded five (5) calendar days to lodge objections based upon a committee member's alleged personal, professional, or financial conflict of interest. The Dean or their designee will make the final determination of whether a conflict exists.

**C.      Inquiry Process**

Those conducting the inquiry will conduct a preliminary review of the evidence. In the process of fact-finding, the inquiry committee, RIO, or other designated official may interview the respondent and/or witnesses, which may include a complainant. Any interviews will be recorded or transcribed, with recordings or transcripts provided to the interviewee for correction. The respondent will not be present during the witnesses' interviews, but will be provided a transcript of each interview, with redactions as appropriate to maintain confidentiality.

The inquiry committee, RIO, or other designated official will evaluate the evidence and determine whether an investigation is warranted. An investigation is warranted if: (a) there is a reasonable basis for concluding that the allegation falls within the definition of research misconduct; and (b) preliminary information-gathering and fact-finding from the inquiry indicates that the allegation may have substance. The RIO will be present or available throughout the inquiry to advise the committee or other designated official as needed.

The inquiry will not determine if research misconduct occurred, nor assess whether the alleged misconduct was intentional, knowing, or reckless. This determination may only be made by an investigation committee during investigation. However, if a legally sufficient admission of research misconduct is made by the respondent, misconduct may be determined at the inquiry stage if all relevant issues are resolved.

**D.      The Inquiry Report**

At the conclusion of the inquiry, regardless of whether an investigation is warranted, a written inquiry report must be prepared that includes the following information: (1) the names and positions of the respondent and complainant (where applicable); (2) a description of the allegation of research misconduct; (3) the funding support; (4) the composition of the inquiry committee, if used, including names, positions, and subject matter expertise; (5) an inventory of sequestered research records and other evidence and a description of how sequestration was conducted; (6) transcripts of any transcribed interviews; (7) the inquiry timeline and procedural history; (8) any scientific or forensic analysis conducted; (9) the basis for recommending that an allegation warrants investigation; (10) the basis for recommending that an allegation does not merit an investigation; (11) any comments on the draft report by the respondent, as applicable; (12) any institutional actions implemented, including communications with journals or funding agencies; and (13) documentation of potential evidence of honest error or difference of opinion.

The Office of General Counsel shall be available to advise the inquiry committee and the RIO with respect to the report. Modifications should be made as appropriate in consultation with the RIO and the inquiry committee.

**E.      Notification of the Results of the Inquiry; Opportunity to Comment**

The RIO or their designee will give the respondent a copy of the draft inquiry report for review and an opportunity to provide written comments within 10 business days, and include a copy of or link to this Policy.

Any comments that are submitted by the respondent will be attached to the final inquiry report. Based on the comments, the inquiry committee may revise the draft report as appropriate and prepare it in final form. The RIO will notify the respondent of the final outcome with a copy of the final inquiry report and include a copy of or link to this Policy.

**F.      Institutional Decision and Notification**

- *Decision by Deciding Official* – The RIO will transmit the final inquiry report and any comments to the Dean or their designee, who will make a written determination as to whether an investigation is warranted. The inquiry is completed when this determination is made. The RIO will notify institutional officials who have a need to know of the decision.
- *Notification to Respondent.* Within 30 calendar days of a determination that an investigation is warranted, the RIO will provide written notice to the respondent of the decision to conduct an investigation of the alleged misconduct, including any allegations of research misconduct not addressed during the inquiry.
- *Documentation of Decision Not to Investigate* – If the Dean or their designee decides that an investigation is not warranted, the RIO shall secure and maintain for 7 years after the termination of the inquiry sufficiently detailed documentation of the inquiry to permit a later assessment of the reasons why an investigation was not conducted.

**G.      Time for Completion**

The inquiry will be completed within 90 calendar days of initiation, unless circumstances warrant a longer

7

period, in which case the RIO will document the reasons for the extension in the inquiry report.

### VII.    The Investigation

### A.    Initiation and Purpose

The investigation ordinarily should begin shortly after completion of the inquiry.

The purpose of the investigation is to formally develop a factual record, pursue leads, examine the record, and recommend findings to the Deciding Official, who will make the final institutional decision, based on a preponderance of the evidence, on each allegation and any institutional actions. The investigation committee will pursue diligently all significant issues and relevant leads, including any evidence of additional instances of possible research misconduct, and continue the investigation to completion. If new allegations are identified during an investigation, the RIO also must give the respondent written notice of such allegations within a reasonable amount of time of deciding to pursue allegations not addressed during the inquiry or in the initial notice of the investigation.

