# EXHIBIT 60

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| FRANCESCA GINO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:23-cv-11775-MJJ |
| | ) | |
| PRESIDENT AND FELLOWS OF | ) | |
| HARVARD COLLEGE, SRIKANT DATAR, | ) | |
| JOHN DOES 1-10, AND JANE DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**EXPERT REPORT OF JULIAN ACKERT**

**May 27, 2026**

**TABLE OF CONTENTS**

**Page**

I.    QUALIFICATIONS AND EXPERIENCE ......................................................................... 1

    A.  **Qualifications** .............................................................................................. 1

    B.  **Assignment** ................................................................................................. 2

    C.  **Materials Considered** ................................................................................. 3

    D.  **Summary of Opinions** ................................................................................ 4

II.   ALLEGATION 4B AND THE JULY 16 OG FILE ................................................... 5

    A.  **Timeline of Relevant Files** ........................................................................ 7

    B.  **Narrative of Events Supported by Forensic Data** .................................... 10

III.  EVIDENCE OF DATA FABRICATION:  THE 2023 COVER-UP FILE AND THE JULY
    16 OG FILE ............................................................................................................. 13

    A.  **Document #7 – The 2023 Cover-Up File** .................................................... 13

    B.  **Differences in Content and Metadata Between Document #3
      and the 2023 Cover-Up File** ...................................................................... 14

    C.  **Metadata in the 2023 Cover-Up File Was *Manually* Backdated** ............. 16

    D.  **The 2023 Cover-Up File and the USB Device** ............................................ 17

    E.  **Additional Evidence Tampering** ................................................................ 23

## I.    QUALIFICATIONS AND EXPERIENCE

### A.    Qualifications

1.    I am a Senior Managing Director at iDiscovery Solutions, Inc. ("iDS"), an expert services and consulting firm that provides independent computer forensics, electronic discovery expert testimony and analysis, original authoritative studies, and strategic consulting services to the business and legal community.

2.    I have over 25 years of experience in consulting and litigation technologies that focus on computer forensics and electronic discovery.  My curriculum vitae, attached hereto as **Appendix A,** describes that experience, including all articles and testimony I have completed over the last ten years.

3.    Specifically, I have extensive experience creating and implementing preservation and collection strategies and performing computer forensics and metadata analysis on electronic data.

4.    I have performed preservation, collection, and analysis of electronic data in hundreds of matters.  The opinions I express in this report are offered within a reasonable degree of professional certainty and are based on my education, training, years of experience, and the information provided to date.

5.    My rate is $650 per hour, depending on the services provided.  My fees are not contingent on the outcome of this case.

6.    When I state "I," "Myself," or "iDS," I mean this work was done by me, or by people working at my direction and supervision within iDS.

**B.    Assignment**

7.    I have been retained by counsel for President and Fellows of Harvard College and Srikant Datar (collectively, "Harvard") to provide my impartial professional analyses of and opinions on the forensic evidence of data files and emails relating to claims brought by Plaintiff Francesca Gino ("Gino") in this litigation as well as a counterclaim brought by Harvard.

8.    Specifically, I have been asked to analyze and provide my expert opinion on the forensic evidence that relates to Harvard's counterclaim that Gino falsified and backdated a data file.  I also have analyzed forensic evidence in connection with reviewing testimony provided by Gino's forensic expert during the course of a University-level faculty-led disciplinary proceeding to determine whether Gino's tenure should be revoked (the "Third Statute Proceeding").

9.    In 2024, I was retained on behalf of Harvard Business School ("HBS") to provide my impartial forensic analyses and opinions in connection with the Third Statute Proceeding.

10.    My written testimony ("Rebuttal Third Statute Testimony")[1] was provided to the Third Statute Hearing Committee, comprised of seven tenured Harvard faculty members, on September 27, 2024, in response to the testimony of Gino's forensic expert, Michael McGowan ("McGowan").  After receiving additional forensic evidence that the Hearing Committee ordered Gino to provide, I provided a supplemental written statement on October 29, 2024 ("Supplemental Rebuttal Third Statute Testimony,"[2] and, together with the Rebuttal Third Statute Testimony, the "Third Statute Testimony").  My Third Statute

---

[1] *See* Ex. A, HARV00022577.
[2] *See* Ex. B, HARV00069707.

2

Testimony is attached hereto as Exhibits A and B, respectively.  In addition, I testified under oath at the hearing held in connection with the Third Statute Proceeding on November 15, 2024.

11. My opinions are based on the available forensic evidence and may evolve based on the production of new forensic artifacts.  I reserve the right to update my report and opinions if new forensic evidence becomes available to me, if I am asked to perform additional analysis, or in response to any further submissions by Gino in this matter.

### C.    Materials Considered

12. I have prepared this report based on the images, data, and other evidence available to me to date.

13. I understand that in October 2021, HBS sequestered Gino's relevant research records in connection with the research misconduct process it undertook to investigate five allegations of research misconduct against Gino (the "Allegations").[3]  As part of that sequestration process, HBS sequestered data from Gino's 2016 MacBook Pro, serial #C02T2CB6GTF1, which Gino purchased using HBS funds (the "HBS Laptop").  I have reviewed the copy of the HBS Laptop sequestered in 2021, which I will call the "Sequestered Laptop Copy."

14. I further understand that, in January 2024, during the Third Statute Proceeding, Gino's expert McGowan created another copy of the HBS Laptop, which was provided to HBS as part of the Third Statute Proceeding.  I have reviewed this 2024 copy of the HBS Laptop, which I will call the "2024 Laptop Copy."

---

[3] Defs.' Am. Answer, Docket No. 154.

15. I have also reviewed forensic data from several of Gino's devices and data storage locations that were provided by Gino pursuant to a forensic search protocol entered into by the parties in this action.[4]

16. A complete list of the materials I have considered, which includes the materials considered in connection with my Third Statute Testimony, is included in **Appendix B.** In addition, I have relied on my education and professional experience.

### D.    Summary of Opinions

17. As I discuss in detail in the remainder of this report and attached exhibits, I have formed the following opinions:[5]

18. First, McGowan's expert statement submitted in the Third Statute Proceeding provides no forensic evidence to support Gino's various defenses to the Allegations at issue in this litigation and obfuscates inconvenient forensic details that undermine his criticisms of the sequestration process undertaken by HBS. The bases for this opinion are set forth in my Third Statute Testimony.[6]

19. Second, I have found significant forensic evidence that supports the opinions of Professor Jeremy Freese (set forth both in Prof. Freese's expert testimony submitted in the Third Statute Proceeding and his Expert Report dated May 27, 2026, submitted in this action) that there were modifications to the data at issue in connection with the Allegations and that those modifications were made by someone with access to Gino's computers,

---

[4] Forensic Search Protocol (March 5, 2026).
[5] Unless already defined, capitalized terms in this subsection are defined in the main body of this report.
[6] Exs. A and B.

accounts, and passwords. The bases for this opinion are set forth in my Third Statute Testimony.[7]

20.    Third, additional forensic evidence further establishes my prior opinion that, after the HBS investigation had concluded and, importantly, *after* Gino filed this litigation, Gino or someone using her devices, accounts, and passwords falsified and backdated a key data file relevant to Allegation 4b, and placed the backdated file on her HBS Laptop, overwriting a pre-existing version of this key data file. Forensic evidence obtained in this litigation further establishes that, shortly after overwriting the key data file described above, Gino uploaded to her Google Drive a second copy of the key data file that was similarly backdated, this time to reflect metadata that matched the metadata of a file Gino later claimed on her website to have found. I discuss the bases for this opinion in detail in the remainder of this report.

## II.    ALLEGATION 4B AND THE JULY 16 OG FILE

21.    I understand that Harvard has filed a counterclaim in this case alleging that Gino defamed Harvard by making certain false statements.[8] I understand that Harvard alleges that, in September 2023, after Gino sued Harvard, she launched a website about her case (francesca-v-harvard.org). There, Gino claimed that she possessed another version of the data for Allegation 4b that Harvard had neglected in its investigation, and which would have weighed against a finding that she committed research misconduct. She referred to this on her website as the "July 16 OG File."[9]

---

[7] *Id.*
[8] *See* Docket No. 154 ("Counterclaim").
[9] *Id.* at 139–41.

22.    Harvard claims that the "July 16 OG File" is not a genuine file, but instead a file that Gino attempted to fabricate after the HBS research misconduct process concluded, and after Gino filed this litigation.[10]  Harvard claims that, upon receiving a copy of the HBS Laptop during the Third Statute Proceeding, it discovered a key data file relevant to Allegation 4b that had not been on the copy of the same laptop that was sequestered by HBS at the beginning of the research misconduct process.[11]  Harvard calls this file the "2023 Cover-Up File."  Harvard further asserts that the 2023 Cover-Up File contained the altered data used in the published paper, and gave the appearance of a raw data file from July 2010, when the study in question was conducted.[12]  In other words, if the 2023 Cover-Up File were genuine, it would appear to support Gino's claim that she was not responsible for the falsified data in the study underlying Allegation 4b.

23.    But Harvard claims that the 2023 Cover-Up File is not genuine because forensic analysis showed that this file first was added to the HBS Laptop in September 2023 (shortly before Gino made statements about the "July 16 OG File" on her website), and also showed that certain metadata of the file were backdated manually to make it appear as though the file last was modified in July 2010.[13]  Accordingly, Harvard asserts, the 2023 Cover-Up File "represents an abortive attempt by [Gino] to intentionally manufacture evidence that would appear to exonerate her."[14]

24.    Based on my review of the available forensic images and data files relevant to this claim, I have formed the opinion that: (i) on or prior to September 23, 2023, Gino or someone

---

[10] *Id.*
[11] *Id.* at 158–61.
[12] *Id.*
[13] *Id.* at 141.
[14] *Id.* at 160.

6

using her devices, accounts, and passwords falsified and manually backdated the 2023 Cover-Up File so as to appear to match the metadata of an original data file for Allegation 4b; and (ii) on September 23, 2023, Gino or someone using her devices, accounts and passwords placed the backdated 2023 Cover-Up File on her HBS Laptop, overwriting the original data file. I have further formed the opinion that, after this overwriting occurred, Gino or someone using her devices, accounts, and passwords uploaded to Gino's Google Drive another copy of the 2023 Cover-Up File that was manually backdated so as to appear to have the metadata of the "July 16 OG File" that Gino described on her website, claiming that Harvard had overlooked it during its investigation.

## A.    Timeline of Relevant Files

25.    My analysis begins with six key files relevant to Allegation 4b. I present and number them here (**Figure 1**) and will reference them by number or name as necessary:



Figure 1: This is a graphical representation of six key files I reviewed, as further detailed below. The green box indicates data that originated from ████████ and were emailed by ███ to Gino. The red box indicates data found on Gino's devices and accounts.

26.    **Document #1 (July 13, 2010):**  "Taxstudy.xlsx," a file attached to an email sent from ▮▮▮▮▮ to Gino on July 13, 2010 at 5:50 p.m.[15]  The file contains raw data[16] from 50 participants, terse column headings (for example, "CS1", "CS2", "1", "2", *etc.*), and no Excel formulae.  According to ▮▮▮'s email, the file contains the data from the initial day of the experiment at issue in Allegation 4b.[17]

27.    **Document #2 (July 16, 2010):**  "Taxstudy.xlsx," a file attached to an email sent from ▮▮ to Gino on July 16, 2010 at 4:57 p.m.[18]  This file contains raw data from 98 participants, terse column headings, and no Excel formulae.  According to ▮▮▮ testimony to the Investigation Committee, July 16, 2010 is the date on which data collection for the experiment at issue in Allegation 4b was completed.[19]

28.    **Document #3 (July 17, 2010):**  "Taxstudy.xlsx," a file on the Sequestered Laptop Copy of the HBS Laptop but not on the 2024 Laptop Copy.  This file is an exact copy[20] of Document #2.  File system Created Date and Modified Date metadata reflect that the file was saved at 6:43:30 p.m. on July 17 from the attachment to ▮▮▮ July 16 email.

29.    **Document #4 (July 18, 2010):**  "Tax Study summary of results 2010-07-18.docx," a file saved in a Microsoft Word document and attached to an email from Gino to ▮▮ ▮▮▮▮▮, and ▮▮▮▮.  This file contains an analysis that summarizes

---

[15] *See* HARV00042956.  Unless otherwise noted herein, all times are provided in Eastern Standard Time.  I understand that, in July 2010, ▮▮▮ was a lab manager at the University of North Carolina whose duties included running experiments for Gino.  *Id*.

[16] I am using "raw data" to represent the Study 1 data (Study 1 is the study underlying Allegation 4b) that was entered by ▮▮▮ into an Excel spreadsheet with the file name "Taxstudy.xlsx". ▮▮▮ did not include Excel formulae in the raw data.

[17] *See* HARV00066756, ¶ 395(2); *see also* HARV00042956.

[18] *See* HARV00042947–48.

[19] HARV00072139 at -147.

[20] Exact copy by MD5 hash value.  MD5 Hash values are akin to digital fingerprints for electronic files.

results of the experiment at issue in Allegation 4b based on statistics reflecting 101 participants and data that are different from the raw data in Documents #1, #2, and #3 (which I will call the "modified data").[21] Application metadata reflects that the analysis was last saved at 4:21 p.m., and Gino's email was sent at 4:30 p.m.[22]

30.     **Document #5 (July 27, 2010):**  "Taxstudy.xlsx," a file attached to a July 27, 2010 email from ▮▮▮▮▮ to Gino.  The file contains the same raw data from 98 participants as in Document #2, and additionally contains raw data from 28 participants in connection with another study that was eventually published in the same paper.  The file also contains terse column headings and no Excel formulae.[23] These attributes are consistent with Document #5 being a later-saved version of Document #2.

31.     **Document #6 (July 18, 2010):**[24]  "Tax Study STUDY 1 2010-07-13.xlsx,"[25] a file on both the Sequestered Laptop Copy and the 2024 Laptop Copy of the HBS Laptop.  The file contains 101 participants and modified data.  The file has Creation Date application metadata of July 13, 2010, which ties it back to the *first* "Taxstudy.xlsx" file created by ▮▮ (Document #1).  The Last Author application metadata is "Francesca  Gino" (two spaces between "Francesca" and "Gino").

---

[21] *See* HARV00045218.  I am using "modified data" to represent alterations made to the raw data that ▮▮▮▮▮ sent and which underlie the published study.  Those alterations include additional participants, modified data values, and Excel formulae.

[22] *See* HARV00074471.

[23] *See* HARV00042949.

[24] The Created Date file system metadata for Document #6 is November 13, 2011.  For this reason, I have sequenced it after Document #5.  However, as explained below in paragraphs 34 through 38, based on the forensic evidence, it is my opinion that this file was saved on July 18, 2010, and that this date is the relevant one for purposes of this report.

[25] *See* HARV00045248–49.

9

### B.    Narrative of Events Supported by Forensic Data

#### 1.    Documents #1, #2, #3, and #4

32.    On July 13, 2010, while the study underlying Allegation 4b was still in progress, ███████ emailed Gino attaching a spreadsheet with 50 participants and raw data (Document #1). On July 16, 2010, after the study was completed, Gino received another email from ███ ███ attaching a spreadsheet with 98 participants (the same first 50 participants from Document #1, along with 48 more), and this spreadsheet again contained raw data (Document #2).  Gino then saved ████████ attachment (Document #3) to her laptop on Saturday July 17, 2010 at 6:43:30 p.m.  She then issued her draft analysis reflecting 101 participants and statistics derived from modified data (Document #4) on Sunday July 18, 2010 at 4:30:33 p.m., within 22 hours of saving ██████ spreadsheet to her computer.  Thus, during that period, the forensic data indicates that Gino opened Document #3 and edited as follows: (i) added 3 participants, (ii) modified values, and (iii) added Excel formulae.[26] Gino then saved the file as Document #6 and calculated the preliminary results for her analysis.[27]

#### 2.    Document #5

33.    My opinion is that ████████ email and attachment (Document #5), sent on July 27, 2010 at 7:26:55 p.m., show that ██████ was still working with the raw (i.e., unmodified, with terse columns and no Excel formulae) data after July 18, 2010.  If ██████ had participated in a modification of the raw data for Gino's July 18, 2010 draft write-up, it is implausible

---

[26] See HARV00069595 at -9689–706.

[27] See HARV00045248–49.  Freese has testified that this file contains the data underlying the published study.  Freese also testified that the results Gino sent on July 18, 2010 were based on the modified data in this file.  Therefore, this modified data must have existed on July 18, 2010 before Gino sent Document #4.  See HARV00069595 at -9689–706.

that she would continue using the raw data or not have markings in her spreadsheet reflecting changes to the raw data, which she does not. Notably, none of the ███ email attachments (Documents #1, #2, or #5) contain the same participant count seen in Documents #4 and #6; nor, importantly, do they contain formulae, as does Document #6; nor do they contain the modified data, as present in Document #4 and Document #6, that eventually were used in the published paper.

### 3. Document #6

34. The metadata of Document #6 reveal additional details about how Document #6 fits into the sequence of events.

35. **Figure 2** below depicts a graphical representation of the metadata for Document #6. There are two types of metadata for a document—the file system metadata (blue box) and the application metadata (green box).



Figure 2: File system and application metadata for Document #6.

36.    The Created Date application metadata for Document #6 (see the green box in **Figure 2** above) is July 13, 2010 10:39 a.m.  The Created Date application metadata provides the date that the file was first created on a computer.  In this case, that would be when ▮▮▮▮ created the *first* "Taxstudy.xlsx" file on July 13, 2010, presumably on her computer as the original Author application metadata is "▮▮▮▮▮."

37.    The Created Date file system metadata for Document #6 (see the blue box in **Figure 2** above) is November 13, 2011.  This 2011 date has nothing to do with the timeline of events in July 2010, and does not undermine the conclusion below that the modified data in this file existed as of July 18, 2010.  The Created Date file system metadata provides the date that the file first existed on the computer in use by Gino in November 2011, which I understand to be a ▮▮▮▮▮▮▮▮▮▮.[28]  The data migration process from the laptop she used in July 2010 to the laptop used in November 2011 did not preserve Created Date file system metadata.[29]

38.    Based on the Created Date application metadata and the Created Date file system metadata, combined with the words "Tax Study" and "2010-07-13" in the file name, it is my opinion to a reasonable degree of forensic certainty that:

- Document #6 is a derivative of Document #3;

- Gino, during the 22-hour window mentioned above, opened Document #3,

---

[28] *See* GINO_000351.

[29] The 2017 Date Added metadata also has nothing to do with the timeline of events in July 2010. The HBS Laptop was acquired by Gino in February 2017.  Because the Date Added metadata of this file, February 16, 2017, is identical to the date added metadata of thousands of other files on the HBS Laptop, all of which have retained Created Date file system metadata that predates February 16, 2017, I can conclude to a reasonable degree of forensic certainty that some type of data migration process was used to copy data from the computer in use by Gino in November 2011 to the HBS Laptop on February 16, 2017, and that that data migration process preserved the original Created Date file system metadata of the migrated files.

added participants and modified values as noted above, and re-saved the document as Document #6 on July 18, 2010; and

- Document #6 was later migrated to a Gino computer in 2011, and then again to the HBS Laptop on February 16, 2017.

## III. EVIDENCE OF DATA FABRICATION: THE 2023 COVER-UP FILE AND THE JULY 16 OG FILE

39. In addition to the six key files described above, I identified a seventh document (Document #7, or the "2023 Cover-Up File"). Unlike the six key files, my analysis of the 2023 Cover-Up File shows both evidence of metadata backdating and evidence of content alterations, both of which constitute evidence deletion, evidence fabrication, and data obfuscation.

### A. Document #7 – The 2023 Cover-Up File

40. **Figure 3** is a visual representation of how Document #7 interacts with the six key files described above.



Figure 3: This is a graphical representation of six key files I reviewed, along with Document #7. The green box indicates data that originated from ███████ and were emailed to Gino. The red box indicates data found on Gino's devices and accounts.

41. I identified Document #7 by comparing (i) the folder structure and metadata of files on the HBS Laptop as preserved in the Sequestered Laptop Copy, saved in 2021, with (ii) the folder structure and metadata of files on the HBS Laptop preserved in the 2024 Laptop Copy, saved in 2024. In other words, in examining the later-made 2024 Laptop Copy, I identified a new file (Document #7) that was in the exact place where Document #3 *should* have been. The relevant file directory in both the Sequestered Laptop Copy and 2024 Laptop Copy is "/Users/fgino/Documents/Work In Progress/███████████/Tax study/". Like Document #3, the file name of Document #7 is "Taxstudy.xlsx." Going forward, I will refer to Document #7 as the "2023 Cover-Up File."

**B. Differences in Content and Metadata Between Document #3 and the 2023 Cover-Up File**

42. As to content, a review of the two files reveals stark differences. Document #3 has 98 participants and raw data, but the 2023 Cover-Up File has 101 participants, the modified data from Gino's July 18, 2010 analysis (Document #4 and Document #6), and Excel formulae, while retaining the terse column headings from the version emailed by ████ on July 16 (Document #2).

43. The metadata of the two files are also different. In ordinary circumstances, metadata for files will change when a user accesses those files and makes changes to them. Thus, it is to be expected that two copies of the same device—created more than two years apart— will have differences in the metadata for particular files that have been accessed and modified. It is also to be expected that any differences in the metadata arising from normal access and use will result in revised metadata that is *later in time* than that preserved in the earlier image.

14

44.    However, when completing my review of the directory at /Users/fgino/Documents/Work In Progress/█████████/Tax study/, I found that the file system Date Modified metadata for the 2023 Cover-Up File in the 2024 Laptop Copy *predated* the metadata for Document #3 in the Sequestered Laptop Copy by 30 seconds (**Figure 4,** below).



Figure 4: September 23, 2023 Metadata and Content Alteration to *Taxstudy.xlsx*

45.    Microsoft Office application metadata for the 2023 Cover-Up File, which indicate the file was Last Saved on September 23, 2023, show that the file system Date Modified data have been altered. It is highly irregular that the 2023 Cover-Up File appears to be last saved and added to the HBS Laptop on September 23, 2023, yet still reflects its original file system Date Modified metadata from 13 years earlier, let alone also shows a difference of 30 seconds (see yellow highlighting in **Figure 4** above) when compared to Document #3.

15

### C.    Metadata in the 2023 Cover-Up File Was *Manually* Backdated

46.    The file system Date Modified metadata for the 2023 Cover-Up File was manually backdated.  To backdate a document's file system Date Modified metadata, a user cannot perform this action on the document itself (*e.g.*, right clicking and accessing document properties), nor can a user backdate file system Date Modified metadata through ordinary use of a file—*e.g.*, opening, editing, saving, etc.[30]  Instead, a user would need to execute multiple steps:   (1) choose a separate application or program; (2) run that program; (3) direct that program to the document; (4) identify the specific metadata to be altered, in this case the file system Date Modified metadata; (5) enter the new file system Date Modified value in the program; and (6) execute a command to alter the metadata.  It is impossible for a user to backdate file system Date Modified metadata by mistake.

47.    Based on my professional experience and familiarity with the Mac operating system, and because Terminal both exists and had been previously used on Gino's HBS Laptop, it is likely that the metadata of the 2023 Cover-Up File were altered using Terminal.  Terminal is a built-in utility included in Mac OSX, which allows knowledgeable users (who can find the application in Mac system utility folders) to execute command-line prompts to accomplish all sorts of tasks, *including modifying metadata*.  The difference of 30 seconds between the Date Modified Times for Document #3 and the 2023 Cover-Up File is consistent with using Terminal to modify the 2023 Cover-Up File to appear to have the same file system Date Modified of Document #3, but failing to specify an optional seconds value.  In those circumstances, as appears to have happened here, the relevant Terminal command would default the Modified Date seconds value to 00 (that is, to 6:43:00 p.m.).

---

[30] Gino Dep. Tr. 210:3–211:4.

48.     Thus, there is forensic evidence of two separate fabrications.  First, the difference in content between Document #3 and the 2023 Cover-Up File shows an effort to create an altered dataset that appears to be an intermediate step between Document #2 (when ▮▮▮▮ sent the complete set of raw data to Gino) and the modified data underlying the analysis Gino provided to her collaborators in Document #4 and that is first reflected in Document #6. Second, the altered file system Date Modified metadata attempts to give the impression that this dataset was also created or last saved at a time *between* Gino's receipt of Document # 2 from ▮▮▮▮ on July 16 at 4:57 p.m. and transmission of Document #4, which reflects the modified data, to her co-authors on July 18 at 8:30 p.m.  Specifically, the altered file system Date Modified metadata attempts to give the impression that this dataset (containing modified data) was created and last saved on July 17, 2010, which was when Document #3 (containing raw data) was created and last saved on the HBS Laptop.