If any additional respondents are identified during the investigation, the RIO will notify them of the allegations and provide them with an opportunity to respond consistent with this Policy. Ordinarily, respondents identified during an ongoing investigation and relevant to such investigation will be added to the ongoing investigation without conducting a separate inquiry unless HBS, in its sole discretion, determines that circumstances warrant the conduct of a separate inquiry.

### B.    Sequestration of Research Records

On or before the date on which the respondent is notified, or the investigation begins, whichever is earlier, or the date on which a new respondent is notified as part of an ongoing investigation, the RIO must take all reasonable and practical steps to obtain custody of and sequester in a secure manner all the research records and evidence needed to conduct the research misconduct proceeding that were not previously sequestered during the inquiry. The need for additional sequestration of records may occur for any number of reasons, including the institution's decision to investigate additional allegations not considered during the inquiry stage or identification of records during the inquiry process that had not been previously secured. The procedures to be followed for sequestration during the investigation are the same procedures that apply during the inquiry.

### C.    Appointment of the Investigation Committee

The Dean or their designee, in consultation with other institutional officials as appropriate, will appoint an ad hoc investigation committee and committee chair. The investigation committee must consist of individuals who do not have unresolved personal, professional, or financial conflicts of interest with those involved with the investigation and should include individuals with the appropriate subject-matter expertise. Individuals appointed to the investigation committee also may have served on the inquiry committee. When necessary to secure the necessary expertise or to avoid conflicts of interest, the Dean or their designee may select investigation committee members from outside the institution.

Prior to the initiation of the Investigation, the respondent will be notified of the investigation committee's membership and shall be afforded five (5) calendar days to lodge objections based upon a committee member's alleged personal, professional, or financial conflict of interest. The Dean or their

designee will make the final determination as to whether a conflict exists.

**D.    Committee Orientation**

The RIO will provide an orientation to the committee, describing the subject matter of the investigation and the allegations and related issues identified during the inquiry; identifying the respondent; informing the committee that it must conduct the investigation as prescribed by this Policy; defining research misconduct; and instructing the investigation committee on the burden of proof. The RIO will explain that the committee is to evaluate the evidence and testimony of the respondent and other witnesses as applicable to determine whether, based on a preponderance of the evidence, research misconduct occurred. The RIO also will inform the committee that a written investigation report that meets the requirements of this Policy must be prepared reflecting the committee's work.

The RIO will review with the committee the orientation elements described above, the inquiry report, and the prescribed procedures and standards for the conduct of the investigation, including the necessity for confidentiality. The investigation committee will be provided with a copy of this Policy and, if applicable, federal regulations. The RIO will explain that the committee will conduct interviews, pursue leads, and examine all research records and other evidence relevant to reaching a decision on the merits of the allegations. The RIO will be present and available throughout the investigation to advise the committee as needed.

**E.    Investigation Process**

The investigation committee and the RIO must:

•    Use reasonable steps to ensure that the investigation is thorough, sufficiently documented, and impartial and unbiased to the maximum extent practicable; and
•    Offer each respondent, complainant, and any other available person who has been reasonably identified as having information regarding any relevant aspects of the investigation, including witnesses identified by the respondent, the opportunity to be interviewed. HBS will: refer to any exhibits with sufficient clarity that a reader of the transcript can readily identify the materials under examination; record and transcribe interviews during the investigation and make the transcripts available to the interviewee for correction; and include the transcripts with any corrections and exhibits in the institutional record of the investigation. The respondent will not be present during the witnesses' interviews but shall be provided a transcript of each interview, with redactions as appropriate to maintain confidentiality.