    **D.     The 2023 Cover-Up File and the USB Device**

49.     After I determined that the forensic features of the 2023 Cover-Up File were consistent with a file that had been manually fabricated and backdated, I examined the available forensic evidence to determine what I could understand about *when* and *how* the 2023 Cover-Up File came to exist on the HBS Laptop in the period between the creation of the Sequestered Laptop Copy in 2021 and the 2024 Laptop Copy in 2024.

50.     My forensic analysis of the metadata of the 2023 Cover-Up File and system logs contained on the 2024 Laptop Copy and other devices establishes that the 2023 Cover-Up File was created on another device and then placed on the HBS Laptop to replace Document #3. However, as discussed further below, because Gino failed to provide certain devices for

17

forensic analysis in time for such analysis to be incorporated into this report, my analysis is necessarily incomplete.

51. While there is a gap of more than two years between the creation of the Sequestered Laptop Copy and the 2024 Laptop Copy, I have found that most of the key events occurred on September 23, 2023, and more specifically within a thirty-minute window between 5:16 p.m. and 5:46 p.m.

52. On September 23, 2023, I see interactions (*e.g.*, open, edit, save, view, etc.) with *five* copies of the 2023 Cover Up file. The specific interactions with Copy #1 (2023 Cover-Up File) and Copy #5 (July 16 OG File) are detailed further below (and are depicted in **Figure 5** below).

- Copy #1: Taxstudy.xlsx. Found on the Black USB (as defined below). As discussed above, this copy has 101 participants, modified data, Excel formulae, backdated file system Date Modified metadata, and is referred to as the 2023 Cover-Up File.

- Copy #2: Taxstudy 1.xlsx. Found on the Black USB. This copy is identical to the 2023 Cover-Up File and was last accessed on September 23, 2023.

- Copy #3: Data \ Taxstudy.xlsx. Found on the Black USB. This copy is nearly identical to the 2023 Cover-Up File but does not have backdated file system Date Modified metadata.[31] This copy was last saved and last accessed on September 23, 2023.

---

[31] The MD5 Hash values differ between this document and the 2023 Cover-Up File. Based on my analysis, I see the following two differences between the two files: (i) a slight, approximately three-minute difference between Last Saved application metadata; and (ii) a slight difference in Excel formulae.

- <u>Copy #4</u>: Taxstudy.xlsx. Found on the Black USB. This copy is identical to Copy #3, and was also last saved and last accessed on September 23, 2023.

- <u>Copy #5</u>: Taxstudy.xlsx. Found on the Gino Google Drive. This copy is identical to the 2023 Cover-Up File, but has different backdated file system Date Modified metadata, as described in detail further below. This is referred to as the July 16 OG File.

53. At 5:16 p.m. on September 23, 2023, the 2023 Cover-Up File was Last Saved on another device (that is, a device other than the HBS Laptop) by Microsoft Office profile username "Gino, Francesca".[32] The Microsoft Office profile username "Gino, Francesca" and the Unified Log records related to laptop lid opening and closing are both key pieces of evidence that establish that Gino used another device to create and backdate the 2023 Cover-Up File.

54. When a Microsoft Office profile is set up on a device, a username is created. The specific spelling and spacing of the profile username serves as a fingerprint within the application metadata fields Author and Last Author for documents created or modified within Microsoft programs on that device. Importantly, the username "Gino, Francesca" is *not* associated with the HBS Laptop. The Microsoft Office user profile for the HBS Laptop is "Francesca  Gino" (two spaces between "Francesca" and "Gino"). Thus, the 2023 Cover-Up File must have been last saved on another device with Microsoft Office user profile "Gino, Francesca."

55. There is reason to believe that this device is a personal laptop that Gino purchased in 2023 and was using as of September 23, 2023. Screenshots taken July 4, 2023 show that a

---

[32] Application Last Saved metadata values are derived from the login profile of the computer user.

transfer of files for user "Gino, Francesca" was made to this personal laptop on that date.[33] And, Gino informed a friend on July 30, 2023 that she was "███████████████ ████████████████████████████"[34] Because Gino has failed to provide timely access to this computer in this litigation, I will refer to this personal computer as the "Undisclosed Personal Laptop."

56.    At 5:31 p.m. on September 23, 2023, the Unified Log, which the Mac operating system uses to track a number of activities on the computer, including but not limited to laptop lid open activity and laptop lid closed activity, shows that the lid to the HBS Laptop was opened for the first time on this day.

57.    At 5:32 p.m., the Unified Log shows that a USB device with serial number 21013403D7FFA005 ("DISK_IMG" or the "Black USB") was plugged into the HBS Laptop.  **Figure 5** below is an excerpt from the Unified Log showing the serial number and the name of the Black USB on September 23, 2023.

---

[33] HARV00078322–26.
[34] GINO_021615 at 21681.

20

| File | TimeUtc | Message |
|------|---------|---------|
| 0000000000001b79.tracev3 | 2023-09-23 21:32:30.807494 | USBMSC Identifier (non-unique): 21013403D7FFA005 0x1e3d 0x2093 0x100, 2 |
| 0000000000001b79.tracev3 | 2023-09-23 21:32:35.201752 | Pruning stale results for ( "<CacheDeleteDaemonVolume> at: / System/Volumes/Data [/dev/disk1s1 : apfs] freespace: 23765712896, initialFreespace: 23765712896PRIMARY, diskRef: 0x7fdad0f181f0", "<CacheDeleteDaemonVolume> at: / Volumes/DISK_IMG [/dev/disk2s1 : msdos] freespace: 787107840, initialFreespace: 787107840PRIMARY, diskRef: 0x7fdad0c1fb90" ) with doNotPrune list: |

Figure 5: The first record shows the serial number 21013403D7FFA005.  The second record shows the volume name "DISK_IMG."

58.  Around 18 seconds later, the 2023 Cover-Up File was copied from the Black USB to the HBS Laptop, into the directory at /Users/fgino/Documents/Work In Progress/█████ █████/Tax study/.  The file "Taxstudy.xlsx" that was located on the Black USB and provided to me through the forensic search protocol confirms that the 2023 Cover-Up File was on the Black USB on September 23, 2023, as that "Taxstudy.xlsx" file matches in both metadata and MD5 hash value to the 2023 Cover-Up File.

59.  Because Document #3 already existed in that directory with the exact same file name, the Mac operating system would have given the user a warning that copying in the 2023 Cover-Up File would "replace" Document #3, as well as provided an option to "keep both" versions of the file (both Document #3 and the 2023 Cover-Up File).  The user would have had to affirmatively select "replace" when placing the 2023 Cover-Up File in this location, thus choosing to destroy Document #3.

21

60.    Around 4 minutes after the 2023 Cover-Up File was copied from the Black USB to the HBS Laptop, at 5:36 p.m., the Terminal utility was opened on the HBS Laptop, and a single command was entered: mdls/Users/fgino/Documents/Work\ In\ Progress/█████\ ████████/Tax\ study/Tax\ Study\ STUDY\ 1\ 2010-07-13.xlsx.

61.    The mdls command requests that the Mac operating system list comprehensive metadata for the target file.[35]  This command sought the metadata for Document #6.  To a reasonable degree of forensic certainty, my professional interpretation of the events on September 23, 2023 is that (i) the user had the technical sophistication to access and use the Terminal utility; and (ii) the user was confirming that the file system Date Modified was later in time for Document #6 than the 2023 Cover-Up File and, thus, that the 2023 Cover-Up File appeared to be a previous version of Document #6.

62.    I noted above that the forensic evidence is consistent with the content of the 2023 Cover-Up File having been modified on a different device.  However, because the 2023 Cover-Up File was on the Black USB on September 23, 2023, and the altered file system Date Modified metadata is the same on the version of the 2023 Cover-Up File on the Black USB and the 2024 Laptop Copy, I can conclude with a reasonable degree of professional certainty that the backdating of the file also took place on a device, likely the Undisclosed Personal Laptop *before* it was transferred to the HBS Laptop.[36]

63.    At 5:46 p.m., the Unified Log records that the lid of the HBS Laptop was closed.  The lid of the HBS Laptop was not opened again that day.  In contrast to Gino's testimony about

---

[35] mdls is a Terminal command that lists the metadata attributes for a specific file. https://www.unix.com/man_page/osx/1/mdls/, last visited on May 21, 2026.
[36] I have not yet analyzed the Undisclosed Personal Laptop due to Gino's late production of that device.

her use of the HBS Laptop for statistical analysis after being placed on leave, during the 15 minutes of laptop activity on September 23, 2023 between 5:31 p.m. and 5:46 p.m., there is no indication that a SAS statistical analysis program (*i.e.*, SPSS) was opened, in use, displayed in the background, and/or closed.[37]

### E.    Additional Evidence Tampering

64.    In addition to the 2023 Cover-Up File, which as defined above was modified and backdated on another device and then placed on the HBS Laptop on September 23, 2023 via the Black USB, I identified another version of the 2023 Cover-Up File in the Google Drive account for francesabgino@gmail.com.  Based on my forensic analysis described below, I will refer to this version as the "July 16 OG File."

65.    The July 16 OG File has the exact same file content as the 2023 Cover-Up File, as they both have the same MD5 Hash value. [38]  However, the July 16 OG File differs in one very important way: the file system Date Modified metadata is dated July 16, 2010 at 4:30 p.m. This is approximately one day earlier than the 2023 Cover-Up File.

66.    The Google Drive logs for francescabgino@gmail.com indicate that the Cloud Modified metadata of the July 16 OG File is July 16, 2010 at 4:30 p.m. (the Cloud Modified date is the Google Drive equivalent of the file system Date Modified that I have described earlier in my report).  Based on the Last Saved application metadata, however, the July 16 OG File was last saved on September 23, 2023 (at the exact same time as the 2023 Cover-Up File).  It is highly irregular that the July 16 OG File appears to be last saved on September 23, 2023, yet still reflects its original Cloud Modified metadata from 13 years earlier.  As

---

[37] Gino Dep. Tr. 193:20–25.
[38] MD5 Hash values are akin to digital fingerprints for electronic files.

such, I can conclude to a reasonable degree of forensic certainty that the July 16 OG File was manually backdated in a manner similar to the 2023 Cover-Up File.

67.    As such, the July 16 OG File is a *second* backdated file located on yet another data source associated with Gino.  As discussed in paragraph 46 above, it would be impossible for a user to backdate file system Date Modified metadata on just **one** file by mistake, and in this case we now have evidence of **two** separate files that have been backdated.

68.    At 8:16 p.m. on September 23, 2023, a user logged into francescabgino@gmail.com, uploaded the July 16 OG File to Google Drive, and shared it with two other Google Drive users, one of whom appears to have been Benjamin Edelman.[39]  Because Gino had closed the lid of the HBS Laptop approximately 2 1/2 hours earlier, Gino must have uploaded this file from another device, possibly the Undisclosed Personal Laptop.

69.    I understand that it was a little over a week later that Gino published her website post described above stating that HBS overlooked the July 16 OG File in its investigation.[40]  In the website post, Gino claims that the July 16 OG File (as she defines it) was created on July 13, 2010 at 10:39 a.m. and last modified on July 16, 2010 at 4:30 p.m.  Because the July 16 OG File has the same created and modified (but backdated) metadata, I can

---

[39] Based on my review of Gino's Google Drive Activity Logs, this is the first time she uploaded a file named "Taxstudy.xslx."

[40] HARV00043075.  There is also evidence of additional interactions with a copy of the Taxstudy.xlsx file after September 23, 2023, on yet another device.  On September 28, 2023, an identical copy of the 2023 Cover-Up File was saved on the SimpleTech USB device, with serial number 0196019921036.  This copy does not have backdated file system Date Modified metadata, and was last accessed on January 29, 2024 on an undisclosed device, possibly the Undisclosed Personal Laptop.

conclude that the July 16 OG File (as Gino defined it on her website) is the same as the July 16 OG File in my report.[41]

70.    Based on the available forensic evidence, I can conclude with a high degree of professional certainty that Gino, or someone with access to Gino's devices, accounts, and passwords, manually altered the metadata of the 2023 Cover-Up File and the July 16 OG File on a device which Gino failed to produce in time for my analysis in this report, likely the Undisclosed Personal Laptop.  I can further conclude that once Gino had manually altered the metadata of the 2023 Cover-Up File, she placed the file on the HBS Laptop, in the process irrevocably deleting Document #3 from the HBS Laptop by navigating to the directory where Document #3 was located and confirming that she wanted to overwrite and destroy that file with the 2023 Cover-Up File.  Finally, after she had placed the 2023 Cover-Up File on the HBS Laptop, she then uploaded the July 16 OG File to Google Drive from another device—possibly the Undisclosed Personal Laptop—and shared it with at least one person.

---

[41] Part of this opinion is based on the testimony of Jeremy Freese regarding the substance of the 2023 Cover-Up File, which is a MD5 Hash duplicate of (*i.e.*, identical in content to) the July 16 OG File.  *See* HARV00069595 at -9696–98.

Signed on the 27th day of May 2026

_____

Julian Ackert

26

# Appendix A



# JULIAN ACKERT
## Managing Director



**iDiscovery Solutions, Inc.**

202.249.7865

jackert@idsinc.com

Profile on LinkedIn

@iDiscoveryInc

Mr. Julian Ackert, a Managing Director at iDiscovery Solutions (iDS) in Washington DC, has over 20 years of consulting and project management experience in the technology and litigation industries.

He has extensive experience with forensic data collection, computer forensic analysis, creating and implementing preservation and collection strategies, managing electronic data processing and review endeavors, analyzing complex transactional data systems, and working with large multi-national corporations to establish and develop methodologies and best practices for litigation preparedness. Mr. Ackert has written expert reports and provided testimony on the forensic preservation, acquisition, and analysis of electronic information. Additionally, he has worked on several international projects involving complex data privacy, collection, and review challenges.

Mr. Ackert is a member of The Sedona Conference, Working Group 11 (Data Security and Privacy Library) and Working Group 12 (Trade Secrets). Prior to joining iDS, he was a Principal and New York regional lead at LECG and a Manager at FTI Consulting. Mr. Ackert began his career designing, developing, and implementing Knowledge Management / Content Management applications, government middleware solutions, and E-business applications for Federal Government services at Accenture.



©2021 iDiscovery Solutions | All Rights Reserved

**SELECT CONSULTING EXPERIENCE**

- Directed a team of consultants on the identification, preservation, collection and production of structured data for an antitrust MDL.  Implemented custom preservation and collection protocols and extracted approximately 10 terabytes of structured data from proprietary client database systems for analysis and review.  Developed a structured data ESI protocol that governed the parameters of structured data productions.
- Managed a team of consultants on the analysis of 100s of millions of database records for a complex ligation in the commercial real estate industry.  Analyzed trends and patterns in the database records that assisted counsel with identifying potentially relevant employees, partner relationships, and timeframes of interest.
- Managed a team of UK and US consultants on a data preservation and email data analysis endeavor.  Established an onsite review room in the UK and worked with UK outside counsel to ensure that electronic discovery processes upheld EU data privacy laws.
- Directed a team of computer forensic consultants and contractors on forensic data preservation, backup tape recovery, email, and electronic file culling and search for approximately 100 custodians.  Established an onsite triage center at an offshore facility to handle nearly 5 terabytes of data.  Authored expert report on the methods, processes, types, and volumes of data preserved, processed, and delivered for attorney review.
- Led a data analysis engagement consisting of metadata examination on Lotus Notes database documents.  Acted as the client's Subject Matter Expert on Lotus Notes databases and authored expert testimony on the electronic discovery methods implemented during the project and subsequent project findings.
- Managed investigative team of computer forensic and complex data analysis consultants through the preservation, acquisition, and analysis of over 5 billion rows of NYSE trade data.  Analysis period covered over 5 years of transactional data focusing on the alleged fraudulent trading activity.
- Managed a data acquisition, e-file processing, and document review project in response to an SEC inquiry of over 45 custodians.  Engagement required leading a multi-city team of computer forensic professionals through the forensic acquisition, electronic data processing, and document review phase of a project with a condensed project timeline of three weeks.
- Led multi-national electronic discovery preservation and analysis team on an internal audit committee investigation of a global metallurgy company.  Engagement required managing computer forensic technicians through data preservation, forensic analysis, and automated culling of both Finnish and English enterprise email, financial data, and business documents related to the investigation.

## EDUCATION

- University of Virginia, Charlottesville, VA
- School of Engineering and Applied Sciences
- B.S. Computer Science, January 1998



©2021 iDiscovery Solutions | All Rights Reserved

## SELECT PUBLICATIONS

- "GDPR and Data Maps: "X" Marks the Spot to Delete", Today's General Counsel, July 2018
- "5 Tips to Help Mitigate Insider Theft", Metropolitan Corporate Counsel, March 2017
- "A Practical Approach to Data Preservation and Collection", Metropolitan Corporate Counsel, May 2015
- "Big Data: The Elephant in The E-Discovery Room", Metropolitan Corporate Counsel, June 2013

## TESTIFYING EXPERIENCE

1. Trial Testimony on computer forensic analysis activities, Tony Massenburg and Lanie Nikes v. Doranna Tindle, May 2026.
2. Trial Testimony on computer forensic analysis activities, Thomas Suehr v. Proprietary Capital LLC and Craig Cohen, May 2026.
3. Declaration on computer forensic analysis activities, MyCard, Inc. d/b/a Knot v. Atomic FI, Inc., April 2026.
4. Declaration on computer forensic analysis activities, Coulson Aviation USA Inc. v. Jeffrey Cavara, April 2026.
5. Declaration on computer forensic analysis activities, Evans May Wealth, LLC v. Madeline Grace Speckman and Meridian Investment Advisors Inc., April 2026.
6. Trial Testimony on computer forensic and metadata analysis, Obsidian Financial Services, Inc. v. Richard Ray, March 2026.
7. Expert Report on computer forensic analysis activities, Donna Dickson v. Quail Creek Country Club, March 2026.
8. Declaration on computer forensic analysis activities, IJW Whisky v. David "Dukie" Morduchowitz, March 2026.
9. Declaration on forensic data analysis activities, Fatima Shaw-McDonald v. Eye Consultants of Northern Virginia, P.C. et. al. March 2026.
10. Declaration on computer forensic analysis activities, Helen Jakovljevic v. Porfolio Recovery Associates, LLC, February 2026.
11. Expert report on forensic data analysis activities, In RE: Social Media Cases, February 2026.
12. Declaration on computer forensic analysis activities, Thomas Suehr v. Proprietary Capital LLC and Craig Cohen, January 2026.
13. Deposition on computer forensic and metadata analysis, Obsidian Financial Services, Inc. v. Richard Ray, January 2026.
14. Expert report on forensic data analysis activities, In RE: Social Media Cases, January 2026.
15. Trial Testimony on computer forensic and metadata analysis, Keystone Cooperative, Inc. v. Evolve AG LLC, Brock Frasch, December 2025.
16. Deposition on forensic data analysis activities, In RE: Social Media Cases, December 2025.
17. Trial Testimony on computer forensic and metadata analysis, Everett J. Prescott, Inc., et al., v. Timothy J. Beall, December 2025.
18. Expert report on forensic data analysis activities, In RE: Social Media Cases, November 2025.
19. Declaration on computer forensic analysis activities, Erin Daley v. Maguire Insurance Agency, Inc., November 2025.
20. Declaration on computer forensic analysis activities, State of Ohio v. Michael J. Dowling and Charles E. Jones, November 2025.
21. Declaration on computer forensic analysis activities, In re the Estate of: Marcus Alongino Tageant., October 2025.
22. Deposition on computer forensic analysis activities, Plaza Marine, Inc. v. Ankora Fuels, LLC et. al., September 2025
23. Deposition on forensic data analysis activities, In RE: Social Media Cases, August 2025.
24. Expert report on forensic data analysis activities, In RE: Social Media Cases, August 2025.
25. Declaration on computer forensic analysis activities, iC-1 Solutions, LLC et. al. v. Evan Di Sivio et. al., July 2025.
26. Expert report on forensic data analysis activities, In RE: Social Media Cases, June 2025.



info@idsinc.com | iDSINC.com | US: +1.800.813.4832 | UK/EEA: +44 (0)20 8242 4130

©2021 iDiscovery Solutions | All Rights Reserved

27. Declaration on computer forensic analysis activities, Middesk, Inc. v. Osiris Ratings, Inc. et al., May 2025.
28. Trial Testimony on computer forensic and metadata analysis, Healthwell Foundation v. Alan Klein, et. al., May 2025
29. Declaration on computer forensic analysis activities, Middesk, Inc. v. Osiris Ratings, Inc. et al., April 2025.
30. Trial Testimony on computer forensic and metadata analysis, Pattern Energy Group v. Perillo, et. al., March 2025.
31. Trial Testimony on computer forensic and metadata analysis, Hall v. T3 Holdings Group, et al., March 2025.
32. Declaration on computer forensic analysis activities, R.R. Donnelley & Sons Company v. Richard "Chip" Sheridan, John Bussolari, and Prisma Graphics, LLC., March 2025.
33. Declaration on computer forensic analysis activities, Adam Taylor v. Uber Technologies, Inc., Raiser, LLC, Checkr, Inc., January 2025.
34. Expert Report on computer forensic and metadata analysis, DB Home Designs, LLC d/b/a EKB Kitchens v. Matthew Wilhelm, Leah Russo, Stephanie Hendricks, and Emmco Kitchens, Inc., December 2024.
35. Declaration on computer forensic analysis activities, G&P Group Inc. v. City National Bank, November 2024.
36. Trial Testimony on computer forensic and metadata analysis, Robin Greenwood, Senior Associate Dean for Faculty Development and Research v. Francesca Gino, Professor of Business Administration, November 2024.
37. Deposition on computer forensic analysis activities, Sunrgy, LLC v. SolarTek, Inc., October 2024.
38. Expert Report on computer forensic and metadata analysis, Sunrgy, LLC v. SolarTek, Inc., September 2024.
39. Expert Statement on computer forensic and metadata analysis, Robin Greenwood, Senior Associate Dean for Faculty Development and Research v. Francesca Gino, Professor of Business Administration, September 2024.
40. Expert Report on computer forensic and metadata analysis, Potomac Wave Consulting, Inc. v. Robert Harford, September, 2024.
41. Deposition on computer forensic analysis activities, Madison Joint Ventures, LLC v. Chemo Research S.L. Exeltis USA, Inc. and Sergio Sosa-Estani, July 2024.
42. Expert Report on computer forensic and metadata analysis, Maximus, Inc. v. Alyssha Holdren,  July 2024.
43. Declaration on computer forensic analysis activities, Madison Joint Ventures, LLC v. Chemo Research S.L. Exeltis USA, Inc. and Sergio Sosa-Estani, May 2024.
44. Declaration on computer forensic analysis activities, Potomac Wave Consulting, Inc. v. Robert Harford, May, 2024.
45. Declaration on forensic data analysis activities, In re: Isaac Halwani and Giselle Halwani and 274 Atlantic Isles, LLC, May 2024
46. Declaration on forensic data analysis activities, Linda Johnstone v. CrossCountryMortgage, LLC, April 2024
47. Declaration on forensic data analysis activities, In re: Isaac Halwani and Giselle Halwani and 274 Atlantic Isles, LLC, April 2024
48. Declaration on forensic data analysis activities, Finch Computing Corp. v. Joseph Cirka, March 2024
49. Declaration on computer forensic data analysis activities, Tyrone Brewer v. Pepperidge Farm, Inc., March 2024
50. Declaration on forensic data analysis activities, Maximus, Inc. v. Alyssha Holdren, March 2024
51. Declaration on ESI review and production effort, State of Maryland v. Monsanto Company, et. al., March 2024
52. Declaration on forensic data analysis activities, Linda Johnstone v. CrossCountryMortgage, LLC, March 2024
53. Declaration on ESI review and production effort, Michael Krantz, et. al. v. Regeneron Pharmaceuticals, Inc. and Sanofi Aventis US, LLC, February 2024
54. Declaration on computer forensic analysis activities, Nicholas Hall v. Steve Eakin, Robert Taylor, Scott Brown, T3 Holdings Group, LLC and Michelle Taylor, February 2024
55. Declaration on computer forensic data analysis activities, Tyrone Brewer v. Pepperidge Farm, Inc., February 2024
56. Declaration on computer forensic data analysis activities, Tyrone Brewer v. Pepperidge Farm, Inc. January 2024
57. Deposition on computer forensic analysis activities, Pacmar Technologies, LLC v. Goodsill Anderson Quinn & Stifel LLP et. al, January 2024