**F.    The Investigation Report**

The investigation committee and the RIO are responsible for preparing a written draft report of the investigation that includes:
- A description of the nature of the allegation of research misconduct, including any additional allegations addressed during the research misconduct proceeding;
- A description and documentation of financial support for the research subject to the allegations, including, for example, the numbers of any grants that are involved, grant applications or other proposals for support, contracts, progress reports, presentations, posters and publications or submitted manuscripts listing support (this includes known applications or proposals for support that the respondent has pending with potential funders);

- a description of the specific allegations of research misconduct considered in the investigation of the respondent;
- The composition of the investigation committee, including names, positions, and subject matter expertise;
- An inventory of sequestered research records and other evidence, except records the institution did not consider or rely on, and a description of how any sequestration was conducted during the investigation;
- Transcripts of all interviews conducted;
- An identification of the specific published papers, manuscripts submitted but not accepted for publication (including online publication), funding applications, progress reports, presentations, posters, or other research records that contain the allegedly falsified, fabricated, or plagiarized material;
- Any scientific or forensic analysis conducted;
- A copy of the institutional policies and procedures under which the investigation was conducted;
- Any comments made by the respondent, as applicable, on the draft investigation report and the committee's consideration of these comments; and
- A statement for each separate allegation of whether the committee recommends a finding of research misconduct.

If the committee recommends a finding of research misconduct for an allegation, the investigation report will present a finding for each allegation. These findings will: (1) identify the individuals who committed the research misconduct; (2) indicate whether the research misconduct was falsification, fabrication, and/or plagiarism; (3) indicate whether the misconduct was committed intentionally, knowingly, or recklessly; (4) identify any significant departure from the accepted practices of the relevant research community and that the allegation was proven by a preponderance of the evidence; (5) summarize the facts and the analysis that support the conclusion and consider the merits of any reasonable explanation by the respondent; (6) identify the specific funding support (if any); and (7) state whether any publications need correction or retraction. Where findings of research misconduct have been made, the investigation committee may recommend institutional actions to the Deciding Official.

If the investigation committee does not recommend a finding of research misconduct for an allegation, the investigation report will provide a detailed rationale for its conclusion.

The investigation committee may recommend corrective actions even if no finding of research misconduct has been recommended, including, for example, correction or retraction of published or submitted work that is necessary to ensure the integrity of the scientific record.

The Office of the General Counsel shall be available to advise the investigation committee and the RIO with respect to the report.

**G.    Comments on the Draft Report and Access to Evidence**

1.    Respondent – The RIO will give the respondent a copy of the draft investigation report and exhibits for comment and, concurrently, a copy of or supervised access to the evidence that the investigation committee considered or relied on. The respondent will be allowed 30 days from receipt of the draft report to submit comments to the RIO. The RIO will assist the investigation committee in finalizing

> the investigation report, including by ensuring that any comments provided by the respondent are considered by the investigation committee and added to the investigation report.
>
> 2. Confidentiality – In distributing the draft report to the respondent for comment, the RIO will remind the respondent of the confidentiality under which the draft report is made available and may establish reasonable conditions to ensure such confidentiality.

## H.    Decision by Deciding Official

The final investigation report will be submitted to the Dean or their designee, who will make a written determination as to: (1) whether the institution accepts the recommended findings of the investigation committee as to whether there was research misconduct and, if so, who committed the misconduct; and (2) the appropriate institutional actions in response to any findings of research misconduct or, if no findings of misconduct are made, on the basis of other conduct detailed in the final investigation report warranting corrective action (if any). If this determination varies from the recommended findings of the investigation committee, the Dean or their designee will explain in detail the basis for rendering a different decision. Alternatively, the Dean or their designee may return the report to the investigation committee with a request for further fact-finding or analysis.

When a final decision on the case has been reached, the respondent will be notified in writing. The Dean or their designee, in consultation with institutional officials as needed, also will determine whether relevant parties should be notified of the outcome of the case, including without limitation: law enforcement agencies, professional societies, professional licensing boards, editors of journals in which falsified reports may have been published, the respondent's collaborators in the work in question, current employers, or other relevant parties.

## I.    Institutional Actions

After a determination of research misconduct is made, the Dean or their designee may decide on appropriate actions to be taken, in consultation with others at the University as appropriate. Sanctions for research misconduct shall be based on the seriousness of the misconduct, including but not limited to the degree to which the misconduct: a) was intentional, knowing, or reckless; b) was an isolated event or part of a pattern; and c) had significant impact on the research record, research subjects, other researchers, institutions, or the public welfare. The range of administrative actions includes, but is not limited to, the correction  of the public record including the withdrawal or correction of all pending or published abstracts and papers emanating from the research where misconduct was found; removal of the responsible person from the particular project, special monitoring of future work, probation, suspension, leave without pay, salary reduction, or initiation of steps leading to rank reduction or termination of academic appointment or employment; initiation of Third Statute proceedings to revoke tenure; restitution of funds as appropriate; suspension or termination of an active award; letters of reprimand; notification of current employer; and other action appropriate to the research misconduct. For cases involving research misconduct by students, sanctions shall be determined by the appropriate student disciplinary board.