©2021 iDiscovery Solutions | All Rights Reserved

58. Declaration on computer forensic analysis activities, The Crème Shop, Inc. v. Sunna ("Olive") Kim, et. al., November 2023
59. Affidavit on computer forensic analysis activities, Spartan Medical Inc. v. Erik Gottschalk, November 2023
60. Declaration on computer forensic analysis activities, RF Depot Inc. v. Richard H. Pouliot and Applied Specialties, inc., August 2023
61. Declaration on computer forensic analysis activities, James Michael Richey v. Nevro Corp., July 2023
62. Declaration on computer forensic and metadata analysis, Alcon Inc. et. al. v. Hoya Corporation, et. al., June 2023
63. Declaration on forensic data analysis activities, Maria Fernanda Soto Leigue v. Everglades College, Inc. d/b/a Keiser University, May 2023
64. Declaration on computer forensic analysis activities, IOENGINE, LLC v. Roku, Inc., May 2023
65. Expert Report on computer forensic and metadata analysis, USA v. David Gerald Minkkinen, Sivaraman Sambasivam, May, 2023
66. Declaration on computer forensic analysis activities, Galderma Laboratories, L.P., v. Chad Tisckos, April 2023
67. Declaration on forensic data analysis activities, Maria Fernanda Soto Leigue v. Everglades College, Inc. d/b/a Keiser University, February 2023
68. Declaration on computer forensic analysis activities, Dollar Shave Club, Inc., and Michael O'Malley v. Edgewell Personal Care Company, et. al., November 2022
69. Declaration on computer forensic analysis activities, CACI, Inc. – Federal v. Clayton Shcilling, et. al., September 2022
70. Trial Testimony on computer forensic analysis activities, Medidata Solutions, Inc. and MDSOL Europe Limited v. Veeva Systems, Inc., July 2022
71. Declaration on ESI review and production effort, Joseph Bayer, Mary K. Bayer, and Gwendolyn Culverson v. Boehringer Ingelheim Pharmaceuticals, Inc. et. al., July 2022
72. Declaration on ESI search and production protocols, Trust-ED Solutions, LLC v. Gilbert, LLP, June 2022
73. Trial Testimony on computer forensic analysis activities, John C. Depp, II, v. Amber Laura Heard, May 2022
74. Deposition on computer forensic analysis activities, Icertis, Inc. v. Boccella, et al. May 2022
75. Expert report on computer forensic analysis activities, Icertis, Inc. v. Boccella, et al. May 2022
76. Declaration on computer forensic analysis activities, Julius Kennedy and Angela Kennedy v. Heding Truck Service Inc. et. al., April 2022
77. Deposition on computer forensic analysis activities, John C. Depp, II, v. Amber Laura Heard, April 2022
78. Expert report on computer forensic analysis activities, John C. Depp, II, v. Amber Laura Heard, April 2022
79. Supplemental expert report on forensic data analysis activities, Megan Enger and Sarah Infante. v. Thomas L. Cardella & Associates, April 2022
80. Declaration on computer forensic analysis activities, Dollar Shave Club, Inc. et. al. v. Edgewell Personal Care Company et. al., April 2022
81. Deposition on forensic data analysis activities, Megan Enger and Sarah Infante. v. Thomas L. Cardella & Associates, April 2022
82. Deposition on computer forensic analysis activities, Chi Nguyen v. City of Philadelphia, March 2022
83. Declaration on computer forensic analysis activities, BDO USA LLP v. Everglade Global Inc., February 2022
84. Deposition on computer forensic analysis activities, BDO USA LLP v. Everglade Global Inc., January 2022
85. Declaration on computer forensic analysis activities, Gilead Tenofovir Cases, JCCP No. 5043, December 2021
86. Declaration on computer forensic analysis activities, Michael David Testa, Individually and as Trustee of The M. David Testa Revocable Living Trust, Dated October 25, 2017 v. Town of Jupiter Island, December 2021
87. Expert report on forensic data analysis activities, Megan Enger and Sarah Infante. v. Thomas L. Cardella & Associates, November 2021
88. Declaration on collection and production of social media, In Re: Zantac (Ranitidine) Products Liability Litigation, November 2021
89. Declaration on computer forensic analysis activities, Chi Nguyen v. City of Philadelphia, October 2021



©2021 iDiscovery Solutions | All Rights Reserved

90. Declaration on computer forensic analysis activities, John C. Depp, II, v. Amber Laura Heard, October 2021

91. Declaration on computer forensic analysis activities, Marley R. Dominguez v. Iconiq Capital Management, LLC, October 2021

92. Declarartion on computer forensic analysis activities, Sunlight Financial LLC, and Sunlight Financial Holdings, Inc. v. Duncan Hinkle, and Sunstone Credit, Inc., August 2021

93. Declaration on ESI search and production, Gilead Tenofovir Cases, JCCP No. 5043, July 2021

94. Deposition on forensic data analysis activities, Lainhart et. al. and Doyle et. al. v. Louisville/Jefferson County Metro Government, July 2021

95. Expert report on forensic data analysis activities, Lainhart et. al. and Doyle et. al. v. Louisville/Jefferson County Metro Government, June 2021

96. Deposition on computer forensic analysis activities, Havana Docs Corporation v. Carnival Corporation d/b/a Carnival Cruise Line, June 2021

97. Declaration on computer forensic analysis activities, eHealthInsurance Services, Inc. v. Healthpiolt Technologies LLC., May 2021

98. Declaration on computer forensic analysis activities and spoliation issues, Medidata Solutions, Inc. and MDSOL Europe Limited v. Veeva Systems, Inc., April 2021

99. Declaration on computer forensic analysis activities, Havana Docs Corporation v. Carnival Corporation d/b/a Carnival Cruise Line, March 2021

100. Court Testimony on computer forensic analysis activities, State of Maryland v. Darrian McAfee

101. Expert report on forensic data analysis activities, Kaelin et. al. v. Louisville/Jefferson County Metro Government, January 2021

102. Declaration on computer forensic analysis activities, Sequoia Benefits & Insurance Services DBA Sequoia Consulting Group v. Sageview Advisory Group et. al., January 2021

103. Declaration on computer forensic analysis activities, Doneyda Perez v. DirectTV Group Holdings LLC, et al., December 2020

104. Declaration on ESI search and production protocols, Trust-ED Solutions, LLC v. Gilbert, LLP, November 2020

105. Declaration on computer forensic analysis activities, Smithfield Packaged Meats Sales Corp. v. Dietz & Watson, Inc. and Chris Conrad, November 2020

106. Declaration on ESI review and production effort, Gilead Tenofovir Cases, JCCP No. 5043, August 2020

107. Declaration on collection and production of social media, Adrian Holley, et al. v. Gilead Sciences, Inc., August 2020

108. Declaration on collection and production of social media, Gilead Tenofovir Cases, JCCP No. 5043, July 2020

109. Declaration on computer forensic analysis activities, Doneyda Perez v. DirectTV Group Holdings LLC, et al., July 2020

110. Expert report on forensic data analysis activities, Smithfield Packaged Meats Sales Corp. v. Dietz & Watson, Inc. and Chris Conrad, June 2020

111. Declaration on ESI review and production effort, Adrian Holley, et al. v. Gilead Sciences, Inc., May 2020

112. Declaration on ESI production protocols, Adrian Holley, et al. v. Gilead Sciences, Inc., April 2020

113. Declaration on computer forensic analysis activities, Krista Brill v. Draeger, Inc. and Miguel Angel Armendariz, April 2020

114. Deposition on computer forensic analysis activities, Medidata Solutions, Inc. and MDSOL Europe Limited v. Veeva Systems, Inc., April 2020

115. Trial Testimony on computer forensic analysis activities, Smithfield Packaged Meats Sales Corp. v. Dietz & Watson, Inc. and Chris Conrad, March 2020

116. Declaration on computer forensic analysis activities, Jesus Jiminez v. CRC Property Management West, Inc., March 2020



**info@idsinc.com | iDSINC.com | US: +1.800.813.4832 | UK/EEA: +44 (0)20 8242 4130**

©2021 iDiscovery Solutions | All Rights Reserved

117.     Declaration on computer forensic analysis activities, Denver Cooley v. Solar Turbines Incorporated, February 2020

118.     Supplemental expert report on forensic data analysis activities, Medidata Solutions, Inc. and MDSOL Europe Limited v. Veeva Systems, Inc., February 2020

119.     Declaration on ESI data types, Anthony Robles, Individually and on Behalf of Other Persons Similarly Situated v. The Coca-Cola Company, Coca-Cola Refreshments USA, Inc., and Does 1-10, February 2020

120.     Declaration on computer forensic analysis activities, Smithfield Packaged Meats Sales Corp. v. Dietz & Watson, Inc. and Chris Conrad, January 2020

121.     Expert report on forensic data analysis activities, Medidata Solutions, Inc. and MDSOL Europe Limited v. Veeva Systems, Inc., January 2020

122.     Declaration on ESI collection and production effort, Kristopher Lawson, Vincent McCleery, and Sean McMurran, Individually and on Behalf of Other Persons Similarly Situated v. Love's Travel Stops & Country Stores, Inc., December 2019

123.     Declaration on ESI review and production effort, Sandra Wolford et. al. v. Bayer Corp. et. al., December 2019

124.     Declaration on ESI systems and data recovery options, In the Matter of Certain Lithium Batteries, Battery Cells, Battery Modules, Battery Packs, Components Thereof, and Processes Thereof, October 2019

125.     Trial Testimony on computer forensic analysis activities, Futrend Technology Inc. v. Microhealth LLC, et. al., October 2019

126.     Supplemental expert report on forensic data analysis activities, Futrend Technology Inc. v. Microhealth LLC, et. al., October 2019

127.     Declaration on collection, search, and disposition process, Strategic Delivery Solutions, LLC v. Stallion Express, LLC, September 2019

128.     Expert report on forensic data analysis activities, Futrend Technology Inc. v. Microhealth LLC, et. al., July 2019

129.     Declaration on social media e-Discovery, Helen McLaughlin v. Bayer Essure Inc, et. al., May 2019

130.     Declaration on ESI collection and search scoping, Sandra Wolford et. al. v. Bayer Corp. et. al., May 2019

131.     Declaration on computer forensic analysis activities, Employee Benefit Services of Maryland, Inc. v. Nicholas Mafale, May 2019

132.     Declaration on collection activities, IQVIA Inc. et. al. v. Veeva Systems, Inc., May 2019

133.     Declaration on ESI collection and search scoping, Sandra Wolford et. al. v. Bayer Corp. et. al., April 2019

134.     Declaration on production activities, Synchronisys, Inc. v. DataSync, Inc. et. al., February 2019

135.     Declaration on collection and production activities, Catalus Capital USVI, LLC et. al. v. The Servicemaster Company, LLC, et. al., January 2019

136.     Declaration on collection and search protocols, Strategic Delivery Solutions, LLC v. Stallion Express, LLC, December 2018

137.     Expert Report on computer forensic analysis activities, Quandra Speights v. The Boeing Company, December 2018

138.     Affidavit on computer forensic analysis activities, Futrend Technology Inc. v. Microhealth LLC et. al., October 2018

139.     Affidavit on preservation, collection and search protocols, Sarah Lankford Sprecher v. Leroy E. Myers, Jr., September 2018

140.     Declaration on computer forensic analysis activities, Yifat Oren et. al, v. Stefanie Cove, et. al., August 2018

141.     Trial Testimony on metadata and computer forensic analysis activities, Broadcast Sports International, LLC v. Gil Pascal, et. al., June 2018



142.    Declaration on computer forensic analysis activities, Airgas, Inc. v. The Carlyle Group, Carlyle Investment Management, LLC, and Leslie Graff, June 2018

143.    Supplemental Declaration on e-Discovery deduplication and production protocols, Helen McLaughlin v. Bayer Essure Inc, et. al., May 2018

144.    Declaration on computer forensic analysis activities, Charlotte Pinckney and Kyle Pinckney v. The Pep Boys Manny Moe & Jack O/D/B/A Pep Boys, May 2018

145.    Declaration on e-Discovery deduplication and production protocols, Helen McLaughlin v. Bayer Essure Inc, et. al., March 2018

146.    Declaration on e-Discovery deduplication and production protocols, Hannah Dorman et. al. v. Bayer, Corp, et. al., February 2018

147.    Court Testimony on computer forensic analysis activities, MRP UO Partners, LLC, et. al, v. Raymond Rahbar, Jr. et. al., October 2017 – November 2017

148.    Deposition on computer forensic analysis activities, MRP UO Partners, LLC, et. al, v. Raymond Rahbar, Jr. et. al., September 2017

149.    Declaration on computer forensic analysis activities, MRP UO Partners, LLC, et. al, v. Raymond Rahbar, Jr. et. al., August 2017

150.    Deposition on computer forensic analysis activities, Broadcast Sports International, LLC v. Gil Pascal, et. al., July 2017

151.    Declaration on computer forensic analysis activities, Meridian Imaging Solutions, Inc. et. al. v. Omni Business Solutions LLC, et. al., July 2017

152.    Declaration on computer forensic analysis activities, Yadkin Bank v. George Mason Mortgage, Inc. et. al, June 2017

153.    Declaration on computer forensic analysis activities, Nichole Baibos v. ConnectYourCare LLC, May 2017

154.    Expert report on forensic data analysis activities, Broadcast Sports International, LLC v. Gil Pascal, et. al., April 2017

155.    Declaration on preservation and collection protocols, MD Helicopters, Inc. v. Aerometals, Inc., April 2017

156.    Affidavit on computer forensic analysis activities, Yadkin Bank v. George Mason Mortgage, Inc. et. al, March, 2017

157.    Court Testimony on metadata and computer forensic analysis activities, George Mason Mortgage, Inc. v. Caliber Home Loans, Inc., February 2017

158.    Deposition on computer forensic analysis and deletion activities, Medidata Solutions, Inc. v. Michael Petrarca and Bioclinica, Inc., November 2016

159.    Expert Rebuttal Report on data breach analysis, Employment Background Investigations, Inc. v. Federal Insurance Company, October 2016

160.    Expert Report on data breach analysis, Employment Background Investigations, Inc. v. Federal Insurance Company, July 2016

161.    Affidavit on computer forensic analysis activities, Compass Systems, Inc. v. Frank D. Deaton, July 2016

162.    Affidavit on computer forensic analysis activities, Broadcast Sports International, LLC v. Gil Pascal, et. al., June 2016

163.    Affidavit on forensic analysis and data recovery, Felicia M. Barlow Clar et. al, v. Kyle C. Muehlhauser, et. al, May 2016

## SELECT SPEAKING ENGAGEMENTS AND CONFERENCES

1.  Sedona Conference Working Group 11 – "Biometric Privacy Primer", October 2021
2.  Sedona Conference Working Group 11 – "Artificial Intelligence (AI) model transparency: Core principles in promoting transparency of AI and algorithms", October 2019



©2021 iDiscovery Solutions | All Rights Reserved

3. Sedona Conference Working Group 11 – "Data Security and Privacy Legal issues in Artificial Intelligence", March 2018

4. Webinar, Metropolitan Corporate Counsel – "Data Breach Response: Orchestrating Legal & Technical Resources to Contain & Mitigate", March 2017

5. Sedona Conference Working Group 11 – "Privacy by Design", St. Petersburg, January 2017

6. CLE, ZwillGen, Cloud Computing and Mobile Devices, November 2016

7. Sedona Conference Working Group 11 – "Privacy by Design", Seattle, August 2016

8. The Exchange (Today's General Counsel Institute) – "Strategic Use of Objections and Responses Under New Rule 34", Chicago, June 2016

9. CLE Panel, "Engaging and Managing the Presentation and Preparation of Expert Witnesses in Bankruptcy and Federal Court", May 2016

10. CLE Webinar, The Knowledge Group – "Mobile Data and BYOD: Mitigating eDiscovery and Data Breach Risks", April 2016

11. CLE Webinar, The Knowledge Group – "Mobile Privacy and Security Issues in 2015: Practical Guidance to Mitigate Data Breaches", August 2015

12. The Exchange (Today's General Counsel Institute) - "The Importance of Project and Process Management", Chicago, June 2015

13. Masters Conference - "Cloud Computing and Mobile Devices – How to Be Prepared for Litigation", Philadelphia, July 2014

14. The Exchange (Today's General Counsel Institute) - "The 'eWorkplace' and its Impact on eDiscovery", New York, July 2014

15. Masters Conference - "Discussion and Debate Over Potential Changes to the Federal Rules of Civil Procedure", Chicago, May 2014

16. Masters Conference, "Predictive Analytics and Its Effect on Big Data", Chicago, May 2014

17. Chicago Association of Litigation Support Managers (CALSM-posium), "Forensic Collection Trends Now and into the Near Future", October 2013

18. CLE, Tydings & Rosenberg LLP, "E-Discovery Primer", October 2013

19. Masters Conference, "Cloud Computing and Mobile Device Usage: Challenges They Bring to Your Litigation", July 2013

20. CLE, Williams & Connolly LLP, "Mobile Forensics for Lawyers", January 2013

21. Chicago Association of Litigation Support Managers (CALSM-posium), "How to Prepare for E-Discovery Supplementation Obligations", October 2012

22. Paraben Forensic Innovations Conference, "Analyzing Structured Data", November 2010

## PROFESSIONAL AFFILIATIONS

- The Sedona Conference, Working Group 11 (Data Security and Privacy)
- The Sedona Conference, Working Group 12 (Trade Secrets)



©2021 iDiscovery Solutions | All Rights Reserved

## Appendix B – List of Documents Considered

**Bates Stamped Documents (by Bates Begin Number)**

| | | | |
|---|---|---|---|
| HARV00021802 | HARV00071735 | HARV00074066 | HARV00074850 |
| HARV00021858 | HARV00071737 | HARV00074089 | HARV00074851 |
| HARV00021906 | HARV00071781 | HARV00074107 | HARV00074865 |
| HARV00021947 | HARV00071851 | HARV00074113 | HARV00074880 |
| HARV00022577 | HARV00071872 | HARV00074122 | HARV00074899 |
| HARV00022795 | HARV00071903 | HARV00074123 | HARV00074909 |
| HARV00022796 | HARV00071928 | HARV00074124 | HARV00074912 |
| HARV00023034 | HARV00071959 | HARV00074125 | HARV00074914 |
| HARV00024150 | HARV00072098 | HARV00074126 | HARV00074917 |
| HARV00040184 | HARV00072139 | HARV00074127 | HARV00074920 |
| HARV00042947 | HARV00072165 | HARV00074128 | HARV00074923 |
| HARV00042948 | HARV00072187 | HARV00074129 | HARV00074928 |
| HARV00042949 | HARV00072204 | HARV00074131 | HARV00074935 |
| HARV00042956 | HARV00072220 | HARV00074133 | HARV00074938 |
| HARV00043074 | HARV00072565 | HARV00074135 | HARV00074940 |
| HARV00043075 | HARV00072616 | HARV00074136 | HARV00074942 |
| HARV00043174 | HARV00072621 | HARV00074137 | HARV00074945 |
| HARV00045218 | HARV00072627 | HARV00074460 | HARV00074949 |
| HARV00045231 | HARV00072630 | HARV00074463 | HARV00074950 |
| HARV00045248 | HARV00072635 | HARV00074466 | HARV00074951 |
| HARV00045250 | HARV00072639 | HARV00074467 | HARV00074971 |
| HARV00045281 | HARV00072774 | HARV00074468 | HARV00074977 |
| HARV00046941 | HARV00072814 | HARV00074469 | HARV00075051 |
| HARV00066663 | HARV00072907 | HARV00074471 | HARV00075053 |
| HARV00066756 | HARV00072910 | HARV00074472 | HARV00075056 |
| HARV00066959 | HARV00072911 | HARV00074475 | HARV00075075 |
| HARV00068731 | HARV00072914 | HARV00074476 | HARV00075205 |
| HARV00068766 | HARV00072915 | HARV00074502 | HARV00075210 |
| HARV00068798 | HARV00072918 | HARV00074503 | HARV00075211 |

| | | | |
|---|---|---|---|
| HARV00068990 | HARV00072920 | HARV00074533 | HARV00076298 |
| HARV00069595 | HARV00072925 | HARV00074534 | HARV00076317 |
| HARV00069707 | HARV00072927 | HARV00074566 | HARV00076322 |
| HARV00069707 | HARV00072929 | HARV00074567 | HARV00078316 |
| HARV00071131 | HARV00072939 | HARV00074601 | HARV00078322 |
| HARV00071143 | HARV00072942 | HARV00074602 | HARV00078323 |
| HARV00071213 | HARV00072944 | HARV00074639 | HARV00078324 |
| HARV00071355 | HARV00072945 | HARV00074640 | HARV00078325 |
| HARV00071406 | HARV00072976 | HARV00074676 | HARV00078326 |
| HARV00071412 | HARV00072981 | HARV00074677 | FREI04734 |
| HARV00071427 | HARV00073018 | HARV00074717 | GINO_000348 |
| HARV00071438 | HARV00073019 | HARV00074731 | GINO_000351 |
| HARV00071696 | HARV00073021 | HARV00074833 | GINO_003095 |
| HARV00071709 | HARV00073042 | HARV00074841 | GINO_021615 |
| HARV00071713 | HARV00074059 | HARV00074842 | |

## Forensically-Imaged Devices & ESI Repositories

- The preservation of data identified by Gino and sequestered by HBS in the Fall of 2021
- "es01_gino-francesca_redacted" forensic image of the Harvard-issued MacBook Pro laptop bearing serial number C02T2CB6GTF1, created by Michael McGowan and provided on September 13, 2024
- Partial redacted images of:
  - Plaintiff's Harvard-issued MacBook Pro laptop bearing the serial number C02T2CB6GTF1, provided to forensic neutral Brandon Leatha
  - Plaintiff's black, unlabeled USB drive bearing the serial number 21013403D7FFA005, provided to forensic neutral Brandon Leatha
  - Plaintiff's MicroCenter USB drive bearing the serial number 067308185030, provided to forensic neutral Brandon Leatha
  - Plaintiff's SimpleTech USB drive bearing the serial number 0196019921036, provided to forensic neutral Brandon Leatha
  - Plaintiff's Western Digital 1TB external hard drive bearing the serial number WXG2ACoAZCUK, provided to forensic neutral Brandon Leatha
  - Plaintiff's Google Drive for francescabgino@gmail.com, provided to forensic neutral Brandon Leatha

- The following metadata reports, file listings, activity history, and other forensic artifact logs provided by forensic neutral Brandon Leatha:
  - 2026-04-06 Defendants' Requests to B. Leatha [RESPONSES 20260428].xlsx
  - 20328.001.Gino_v_Harvard-Goolge_Drive_Metadata_REDACTED_20260429.xlsx
  - 4 Drive_Revisions_ES09 (replacement).pdf
  - 2026-04-06 Defendants' Requests to B. Leatha - Apr_23_2026_Alternate_Requests [RESPONSES 20260506].xlsx
  - I.1a.Log_of_Post_20211104_Redacted_Files.xlsx
  - Plaintiff's Privilege Log pursuant to the Forensic Search Protocol (April 28, 2026)
- The following documents provided by forensic neutral Brandon Leatha:
  - Five versions of the "Taxstudy" spreadsheet on the black, unlabeled USB drive bearing the serial number 21013403D7FFA005
  - One version of the "Taxstudy" spreadsheet on Plaintiff's Google Drive for francescabgino@gmail.com

**Pleadings and Written Discovery**

- Defendants' Amended Answer to Plaintiff's Third Amended Complaint and Counterclaim, Docket. No. 154 (Jan. 29, 2026)
- Forensic Search Protocol (March 5, 2026)
- Plaintiff's Supplemental Privilege Log (April 9, 2026)

**Deposition Transcripts**

- Deposition Transcript of Francesca Gino (May 22, 2026)

**Other Publicly Available Documents and Websites**

- Francesca v Harvard, https://www.francesca-v-harvard.org
- https://www.kellogg.northwestern.edu/faculty/directory/~/media/C0B677C7482F4381A5BECD404E7F9A45.ashx (archived as of July 12, 2024 at https://web.archive.org/web/20240712130940/https://www.kellogg.northwestern.edu/faculty/directory/~/media/C0B677C7482F4381A5BECD404E7F9A45.ashx)

# EXHIBIT A

**IN THE MATTER OF FRANCESCA GINO PURSUANT TO THE THIRD STATUTE OF THE HARVARD UNIVERSITY STATUTES**

Robin Greenwood, Senior Associate Dean for Faculty Development and Research,

      Complainant,

v.

Francesca Gino, Professor of Business Administration,

      Respondent.