As indicated above, the Deciding Official may also determine that corrective action involving the respondent is warranted on the basis of the conduct detailed in the investigation report, even if no findings of misconduct have been made.

**J.        Time for Completion**

HBS should seek to complete the investigation within 180 days of its initiation unless circumstances warrant a longer period. However, if the RIO determines that the investigation will not be completed within this 180-day period, the rationale for the delay will be documented.

**VIII.        Interim Institutional Actions**

Throughout the research misconduct proceeding, the RIO will review the situation to determine if there is any threat of harm to public health or the integrity of the research process. In the event of such a threat, the RIO will, in consultation with institutional and other officials, as necessary, take appropriate interim actions to protect against any such threat.

Interim actions might include: additional monitoring of the research process; reassignment of personnel; additional review of research data and results; or delaying publication.

HBS, through the RIO, may seek correction or retraction of published or submitted research at any time during a research misconduct proceeding when there is clear evidence of false, fabricated, or plagiarized research, whether due to honest error or for any other reason, or if HBS finds there are no research records available to support the published or submitted research.

**IX.        Completion of Cases**

Generally, all inquiries and investigations will be carried through to completion and all significant issues will be pursued diligently.

**X.        Other Considerations**

**A.        Multiple Institutions**

If the alleged research misconduct involves multiple institutions, HBS may work closely with the other affected institutions to determine whether a joint research misconduct proceeding will be conducted. If so, the cooperating institutions will choose an institution to serve as the lead institution. In a joint research misconduct proceeding, the lead institution will obtain research records and other evidence pertinent to the proceeding, including witness testimony, from the other relevant institutions. By mutual agreement, the joint research misconduct proceeding may include committee members from the institutions involved. The determination of whether further inquiry and/or investigation is warranted, whether research misconduct occurred, and the institutional actions to be taken ordinarily will be made by the institutions jointly.

**B.        Termination or Resignation Prior to Completing Inquiry or Investigation**

The termination of the respondent's HBS employment, by resignation or otherwise, before or after an allegation of possible research misconduct has been reported, will not preclude or terminate the research misconduct proceeding or otherwise limit any of HBS's responsibilities to pursue allegations. If the respondent, without admitting to the misconduct, elects to resign their position after HBS receives

12

an allegation of research misconduct, the assessment of the allegation will proceed, as well as the inquiry and investigation, as appropriate based on the outcome of the preceding steps. If the respondent refuses to participate in the process after resignation, the RIO and any inquiry or investigation committee will use their best efforts to reach a conclusion concerning the allegations, noting in the report the respondent's failure to cooperate and its effect on the evidence.

### C.    Restoration of the Respondent's Reputation

Following a final finding of no research misconduct, the RIO must, at the request of the respondent, undertake all reasonable and practical efforts to restore the respondent's reputation.

### D.    Allegations Not Made in Good Faith

If relevant, the Dean or their designee will determine whether the complainant's allegations of research misconduct were made in good faith, or whether a witness or committee member acted in good faith. If the Dean or their designee determines that there was an absence of good faith, the Dean or their designee will determine whether any administrative action should be taken against the person who failed to act in good faith or whether other steps are necessary to correct the research misconduct process.

### E.    Maintaining Records

HBS shall maintain the records of a research misconduct proceeding in a secure manner during its pendency and for seven (7) years after completion of the proceeding or completion of any agency oversight proceeding, or as required by any applicable record retention provision, whichever is later.

*This policy was introduced in August 2021. It was updated in January 2026 after updated regulations were issued by the Office of Research Integrity in the U.S. Department of Health and Human Services.*

**Appendix 1:  Glossary of Terms and Definitions**

*Accepted practices of the relevant research community*: those practices established by applicable research misconduct regulation or by a sponsor's funding components (if applicable), as well as commonly accepted professional codes or norms within the overarching community of researchers and institutions that apply for and receive sponsored funding.