**<u>REBUTTAL EXPERT STATEMENT OF JULIAN ACKERT</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 4

II.    SUMMARY OF OPINIONS ............................................................................... 5

III.   MCGOWAN OBFUSCATES INCONVENIENT FORENSIC DETAILS BECAUSE
       THEY DO NOT SUPPORT ANY OF GINO'S SPECULATIVE DEFENSES. ............... 9

       A.     McGowan Obfuscates, Ignores, and Omits Key Document Metadata. ...... 9

       B.     McGowan Misconstrues the Availability of Historical USB Device
              Connections and Ignores Current USB Device Connections that are
              Available and Hold Relevant Information Counter to Gino's Defenses. . 10

       C.     McGowan Misconstrues the Availability of Changes to Files ("fsevents").
              .................................................................................................................. 12

       D.     McGowan Misconstrues the Availability of Internet Browser History. ... 14

       E.     McGowan Misconstrues the Availability of Recently Opened Files (MS
              Office Log ) and Ignores Recently Opened Files that are Available and
              Hold Relevant Information Counter to Gino's Defenses.......................... 15

       F.     McGowan is Wrong About the Availability of Gino's Email and
              Attachments. ............................................................................................ 16

IV.    MCGOWAN PROVIDES NO FORENSIC EVIDENCE TO SUPPORT GINO'S
       SPECULATIVE DEFENSIVE IDEAS TO REBUT ALLEGATION 1. ......................... 19

V.     MCGOWAN MAKES AN UNSUPPORTED CONCLUSION WITH RESPECT TO
       FILE ACTIVITY ON NOVEMBER 25, 2014, AND INCORRECT STATEMENTS
       ABOUT THE VOLUME OF RETAINED EMAIL IN ALLEGATION 2. ..................... 25

VI.    MCGOWAN EXCLUDES FROM HIS ANALYSIS RELEVANT METADATA WITH
       RESPECT TO FILE AND FOLDER ACTIVITY ON NOVEMBER 25, 2013, AND
       MISSTATES THE VOLUME OF RETAINED EMAIL RELATED TO ALLEGATION
       3........................................................................................................................ 28

VII.   MCGOWAN EXCLUDES FROM HIS ANALYSIS RELEVANT METADATA WITH
       RESPECT TO A CRITICAL FILE IN ALLEGATION 4a............................................ 30

VIII.  MCGOWAN FAILS TO IDENTIFY AND ANALYZE AN ENTIRE KEY
       DOCUMENTS AND CRITICAL METADATA RELATED TO ALLEGATION 4b. .... 32

       A.     McGowan Ignores or Obfuscates the Relevant Metadata And/or Document
              Contents. ................................................................................................. 35

       B.     McGowan Ignores a Critical File Added to Gino's Laptop Post-
              Sequestration........................................................................................... 38

       C.     McGowan Ignores A Concerning Pattern of Behavior and Critical
              Metadata Related to Document #7............................................................ 39

       D.     Document #7 Was Placed on Gino's Laptop on September 23, 2023 via a
              USB Device That McGowan Deemed Irrelevant. .................................. 41

E.        Document #7 Has Metadata Altered, Likely Using the Terminal Utility. 42

F.        The Terminal Utility Log Has Been Redacted With Respect to the Details of the Highly Relevant Session on September 23, 2023............................ 43

G.       McGowan's Flawed Investigation Built on Gino's Incomplete Production Led Him to Miss Critical Evidence Related to Allegation 4b. ................. 45

IX.    MCGOWAN'S FLAWED INVESTIGATION BUILT ON GINO'S INCOMPLETE PRODUCTION LED HIM TO MISS CRITICAL EVIDENCE RELATED TO ALLEGATION 4b. .................................................................................................... 45

A.        Probable Timeline of Forensic Details Supporting Allegation 4b............ 45

X.     BACKGROUND AND PROFESSIONAL QUALIFICATIONS .................................... 50

XI.    MATERIALS REVIEWED............................................................................................. 51

## I.    INTRODUCTION

1.      My review of the forensic evidence of data files and emails in this case confirms a "clear progression" of data and data manipulation but also reveals some disturbing facts.

2.      I have found evidence that Respondent Professor Francesca Gino's ("Gino") laptop (the "Gino Laptop") contains a *September 2023* file with manipulated metadata back-dating that file to 2010.  This September 2023 file presents with manually altered metadata that would make it appear as if the study file that ▆▆▆▆▆▆ sent Gino, way back in 2010, contained the manipulated study data at issue in Allegation 4b, which, based on the forensic evidence, it did not.  Simply put, I have found direct evidence of intentional back-dating.

3.      I have found evidence that this 2023 file was manually altered, likely with use of command-line controls to change the forensic metadata.

4.      Given the weight McGowan places on the importance of metadata, he nevertheless failed to identify this anomalous file, with manipulated metadata and content, that was modified on various devices, including the Gino Laptop, after HBS' sequestration in 2021 (collectively, the "Sequestered Materials").[1]  In failing to identify it, he failed to investigate it, thereby failing to identify data fabrication and anti-forensic activity in available activity logs and failing to identify the impact of creating fabricated evidence in a case about fabricated data.  What's more, in failing to pursue this file, he also failed to identify the existence of at least one undisclosed device used to manipulate and fabricate a version of a key document in this matter, and also failed to note the relevance of a USB device he imaged and claimed had no relevance.

5.      The ability, and the exercise, of sophisticated anti-forensic techniques calls into question all the evidence presented by Gino and McGowan.

---

[1] *See* CX 1.2 (Sequestration Inventory).

6.      Regardless of this explicit and implicit compromise of the forensic record, I have found sufficient forensic evidence to support Complainant's Expert Jeremy Freese's ("Freese's") conclusions and I have found sufficient forensic evidence to disqualify McGowan's criticisms of the sequestration process and the corpus of historical data.

## II.    SUMMARY OF OPINIONS

7.      McGowan's stated opinion that HBS's decision not to create a forensic image of Gino's laptop "materially hampers" his ability to perform forensic analysis is misleading.[2]  In my opinion and as I detail further below, the Sequestered Materials were sufficient in that they included a forensically sound collection of files and contained all but one log file,[3] with that specific log file actually bolstering Complainant's allegations.

8.      Further, I have determined that had a forensic image of Gino's laptop been captured in Fall 2021, it would not have contained any additional relevant forensic artifacts for the allegations.  McGowan fails to elaborate certain details within the forensic artifacts he discusses at length in the McGowan Expert Statement and buries the lede on several forensic issues.  In fact, of the forensic artifacts that remain, and McGowan collected, certain artifacts undermine Gino's and McGowan's claims.

9.      I understand that after HBS sequestered all data, including the data identified by Gino as relevant, in Fall 2021.  Gino received her laptop back from HBS.[4]  I also understand that at that time her laptop was returned, or thereafter during the research misconduct process, Gino did not identify, collect, provide, or point HBS to any additional potentially relevant data other

---

[2] Expert Statement of Michael P. McGowan, dated September 13, 2024 (the "McGowan Statement"), ¶ 61.
[3] This is "MicrosoftRegistrationDB_17681617811847.reg", a log of recent files opened in Microsoft.  This file is located within the "es01_gino-francesca_redacted" forensic image created by McGowan and produced on September 13, 2024 (the "McGowan Image").  Unless otherwise noted, file paths contained in citations herein refer to file paths in the McGowan Image.
[4] I base this on the fact that McGowan imaged the same laptop that was part of the Sequestered Materials in Fall 2021. *See* McGowan Statement, ¶17; *see also* CX 1.2 (Sequestration Inventory).

5

than the Sequestered Materials.  I further understand that no expert, including McGowan, made a forensic copy of the laptop until January 2024 (the "McGowan Image").[5]  According to McGowan, there are no data that support a different version of HBS' allegations on any of the following devices examined by McGowan:[6]

    a.   Four USB devices used by Gino;[7]

    b.   One external hard drive used by Gino; and

    c.   The Google Drive for the account francescabgino@gmail.com used by Gino.

10.    However, as further explained below, the forensic artifacts reveal that at least one of these devices at some point did (or still does) contain relevant data, which both further suggest Gino's culpability and casts doubt on the reliability of McGowan's analysis.

11.    McGowan's Expert Statement continually misrepresents the breadth of the forensic information that could have been captured by HBS in Fall 2021.  For example, he implies that the Unified Log would show USB device connection information for approximately two years—yet, in my professional opinion, 99% of Unified Log information goes back only six months and, further, less than 0.01% of this information even relates to USB device activity, rendering it highly unlikely that a collection of such log by HBS in Fall 2021 would have revealed anything regarding USB connections (or other relevant information) during the time periods at issue.

12.    Similarly, McGowan misleadingly suggests that the "fsevents" log, which contains information about file changes, holds complete log data going back three years when, in fact— aside from a handful of anomalies—the "fsevents" log goes back only a few months, with a concentration of those events on a couple of specific days within those few months.  No forensic

---

[5] McGowan Statement, ¶ 17.
[6] *Id.*, ¶ 23.
[7] Including the USB Device apparently used in the commission of anti-forensic activity.

examiner would expect to find changes to user created documents, such as Word and Excel, going back as far as would have been required to shed light on the allegations here.

13.    Although McGowan implies that Gino's internet history is not available during the time period at issue in Allegation 1—this is incorrect.  Google Chrome and Firefox download logs are available during this time period and do not show file download data relevant to Allegation 1, and would not have been available at the time of sequestration for the other Allegations.  With respect to the Microsoft log of recently opened files (the "MS Office Log"), nothing of value was lost as a result of such log not having been collected by HBS in Fall 2021.  In fact, as McGowan fails to explain, the MS Office Log as it currently exists does contain information relating to Allegation 1, which information demonstrates that Gino is in fact responsible for the data fabrications and/or falsifications observed by the HBS Inquiry Committee, Investigation Committee, Freese, and others.

14.    In short, McGowan and Gino's attempts to sow doubt and cast blame upon the HBS research misconduct process cannot withstand proper forensic scrutiny.  Ultimately, McGowan provides no forensic evidence whatsoever to support Gino's various speculative defenses regarding the culpability of research assistants ("RAs") or other collaborators for the undisputed anomalies apparent in her data, and, in fact, McGowan agrees with key inculpatory details with respect to each Allegation:

   a.  **Allegation 1**:  McGowan and I agree with the timeline of the key file interactions that took place in January 22-24, 2020.  Although McGowan attempts to suggest that ███████ one of Gino's former RAs, was responsible for the so-called "R" file dataset, a thorough analysis of the forensic data reveals another "R" file, predating ███ 's involvement with Gino by five years, analysis of which reveals

7

usage patterns apparent from the available SPSS[8] log files that are consistent with the Allegation 1 "R" file.

b. **Allegation 2**: McGowan agrees that data for the study at issue in Allegation 2 were modified and offers no explanation for these modifications other than his inaccurate representations of Gino's supposedly missing email data, which McGowan does not even suggest would clear her name.

c. **Allegation 3:** McGowan again misleads the Hearing Committee, falsely asserting that Freese is wrong to claim that the November 25, 2013 version of the Allegation 3 dataset is a later version of a pre-existing dataset, when forensic artifacts reveal that this dataset was in fact created in July 2013. And, again, without even suggesting a plausible explanation for the data fabrication observed in the relevant datasets,[9] McGowan incorrectly states that email data with Gino's collaborators are not available.

d. **Allegation 4a**: McGowan spends nearly twenty pages repeating Gino's claim that she received the initial draft of the paper at issue on February 15, 2011. McGowan effectively throws up his hands, proclaiming that one can never know for certain whether Gino or her co-author, ███████, originated the offending language. However, as McGowan himself acknowledges, forensic artifacts exist that indicate Gino did in fact originate an earlier version of the draft.

---

[8] SPSS is statistical software program that allows for the analysis of data. SPSS utilizes a log file, "statistics.jnl", which tracks the specific interactions with data and records the date and time information when an SPSS spell starts. This log file is useful to a forensic analyst that seeks to uncover when and with what user account there are interactions with certain data.

[9] *See generally* Freese August 16 Statement, Ex. 3.

e. **Allegation 4b**: The relevant forensic artifacts—contrary to McGowan and Gino's protests—not only demonstrate the likelihood that Gino is responsible for the data anomalies in question, but also reveal the replacement of a critical file on the Gino Laptop *in September 2023*. McGowan's failure to address this apparent evidence tampering casts serious doubt on his analysis. Moreover, the forensic artifacts surrounding this file indicate that Gino has not disclosed to the Hearing Committee the relevance of other devices.

15. In short, McGowan and Gino do not and cannot dispute the fact that anomalies exist in the relevant data and fail to articulate a coherent theory of how these anomalies came to be. Instead, McGowan and Gino raise the specter of allegedly missing data and missing forensic information in an apparent attempt to distract the Hearing Committee from the data and forensic information that *do* exist; and those data and that information, in my professional opinion, demonstrate to a reasonable degree of professional certainty that Gino is responsible for the data fabrication and/or falsification at issue.

## III. MCGOWAN OBFUSCATES INCONVENIENT FORENSIC DETAILS BECAUSE THEY DO NOT SUPPORT ANY OF GINO'S SPECULATIVE DEFENSES.

### A. McGowan Obfuscates, Ignores, and Omits Key Document Metadata.

16. McGowan spends nine pages discussing metadata.[10] He explains the differences between File System metadata and Embedded metadata. But, he also creates an unrealistic expectation by suggesting that a forensic investigation cannot determine file histories absent every version of a file having been saved.[11] This is not true. Forensic investigators frequently make

---

[10] McGowan Statement, ¶¶ 75-93, pp. 40-48.
[11] *Id.*, ¶ 75.

9

assessments to a reasonable degree of forensic certainty even when every version of a file is not available.

17.    McGowan also offers non-forensic defensive ideas, such as Professsor Gino's speculative claims that others used her computer and that some of Gino's emails and email attachments are missing.[12]   However, he does not reference any forensic evidence to support these speculative claims.  Nor does he demonstrate that any metadata in any individual file is inaccurate or unreliable.   Indeed, and most concerning, he ignores key metadata for all but one of the allegations, as explained in the respective sections below.   Most notably, he completely ignores key metadata for the document at issue in Allegation 4b, and thereby ignores the global impact of such a discovery for the entire investigation.

18.    In my experience, forensic investigators will often draw conclusions based on the evidence presented and available to them.  McGowan obfuscates the fact that metadata, when examined properly, offer valuable insights into file and edit histories.

**B.    McGowan Misconstrues the Availability of Historical USB Device Connections and Ignores Current USB Device Connections that are Available and Hold Relevant Information Counter to Gino's Defenses.**

19.    In McGowan's Expert Statement, there are references to the speculative possibility that the file "data study3A RF networking R.xlsx", which was missing from Gino's laptop as of the date of sequestration and is still missing, was provided to Gino by a research assistant (an "RA") on a USB device,[13] and that USB device connection information would have been information necessary to confirm or refute this idea.

---

[12] *Id.*, ¶¶ 84, 308.
[13] McGowan Statement, ¶ 58.

20.     McGowan explains that USB device connection information is recorded in the Mac operating system Unified Log.[14]  This log was not captured as part of the forensically sound collection performed by HBS, and the Unified Log that was collected as part of McGowan's imaging on January 31, 2024 contained entries going back approximately two years to January 1, 2022.[15]

21.     The dates of Unified Log available data provided by McGowan would make one think that the USB device connection information is recorded for approximately two years. However, the Unified Log records more than just USB device connection information, referenced as " . . . among other things . . . " by McGowan.[16]  It is McGowan's "among other things" where he buries the lede.  Indeed, he fails to break down what is recorded in the Unified Log, and his opinion is, therefore, misleading.

22.     A detailed review of the current Unified Log indicates that there are 19,543,038 events recorded, with 99% of the events occurring in a six-month window between July 31, 2023 and January 31, 2024, which ironically holds relevant information as to Allegation 4b that McGowan fails to disclose, as I explain further in this report.  In other words, 99% of the recorded log information in the Unified Log goes back in time *only six months.*  I would expect the same had this Unified Log been collected in Fall 2021, and, thus, even then it would not have covered the relevant time for Allegation 1, and in no circumstance would have contained log information for Allegations 2, 3, and 4, much less from a prior computer.[17]  What's more, all of the USB device activity in the Unified Log spans this timeframe of only six months; and of the approximately 20

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] The Gino Laptop, as imaged by Mr. McGowan, was issued to Gino in January 2017.  Her user profile was not initialized until February 14, 2017.

million events in the entire Unified Log, only a minute fraction (less than 0.01%) relates to *any* kind of USB activity whatsoever.

23.    Even if the Unified Log had been captured in the Sequestered Materials, it is highly unlikely that the Unified Log at that time would have contained *any* USB device connections going back 22 months to January 2020.  In my experience examining hundreds of Mac computers, USB device connection information in a Unified Log typically goes back only a few months.  I have never encountered a Mac computer with USB device connection information in the Unified Log going back 22 months or more.

24.    McGowan's assertion that had a forensic copy of Gino's laptop been made in Fall 2021 it would have included Unified Log USB connection data relevant to the investigation is misleading.

### C.    McGowan Misconstrues the Availability of Changes to Files ("fsevents").

25.    In McGowan's Expert Statement, he explains that the "fsevents" log contains information about changes to files and that he had "planned to examine this ["fsevents"] log to determine whether it recorded any interim changes to the files in question."[18]  He further states that the "fsevents" log collected as part of the imaging on January 31, 2024 contained entries going back slightly more than three years to September 27, 2021.[19]

26.    The dates of "fsevents" available log data provided by McGowan would make one think that the "fsevents" log information is recorded for approximately three years.  Again, he buries the lede and fails to elaborate on the details and breakdown of what is actually recorded in the "fsevents" log. His opinion is, therefore, once again, misleading.

---

[18] McGowan Statement, ¶ 59.
[19] *Id.*

27.     The "fsevents" log generally contains information related to changes in files, such as the created and modified dates, going back only a few weeks, with sparse anomalies in the log that may indicate changes in files going back further in time.  Additionally, the changes to files that are recorded in the "fsevents" log are largely related Mac operating system files, such as .plist, .DB, .Log, etc., not user created documents, such as the documents created in Microsoft Office (for example Word and Excel) as we have in this investigation.  In plain terms, the "fsevents" log almost exclusively records changes to files that run the computer and its operating software and not changes to human-created Word documents or Excel spreadsheets. That pattern is exactly what is seen when analyzing in detail the "fsevents" log in the McGowan Image, as summarized in **Figure 1** below:

| Date | Log Entries | Log entries Timeframe | OS Activity | User Activity[1] |
|---|---|---|---|---|
| 9/27/21 | 3 | 1 second | 100% | 0% |
| 1/8/22 | 2,730 | 1 second | 98.5% | 1.5% |
| 1/23/24 | 35,490 | 5 hours, 36 minutes | 91.5% | 8.5% |
| 1/31/24 | 2,730 | 1 second | 98.75% | 1.25% |

Figure 1 – "fsevent" log entries by OS Activity v. User Activity

28.     Even if the "fsevents" log had been captured in the Sequestration Materials, it is highly unlikely that the "fsevents" log, or any anomalies in the "fsevents" log, would have contained changes to the types of files that have anything to do with this investigation going back 22 months to January 2020.  As a forensic examiner, I would not expect to find changes to user created documents, such as Word and Excel going back that far as these logs are not designed to record information for so long a timeframe.  The "fsevents" log is neither an exhaustive nor a

13

perpetual record, and would be of only potential limited utility for a forensic examiner charged with determining when user created documents were created or modified as part of an investigation that requires a 22 month or greater historical analysis of Word and Excel file changes.

29.     McGowan's assertion that had a forensic copy of Gino's laptop been made in Fall 2021, it would have included "fsevents" file changes relevant to the investigation is misleading.

**D.      McGowan Misconstrues the Availability of Internet Browser History.**

30.     In McGowan's Expert Statement, he identifies that computers record a history of many different types of information when using an Internet browser, such as Google Chrome.[20] This information includes, but is not limited to, websites visited, recent searches, form data entries such as addresses and names, and file downloads.[21]  The last category of information would be useful to determine whether Gino " . . . received an analysis spreadsheet prepared by another member of the research team by downloading it from OneDrive or another cloud storage platform . . . ,"[22] which is another of her and McGowan's speculative defensive ideas.

31.     The available dates of Internet history provided by McGowan (going back as far as May 18, 2022 for Chrome and September 23, 2022 for Firefox)[23] would make one think that certain relevant Internet browser history information is now not available during the timeframe of Allegation 1 because a forensic image of the Gino Laptop was not created in Fall 2021.  *However, the dates of available Google Chrome and Firefox file downloads do cover the timeframe of Allegation 1—January 22, 2020 to January 24, 2020—and there are no downloads of the relevant files in those data*.  As such, even if the Google Chrome and Firefox file downloads were captured

---

[20] McGowan Statement, ¶ 47(ii).
[21] *Id.*
[22] *Id.*, ¶ 47.
[23] *Id.*, ¶ 60.

in the Sequestration Materials, there would be no additional information available related to this Allegation in the Google Chrome or Firefox downloads.

32.     There is no evidence in the McGowan Image that the file "data study3A RF networking R.xlsx" was downloaded from any Internet location such as Dropbox or Google Drive, and further there was no file download information relevant to this investigation that was lost that "materially hampers" McGowan's analysis as he opines.[24]

33.     McGowan's assertion that had a forensic copy of Gino's laptop been made in November 2021 it would have included file download data relevant to the investigation is misleading.

**E.     McGowan Misconstrues the Availability of Recently Opened Files (MS Office Log ) and Ignores Recently Opened Files that are Available and Hold Relevant Information Counter to Gino's Defenses.**

34.     In McGowan's Expert Statement, he explains that there are "listings [(*i.e*, a log)] of files most recently used with Microsoft Office," such as files last opened in Microsoft Excel.[25]

35.     For clarity, especially given how McGowan refers to this log in a few different ways[26] and given the previously addressed Unified Log and "fsevents" log, which are different, I will refer to it, for readability, in a truncated fashion as the "MS Office Log."

36.     It is important to note that the MS Office Log records *only* the last time a document was opened. It does not record when a file was created or modified, nor does it record all of the historical times a file was opened.

---

[24] McGowan Statement, ¶ 61.

[25] *Id.*, ¶ 56.

[26] *Id.*, ¶¶ 57 ("Microsoft Office most recently used listing"), 123 ("Most Recently Used records"), ¶ 155 ("Microsoft Office Recents data"), ¶ 198 ("an application log for the Microsoft Office programs"), ¶ 270 ("The usage records showing which files were opened in Microsoft Office programs and when they were last opened").

37.    McGowan indicates that the Sequestration Materials did not capture the MS Office Log.[27]  And yet, he confirms that the "current contents" of this MS Office Log was included in his January 2024 full forensic image.[28]  Yet again, he buries the lede and fails to elaborate on the detail and breakdown of what information is actually recorded in the MS Office Log and his opinion is, again, misleading.

38.    What McGowan doesn't explain is that *the "current contents" of the MS Office Log range from February 2019 through January 2024, which covers the timeframe of interest*. Therefore, even if the MS Office Log had been captured at the time of HBS' sequestration in Fall 2021, it would not have contained any additional information relevant to this investigation; therefore, McGowan's analysis was not "materially hampered."  I will address below how the MS Office Log supports Complainant's Allegation 1, but does not support any of Gino's or McGowan's speculative defensive ideas.

**F.    McGowan is Wrong About the Availability of Gino's Email and Attachments.**

39.    Gino claims that because of HBS's email server quota, she began saving emails locally on her computer early in her time at HBS.[29]  As a result, he asserts, considerably more historical emails are available than if she had relied just on Harvard's email server.  Gino also claims that her historical emails are incomplete because she deleted emails with attachments to save space.[30]  McGowan relies on this claim.[31]

---

[27] McGowan Statement, ¶ 155.
[28] *Id.*, ¶ 57.
[29] Gino Statement, ¶ 393.
[30] *Id.*
[31] *See* McGowan Statement, ¶¶ 47(iii), 308.