*Allegation*: a disclosure of possible research misconduct through any means of communication and brought directly to the attention of an institutional official.

*Assessment*: a consideration of whether an allegation of research misconduct appears to fall within the definition of research misconduct, is subject to this policy, and is sufficiently credible and specific so that potential evidence of research misconduct may be identified. The assessment only involves the review of readily accessible information relevant to the allegation. For purposes of evaluating applicable external notification and other requirements, the assessment will also evaluate whether the allegation relates to activities involving federal support and/or other externally-funded research.

*Committee member*: a member of any ad hoc committee appointed to conduct all or a portion of the research misconduct process under this Policy.

*Complainant*: a person who in good faith makes an allegation of research misconduct.

*Conflict of interest*: an unresolved financial, personal, or professional relationship that reasonably could compromise a person's decisions under this Policy.

*Deciding Official*: the institutional official who makes final determinations about allegations of research misconduct and any institutional actions, ordinarily the Dean of HBS. The Deciding Official cannot also serve as the Research Integrity Officer.

*Evidence*: anything offered or obtained during a research misconduct proceeding that tends to prove or disprove the existence of an alleged fact. Evidence includes documents, whether in hard copy or electronic form, information, tangible items, and testimony.

*Fabrication*: making up data or results and recording or reporting them.

*Falsification*: manipulating research materials, equipment, or processes, or changing or omitting data or results such that the research is not accurately represented in the research record.

*Good faith*
*As applied to a complainant or witness*: having a reasonable belief in the truth of one's allegation or testimony, based on the information known to the person at the time. An allegation or cooperation with a research misconduct proceeding is not in good faith if made with knowledge of or reckless disregard for information that would negate the allegation or testimony.

*As applied to an institutional or committee member*: cooperating with the research misconduct proceeding by impartially carrying out the duties assigned for the purpose of helping the institution meet its responsibilities under the Policy. An institutional or committee member does not act in

14

good faith if their acts or omissions during the research misconduct proceedings are dishonest or influenced by personal, professional, or financial conflicts of interest with those involved in the research misconduct proceeding.

*Inquiry*: preliminary information-gathering and preliminary fact-finding in accordance with the Policy to determine whether an allegation of research misconduct warrants investigation.

*Institutional member*: an individual who is employed by, is an agent of, or is affiliated by contract or agreement with HBS. Institutional members may include, but are not limited to, officials, tenured and untenured faculty, teaching and support staff, researchers, research coordinators, technicians, postdoctoral and other fellows, students, volunteers, subject matter experts, consultants, or attorneys, or employees or agents of contractors, subcontractors, or sub-awardees.

*Institutional record*: The institutional record comprises:
   a.  The records that the institution compiled or generated during the research misconduct proceeding, except records the institution did not consider or rely on. These records include, but are not limited to:
        1.  Documentation of the Assessment.
        2.  If an inquiry is conducted, the inquiry report and all records (other than drafts of the report) considered or relied on during the inquiry, including but not limited to research records and the transcripts of any transcribed interviews conducted during the inquiry, information the respondent provided to the institution, and the documentation of any decision not to investigate.
        3.  If an investigation is conducted, the investigation report and all records (other than drafts of the report) considered or relied on during the investigation, including but not limited to research records, the transcripts of each interview conducted during the investigation, and information the respondent provided to the institution.
        4.  Decision(s) by the Deciding Official, such as the written decision from the Deciding Official.
   b.  A single index listing all the research records and evidence that the Institution compiled during the research misconduct proceeding, except records the Institution did not rely on.
   c.  A general description of the records that were sequestered but not considered or relied on.

*Intentionally*: to act intentionally means to act with the aim of carrying out the act.

*Investigation*: the formal development of a factual record and the examination of that record leading to a decision about whether to recommend a finding of research misconduct, which may include a recommendation for other appropriate actions, including institutional actions.

*Knowingly*: to act knowingly means to act with awareness of the act.

*ORI:* the Office of Research Integrity in the U.S. Department of Health and Human Services (DHHS). ORI is responsible for the scientific misconduct and research integrity activities of the U.S. Public Health Service (PHS).