40.    I analyzed all of the available emails and their attachments from (a) the Sequestered Materials, summarized in **Figure 2(a) below**; and (b) the redacted materials provided by Gino's counsel on September 13, 2024, summarized in **Figure 2(b) below** :

| General File Type | Count | Vol (KB) | Max (KB) | Avg (KB) |
|---|---|---|---|---|
| Audio/Video | 225 | 2,255,591 | 67,281 | 10,025 |
| PowerPoint | 1,848 | 6,181,915 | 97,501 | 3,345 |
| InDesign | 1 | 2,176 | 2,176 | 2,176 |
| VBA | 5 | 4,443 | 2,652 | 889 |
| PDF | 14,179 | 11,376,024 | 47,928 | 802 |
| Email | 246 | 138,358 | 21,335 | 562 |
| Image | 18,751 | 5,747,495 | 23,461 | 307 |
| Word | 18,256 | 5,569,167 | 42,422 | 305 |
| JSON | 49 | 13,043 | 8,092 | 266 |
| CAD | 2 | 474 | 237 | 237 |
| Spreadsheet (XLSX, CSV, Etc.) | 4,755 | 893,798 | 34,755 | 188 |
| Outlook Note | 341 | 45,102 | 4,904 | 132 |
| Access | 7 | 614 | 146 | 88 |
| HTML | 2,381 | 72,448 | 1,799 | 30 |
| Contact | 53 | 880 | 266 | 17 |
| Text | 3,739 | 16,129 | 6,366 | 4 |
| Equation | 219 | 809 | 33 | 4 |
| PKCS Signature | 18 | 63 | 10 | 3 |
| Calendar/Appointment | 2,237 | 6,670 | 1,299 | 3 |
| BIN | 675 | 185 | 10 | 0 |
| Google Doc | 1 | 0 | 0 | 0 |
| Outlook Schedule | 1 | 0 | 0 | 0 |
| | | | | |
| Count Total | 67,989 | | | |

*Figure 2a – Sequestered Materials attachment breakdown.  Yellow indicates the spreadsheet file types, and green indicates the maximum value in each column.*

17

| General File Type | Count | Vol (KB) | Max (KB) | Avg (KB) |
|---|---|---|---|---|
| Audio/Video | 184 | 1,324,215 | 67,281 | 7,197 |
| PowerPoint | 1,425 | 8,703,606 | 566,107 | 6,108 |
| InDesign | 2 | 3,568 | 2,176 | 1,784 |
| PDF | 10,899 | 8,729,151 | 47,928 | 801 |
| Outlook Note | 134 | 70,876 | 15,587 | 529 |
| Image | 4,193 | 2,150,768 | 23,461 | 513 |
| Word | 12,158 | 4,649,866 | 42,422 | 382 |
| Email | 1 | 304 | 304 | 304 |
| CAD | 2 | 474 | 237 | 237 |
| Spreadsheet (XLSX, CSV, Etc.) | 4,548 | 977,924 | 47,739 | 215 |
| VBA | 2 | 422 | 398 | 211 |
| HTML | 1,044 | 121,940 | 6,383 | 117 |
| Access | 5 | 408 | 146 | 82 |
| JSON | 29 | 1,718 | 420 | 59 |
| Contact | 15 | 746 | 266 | 50 |
| Calendar/Appointment | 137 | 3,691 | 1,299 | 27 |
| Text | 1,801 | 19,442 | 6,366 | 11 |
| Outlook Schedule | 2 | 15 | 13 | 7 |
| Equation | 68 | 311 | 33 | 5 |
| PKCS Signature | 37 | 136 | 8 | 4 |
| Google Doc | 1 | 0 | 0 | 0 |
| BIN | 556 | 79 | 1 | 0 |
| | | | | |
| Count Total | 37,243 | | | |

*Figure 2b – Gino September 13, 2023 production attachment breakdown. Yellow indicates the spreadsheet file types, and green indicates the maximum value in each column.*

41.     Although there were 4,755 spreadsheet file type email attachments[32] within the Sequestration Materials and 4,548 in the redacted materials provided by Gino's counsel on September 13, 2024.  I conclude, based on my review of the charts above, the following about these spreadsheet file-type email attachments:

    a.  Spreadsheets were not the most numerous attachments; rather Word documents were the most numerous at over 30,000 Word document attachments.

---

[32] When I say "spreadsheet file type", I am referring to file extensions .bin, .csv, .txt (when the MIME type value is "txt/csv"), .xls, .xlsm and .xlsx, and any files with no file extension that have a file type of "Spreadsheet."

18

b. Spreadsheet attachments did not occupy the most storage space; rather PDF documents did.

c. Spreadsheets were not the largest attachments; rather Powerpoint files were the largest attachment type.

d. Spreadsheets did not have the largest average size; rather Audio/Video files had the largest average size.

42.    In conclusion, if Gino deleted email attachments or archived emails to save space, it does not appear that she targeted Excel spreadsheets or CSV files, and it appears she failed to delete a number of significantly more space-consuming files. For example, of the Sequestration Materials, there are approximately 17.5 gigabytes of PowerPoint and PDF files, an amount that is orders of magnitude more volume than the thousands of spreadsheets she also did not delete.

## IV.    MCGOWAN PROVIDES NO FORENSIC EVIDENCE TO SUPPORT GINO'S SPECULATIVE DEFENSIVE IDEAS TO REBUT ALLEGATION 1.

43.    Freese concludes that there were modifications to the survey responses for Study 3A at issue in Allegation 1, and those modifications were made by Gino.[33]    After reviewing McGowan's Expert Statement, and the available evidence, I can conclude the following to a reasonable degree of professional certainty:

a. The evidence indicates that only a person with Gino's credentials and access to her physical laptop logged into Gino's laptop and interacted with Gino's study data on her computer and in Gino's SPSS account between January 22, 2020 and January 24, 2020.

b. Evidence shows that data related to Allegation 1 were accessed and interacted with between January 22, 2020 at 8:52 p.m. and January 24, 2020 at 11:23 p.m.

---

[33] *See* Freese August 16 Statement, Ex. 1, ¶ 15.

c.  An alternate and more likely explanation is that the spreadsheet "data study3A RF networking.xlsx" (the "Study 3A Spreadsheet") dataset was likely created on January 24, 2020 at 1:53 p.m. using a copy/paste process from another spreadsheet or modified thereafter by copy/paste from another spreadsheet.

d.  The file "data study3A RF networking R.xlsx" (the "2020 'R' File") had to have been located on Gino's laptop on January 24, 2020 as it was analyzed multiple times in SPSS during that day.[34]

e.  The 2020 "R" File no longer existed on the Gino Laptop at the time of HBS' sequestration efforts of data identified by Gino, in Fall 2021, and did not exist on the McGowan Image.  There is no evidence that the 2020 "R" File was ever located anywhere except on the Gino Laptop.

44.    As detailed in the January 22-24, 2020 timeline below, the forensic evidence indicates that someone logged into the Gino Laptop with Gino's credentials was working with the various Allegation 1 datasets over that two-day period.  There were modifications to the survey responses for Study 3A, and these modifications flipped the experimental outcome that was reported in the published paper.[35]  Both McGowan and I agree on this fact.

a.  **January 22, 2020 at 8:52 p.m.:**    The file RF+and+Networking+-+Study+3A+New_January+22%2C+2020_20.52.zip" is downloaded from Qualtrics to the Gino Laptop by someone using Gino's credentials.  This .zip file

---

[34]  *See* CX 20 ("statistics.jnl" Allegation 1), lines 273614, 278823, 278968, 278946, 279034, ("/Users/fgino/Documents/Submissions/Approaches to networking/JPSP/R&R/Study 3A/data study3A RF networking R.xlsx"); *see also* Freese August 16 Statement, Ex. 1.  This log file covers December 22, 2017 and July 9, 2021.  It would not have been possible for Gino to analyze this "R" file in SPSS unless this file was stored on Gino's laptop.
[35] McGowan Statement, ¶ 120; *see also* Freese August 16 Statement, Ex. 1, ¶¶ 73-76, 84-96.

contains one file named "RF and Networking – Study 3A New_January 22, 2020_20.52.csv." Both McGowan and I agree on this fact.[36]

b. **January 22, 2020 at 8:53 p.m.:** The file named "RF and Networking – Study 3A New_January 22, 2020_20.52.csv," which is the Qualtrics dataset in Allegation 1, is created on the Gino Laptop by someone using Gino's credentials ("Qualtrics CSV File"). Both McGowan and I agree on this fact.[37]

c. **Between January 22, 2020 at 8:53 p.m. and January 23, 2020 at 1:52 a.m.:** The Qualtrics CSV File is then opened and saved on Gino's laptop by someone using Gino's credentials. The modified date of the file is January 23, 2020 at 1:52 a.m., which means that the file was likely opened after it was created at 8:53 p.m. While McGowan and I both agree that the file was saved on January 23, 2020 at 1:52 a.m.,[38] he fails to mention that the file was likely opened before it was saved, and it could have been open for the full five hours of this timeframe.

d. **January 23, 2020 at 1:52 a.m.:** The Qualtrics CSV File is saved on Gino's laptop by someone using Gino's credentials. Both McGowan and I agree on this fact.[39]

e. **January 24, 2020 at 1:51 a.m.:** The Qualtrics CSV File is opened. Both McGowan and I agree on this fact.[40]

f. **January 24, 2020 at 1:53 PM.** The Study 3A Spreadsheet is created on Gino's laptop by someone using Gino's credentials. Both McGowan and I agree on this fact.[41]

---

[36] McGowan Statement, ¶124(2).
[37] *Id.*, ¶ 124(3).
[38] *Id.*, ¶ 124(4).
[39] *Id.*
[40] *Id.*, ¶ 124(7) (citing RX 102 (Timestamp for Node_ID 58060 in the MS Office Log).
[41] *Id.*, ¶ 124(9).

21

g. **January 24, 2020 between 2:03 p.m. and 9:37 p.m.**

    i.    The Study 3A Spreadsheet was loaded into SPSS[42] and analyzed from Gino's laptop user profile four times.  Both McGowan and I agree on this fact.[43]

    ii.    The file "data study3A RF networking R.xlsx" ("2020 R File") existed on Gino's laptop, and it was loaded into SPSS and analyzed from Gino's laptop user profile five times.  Both McGowan and I agree on this fact.[44]

h. **January 24, 2020 at 8:52 p.m.**   The 2020 R File was last opened from Gino's laptop user profile, meaning that someone was logged into the laptop with Gino's credentials at the time the file was opened.  Both McGowan and I agree on this fact.[45]

i. **January 24, 2020 between 9:37 p.m. and 10:48 p.m**.  The Study 3A Spreadsheet was loaded into SPSS and analyzed from Gino's laptop user profile three times.  Both McGowan and I agree on this fact.[46]

j. **January 24, 2020 at 10:48 p.m.**.  The Study 3A data are saved as an SPSS output file.  This file contains the data values that flipped the experimental outcome.[47]  Both McGowan and I agree on this fact. [48]

45.    McGowan indicates that the "R" in the 2020 "R" File could represent a file that was edited or named by ▮▮▮▮▮.[49]  However, when one examines the MS Office Log and the

---

[42] CX 20 ("statistics.jnl" Allegation 1); *see also* McGowan Statement, ¶ 124(9)-(15).
[43] McGowan Statement, ¶¶ 124, 182, Fig. 11.
[44] *Id.*
[45] *Id.*, ¶ 124.
[46] *Id,* ¶¶ 124, 182, Fig. 11.
[47] *Id.*, ¶ 120.
[48] *Id.*, ¶¶ 120, 124.
[49] McGowan Statement, ¶128.

available SPSS logs for any files with " R", "_R", or "_AR", " AR" in the filename, there are only four files with "AR" or "_AR" in the filename and only two files with " R" or "_R" in the filename as detailed in the tables below. McGowan identifies only one of these two "R" files in his analysis– the 2020 "R" File. But there is another "R" file, which is critically important, as I explain below.[50]

46.      When examining the available SPSS log files,[51] there is one other "R" file, "data TMC_Revision_New_Study_1 2012-11-13 R.xls" ("2013 R File"), which McGowan completely ignores and to which Gino has had access all along.   I would expect a forensic examiner charged with determining who sent a document with a unique naming convention would have searched and identified any other "R" named files on the available evidence. The 2013 R File was loaded into SPSS on Gino's laptop sometime between July 7, 2013 and July 18, 2013, was last saved on July 8, 2013, and was analyzed in SPSS at the same time as a similarly named file with no "R" in the filename,[52] just like we see in January 2020. Freese also notes in his Rebuttal Statement that there are clear similarities between the 2013 "R" File and the 2020 "R" File.[53]

47.      Because (i) there are only two files with " R" or "_R" in the filename, (ii) ███ ███ was not Gino's RA in 2013,[54] and (iii) in both the 2013 and 2020 the "R" Files, (and the similarly named files with no "R" in the filename) were analyzed by someone with the Gino Laptop and Gino's user credentials in SPSS, it is more likely than not that the 2013 and 2020 "R" Files were named as such by Gino, not ███████.

---

[50] *Id.*, ¶124(11).

[51] CX 40 ("statistics.jnl" Allegation 3).  This log file covers January 5, 2013 and July 2, 2014

[52] /Users/fgino/Documents/Work In Progress/████████/Study 6 - revision/data TMC_Revision_New_Study_1 2012-11-13.xls.

[53] Freese Rebuttal Statement, ¶ 48.

[54] CX 1.5 (Ex. 5 to Final Report, Respondent's Written Responses to Investigation Committee), p. 4 ("7/18 through 6/30/21: ████████ was working as a research associate for 100% of his time (and 75% of his time 7/12/20 – 6/30/21)."); CX 1.8 (Ex. 8 to Final Report, Transcript of Witness Interview with ███████, dated June 16, 2022), p. 2 (stating that ███ worked as ████████'s RA full-time from 2017-18 and part-time in Gino's lab from 2018-19).

23

| Date / Time | "AR" File | Source |
|---|---|---|
| 1/11/20 5:49 PM | Pilot study 1 essays and stories_AR.xlsx | MS Office Log |
| 1/24/20 8:19 AM | data RFN study1_AR.xlsx | MS Office Log |
| 7/15/20 8:47 PM | The Thai Cave Rescue Story A 2020-07-12_gb_fg_ar_tracked changes.docx | MS Office Log |
| 3/3/21 10:02 AM | Gino Coffman HBR 2021-03-02_KC_AR[1].docx | MS Office Log |

| Date / Time | "R" File | Source |
|---|---|---|
| 1/24/20 8:52 PM | data study3A RF networking R.xlsx | MS Office Log |
| January 24, 2020 | data study3A RF networking R.xlsx[55] | SPSS Log |
| July 7, 2013 – July 18, 2013 | data TMC_Revision_New_Study_1 2012-11-13 R.xls[56] | SPSS Log |

48.     Having failed to identify any emails from ▇▇▇▇ to Gino with an attachment that includes "R" in the filename, McGowan and Gino offer the speculative idea that perhaps such email and attachments are missing because Gino claims she deleted attachments to save space.[57] As mentioned above [¶ 42], there is no evidence that Gino systematically deleted attachments. What's more, there are 2,440 emails between Gino and ▇▇▇▇ that can be found on the Gino Laptop.[58] Of these, 463 contain attachments, and none of these attachments is the 2020 "R" File.

49.     In summary for Allegation 1, I can conclude the following:

a.  There are two days between the download of the raw Study 3A data from Qualtrics and the final Study 3A dataset. The final Study 3A dataset contains the modified

---

[55] /Users/fgino/Documents/Submissions/Approaches to networking/JPSP/R&R/Study 3A/data study3A RF networking R.xlsx.

[56] /Users/fgino/Documents/Work In Progress/▇▇▇ ▇▇▇▇/Study 6 - revision/data TMC_Revision_New_Study_1 2012-11-13 R.xls.

[57] McGowan Statement, ¶47(iii); Gino Statement, ¶ 297

[58] See also Freese August 16 Statement, Ex. 1, ¶¶ 97-99 (noting the existence of emails between Gino and ▇▇▇.

24

values that flipped the experimental outcome that was reported in the published paper.[59]

b.  During these two days, there are multiple interactions with various iterations of the Study 3A datasets on the Gino Laptop by someone using Gino's credentials.

c.  There is no forensic evidence that any other files that could relate to ▮▮▮▮▮ have "R" in the filename.  Rather, the forensic evidence indicates that any files that could relate to ▮▮▮▮ have "AR" in the filename.

d.  There is at least one other instance in July 2013 when Gino was interacting with SPSS and analyzing two similarly named files where one file has an "R" in the filename, namely, the 2013 "R" File and another file with an identical filename minus the "R".[60]

e.  The only available pattern of a person using files with "R" in the filename on the Gino Laptop is by someone using Gino's credentials in July 2013 and again in January 2020.

## V.  MCGOWAN MAKES AN UNSUPPORTED CONCLUSION WITH RESPECT TO FILE ACTIVITY ON NOVEMBER 25, 2014, AND INCORRECT STATEMENTS ABOUT THE VOLUME OF RETAINED EMAIL IN ALLEGATION 2.

50.  In his Rebuttal Statement, Freese explains that neither McGowan nor Professsor Gino presents evidence that someone other than Gino worked on the data at issue in Allegation 2.[61]  McGowan likewise provides no forensic evidence that some other person fabricated these data.

---

[59] McGowan Statement, ¶ 120.
[60] /Users/fgino/Documents/Work In Progress/▮▮▮▮▮▮/Study 6 - revision/data TMC_Revision_New_Study_1 2012-11-13.xls; *see also* See CX 40 ("statistics.jnl", Allegation 3), lines 4648 and 4797 (discussing 2013 "R" file).
[61] Freese Rebuttal Statement, ¶¶ 107-28.

25

51.    The forensic data for Thanksgiving Day, November 25, 2014 show that someone, likely Gino, performed numerous activities from 10:26 AM to 9:54 PM on files now present on the Gino Laptop.   McGowan appears to accept that there was activity throughout Thanksgiving Day on November 25, 2014:[62]

a.   **10:26 a.m.**:  A second copy of the online results was downloaded and saved.

b.   **12:42 p.m.**:  A .zip file containing the CLER results was created on the Gino Laptop. A CSV version of the CLER results, now present on the Gino Laptop, appears to have come from the .zip file.

c.   **1:12 p.m.**:  A spreadsheet named "data_authenticity_CD_CLER 2014-11-26.xls" was created.  Per the metadata, it was created by Francesca Gino.

d.   **1:20 p.m.**:  A spreadsheet named "data_Authenticity__CD_online 2014-11-26.xls" was created. Per the metadata, it was created by Francesca Gino.

e.   **2:12 p.m.**:  The spreadsheet with the CLER results was last saved by Francesca Gino.

f.   **2:36 p.m.**:  The instructions for online survey "survey cogndissonance study.pdf" were downloaded.

g.   **8:00 p.m**.:   The spreadsheet named "data_Authenticity__CD_online & CLER 2014-11-26.xls" was created per the file system metadata now present on the Gino Laptop.

h.   **9:54 p.m.**:  The spreadsheet "data_Authenticity__CD_online & CLER 2014-11-26.xls", is last saved by Francesca Gino per the metadata.

---

[62] McGowan Statement, ¶199(10)-(17).

52.     McGowan notes that these files on the Gino Laptop match the Qualtrics version of the data up until at least 2:12 p.m. on November 27, 2014.[63]  Though McGowan references the existence of certain other files crated before that time, including in September 2014 and October 2014, he does not suggest any of these files contains modified data and thus their relevance to the question of who fabricated the data at issue here is uncertain.[64]

53.     It is also worth clarifying a couple of McGowan's misleading statements regarding supposedly missing emails, which he makes to support the speculative idea that others may have been involved in the work on the study at issue.  First, McGowan's analysis in which he says there are no sent items by Gino in Fall 2014 is incorrect[65].  I have reviewed both the Sequestered Materials and the McGowan Image.  I do see emails by Gino that were sent in Fall 2014.

54.     Second, McGowan claims for Allegation 2 that "no emails were provided from Harvard RAs, support staff, and students involved with working with dataset at issue".[66]  This is misleading, and again, McGowan obfuscates the reality.  For Allegation 2, in Gino's written responses to questions from the Investigation Committee, she provides the names of ███████ and her co-authors, ████████████ and ██████████, as the only other people involved.[67] There are emails sent and received with these individuals within the Sequestered Materials and the McGowan Image.

---

[63] *Id.*, ¶ 199(14); *see also* Freese Rebuttal Statement, ¶¶ 122-23 (discussing the relevance of an October 7, 2014 spreadsheet containing unaltered data).
[64] McGowan Statement, ¶ 199(3)-(8).
[65] *Id.*, ¶ 198.
[66] *Id.*
[67] CX 1.5 (Ex. 5 to Final Report, Respondent's Written Responses to Investigation Committee), pp. 3-4.

VI. **MCGOWAN EXCLUDES FROM HIS ANALYSIS RELEVANT METADATA WITH RESPECT TO FILE AND FOLDER ACTIVITY ON NOVEMBER 25, 2013, AND MISSTATES THE VOLUME OF RETAINED EMAIL RELATED TO ALLEGATION 3.**

55. Freese's August 16 Expert Statement asserted that data underlying the 2014 Psychological Science Paper at issue in Allegation 3 were altered twice before publication: first in July 2013 and then again in Fall 2013[68]. McGowan asserts that Professor Freese is wrong in his claim that the November 2013 version of the file "data CCTRBC SB 2012-11-18c.xls" is a later version of the July 2013 file with the same name.[69] McGowan's basis is the file system metadata for the November 2013 version.[70] However, he fails to examine the file system metadata of the November 2013 version in parallel with another folder that was created on that same day in that same "Study 5B folder" location, in a subfolder with the name "old".[71] I analyzed the data and define a plausible scenario based on the forensic metadata of the "old" subfolder in which the November 2013 file is a derivative of the July 2013 file, as follows:

   a. **Prior to November 25, 2013**: Gino's "Study 5B folder" could have contained four files. We know that one of the four files ((i) below) was in fact in the "Study 5B folder" folder in July 2013 because of the SPSS log, and a second of the four files ((ii) below) was in fact in the "Study 5B folder" folder in November 24, 2023 because of the SPSS log.[72] It is reasonable to assume that the other two files ((iii) and (iv) below) were also contained in this folder at that time because all four files relate to Study 5B.[73]

---

[68] Freese August 16 Statement, ¶¶ 21-23.
[69] McGowan Statement, ¶ 325.
[70] *Id.*
[71] "/Users/fgino/Documents/Work In Progress/█████████/Ethics and creativity/Paper #2 -- dishonesty and creativity/Study 5B - Coin toss (multiple), rule breaking, creativity/old"
[72] Users\fgino\Documents\SPSSInc\IBMStatistics21\statistics.jnl.
[73] I make this assumption because all four files currently exist within in the "Study 5B folder."

    i.     data CCTRBC SB 2012-11-18c.xls (the "July 2013 File")

    ii.    data study5B 2013-07-23.sav

    iii.    data CCTRBC SB 2012-11-18.xls

    iv.    data CCTRBC SB 2012-11-18.xlsx

b.  **November 25, 2013 11:02 p.m.**:  A subfolder titled "old" was created within the "Study 5B folder."  After this subfolder was created, three of the files (i. – iii. above) were moved into the "old" subfolder, and currently exist in that subfolder.  Note that moving files does not change either file system created or file system modified date metadata.

c.  **November 25, 2013 between 11:02 PM and 11:17 p.m.**:  The July 2013 File could have also been moved into the "old" subfolder.

d.  **November 25, 2013 between 11:02 p.m. and 11:17 p.m.**:  The July 2013 File could have been opened in Excel from the "old" folder.

e.  **November 25, 2013 at 11:17 p.m.:**  Using Excel "Save As" functionality, the July 2013 File could have been saved back in the "Study 5B folder" as a new file, thus creating what is now the "November 2013 File".  This would set both the created and modified dates to November 25, 2013 at 11:17 p.m., which McGowan failed to consider.

f.  **November 25, 2013 after 11:17 p.m.:**  The prior July 2013 File could have been deleted from the "old" folder.

56.    As he did with respect to Allegation 2, McGowan makes misleading claims regarding emails in connection with Allegation 3 to bolster the argument that there could have been as-yet-undiscovered RA's involvement with the data at issue.  McGowan claims for

Allegation 3 that "no emails were produced from the Harvard RAs, support staff, and students involved with working with dataset at issue".[74]  Again, McGowan obfuscates the reality.  For Allegation 3, in Gino's written responses to questions from the Investigation Committee, she identifies the following individuals involved in the study:  co-author ▮▮▮▮▮▮▮▮, and RAs/support staff ▮▮▮▮▮▮, ▮▮▮▮▮▮, and ▮▮▮▮▮▮.[75]  There are emails sent and received with these individuals within the materials sequestered by HBS in Fall 2021 and the redacted forensic image of the Gino Laptop and emails provided by Gino's counsel on September 13, 2024.  Further, Gino has since identified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and there are emails sent and received with these individuals as well.[76]

## VII.    MCGOWAN EXCLUDES FROM HIS ANALYSIS RELEVANT METADATA WITH RESPECT TO A CRITICAL FILE IN ALLEGATION 4a.

57.    For Allegation 4a, McGowan spends 19 pages[77] proferring his opinion regarding one unsupported defensive idea—he repeats Gino's claim that the first time she received the Tax Study document was February 15, 2011.[78]

58.    The first version of the Tax Study document, "Tax Study 2011-02-12.docx,"[79] was attached to an email from ▮▮▮▮▮ to Francesca Gino on February 15, 2011.[80]  In her September 13, 2024 Witness Statement, Gino claimed this was the first version she received and therefore she could not have been the source of the operative language.[81] This is incorrect.  McGowan himself acknowledges that Gino likely sent an earlier draft of the paper to ▮▮▮▮▮.[82]  Further he

---

[74] McGowan Statement, ¶270(vii).
[75] CX 1.5 (Ex. 5 to Final Report, Respondent's Written Responses to Investigation Committee), p. 3.
[76] Gino Statement, ¶ 395; *see also* Freese Rebuttal Statement, ¶¶ 184-87 (discussing email correspondence with ▮▮▮▮), ¶ 193 n.223 (citing emails between Gino, ▮▮▮▮▮▮, and ▮▮▮▮▮▮).
[77] McGowan Statement, ¶¶ 148-65.
[78] *Id.*, ¶ 357.
[79] RX 412.
[80] McGowan Statement, ¶ 357.
[81] Gino Statement, ¶ 296.
[82] McGowan Statement, ¶ 357.

acknowledges that both Gino and ▆▆▆▆ are identified in the Author metadata field of the document.[83]  However, McGowan glosses over another significant detail in those same metadata. This is surprising, as I noted previously that he spends a full nine pages in his Expert Statement discussing metadata.  The metadata of this file lists the "Company" metadata as "The University of North Carolina at Chapel Hill," consistent with Gino's having first created the file while she was on faculty at UNC (see **Figure 3**).[84]



*Figure 3 – Metadata for "Tax Study 2011-02-12.docx*

59.    These metadata are also consistent with the cover email in which ▆▆▆▆ wrote,

"▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

---

[83] *Id.*

[84] *See* CX 1.5 (Ex. 5 to Final Report, Respondent's Written Responses to Investigation Committee), p. 12 (admitting that file properties indicate file was created at UNC).