*Plagiarism*: the appropriation of another person's ideas, processes, results, or words without giving appropriate credit. As used under this Policy:
   a.  Plagiarism includes the unattributed verbatim or nearly verbatim copying of sentences and

paragraphs from another's work that materially misleads the reader regarding the contributions of the author. It does not include the limited use of identical or nearly identical phrases that describe a commonly used methodology.

b. Plagiarism does not include self-plagiarism or authorship or credit disputes, including disputes among former collaborators who participated jointly in the development or conduct of a research project.

*Preponderance of the evidence*: proof by evidence that, compared with the evidence opposing it, leads to the conclusion that the fact at issue is more likely true than not.

*PHS support*: PHS funding, or applications or proposals for PHS funding, for biomedical or behavioral research, biomedical or behavioral research training, or activities related to that research or training, that may be provided through funding for PHS intramural research; PHS grants, cooperative agreements, or contracts; subawards, contracts, or subcontracts under those PHS funding instruments; or salary or other payments under PHS grants, cooperative agreements, or contracts.

*Recklessly*: to act recklessly means to propose, perform, or review research, or report research results, with indifference to a known risk of fabrication, falsification, or plagiarism.

*Research*: a systematic experiment, study, evaluation, demonstration, or survey designed to develop or contribute to general knowledge or specific knowledge by establishing, discovering, developing, elucidating, or confirming information about, or the underlying mechanism relating to, those matters.

*Research Integrity Officer (RIO)*: the institutional official responsible for administering the institution's written policies and procedures for addressing allegations of research misconduct in compliance with applicable regulations, including: (1) reviewing allegations of research misconduct to determine if they fall within the definition of research misconduct and warrant an inquiry; and (2) overseeing inquiries and investigations.

*Research misconduct*[5]: fabrication, falsification, or plagiarism in proposing, performing, or reviewing research, research training, or other activities relating to research or research training, or in reporting research results. Research misconduct does not include honest error or differences of opinion.

*Research misconduct proceeding:* any actions related to alleged research misconduct taken under this Policy or applicable regulation, including allegation assessments, inquiries, investigations, and oversight reviews by ORI or other cognizant agencies.

*Research record*: the record of data or results that embody the facts resulting from scientific inquiry or other scholarly endeavors. Data or results may be in physical or electronic form. Examples of items, materials, or information that may be considered part of the research record, include but are

---

[5] For cases involving research supported by the National Science Foundation (NSF), the definition is as follows: fabrication, falsification, or plagiarism, whether committed by an individual directly or through the use or assistance of other persons, entities, or tools, including artificial intelligence (AI)-based tools, in proposing or performing research funded by NSF, reviewing research proposals submitted to NSF, or in reporting research results funded by NSF.

not limited to, research proposals, raw data, processed data, laboratory records (physical and electronic), progress reports, manuscripts, abstracts, theses, records of oral presentations, online content, internal reports, journal articles, correspondence.

*Respondent*: the person against whom an allegation of research misconduct is directed or who is the subject of a research misconduct proceeding.

*Retaliation*: an adverse action taken against a complainant, witness, or committee member by an institution or one of its members in response to a good faith allegation of research misconduct or good faith cooperation with a research misconduct proceeding.

**Appendix 2: Additional Procedures for Allegations Involving Federal Funding**

*Scope*

This Policy is intended to comply with institutional responsibilities under the Public Health Service (PHS) Policies on Research Misconduct, 42 CFR Part 93. Other federal agencies have published their own research misconduct regulations; to the extent those regulations apply to an allegation of research misconduct and are inconsistent with this Policy, HBS shall comply with the applicable regulatory requirements.

This Policy applies only to allegations of research misconduct that occurred within six years of the date HBS, the U.S. Department of Health and Human Services (HHS), or another U.S. governmental funding agency received the allegation, subject to the following exceptions:
- The six-year time limitation does not apply if the individual accused of research misconduct continues or renews any incident of alleged research misconduct that occurred before the six-year period through the use of, republication of, or citation to the portion(s) of the research record alleged to have been fabricated, falsified, or plagiarized, for the potential benefit of that individual ("subsequent use exception"). For alleged research misconduct that appears subject to this subsequent use exception, but that Harvard determines is not subject to the exception, the institution will document its determination that the subsequent use exception does not apply and will retain this documentation for the later of seven years after completion of the institutional proceeding or the completion of any HHS proceeding, if applicable.
- The six-year time limitation also does not apply if a U.S. government funding agency, including the HHS Office of Research Integrity ("ORI") determines that the alleged research misconduct, if it occurred, would possibly have a substantial adverse effect on the health or safety of the public.
- The six-year time limitation also does not apply if the matter is governed by regulation or other requirements issued by an agency that recognizes no statute of limitations or if Harvard otherwise determines in good faith that the interests of the institution warrant application of these procedures to the alleged research misconduct.