31

██████████████ ”[85] Further, publicly available information indicates that ████ was not working at that time at the University of North Carolina at Chapel Hill.[86]

## VIII. MCGOWAN FAILS TO IDENTIFY AND ANALYZE AN ENTIRE KEY DOCUMENTS AND CRITICAL METADATA RELATED TO ALLEGATION 4b.

60.    Gino and McGowan both claim that Gino received raw data from ████████ on July 16, 2010,[87] and then sent modified data to ██████████, ████████, and ██████████ on July 18, 2010.[88] They claim that there is no evidence that Gino made the modifications. However, McGowan's analysis ignores much evidence, as explained below:

   a. McGowan fails to recognize the importance of a July 27, 2010 email from ████████ to Gino, which shows ████████ was still working with the unmodified data;[89]

   b. McGowan misstates the relevance of the November 13, 2011 file by pointing to a file date that does not actually indicate when Gino was first in possession of the file, ignoring that she is listed as the Last Author, and that the filename and the internal Date Created metadata indicate that it is a file from July 13, 2010 10:39 a.m.[90] He also ignores that this file contains data consistent with the statistics represented in Gino's draft write-up of July 18, 2010;

---

[85] RX 411 (Email from ████████ to Francesca Gino, dated February 15, 2011).
[86] https://www.kellogg.northwestern.edu/faculty/directory/████████████████████. (last visited on September 27, 2024).
[87] McGowan Statement, ¶¶ 367, 397; Gino Statement, ¶ 341; *see also* CX 57 (Email from ████████ to Francesca Gino, Re: That's a wrap: Tax Study, dated July 16, 2010, and attachment "Taxstudy.xlsx".
[88] McGowan Statement, ¶ 398.
[89] *See* CX 58 (Email from ████████ to Francesca Gino, dated July 27, 2010, Re: Taxstudy, and attachment "Taxstudy.xlsx").
[90] McGowan Statement, ¶ 396; *see also* RX 404A/B ("Tax Study STUDY 1 2010-07-13.xlsx" and metadata).

32

    c.  McGowan directs the Hearing Committee's attention to only the Sequestration Materials copy of "Taxstudy.xlsx";[91] and

    d.  By focusing solely on the "Taxstudy.xlsx" file in the Sequestration Materials, McGowan ignores the version of the file in the McGowan Image, which not only reflects the incompleteness of McGowan's review, but also reflects that he ignored critical pieces of forensic and documentary evidence.[92]

61.    There were seven files involved in my analysis. I present and number them here (**Figure 4**) and will reference them by number or name as necessary:



Figure 4: This is a graphical representation of the seven files I reviewed, as further detailed below. This demonstrates how Document #7 replaces Document #3 in 2023 with new content and altered metadata.

---

[91] McGowan Statement, ¶¶ 403.
[92] Freese Rebuttal Statement, Section VI.A.

e. **Document #1 (July 13, 2010):** "Taxstudy.xlsx" is attached to a July 13, 2010 ▮▮▮▮▮ email with 50 participants and raw data.[93]

f. **Document #2 (July 16, 2010):** "Taxstudy.xlsx" is attached to a July 16, 2010 ▮▮▮▮▮ email with 98 participants and raw data.[94]

g. **Document #3 (July 17, 2010).** "Taxstudy.xlsx" is a file from the Gino Laptop in the Sequestered Materials, which is an exact copy[95] of Document #2. This file has file system Created Date and Modified Date metadata of 07/17/2010 at 6:43:30 p.m., which represents the date and time when the email attachment was saved.[96]

h. **Document #4 (July 18, 2010):** Attached to Gino email to ▮▮▮▮▮, ▮▮, ▮▮, and ▮▮▮▮ summarizing results from 101 participants and statistics reflecting modified data.[97] The email was sent at 4:30 p.m.[98]

i. **Document #5 (July 27, 2010):** "Taxstudy.xlsx" attached to a July 27, 2010 ▮▮▮▮▮ email with 126 participants (98 original and 28 new), raw data, and terse column headings.[99]

j. **Document #6 (November 13, 2011):** "Tax Study STUDY 1 2010-07-13.xlsx",[100] a file from the Gino Laptop in the Sequestered Materials with 101 participants and modified data. McGowan claims that this file was "created on Gino's computer on

---

[93] CX 60 (Email from ▮▮▮▮ to Francesca Gino, dated July 13, 2010, Re: Tax Study Data, and attachment, "Taxstudy.xlsx"). This file was mistakenly identified as dating from July 13, 2020 in Complainant's First Supplemental Exhibit List, dated August 16, 2024.

[94] CX 57 (Email from ▮▮▮▮ to Francesca Gino, dated July 16, 2010, Re: That's a wrap: Tax Study, and attachment, "Taxstudy.xlsx").

[95] Exact copy by MD5 hash value. MD5 Hash values are akin to digital fingerprints for electronic files.

[96] RX 405A/B ("Taxstudy.xlsx" and metadata).

[97] RX 403 (Tax Study summary of results 2010-07-18.docx).

[98] RX 402 (Email from Francesca Gino to ▮▮▮▮, ▮▮▮ and ▮▮▮▮, July 18, 2020).

[99] CX 58 (Email from ▮▮▮▮ to Francesca Gino, dated July 27, 2010, Re: Taxstudy, and attachment "Taxstudy.xlsx").

[100] RX 404A/B ("Tax Study STUDY 1 2010-07-13.xlsx" and metadata).

Nov. 13, 2011,"[101] but he fails to disclose this file has a Creation Date application metadata of July 13, 2010, which ties it back to the *first* "Taxstudy.xlsx" file created by ███ (Document #1). The Last Author application metadata is "Francesca Gino" (2 spaces). And, most importantly, the Created Date file system metadata of November 13, 2011 is a record of *file migration to a computer*, not a date of first possession by Gino.

    k. **Document #7 (September 23, 2023):** "Taxstudy.xlsx," a file transferred to the Gino Laptop from a USB device **after** the HBS sequestration in Fall 2021, which contains 101 participants, modified data, and formulae, but terse column headings. This file has file system Modified Date metadata of July 17, 2010 at 6:43:00 p.m.[102]

**A.    McGowan Ignores or Obfuscates the Relevant Metadata And/or Document Contents.**

    1.    Documents #2, #3, and #4

62.    McGowan references a two-day window between ███████ July 16, 2010 email attaching Document #2, and Gino's July 18, 2010 email attaching Document #4.[103] However, Gino saved ███████ attachment (Document #3) to her laptop on Saturday July 17, 2010 at 6:43 PM, and thereafter issued her draft on Sunday July 18, 2010 at 4:30:33 PM, reducing this window to fewer than 22 hours, over the course of Saturday night to Sunday afternoon.[104]

---

[101] McGowan Statement, ¶ 396.
[102] CX 72 ("Taxstudy.xlsx (Sep. 2023 Version).
[103] McGowan Expert Statement, ¶ 406.
[104] *See* Freese Rebuttal Statement, ¶ 233.

2.    Document #5

63.    McGowan identifies, but then ignores, a July 27, 2010 email from ▮▮▮▮▮▮▮▮ attaching Document #5.[105]    My interpretation, like that of Freese,[106] is that this email and attachment show that ▮▮▮▮▮▮▮▮ was still working with the unmodified data after July 18, 2010. If ▮▮▮▮▮▮ had modified the data for Gino's July 18, 2010 draft write-up, it is implausible to believe that she would continue using the unmodified data or not have tabs in her spreadsheet reflecting the cleaned data, which she does not.[107]    Notably, none of the ▮▮▮▮▮▮▮ email attachments (Documents #1, #2, #5) contains the same participant count, as seen in Documents #4, #6, and #7; nor, importantly, do they contain formulae, as do Documents #6 and #7; nor do they contain the modified data, as present in Documents #6 and #7, and eventually show up in the final paper.

---

[105] McGowan Statement, ¶ 395(7).
[106] Freese Rebuttal Statement, ¶ 267.
[107] *See id.*

36

3.    Document #6



Figure 5: This is a graphical representation of the metadata for Document #6. There are two types of metadata for a document—the file system metadata (blue box) and the application metadata (green box).

64.    McGowan acknowledges that Document #6 with the modified data is on Gino's Laptop, but claims it was "created on Gino's hard drive" in 2011, presumably based on file system Date Created metadata.[108]  This is misleading.  The Gino Laptop, from which materials were first sequestered in 2021 and then imaged by McGowan in 2024, was not in use in 2011, as she acquired that laptop in February 2017.[109]  The application Created Date metadata (see **Figure 5** above—the green box represents the application metadata) for Document #6 is July 13, 2010 10:39 a.m.  Based on this fact, combined with words "Tax Study" and "2010-07-13" in the file name, it is my opinion to a reasonable degree of professional certainty that this document is a derivative of Document #3.

---

[108] McGowan Statement, ¶ 403.
[109] Gino begins using the user account "fgino" on her most recent (sequestered) HBS laptop on February 14, 2016.

### B. McGowan Ignores a Critical File Added to Gino's Laptop Post-Sequestration.

#### 1. Document #7

65. McGowan does not consider a critical file added post-sequestration to Gino's laptop. He imaged the Gino Laptop in January 2024, but failed to compare the Sequestered Materials version of Document #3 with the version Document #7 from the McGowan Image, apparently assuming Document #7 would be identical to Document #3.[110] Document #3 had 98 participants and unmodified data, but the same file on the McGowan Image (Document #7) has 101 participants and the modified data from the final summary, while retaining the terse column headings from the one emailed by ▇▇▇▇▇▇

*Figure 6 – Excerpt from Document #7 showing first 13(1), 13(2), 49(1), 49(2) and last participants (orange), terse column headings (yellow) and modified data (red) (color emphasis added)*

| P# | Cond | CS1 | CS2 | CS3 | CS4 | CS5 | #B | $B | #Actually Correct | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 1 | History of Philosophy | 5 | 1 | 23 | 8 | 8 | 8 | 8.0 | 1.6 | 6.4 | 4.0 | 0.0 | 4.0 | 10.4 |
| 2 | 0 | 1 | Business | 4 | 1 | 21 | 3 | 3 | 3 | 3.0 | 0.6 | 2.4 | 1.5 | 4.0 | 5.5 | 7.9 |
| 3 | 0 | 1 | Clinical Laboratory Science | 4 | 0 | 21 | 12 | 12 | 8 | 12.0 | 2.4 | 9.6 | 5.0 | 6.0 | 11.0 | 20.6 |
| 4 | 1 | 1 | Business | 3 | 0 | 20 | 6 | 6 | 5 | 6.0 | 1.2 | 4.8 | 2.0 | 0.0 | 2.0 | 6.8 |
| 5 | 2 | 1 | Biology/Psychology | 2 | 0 | 18 | 16 | 16 | 16 | 16.0 | 3.2 | 12.8 | 3.0 | 0.0 | 3.0 | 15.8 |
| 6 | 1 | 1 | Medicine | 5 | 0 | 24 | 15 | 15 | 15 | 15.0 | 3.0 | 12.0 | 1.5 | 2.5 | 4.0 | 16.0 |
| 7 | 2 | 0 | Political Science | 5 | 1 | 22 | 17 | 17 | 15 | 17.0 | 3.4 | 13.6 | 12.0 | 10.0 | 22.0 | 35.6 |
| 8 | 2 | 1 | Communication Studies | 4 | 0 | 22 | 15 | 15 | 14 | 15.0 | 3.0 | 12.0 | 2.0 | 10.0 | 12.0 | 24.0 |
| 9 | 1 | 1 | Public Relations | 3 | 0 | 20 | 5 | 5 | 5 | 5.0 | 1.0 | 4.0 | 4.0 | 3.0 | 7.0 | 11.0 |
| 10 | 0 | 1 | Dramatic Arts & Communication | 3 | 0 | 20 | 7 | 7 | 3 | 7.0 | 1.4 | 5.6 | 4.0 | 7.0 | 11.0 | 16.6 |
| 11 | 1 | 1 | Psychology | 3 | 1 | 19 | 12 | 12 | 12 | 12.0 | 2.4 | 9.6 | 3.0 | 5.0 | 8.0 | 17.6 |
| 12 | 1 | 1 | Psychology | 3 | 0 | 20 | 13 | 13 | 13 | 13.0 | 2.6 | 10.4 | 1.0 | 0.0 | 1.0 | 11.4 |
| 13 | 0 | 1 | Library Science | 5 | 0 | 26 | 15 | 15 | 12 | 15.0 | 3.0 | 12.0 | 10.0 | 12.0 | 22.0 | 34.0 |
| 13 | 2 | 1 | Chemistry | 4 | 0 | 20 | 18 | 18 | 10 | 18.0 | 3.6 | 14.4 | 6.0 | 10.0 | 16.0 | 30.4 |
| 48 | 2 | 1 | Business | 4 | 1 | 21 | 13 | 13 | 9 | 13.0 | 2.6 | 10.4 | 6.0 | 5.0 | 11.0 | 21.4 |
| 49 | 1 | 1 | English | 4 | 1 | 21 | 9 | 9 | 9 | 9.0 | 1.8 | 7.2 | 1.8 | 0.0 | 1.8 | 9.0 |
| 49 | 1 | 1 | English | 4 | 1 | 21 | 7 | 7 | 7 | 7.0 | 1.4 | 5.6 | 1.8 | 0.0 | 1.8 | 7.4 |
| 50 | 0 | 1 | Accounting | 5 | 1 | 28 | 12 | 12 | 12 | 12.0 | 2.4 | 9.6 | 3.0 | 4.0 | 7.0 | 16.6 |
| 96 | 0 | 1 | Art | 4 | 0 | 22 | 8 | 8 | 7 | 8.0 | 1.6 | 6.4 | 8.0 | 8.0 | 16.0 | 22.4 |
| 97 | 2 | 0 | NA | 5 | 0 | 28 | 16 | 16 | 12 | 16.0 | 3.2 | 12.8 | 2.7 | 6.0 | 8.7 | 21.5 |
| 100 | 0 | 1 | Business | 3 | 1 | 20 | 16 | 16 | 8 | 16.0 | 3.2 | 12.8 | 3.0 | 0.0 | 3.0 | 15.8 |
| 101 | 1 | 0 | Business | 3 | 1 | 20 | 6 | 6 | 6 | 6.0 | 1.2 | 4.8 | 1.0 | 0.0 | 1.0 | 5.8 |

---

[110] McGowan Expert Statement, ¶401.

C. **McGowan Ignores A Concerning Pattern of Behavior and Critical Metadata Related to Document #7.**

66.    Numerous forensic pieces of evidence indicate a concerning pattern of behavior on the Gino Laptop thirteen years after ███████ sent Gino the TaxStudy document (Document #3).  I will walk through these forensic details, which underlie the following outline as depicted in **Figure 7** below.



*Figure 7:  Document #7 activity on September 23, 2023*

67.    On September 23, 2023, within a twenty-minute window between 5:16 p.m. and 5:36 p.m., a document titled TaxStudy.xlsx (Document #7) was Last Saved on some other undisclosed device by user profile "Gino, Francesca."[111]  A USB device, previously examined by McGowan,[112] was then connected to the Gino Laptop.  The edited Document #7 was added to the

---

[111] Application Last Saved metadata values are derived from the login profile of the computer user.
[112] *See* McGowan Statement, ¶ 17(ii) ("A black, unlabeled USB drive used by Gino with serial number 21013403D7FFA005").

Gino Laptop, replacing the content of the previous Document #3. A Mac computer program called Terminal was launched and likely used to change the date and time metadata of the file system Date Modified for Document #7.

*Figure 8:   Metadata comparison between Document #3 and Document #7.*



68.     As seen in **Figure 8**, Document #7 was edited by "Gino, Francesca" (application Last Author metadata) on September 23, 2023 at 5:16:27 p.m. (application Last Saved metadata), and then added to Gino's laptop 16 minutes later (file system Date Added metadata). The file system Date Modified metadata shows July 17, 2010 6:43:00 p.m.—just 30 seconds *earlier* than the file system Date Modified metadata of Document #3. It is highly irregular that Document #7 appears to be edited on one laptop, copied to another laptop, then still reflect its original file system Date Modified from 13 years earlier, let alone also show a difference of 30 seconds (*See* **Figure 8**

40

above—yellow highlights) when compared to Document #3. I will revisit this same diagram when I discuss the details of the metadata changes and the use of the Mac computer program Terminal soon after Document #7 was added to the Gino Laptop on September 23, 2023.

D.     **Document #7 Was Placed on Gino's Laptop on September 23, 2023 via a USB Device That McGowan Deemed Irrelevant.**

69.     Further analysis of the McGowan Image reveals that (a) a USB device with serial number 21013403D7FFA005 ("DISK_IMG") was plugged into the laptop at least 18 seconds *before* Document #7 was copied to the hard drive, and (b) a Mac utility, Terminal, was run approximately 4 minutes *after* Document #7 was copied to the McGowan Image. The thumb drive usage was recorded in the Unified Log. Below is an excerpt of that log showing the Serial Number and the name of the USB on September 23, 2023. Based on this information, I can conclude to a reasonable degree of professional certainty that this USB device was the source of Document #7.

| File | TimeUtc | Message |
|---|---|---|
| 000000000001b79.tracev3 | 2023-09-23 21:32:30.807494 | USBMSC Identifier (non-unique): 21013403D7FFA005 0x1e3d 0x2093 0x100, 2 |
| 000000000001b79.tracev3 | 2023-09-23 21:32:35.201752 | Pruning stale results for (    "<CacheDeleteDaemonVolume> at: / System/Volumes/Data [/dev/disk1s1 : apfs] freespace: 23765712896, initialFreespace: 23765712896PRIMARY, diskRef: 0x7fdad0f181f0",    "<CacheDeleteDaemonVolume> at: / Volumes/DISK_IMG [/dev/disk2s1 : msdos] freespace: 787107840, initialFreespace: 787107840PRIMARY, diskRef: 0x7fdad0c1fb90" ) with doNotPrune list: |

*The first record shows the serial number 21013403D7FFA005*

*The second record shows the volume name "DISK_IMG"*

41

70. My investigation related to this USB and the Terminal utility has been impeded in two key ways: (i) McGowan asserts this USB was not relevant,[113] and Gino's counsel has therefore refused to produce it and other devices; and (2) the Terminal utility log file was redacted.

71. If I had access to the redacted logs of Terminal activity, they very well could show exactly how the file metadata were changed. However, even without that log, or even if Terminal was not used, the fact remains that the metadata was altered such that the file system Modified Date metadata of Document #7 now replicates the Modified Date metadata of Document #3.

72. It is not appropriate to redact system level metadata and logs when producing a forensic image if the opposing expert has opined on the forensic significance of the information stored in system level metadata and logs, as we have in this matter. Although the details of the Terminal utility log file were unfortunately redacted, as discussed below, there is sufficient evidence from a redacted Bash session file to show that the Terminal utility was launched only four minutes after Document #7 was added to Gino's laptop on September 23, 2023.

**E.      Document #7 Has Metadata Altered, Likely Using the Terminal Utility.**

73. Terminal is a built-in utility included in Mac OSX, which allows knowledgeable users (who can find the application in Mac system utility folders) to execute command-line prompts to accomplish all sorts of tasks, *including modifying metadata*.

74. Neither Gino nor McGowan explains where Document #7 came from, where it was edited, why it was placed on the Gino Laptop post sequestration via USB during a time when Gino was on leave and in possession of her laptop, or why McGowan now has ignored it.

75. However, the redaction of relevant forensic artifacts at the direction of Gino's

---

[113] McGowan Statement, ¶¶ 17, 23.

counsel indicates that the metadata for Document #7 was likely modified using Terminal.[114]

**F.    The Terminal Utility Log Has Been Redacted With Respect to the Details of the Highly Relevant Session on September 23, 2023.**

76.    The Terminal utility records user actions in log files called Bash sessions.  The user actions recorded in a Bash session are of value to a forensic investigator because they detail, step by step, the commands that a user performs when using the Terminal utility, such as the step-by-step commands that would be used to alter date and time metadata of a file like Document #7 (*see* **Figure 9**).



*Figure 9:  Screenshot of the Bash Session folder on the Gino Laptop (McGowan Image) showing the Bash session started on September 23, 2023 approximately the same time that Terminal was launched.*

77.    There is evidence on Gino's laptop that the Terminal utility was used multiple times between the time Gino began using the Gino Laptop in 2017 and all the way through

---

[114] My understanding is that these redactions were directed by Gino and her counsel on the basis of attorney client privilege.

September 2023 (*see* **Figure 9** above). However, I am unable to examine much of this activity because many Bash sessions have been redacted with the word "REDACTED" (*see* **Figure 9** above—bottom right of image).

78.    Terminal sessions, shown below (**Figure 10**), began on October 28, 2021—the day after the "Notice of Inquiry" was sent to Prof. Gino.[115] This is notable because this is the first time Terminal is recorded since the "fgino" user account was set up on the Gino Laptop on February 14, 2017. As with the September 23, 2023 Bash session, which is redacted, these bash sessions, when opened, are also redacted. The redacted Terminal log sessions immediately after the "Notice of Inquiry" should be inspected.



*Figure 10:  See Row 18 = Session logged on 10/28/21 (after CX 1.1.2 (Notice of Inquiry))*
*See Row 39 = session logged on 9/23/23 ("Taxstudy.xlsx")*

---

[115] *See* CX 1.1.2 (Ex. 2 to Inquiry Report, Notice of Inquiry), p. 3.

79.    Typically, I would examine the Bash session to confirm the commands run in the Terminal utility at a certain time—such as those I believe were executed to change the metadata on Document #7, as we have in this matter.  However, that log, for that day, is "REDACTED." Since I do not have the audit of the exact commands, I can only say that the use of Terminal was the likely method in which Document #7 metadata were altered, given the timing.  But, regardless of how the time-and-date metadata field was altered, it was altered, and the evidence of how this likely was done has been redacted in the materials provided by Gino's counsel.

**G.    McGowan's Flawed Investigation Built on Gino's Incomplete Production Led Him to Miss Critical Evidence Related to Allegation 4b.**

80.    McGowan's investigation was hindered by both his own narrow timeframe and his own omissions.  Although McGowan received five external devices from Gino for review, including the black, unlabeled USB drive that was likely used to transfer Document #7 to the Gino Laptop, he failed to account for this crucial file in his investigation.[116]  Despite possessing this USB drive and the Gino Laptop, McGowan limited his review to the self-imposed timeframe of 2010-2020,[117] overlooking relevant data such as Document #7, which holds metadata revealing that it was edited on an undisclosed device, which I must assume McGowan did not analyze.

**IX.    MCGOWAN'S FLAWED INVESTIGATION BUILT ON GINO'S INCOMPLETE PRODUCTION LED HIM TO MISS CRITICAL EVIDENCE RELATED TO ALLEGATION 4B.**

**A.    Probable Timeline of Forensic Details Supporting Allegation 4b**

81.    Based on the forensic artifacts and the data in the files I have identified and located, below is the probable timeline as it relates to Allegation 4b.  I have re-added the prior **Figure 8** for ease of reference to the below probable timeline.

---

[116] McGowan Statement, ¶ 23.
[117] *Id.* ¶ 57.

*Figure 8: This is a graphical representation of the seven files I reviewed, as further detailed below. This demonstrates how Document #7 replaces Document #3 in 2023 with new content and altered metadata.*



1. *2010 ACTIVITIES*

a. **July 13, 2010**: Data collection for the tax study begins at UNC.[118]

b. **July 13, 2010 5:46 p.m.**: Document #1 is updated by ▮▮▮▮ in a manner that modifies the "Last Saved" and "Last Author" properties.

c. **July 13, 2010 5:50 p.m.**: ▮▮▮▮ emails the initial day's results to Gino at Gino's Harvard email account attaching Document #1.[119] This document contains 50 participants.[120]

d. **July 16, 2010**: Data collection ends.[121]

e. **July 16, 2010 4:57 p.m., Friday**: ▮▮▮▮ sends Gino an email attaching

---

[118] McGowan Statement, ¶ 395(1).
[119] McGowan Statement, ¶ 395(2); *see also* CX 60 (Email from ▮▮▮▮ to Francesca Gino, dated July 13, 2010, Re: Tax Study Data, and attachment, "Taxstudy.xlsx").
[120] *Id.*
[121] McGowan Statement, ¶ 395(3).