With respect to students involved in allegations of research misconduct that involve federal funding, the appropriate student disciplinary board will be notified of the initiation of any inquiries and/or investigations and will be informed of the findings of any such inquiries and/or investigations, including receiving copies of all inquiry and/or investigation reports.

*Inquiry Process*

If a legally sufficient admission of research misconduct is made by the respondent, misconduct may be determined at the inquiry stage if all relevant issues are resolved. In that case, with respect to federal-funded research, HBS shall consult promptly with the relevant federal agency to determine the next steps that should be taken.

*Notification to Respondent of the Results of the Inquiry*

The RIO will provide the respondent with a link to or copy of 42 C.F.R. Part 93 (or other applicable federal regulations).

*Institutional Decision and Notification: Notification to Respondent and to Federal Agencies (when appropriate)*

Within 30 calendar days of a determination that an investigation is warranted, the RIO will provide the Office of Research Integrity ("ORI")[6] with a copy of the final inquiry report along with the Deciding Official's written decision (or comply with any other notice obligation to a government agency or other funder).

*Notice to Federal Agencies of Institutional Findings and Actions*

When the Deciding Official reaches a final decision on the case, the investigation is complete, and the RIO will transmit to the applicable funding agency or agencies: (1) a copy of the final investigation report with all attachments; (2) a statement of whether the institution accepts the findings of the investigation report; (3) a statement of whether the institution found misconduct and, if so, who committed the misconduct; and (4) a description of any pending or completed institutional actions against the respondent.

*Time for Completion*

If the RIO determines that an investigation cannot be completed within 180 days of its initiation, the rationale for the delay will be documented and the RIO will, if applicable, notify federal agencies as required and in accordance with federal regulations.

*Interim Institutional Actions and Notifying Federal Agencies of Special Circumstances*

Throughout the research misconduct proceeding, the RIO will review the situation to determine if there is any threat of harm to public health or to federal funds and equipment. In the event of such a threat, the RIO will, in consultation with other institutional officials, and ORI, as necessary, take appropriate interim actions to protect against any such threat.

HBS shall, at any time during a research misconduct proceeding, notify ORI (or the relevant federal agency) immediately if there is reason to believe that any of the following conditions exist:
- Health or safety of the public is at risk, including an immediate need to protect human or animal subjects;
- Federal resources or interests are threatened;
- Research activities should be suspended;
- There is a reasonable indication of possible violations of civil or criminal law;
- Federal action is required to protect the interests of those involved in the research misconduct proceeding; or
- Federal action may be necessary to safeguard evidence and protect the rights of those involved.

*Respondent Admissions*

For allegations that include PHS funded research, HBS will promptly notify ORI in advance if at any point during the proceedings (including the assessment, inquiry, investigation, or appeal stage) it plans to

---

[6] The Office of Research Integrity (ORI) in the U.S. Department of Health and Human Services (DHHS) is responsible for the scientific misconduct and research integrity activities of the U.S. Public Health Service (PHS).

close a research misconduct case because the respondent has admitted to committing research misconduct or a settlement with the respondent has been reached. If the respondent admits to research misconduct, the institution will not close the case until providing ORI with the respondent's signed, written admission. The admission must state the specific fabrication, falsification or plagiarism that occurred, which research records were affected, and that it constituted a significant departure from the accepted practices of the relevant research community. The institution must not close the case until giving ORI a written statement confirming the respondent's culpability and explaining how the institution determined that the respondent's admission fully addresses the scope of the misconduct. For allegations that include non-PHS funded research, HBS must comply with any other notice obligation to a government agency or other funder.

### *Maintaining Records*

Unless HBS has transferred custody of the records of research misconduct proceedings (as defined by 42 C.F.R. § 93.317) to the funding agency in accordance with applicable law, HBS shall maintain the records of a research misconduct proceeding in a secure manner during its pendency and for seven (7) years after completion of the proceeding or completion of any agency oversight proceeding, or as required by any applicable record retention provision, whichever is later.