46

Document #2. This document contains 98 participants.[122]

f.  **July 17, 2010 6:43:30 p.m., Saturday:** Gino downloads Document #2 from the ███████ email. This file becomes Document #3.

g.  **July 17, 2010—July 18, 2010:** Gino likely opens Document #3 and edits as follows: (i) adds 3 participants; (ii) replaces numbers in Columns M, P, and Q with formulae; and (iii) modifies values. Gino then likely saves the file as Document #6.[123] Gino then calculates preliminary results.

h.  **July 18, 2010 11:41 a.m., Sunday:** Gino starts drafting Document #4. This file reports results consistent with the final dataset (101 participants).

i.  **July 18, 2010 4:21 p.m., Sunday:** Gino finished editing Document #4 (**Figure 11**).[124]

---

[122] McGowan Statement, ¶ 395(4); *see also* CX 57 (Email from ███████ to Francesca Gino, Re: That's a wrap: Tax Study, dated July 16, 2010, and attachment "Taxstudy.xlsx".

[123] RX 404A/B ("Tax Study STUDY 1 2010-07-13.xlsx" and metadata).

[124] RX 403 (Tax Study summary of results 2010-07-18.docx).



*Figure 11: Document Properties of Document #4*

j.  **July 18, 2010 4:30:33 PM, Sunday:** Gino emails Document #4 to ███████████, ███████████, and ███████.[125]

k.  **November 11, 2011:** Gino, now at HBS, copies Document #6 to her first HBS laptop, likely from her UNC computer or a copy of her UNC computer. This updates the File System Created Date metadata on Document #6.

l.  **June 25, 2019:** Gino opens Document #6 in a manner that updates the Last Modified and Last Author information. This date is consistent with the time period

---

[125] RX 402 (Email from Francesca Gino to ███████████, ███████, and ███████, July 18, 2020).

in which efforts were made to replicate the Allegation 4b study and publish the results.[126]

m. **November 4, 2021:** Gino's laptop is sequestered. Files are copied, including Document #3.[127] This copy has 98 participants and no modified data. It forensically matches Document #2.[128]

2.     *2023 ACTIVITIES*

n. **August 28, 2023 10:06 p.m.:** Document #6 is last opened in Microsoft Excel on Gino's laptop.[129]

o. **September 23, 2023 5:16:27 p.m.: This activity was not performed on the Gino Laptop, yet we know of this activity because of the application metadata.** Document #7 is Last Saved, causing the application "Last Saved" date to be updated and the Last Author to be updated to "Gino, Francesca". This has 101 participants, terse columns, and also formulae. The source of this file and the location of this editing has not been disclosed by Gino.

p. **September. 23, 2023 5:32:30 PM:** According to the Unified Log, a thumb drive with serial number 21013403D7FFA005 (DISK_IMG) is active on the Gino laptop.

q. **September. 23, 2023 5:32:35 PM:** According to the Unified Log, a thumb drive (DISK_IMG) is active on the Gino laptop.

r. **September 23, 2023 5:32:42 PM:** According to the Unified Log, the same thumb

---

[126] *See* Gino Statement, ¶ 306 (discussing 2018 replication efforts and 2020 publication of results); Freese August 16 Statement, Ex. 4b, ¶¶ 15 & n. 7, 47 & n. 19.
[127] CX 1.2 (Sequestration Inventory).
[128] These two files match by MD5 Hash value.
[129] /Users/fgino/Documents/Work In Progress/▇▇▇▇▇▇/Tax study/Tax Study STUDY 1 2010-07-13.xlsx last opened August 28, 2023 10:06 PM (UTC-4); *see also* MicrosoftRegistrationDB_17681617811847.reg.

drive (DISK_IMG) is again active on the Gino laptop.

s. **September 23, 2023 5:32:48 PM:** The Taxstudy.xlsx (Document #7) is added to Gino's laptop. I know this because the file system Date Added metadata reflects this date and time. I also know this because Spotlight[130] indexed Document #7 at this date and time.

t. **September 23, 2023 5:36:57 p.m.:** The command line utility "Terminal" is run on Gino's HBS laptop. This is a utility that allows a person to change the file system Modified Date, as was done here on Document #7.

   i. The file system Modified Date of Document #7 is back-dated from September 23 2023 at 17:32:48 to July 17, 2010 at 18:43:00. The command that was run in Terminal defaulted the Modified Date seconds value to 00 because, presumably, the user did not specify an optional seconds value (as highlighted in yellow in **Figure 8** above was originally 30 seconds).

u. **January 31, 2024:** McGowan images Gino's HBS Laptop, capturing Document #7 and the other artifacts listed above.[131]

## X.    BACKGROUND AND PROFESSIONAL QUALIFICATIONS

82.    I am a Managing Director at iDiscovery Solutions, Inc., (iDS) an expert services and consulting firm that provides independent computer forensics, electronic discovery expert testimony and analysis, original authoritative studies, and strategic consulting services to the business and legal community.

---

[130] Spotlight is the Mac OSX database that allows for the searching of files on a laptop. It includes metadata about the files indexed, including, but not limited to, when a file is added to the laptop.
[131] McGowan Statement, ¶ 22.

83.    I have over 20 years of experience in consulting and litigation technologies that focus on computer forensics and electronic discovery.  My curriculum vitae is attached hereto as Exhibit A which describes that experience including all articles and testimony I have completed over the last ten years.

84.    Specifically, I have extensive experience creating and implementing preservation and collection strategies and performing computer forensics and metadata analysis on electronic data.

85.    I have performed preservation, collection, and analysis of electronic data in hundreds of matters.  The opinions I express in this report are offered within a reasonable degree of professional certainty and are based on my education, training, years of experience and the information provided to date.

86.    My rate is $600 per hour, depending on the provided services.  My fees are not contingent on the outcome of this case.

87.    When I state 'I,' 'Myself,' or 'iDS' I mean this work was done by me, or by people working at my direction and supervision within iDS.

88.    I was asked by counsel for Complainant to review the Expert Statement of McGowan, and the associated evidence analyzed by McGowan and provide my opinions as it relates to the Claimant allegations and Respondent defenses in this matter.

## XI.    MATERIALS REVIEWED

89.    I reviewed the following computers, storage devices, and datasets as part of my analysis.

   a. The "es01_gino-francesca_redacted" forensic image of the Gino Laptop, created by McGowan and produced on September 13, 2024 (*i.e.*, the McGowan Imag).

   b. The preservation of data identified by Gino and sequestered by HBS in the Fall

2021 (*i.e.*, the Sequestered Materials).

90. I also reviewed the following as part of my analysis

   a.  The Final Report issued by the Investigation Committee, along with its exhibits.

   b.  The Third Statute Complaint.

   c.  The Expert Statement of Jeremy Freese dated August 16, 2024, along with its exhibits.

   d.  The Response of Professor Francesca Gino to the Third Statute Complaint dated August 1, 2024, along with its exhibits.

   e.  Written Statement of Respondent Professor Francesca Gino dated September 13, 2024.

   f.  The Witness Statement of Alain Bonacosssa dated August 16, 2024.

   g.  Certain exhibits identified on Complainant's exhibit list, dated June 14, 2024 and August 16, 2024, and on Respondent's exhibit list, dated August 1, 2024 and September 13, 2024.

I reserve the right to supplement my findings if additional evidence or information is provided to me.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of September, 2024.

Signed by:

*Julian Ackert*

92B055396DC7437...

**Julian Ackert**

53

**Exhibit A**

Julian Ackert Curriculum Vitae



# JULIAN ACKERT
## Managing Director



**iDiscovery Solutions, Inc.**

202.249.7865

jackert@idsinc.com

Profile on LinkedIn

@iDiscoveryInc

Mr. Julian Ackert, a Managing Director at iDiscovery Solutions (iDS) in Washington DC, has over 20 years of consulting and project management experience in the technology and litigation industries.

He has extensive experience with forensic data collection, computer forensic analysis, creating and implementing preservation and collection strategies, managing electronic data processing and review endeavors, analyzing complex transactional data systems, and working with large multi-national corporations to establish and develop methodologies and best practices for litigation preparedness. Mr. Ackert has written expert reports and provided testimony on the forensic preservation, acquisition, and analysis of electronic information. Additionally, he has worked on several international projects involving complex data privacy, collection, and review challenges.

Mr. Ackert is a member of The Sedona Conference, Working Group 11 (Data Security and Privacy Library) and Working Group 12 (Trade Secrets). Prior to joining iDS, he was a Principal and New York regional lead at LECG and a Manager at FTI Consulting. Mr. Ackert began his career designing, developing, and implementing Knowledge Management / Content Management applications, government middleware solutions, and E-business applications for Federal Government services at Accenture.



©2021 iDiscovery Solutions | All Rights Reserved

**SELECT CONSULTING EXPERIENCE**

- Directed a team of consultants on the identification, preservation, collection and production of structured data for an antitrust MDL.  Implemented custom preservation and collection protocols and extracted approximately 10 terabytes of structured data from proprietary client database systems for analysis and review.  Developed a structured data ESI protocol that governed the parameters of structured data productions.
- Managed a team of consultants on the analysis of 100s of millions of database records for a complex ligation in the commercial real estate industry.  Analyzed trends and patterns in the database records that assisted counsel with identifying potentially relevant employees, partner relationships, and timeframes of interest.
- Managed a team of UK and US consultants on a data preservation and email data analysis endeavor.  Established an onsite review room in the UK and worked with UK outside counsel to ensure that electronic discovery processes upheld EU data privacy laws.
- Directed a team of computer forensic consultants and contractors on forensic data preservation, backup tape recovery, email, and electronic file culling and search for approximately 100 custodians.  Established an onsite triage center at an offshore facility to handle nearly 5 terabytes of data.  Authored expert report on the methods, processes, types, and volumes of data preserved, processed, and delivered for attorney review.
- Led a data analysis engagement consisting of metadata examination on Lotus Notes database documents.  Acted as the client's Subject Matter Expert on Lotus Notes databases and authored expert testimony on the electronic discovery methods implemented during the project and subsequent project findings.
- Managed investigative team of computer forensic and complex data analysis consultants through the preservation, acquisition, and analysis of over 5 billion rows of NYSE trade data.  Analysis period covered over 5 years of transactional data focusing on the alleged fraudulent trading activity.
- Managed a data acquisition, e-file processing, and document review project in response to an SEC inquiry of over 45 custodians.  Engagement required leading a multi-city team of computer forensic professionals through the forensic acquisition, electronic data processing, and document review phase of a project with a condensed project timeline of three weeks.
- Led multi-national electronic discovery preservation and analysis team on an internal audit committee investigation of a global metallurgy company.  Engagement required managing computer forensic technicians through data preservation, forensic analysis, and automated culling of both Finnish and English enterprise email, financial data, and business documents related to the investigation.

## EDUCATION

- University of Virginia, Charlottesville, VA
- School of Engineering and Applied Sciences
- B.S. Computer Science, January 1998



©2021 iDiscovery Solutions | All Rights Reserved

## SELECT PUBLICATIONS

- "GDPR and Data Maps: "X" Marks the Spot to Delete", Today's General Counsel, July 2018
- "5 Tips to Help Mitigate Insider Theft", Metropolitan Corporate Counsel, March 2017
- "A Practical Approach to Data Preservation and Collection", Metropolitan Corporate Counsel, May 2015
- "Big Data: The Elephant in The E-Discovery Room", Metropolitan Corporate Counsel, June 2013

## TESTIFYING EXPERIENCE

1. Declaration on forensic data analysis activities, In re: Isaac Halwani and Giselle Halwani and 274 Atlantic Isles, LLC, May 2024
2. Declaration on forensic data analysis activities, Linda Johnstone v. CrossCountryMortgage, LLC, April 2024
3. Declaration on forensic data analysis activities, In re: Isaac Halwani and Giselle Halwani and 274 Atlantic Isles, LLC, April 2024
4. Declaration on forensic data analysis activities, Finch Computing Corp. v. Joseph Cirka, March 2024
5. Declaration on computer forensic data analysis activities, Tyrone Brewer v. Pepperidge Farm, Inc., March 2024
6. Declaration on forensic data analysis activities, Maximus, Inc. v. Alyssha Holdren, March 2024
7. Declaration on ESI review and production effort, State of Maryland v. Monsanto Company, et. al., March 2024
8. Declaration on forensic data analysis activities, Linda Johnstone v. CrossCountryMortgage, LLC, March 2024
9. Declaration on ESI review and production effort, Michael Krantz, et. al. v. Regeneron Pharmaceuticals, Inc. and Sanofi Aventis US, LLC, February 2024
10. Declaration on computer forensic analysis activities, Nicholas Hall v. Steve Eakin, Robert Taylor, Scott Brown, T3 Holdings Group, LLC and Michelle Taylor, February 2024
11. Declaration on computer forensic data analysis activities, Tyrone Brewer v. Pepperidge Farm, Inc., February 2024
12. Declaration on computer forensic data analysis activities, Tyrone Brewer v. Pepperidge Farm, Inc. January 2024
13. Deposition on computer forensic analysis activities, Pacmar Technologies, LLC v. Goodsill Anderson Quinn & Stifel LLP et. al, January 2024
14. Declaration on computer forensic analysis activities, The Crème Shop, Inc. v. Sunna ("Olive") Kim, et. al., November 2023
15. Affidavit on computer forensic analysis activities, Spartan Medical Inc. v. Erik Gottschalk, November 2023
16. Declaration on computer forensic analysis activities, RF Depot Inc. v. Richard H. Pouliot and Applied Specialties, inc., August 2023
17. Declaration on computer forensic analysis activities, James Michael Richey v. Nevro Corp., July 2023
18. Declaration on computer forensic and metadata analysis, Alcon Inc. et. al. v. Hoya Corporation, et. al., June 2023
19. Declaration on forensic data analysis activities, Maria Fernanda Soto Leigue v. Everglades College, Inc. d/b/a Keiser University, May 2023
20. Declaration on computer forensic analysis activities, IOENGINE, LLC v. Roku, Inc., May 2023
21. Expert Report on computer forensic and metadata analysis, USA v. David Gerald Minkkinen, Sivaraman Sambasivam, May, 2023
22. Declaration on computer forensic analysis activities, Galderma Laboratories, L.P., v. Chad Tisckos, April 2023
23. Declaration on forensic data analysis activities, Maria Fernanda Soto Leigue v. Everglades College, Inc. d/b/a Keiser University, February 2023
24. Declaration on computer forensic analysis activities, Dollar Shave Club, Inc., and Michael O'Malley v. Edgewell Personal Care Company, et. al., November 2022
25. Declaration on computer forensic analysis activities, CACI, Inc. – Federal v. Clayton Shcilling, et. al., September 2022
26. Trial Testimony on computer forensic analysis activities, Medidata Solutions, Inc. and MDSOL Europe Limited v. Veeva Systems, Inc., July 2022



©2021 iDiscovery Solutions | All Rights Reserved

27. Declaration on ESI review and production effort, Joseph Bayer, Mary K. Bayer, and Gwendolyn Culverson v. Boehringer Ingelheim Pharmaceuticals, Inc. et. al., July 2022
28. Declaration on ESI search and production protocols, Trust-ED Solutions, LLC v. Gilbert, LLP, June 2022
29. Trial Testimony on computer forensic analysis activities, John C. Depp, II, v. Amber Laura Heard, May 2022
30. Deposition on computer forensic analysis activities, Icertis, Inc. v. Boccella, et al. May 2022
31. Expert report on computer forensic analysis activities, Icertis, Inc. v. Boccella, et al. May 2022
32. Declaration on computer forensic analysis activities, Julius Kennedy and Angela Kennedy v. Heding Truck Service Inc. et. al., April 2022
33. Deposition on computer forensic analysis activities, John C. Depp, II, v. Amber Laura Heard, April 2022
34. Expert report on computer forensic analysis activities, John C. Depp, II, v. Amber Laura Heard, April 2022
35. Supplemental expert report on forensic data analysis activities, Megan Enger and Sarah Infante. v. Thomas L. Cardella & Associates, April 2022
36. Declaration on computer forensic analysis activities, Dollar Shave Club, Inc. et. al. v. Edgewell Personal Care Company et. al., April 2022
37. Deposition on forensic data analysis activities, Megan Enger and Sarah Infante. v. Thomas L. Cardella & Associates, April 2022
38. Deposition on computer forensic analysis activities, Chi Nguyen v. City of Philadelphia, March 2022
39. Declaration on computer forensic analysis activities, BDO USA LLP v. Everglade Global Inc., February 2022
40. Deposition on computer forensic analysis activities, BDO USA LLP v. Everglade Global Inc., January 2022
41. Declaration on computer forensic analysis activities, Gilead Tenofovir Cases, JCCP No. 5043, December 2021
42. Declaration on computer forensic analysis activities, Michael David Testa, Individually and as Trustee of The M. David Testa Revocable Living Trust, Dated October 25, 2017 v. Town of Jupiter Island, December 2021
43. Expert report on forensic data analysis activities, Megan Enger and Sarah Infante. v. Thomas L. Cardella & Associates, November 2021
44. Declaration on collection and production of social media, In Re: Zantac (Ranitidine) Products Liability Litigation, November 2021
45. Declaration on computer forensic analysis activities, Chi Nguyen v. City of Philadelphia, October 2021
46. Declaration on computer forensic analysis activities, John C. Depp, II, v. Amber Laura Heard, October 2021
47. Declaration on computer forensic analysis activities, Marley R. Dominguez v. Iconiq Capital Management, LLC, October 2021
48. Declarartion on computer forensic analysis activities, Sunlight Financial LLC, and Sunlight Financial Holdings, Inc. v. Duncan Hinkle, and Sunstone Credit, Inc., August 2021
49. Declaration on ESI search and production, Gilead Tenofovir Cases, JCCP No. 5043, July 2021
50. Deposition on forensic data analysis activities, Lainhart et. al. and Doyle et. al. v. Louisville/Jefferson County Metro Government, July 2021
51. Expert report on forensic data analysis activities, Lainhart et. al. and Doyle et. al. v. Louisville/Jefferson County Metro Government, June 2021
52. Deposition on computer forensic analysis activities, Havana Docs Corporation v. Carnival Corporation d/b/a Carnival Cruise Line, June 2021
53. Declaration on computer forensic analysis activities, eHealthInsurance Services, Inc. v. Healthpiolt Technologies LLC., May 2021
54. Declaration on computer forensic analysis activities and spoliation issues, Medidata Solutions, Inc. and MDSOL Europe Limited v. Veeva Systems, Inc., April 2021
55. Declaration on computer forensic analysis activities, Havana Docs Corporation v. Carnival Corporation d/b/a Carnival Cruise Line, March 2021
56. Court Testimony on computer forensic analysis activities, State of Maryland v. Darrian McAfee
57. Expert report on forensic data analysis activities, Kaelin et. al. v. Louisville/Jefferson County Metro Government, January 2021



info@idsinc.com | iDSINC.com | US: +1.800.813.4832 | UK/EEA: +44 (0)20 8242 4130

©2021 iDiscovery Solutions | All Rights Reserved

58. Declaration on computer forensic analysis activities, Sequoia Benefits & Insurance Services DBA Sequoia Consulting Group v. Sageview Advisory Group et. al., January 2021

59. Declaration on computer forensic analysis activities, Doneyda Perez v. DirectTV Group Holdings LLC, et al., December 2020

60. Declaration on ESI search and production protocols, Trust-ED Solutions, LLC v. Gilbert, LLP, November 2020

61. Declaration on computer forensic analysis activities, Smithfield Packaged Meats Sales Corp. v. Dietz & Watson, Inc. and Chris Conrad, November 2020

62. Declaration on ESI review and production effort, Gilead Tenofovir Cases, JCCP No. 5043, August 2020

63. Declaration on collection and production of social media, Adrian Holley, et al. v. Gilead Sciences, Inc., August 2020

64. Declaration on collection and production of social media, Gilead Tenofovir Cases, JCCP No. 5043, July 2020

65. Declaration on computer forensic analysis activities, Doneyda Perez v. DirectTV Group Holdings LLC, et al., July 2020

66. Expert report on forensic data analysis activities, Smithfield Packaged Meats Sales Corp. v. Dietz & Watson, Inc. and Chris Conrad, June 2020

67. Declaration on ESI review and production effort, Adrian Holley, et al. v. Gilead Sciences, Inc., May 2020

68. Declaration on ESI production protocols, Adrian Holley, et al. v. Gilead Sciences, Inc., April 2020

69. Declaration on computer forensic analysis activities, Krista Brill v. Draeger, Inc. and Miguel Angel Armendariz, April 2020

70. Deposition on computer forensic analysis activities, Medidata Solutions, Inc. and MDSOL Europe Limited v. Veeva Systems, Inc., April 2020

71. Trial Testimony on computer forensic analysis activities, Smithfield Packaged Meats Sales Corp. v. Dietz & Watson, Inc. and Chris Conrad, March 2020

72. Declaration on computer forensic analysis activities, Jesus Jiminez v. CRC Property Management West, Inc., March 2020

73. Declaration on computer forensic analysis activities, Denver Cooley v. Solar Turbines Incorporated, February 2020

74. Supplemental expert report on forensic data analysis activities, Medidata Solutions, Inc. and MDSOL Europe Limited v. Veeva Systems, Inc., February 2020

75. Declaration on ESI data types, Anthony Robles, Individually and on Behalf of Other Persons Simi-larly Situated v. The Coca-Cola Company, Coca-Cola Refreshments USA, Inc., and Does 1-10, February 2020

76. Declaration on computer forensic analysis activities, Smithfield Packaged Meats Sales Corp. v. Dietz & Watson, Inc. and Chris Conrad, January 2020

77. Expert report on forensic data analysis activities, Medidata Solutions, Inc. and MDSOL Eu-rope Limited v. Veeva Systems, Inc., January 2020

78. Declaration on ESI collection and production effort, Kristopher Lawson, Vincent McCleery, and Sean McMurran, Individually and on Behalf of Other Persons Similarly Situated v. Love's Travel Stops & Country Stores, Inc., December 2019

79. Declaration on ESI review and production effort, Sandra Wolford et. al. v. Bayer Corp. et. al., De-cember 2019

80. Declaration on ESI systems and data recovery options, In the Matter of Certain Lithium Batteries, Battery Cells, Battery Modules, Battery Packs, Components Thereof, and Processes Thereof, Oc-tober 2019

81. Trial Testimony on computer forensic analysis activities, Futrend Technology Inc. v. Microhealth LLC, et. al., October 2019

82. Supplemental expert report on forensic data analysis activities, Futrend Technology Inc. v. Microhealth LLC, et. al., October 2019

83. Declaration on collection, search, and disposition process, Strategic Delivery Solutions, LLC v. Stallion Express, LLC, September 2019

84. Expert report on forensic data analysis activities, Futrend Technology Inc. v. Microhealth LLC, et. al., July 2019



©2021 iDiscovery Solutions | All Rights Reserved

85. Declaration on social media e-Discovery, Helen McLaughlin v. Bayer Essure Inc, et. al., May 2019

86. Declaration on ESI collection and search scoping, Sandra Wolford et. al. v. Bayer Corp. et. al., May 2019

87. Declaration on computer forensic analysis activities, Employee Benefit Services of Maryland, Inc. v. Nicholas Mafale, May 2019

88. Declaration on collection activities, IQVIA Inc. et. al. v. Veeva Systems, Inc., May 2019

89. Declaration on ESI collection and search scoping, Sandra Wolford et. al. v. Bayer Corp. et. al., April 2019

90. Declaration on production activities, Synchronisys, Inc. v. DataSync, Inc. et. al., February 2019

91. Declaration on collection and production activities, Catalus Capital USVI, LLC et. al. v. The Service-master Company, LLC, et. al., January 2019

92. Declaration on collection and search protocols, Strategic Delivery Solutions, LLC v. Stallion Ex-press, LLC, December 2018

93. Expert Report on computer forensic analysis activities, Quandra Speights v. The Boeing Company, December 2018

94. Affidavit on computer forensic analysis activities, Futrend Technology Inc. v. Microhealth LLC et. al., October 2018

95. Affidavit on preservation, collection and search protocols, Sarah Lankford Sprecher v. Leroy E. My-ers, Jr., September 2018

96. Declaration on computer forensic analysis activities, Yifat Oren et. al, v. Stefanie Cove, et. al., Au-gust 2018

97. Trial Testimony on metadata and computer forensic analysis activities, Broadcast Sports Interna-tional, LLC v. Gil Pascal, et. al., June 2018

98. Declaration on computer forensic analysis activities, Airgas, Inc. v. The Carlyle Group, Carlyle In-vestment Management, LLC, and Leslie Graff, June 2018

99. Supplemental Declaration on e-Discovery deduplication and production protocols, Helen McLaughlin v. Bayer Essure Inc, et. al., May 2018

100. Declaration on computer forensic analysis activities, Charlotte Pinckney and Kyle Pinckney v. The Pep Boys Manny Moe & Jack O/D/B/A Pep Boys, May 2018

101. Declaration on e-Discovery deduplication and production protocols, Helen McLaughlin v. Bayer Essure Inc, et. al., March 2018

102. Declaration on e-Discovery deduplication and production protocols, Hannah Dorman et. al. v. Bayer, Corp, et. al., February 2018

103. Court Testimony on computer forensic analysis activities, MRP UO Partners, LLC, et. al, v. Ray-mond Rahbar, Jr. et. al., October 2017 – November 2017

104. Deposition on computer forensic analysis activities, MRP UO Partners, LLC, et. al, v. Raymond Rahbar, Jr. et. al., September 2017

105. Declaration on computer forensic analysis activities, MRP UO Partners, LLC, et. al, v. Raymond Rahbar, Jr. et. al., August 2017

106. Deposition on computer forensic analysis activities, Broadcast Sports International, LLC v. Gil Pas-cal, et. al., July 2017

107. Declaration on computer forensic analysis activities, Meridian Imaging Solutions, Inc. et. al. v. Om-ni Business Solutions LLC, et. al., July 2017

108. Declaration on computer forensic analysis activities, Yadkin Bank v. George Mason Mortgage, Inc. et. al, June 2017

109. Declaration on computer forensic analysis activities, Nichole Baibos v. ConnectYourCare LLC, May 2017

110. Expert report on forensic data analysis activities, Broadcast Sports International, LLC v. Gil Pascal, et. al., April 2017

111. Declaration on preservation and collection protocols, MD Helicopters, Inc. v. Aerometals, Inc., April 2017



©2021 iDiscovery Solutions | All Rights Reserved

112.    Affidavit on computer forensic analysis activities, Yadkin Bank v. George Mason Mortgage, Inc. et. al, March, 2017

113.    Court Testimony on metadata and computer forensic analysis activities, George Mason Mortgage, Inc. v. Caliber Home Loans, Inc., February 2017

114.    Deposition on computer forensic analysis and deletion activities, Medidata Solutions, Inc. v. Michael Petrarca and Bioclinica, Inc., November 2016

115.    Expert Rebuttal Report on data breach analysis, Employment Background Investigations, Inc. v. Federal Insurance Company, October 2016

116.    Expert Report on data breach analysis, Employment Background Investigations, Inc. v. Federal Insurance Company, July 2016

117.    Affidavit on computer forensic analysis activities, Compass Systems, Inc. v. Frank D. Deaton, July 2016

118.    Affidavit on computer forensic analysis activities, Broadcast Sports International, LLC v. Gil Pascal, et. al., June 2016

119.    Affidavit on forensic analysis and data recovery, Felicia M. Barlow Clar et. al, v. Kyle C. Muehlhauser, et. al, May 2016

120.    Affidavit on preservation and collection protocols, IN RE: Blue Cross Blue Shield Antitrust Litiga-tion, December 2015

121.    Affidavit and Court Testimony on computer forensic analysis activities, Stradtman v. Republic Ser-vices, Inc., May 2015

122.    Expert report and Deposition on metadata and forensic data analysis activities, Headfirst Baseball LLC, et. al., v. Robert Elwood, et al., May 2015

123.    Expert report and Deposition on metadata and forensic data analysis activities, Integrated Direct Marketing, LLC v. Drew May and Merkle, Inc., April 2015

124.    Expert report on metadata and forensic data analysis activities, George Mason Mortgage, Inc. v. Caliber Home Loans, Inc. et al., April 2015

125.    Court Testimony on metadata and computer forensic analysis activities, JK Moving & Storage, Inc. v. Daniel Pesta, et al, August 2014

126.    Declaration on forensic examination of document metadata, US District Court (New Jersey) Grand Jury investigation of a drug wholesale company, February 2014

127.    Declaration on collection and analysis of document metadata, Everett v. Everett, February 2014

128.    Affidavit and Expert Report on forensic data analysis activities, Symphony Health Solutions v. David Gascoigne, January 2014

129.    Court Testimony on computer forensic analysis activities, Taylor v. Republic Services Inc, et al, January 2013

## SELECT SPEAKING ENGAGEMENTS AND CONFERENCES

1.  Sedona Conference Working Group 11 – "Biometric Privacy Primer", October 2021
2.  Sedona Conference Working Group 11 – "Artificial Intelligence (AI) model transparency:  Core principles in promoting transparency of AI and algorithms", October 2019
3.  Sedona Conference Working Group 11 – "Data Security and Privacy Legal issues in Artificial Intel-ligence", March 2018
4.  Webinar, Metropolitan Corporate Counsel – "Data Breach Response: Orchestrating Legal & Tech-nical Resources to Contain & Mitigate", March 2017
5.  Sedona Conference Working Group 11 – "Privacy by Design", St. Petersburg, January 2017
6.  CLE, ZwillGen, Cloud Computing and Mobile Devices, November 2016
7.  Sedona Conference Working Group 11 – "Privacy by Design", Seattle, August 2016
8.  The Exchange (Today's General Counsel Institute) – "Strategic Use of Objections and Responses Under New Rule 34", Chicago, June 2016



**info@idsinc.com | iDSINC.com | US: +1.800.813.4832 | UK/EEA: +44 (0)20 8242 4130**

©2021 iDiscovery Solutions | All Rights Reserved

9.  CLE Panel, "Engaging and Managing the Presentation and Preparation of Expert Witnesses in Bankruptcy and Federal Court", May 2016
10. CLE Webinar, The Knowledge Group – "Mobile Data and BYOD: Mitigating eDiscovery and Data Breach Risks", April 2016
11. CLE Webinar, The Knowledge Group – "Mobile Privacy and Security Issues in 2015: Practical Guid-ance to Mitigate Data Breaches", August 2015
12. The Exchange (Today's General Counsel Institute) - "The Importance of Project and Process Man-agement", Chicago, June 2015
13. Masters Conference - "Cloud Computing and Mobile Devices – How to Be Prepared for Litigation", Philadelphia, July 2014
14. The Exchange (Today's General Counsel Institute) - "The 'eWorkplace' and its Impact on eDiscov-ery", New York, July 2014
15. Masters Conference - "Discussion and Debate Over Potential Changes to the Federal Rules of Civ-il Procedure", Chicago, May 2014
16. Masters Conference, "Predictive Analytics and Its Effect on Big Data", Chicago, May 2014
17. Chicago Association of Litigation Support Managers (CALSM-posium), "Forensic Collection Trends Now and into the Near Future", October 2013
18. CLE, Tydings & Rosenberg LLP, "E-Discovery Primer", October 2013
19. Masters Conference, "Cloud Computing and Mobile Device Usage: Challenges They Bring to Your Litigation", July 2013
20. CLE, Williams & Connolly LLP, "Mobile Forensics for Lawyers", January 2013
21. Chicago Association of Litigation Support Managers (CALSM-posium), "How to Prepare for E-Discovery Supplementation Obligations", October 2012
22. Paraben Forensic Innovations Conference, "Analyzing Structured Data", November 2010

## PROFESSIONAL AFFILIATIONS

- The Sedona Conference, Working Group 11 (Data Security and Privacy)
- The Sedona Conference, Working Group 12 (Trade Secrets)



©2021 iDiscovery Solutions | All Rights Reserved

# EXHIBIT B

**IN THE MATTER OF FRANCESCA GINO PURSUANT TO THE THIRD STATUTE OF THE HARVARD UNIVERSITY STATUTES**

Robin Greenwood, Senior Associate Dean for Faculty Development and Research,

      Complainant,

v.

Francesca Gino, Professor of Business Administration,

      Respondent.

**<u>SUPPLEMENTAL REBUTTAL EXPERT STATEMENT OF JULIAN ACKERT</u>**

**INTRODUCTION**

1.      On October 21, 2024, the Hearing Committee directed Prof. Gino to provide "(1) The Terminal utility logs from the Respondent's laptop on September 23, 2023; and (2) All versions, from any point in time, of the 2023 Tax Study file that the Respondent has stored *on any device, including, but not limited to* (1) the USB stick with serial number 21013403D7FFA005 (DISK_IMG) and (2) the unknown device where the 2023 Tax Study file was last saved and transferred onto the USB stick."[1] The Committee further required, "If no versions of the file beyond what have already been produced remain on *any device*, the Respondent should produce an affidavit from Mr. McGowan stating that he has searched *all devices provided to him, providing a list of those devices* and confirming that he has found no additional versions of the spreadsheet."[2]

2.      On October 23, 2024, Prof. Gino provided (i) three *previously undisclosed* copies of the 2023 Tax Study file (the "Undisclosed Tax Study Copies") and (ii) a Terminal utility log for September 23, 2023. However, the provision of these materials did not comply with the Committee's directive in one key respect: Prof. Gino did not provide all versions of the Tax Study file from *all devices,* including, but not limited to, the unknown device.  Prof. Gino's provided materials do not allow for a fulsome truth-telling exercise to understand how she, or someone at her direction or on her behalf, manually backdated the 2023 Tax Study file. Based on the forensic evidence, the "unknown device," configured with the distinctive fingerprint of "Gino, Francesca" as the username, was in use every year from June 2011 until right before the sequestration, October 2021, and then again in September of 2023. Today, that device is still neither identified nor provided.

---

[1] October 21, 2024 Hearing Committee Memorandum (emphasis added).
[2] *Id.* (emphasis added).

3.      In Prof. Gino's October 23, 2024 cover letter, she explains that her expert, Mr. Michael McGowan ("Mr. McGowan"), could not identify the "unknown device where the 2023 Tax Study file was last saved and transferred onto the USB stick" from the limited universe of devices already provided to him and listed in his Expert Statement.[3] This statement in Prof. Gino's cover letter confirms that the 2023 Tax Study file was, indeed, on an unknown device and transferred *via* a USB stick.

4.      In my experience, it is implausible that the unknown device is unknown to Prof. Gino herself, given that she, or someone at her immediate direction or behalf, used the device and had interactions with the 2023 Tax Study file and the Undisclosed Tax Study Copies at least as late as September 2023, during the pendency of this proceeding.

5.      My review of the materials provided by Prof. Gino on October 23, 2024 revealed three findings, which I detail herein: (I.) The metadata of the three previously Undisclosed Tax Study Copies confirm there is an unknown device that Prof. Gino has concealed; (II.) Metadata on one of the Undisclosed Tax Study Copies reveal additional evidence of metadata backdating, but Prof. Gino's provision of just one Terminal log file and total silence on how she backdated the 2023 Tax Study file hinders the truth-finding process; and (III.) Mr. McGowan was wrong when he claimed in his report that there was no relevant information on the devices he reviewed, other than Gino's Laptop.

**I.      THE METADATA OF THE THREE PREVIOUSLY UNDISCLOSED TAX STUDY COPIES CONFIRM THERE IS AN UNKNOWN DEVICE THAT PROF. GINO HAS CONCEALED.**

6.      I analyzed the content and metadata of the Undisclosed Tax Study Copies in combination with the content and metadata of two previous Tax Study files identified in my

---

[3] *See* Respondent's October 23, 2024 Letter.

3

September 27, 2024 Expert Statement, referred to in Figure 4 therein as Documents #3 and #7.[4]

7.    First, I analyzed the application metadata Author and Last Author. When a Microsoft Office profile is setup on a device, a username is created. The specific spelling and spacing of the profile username serves as a fingerprint within the application metadata fields Author and Last Author for documents created or modified within Microsoft programs on that device.

8.    The application metadata Last Author indicates the username recorded by Microsoft when a file is edited. It can also be updated when the file is saved to a new location or new media as a new file.

9.    The application metadata Last Author are relevant because the pre-2023 Tax Study file has "███████████" as the Last Author, and the most recent four (4) files all reflect "Gino, Francesca" as the Last Author.

| Item | Device | File Name | Name for Expert Affidavit | Last Saved (Internal) | Date Added (EST) | Author | Last Author | No. Participants | Content Data |
|------|--------|-----------|---------------------------|-----------------------|------------------|--------|-------------|------------------|--------------|
| A | Sequestered Data | Taxstudy.xlsx | 2021_taxstudy | 7/16/10 16:57:10 | 2/16/17 18:00:07 | ███ | ███ | 98 | Original |
| B | ES02 DISK_IMG | Taxstudy.xlsx | ES02_data_taxstudy | 9/23/23 17:13:00 | | | Gino, Francesca | 101 | Modified |
| C | ES02 DISK_IMG | Taxstudy.xlsx | ES02_taxstudy | 9/23/23 17:16:27 | | | Gino, Francesca | 101 | Modified |
| D | ES01 Gino Laptop | Taxstudy.xlsx | 2023_taxstudy | 9/23/23 17:16:27 | 9/23/23 17:32:48 | | Gino, Francesca | 101 | Modified |
| E | ES06 SimpleTech | Taxstudy.xlsx | ES06_taxstudy | 9/23/23 17:16:27 | | | Gino, Francesca | 101 | Modified |

*Tax Study file copies showing Author and Last Author*

10.    The username "Gino, Francesca," is *not* associated with the Gino Laptop that was imaged by Mr. McGowan, which laptop holds, instead, "Francesca  Gino" as the username (noting the distinct two spaces between the first and last name).

11.    I analyzed Microsoft Office files from the sequestered materials for application metadata Author and Last Author values that contain "Gino," and for application metadata Created and Last Saved within those files.

---

[4] 2021_Taxstudy.xlsx: A file found on the Gino Laptop as sequestered in 2021; and the 2023_Taxstudy.xlsx: A file found on the Gino Laptop as placed there in 2023 and imaged in 2024.

| Author / Last Author | Count | Min Date | Max Date |
|---|---|---|---|
| Gino, Francesca | 2,906 | 6/27/11 | 10/19/21 |
| Francesca Gino | 1,907 | 5/1/06 | 8/2/21 |
| Francesca  Gino | 754 | 3/1/17 | 9/20/21 |
| fgino | 12 | 8/6/10 | 2/14/11 |
| Francesca Gino | 39 | 8/10/06 | 7/15/08 |

*Usernames containing "Gino" from sequestered files*

12. The username "Gino, Francesca" appears on Microsoft Excel files as Author and Last Author between 2011 and 2013, a handful of times in 2019, on the 2023 Tax Study file, *and also* Last Author on the Undisclosed Tax Study Copies.

13. Therefore, my analysis not only shows that the 2023 Tax Study file and the Undisclosed Tax Study Copies were edited or saved by someone other than "███████", but rather by the username "Gino, Francesca" on an undisclosed device that is not the Gino Laptop that Mr. McGowan imaged.

14. Next, I analyzed the application metadata Last Saved, which identify when a document was last saved.

| Item | Device | File Name | Name for Expert Affidavit | File Modified | Last Saved (Internal) | Date Added (EST) | Last Author | No. Participants |
|---|---|---|---|---|---|---|---|---|
| A | Sequestered Data | Taxstudy.xlsx | 2021_taxstudy | 7/17/10 18:43:30 | 7/16/10 16:57:10 | 2/16/17 18:00:07 | | 98 |
| B | ES02 DISK_IMG | Taxstudy.xlsx | ES02_data_taxstudy | 9/23/23 17:13:00 | 9/23/23 17:13:00 | | Gino, Francesca | 101 |
| C | ES02 DISK_IMG | Taxstudy.xlsx | ES02_taxstudy | 7/17/10 18:43:00 | 9/23/23 17:16:27 | | Gino, Francesca | 101 |
| D | ES01 Gino Laptop | Taxstudy.xlsx | 2023_taxstudy | 7/17/10 18:43:00 | 9/23/23 17:16:27 | 9/23/23 17:32:48 | Gino, Francesca | 101 |
| E | ES06 SimpleTech | Taxstudy.xlsx | ES06_taxstudy | 9/28/23 11:52:56 | 9/23/23 17:16:27 | | Gino, Francesca | 101 |

*Tax Study file copies showing Last Saved*

15. As can be seen in the chart above, the application metadata Last Saved dates and times for two of the Undisclosed Tax Study Copies (Items C and E in the above chart) match the application metadata Last Saved date and time for the 2023 Tax Study file (Item D in the above

5

chart[5]). For the third of the Undisclosed Tax Study Copies (Item B in the above chart), the application metadata Last Saved date is the same, but the time is a few minutes earlier. A document cannot be saved on a USB stick without that USB stick being connected to a computer. Therefore, all three documents were last saved on an unknown device.

16.     Additionally, one of the Undisclosed Tax Study Copies (Item E in the above chart) was on a SimpleTech USB stick used by Prof. Gino,[6] which does not appear to have been accessed on the Gino Laptop imaged by Mr. McGowan. This means that it could have only appeared on the subject USB stick by being placed on it from *another* device.  This other and undisclosed device cannot be "unknown" to Prof. Gino, as the Undisclosed Tax Study Copy found on this USB stick has a last saved date of September 28, 2023.[7]

**II.     METADATA ON ONE OF THE UNDISCLOSED TAX STUDY COPIES REVEAL ADDITIONAL EVIDENCE OF METADATA BACKDATING, BUT PROF. GINO'S PROVISION OF JUST ONE TERMINAL LOG FILE AND TOTAL SILENCE ON HOW SHE BACKDATED THE 2023 TAX STUDY FILE HINDERS THE TRUTH-FINDING PROCESS.**

17.     I then examined the file system metadata File Modified. These metadata are tracked by the Operating System and are separate from, but directly related to, the application metadata Last Saved. Often, they have the same value. Because files can be moved to new devices after they are created, this value can post-date the application metadata Last Saved, but it cannot naturally pre-date the application metadata Last Saved.

---

[5] It is important to note that Item D is also Document #7 from my September 27, 2024 Expert Statement. It is the 2023_Taxstudy.xlsx: A file found on the Gino Laptop as placed there in 2023 and imaged in 2024.

[6] Identified as holding serial number 0196019921036.

[7] Incidentally, this is one day before Prof. Gino launched her website. Soon after launching her website, she regaled her readers with promises of a mystery document that would absolve her. When Complainant recently raised the suspicious timing of this website claim, and the backdating of metadata on the September 2023 Tax Study file, that claim was then purged from Prof. Gino's website.

| Item | Device | File Name | Name for Expert Affidavit | File Modified | Last Saved (Internal) | Date Added (EST) | Last Author | No. Participants |
|---|---|---|---|---|---|---|---|---|
| A | Sequestered Data | Taxstudy.xlsx | 2021_taxstudy | 7/17/10 18:43:30 | 7/16/10 16:57:10 | 2/16/17 18:00:07 | ████████ | 98 |
| B | ES02 DISK_IMG | Taxstudy.xlsx | ES02_data_taxstudy | 9/23/23 17:13:00 | 9/23/23 17:13:00 | | Gino, Francesca | 101 |
| C | ES02 DISK_IMG | Taxstudy.xlsx | ES02_taxstudy | 7/17/10 18:43:00 | 9/23/23 17:16:27 | | Gino, Francesca | 101 |
| D | ES01 Gino Laptop | Taxstudy.xlsx | 2023_taxstudy | 7/17/10 18:43:00 | 9/23/23 17:16:27 | 9/23/23 17:32:48 | Gino, Francesca | 101 |
| E | ES06 SimpleTech | Taxstudy.xlsx | ES06_taxstudy | 9/28/23 11:52:56 | 9/23/23 17:16:27 | | Gino, Francesca | 101 |

*Tax Study file copies showing File Modified*

18.     Based on this, I can draw the opinion that the file system metadata File Modified value has been backdated on both the DISK_IMG USB stick copy of the Tax Study file (Item C in the above chart) and, as I previously reported, the 2023 Tax Study file (Item D in the above chart[8]).

19.     The use of the Terminal utility in close proximity to when the backdated 2023 Tax Study file was copied onto the Gino Laptop imaged by Mr. McGowan means that Terminal was the primary candidate for how the backdating occurred.

20.     However, Prof. Gino's provision of one unredacted Terminal log file does not answer that question. The provided Terminal log file contains only a single command for a related but different file "Tax Study Study 1 2010-07-13.xlsx", which raises new questions.

21.     The Terminal utility typically creates three log files for each session, not a single log file: (i) the session file, (ii) the history file, and (iii) the historynew file. This appears to be consistent for the majority of Terminal sessions on the Gino Laptop.

22.     Only three Terminal sessions on the Gino Laptop have one Terminal log file, and one of those dates is September 23, 2023, which has only the historynew file; the session file and the history file are completely missing. It is unknown why the other two files are missing.

---

[8] Item D is also Document #7 from my September 27, 2024 Expert Statement. It is the 2023_Taxstudy.xlsx: A file found on the Gino Laptop as placed there in 2023 and imaged in 2024.

23.    Although the provision of one Terminal log file does not answer the question as to *how* the 2023 Tax Study file was backdated, this does not change my opinion that it was backdated. In fact, my opinion of backdating is bolstered by the fact that Item C in the above charts also shows backdating. Backdating was manual, and however and wherever it was completed is unknown, as we do not have access to all of Prof. Gino's devices, all of the possible Terminal logs from Gino's Laptop, nor any explanation from her about how, when, and on what device the backdating was accomplished.

**III.    MR. MCGOWAN WAS WRONG WHEN HE CLAIMED IN HIS REPORT THAT THERE WAS NO RELEVANT INFORMATION ON THE DEVICES HE REVIEWED, OTHER THAN GINO'S LAPTOP.**

24.    As Prof. Gino explained in her October 23, 2024 letter, the Undisclosed Tax Study Copies were found on two of the USB sticks that Mr. McGowan had previously reviewed and claimed held irrelevant information.[9]  There was accordingly no basis for Mr. McGowan to have claimed, as he did in his Expert Statement, that these two USB sticks held no relevant information. This significant error raises the possibility of the existence of other undisclosed files and calls into question his methodology.[10] Indeed, he claims to have searched the devices he was given for the "files with the same or similar names as those described in the Maidstone reports," which would include "Taxstudy.xlsx." [11]

25.    The altering of the content of the 2023 Tax Study file, the backdating of the metadata of the 2023 Tax Study file, the failure by Mr. McGowan to recognize the relevance of the now *four* copies of the 2023 Tax Study file (including the three on USB sticks he previously

---

[9] *See* McGowan September 13, 2024 Expert Statement, ¶ 23 ("The only device used by Professor Gino on which I found data relevant to the Allegations was the Gino Laptop . . . the only device or cloud storage site used by Professor Gino that contained data on which my testimony and opinions rely was the Gino Laptop.").
[10] *Id.* ¶¶ 17, 23.
[11] *Id.* ¶ 26 ("I searched for files with the same or similar names to those described in the Maidstone reports.").

reviewed), and the repeated refusal by Prof. Gino to identify the undisclosed device or provide any explanation of the metadata backdating, are all anti-forensic actions that prevent or frustrate the forensic analysis of data misconduct in this matter.

## IV.    CORRECTIONS OF CLERICAL ERRORS IN OPINION ON ALLEGATION 2

26.    In paragraph 51 of my September 27, 2024 Expert Rebuttal Statement, I mistakenly referred to Thanksgiving day of 2014 as November 25. I meant November 27. This was a clerical error and does not change the timeline nor my opinion related to Allegation 2.

27.    In paragraph 51(d) of my September 27, 2024 Expert Rebuttal Statement, I mistakenly stated that the spreadsheet named "data_authenticity_CD_online 2014-11-26.xls"[12] was "CREATED" at 1:20. However, the Application Metadata Last Saved and File System Metadata indicate it was "MODIFIED" at 1:20. This was a clerical error and does not change the timeline nor my opinion related to Allegation 2.

28.    In paragraph 51(h) of my September 27, 2024 Expert Rebuttal Statement, I mistakenly stated that spreadsheet "data_Authenticity__CD_online & CLER 2014-11-26.xls"[13] was last saved at 9:54 pm on November 27, 2014. But it should have stated this action occurred on November 28, 2014. I note that Mr. McGowan made this same error.[14]

I reserve the right to supplement my findings if additional evidence or information is provided to me.

---

[12] RX 208A - data_authenticity_CD_online 2014-11-26.xls
[13] RX 210A - data_Authenticity__CD_online & CLER 2014-11-26.xls
[14] *See* McGowan September 13, 2024 Expert Statement, ¶ 199(17).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 29th day of October 2024.

Signed by:

*Julian Ackert*

92B055396DC7437...

Julian Ackert

10