# EXHIBIT 180

# EXHIBIT B

Case 1:23-cv-11775-MJJ Document 42-21 Filed 11/03/23 Page 3 of 9

# THE CHRONICLE OF HIGHER EDUCATION

**DATA IN DOUBT**

# A Weird Research-Misconduct Scandal About Dishonesty Just Got Weirder

*By* *Stephanie M. Lee*

**JUNE 16, 2023**

*Update (June 17, 2023, 2:16 p.m.): The day after this story was published, a trio of academics* [wrote on their blog](#) *that they had notified Harvard Business School of what they characterized as evidence of fraud in four papers co-authored by Francesca Gino, including the 2012 paper discussed in this article.*





morality | nudge | policy-making | fraud

The annual tax gap between actual and claimed taxes due in the United States amounts to roughly $345 billion. The Internal Revenue Service estimates that more than half this amount is due to individuals misrepresenting their income and deductions (1). Insurance is another domain burdened by the staggering cost of individual dishonesty; the Coalition Against Insurance Fraud estimated that the overall magnitude of insurance fraud in the United States totaled $80 billion in 2006 (2). The problem with curbing dishonesty in behaviors such as filing tax returns, submitting insurance claims, claiming business expenses or reporting billable hours is that they primarily rely on self-monitoring in lieu of external policing. The current paper proposes and tests an efficient and simple means to reduce such dishonesty.

Whereas recent findings successfully identified an intervention to curtail dishonesty through introducing a code of conduct in contexts where previously there was none (3, 4), many important transactions already require signatures to confirm compliance to an expected standard of honesty. Nevertheless, as significant economic losses demonstrate (1, 2), the current practice appears insufficient in countering self-interested motivations to falsify numbers. We propose that a simple...

ILLUSTRATION BY THE CHRONICLE; ISTOCK IMAGES

Almost two years ago, a famous study about a clever way to prompt honest behavior was retracted due to an ironic revelation: It relied on fraudulent data. But *The Chronicle* has learned of yet another twist in the story.

According to one of the authors, Harvard University found that the study contained even more fraudulent data than previously revealed and it's now asking the journal to note this new information. The finding is part of an investigation into a series of papers that Harvard has been conducting for more than a year, the author said.

Details about the reported fabrications are unclear. Francesca Gino, a world-renowned Harvard Business School professor who studies dishonesty, and is a co-author on the disputed study, is now on administrative leave, according to her faculty page. Gino did not return a request for comment.

### FROM THE CHRONICLE STORE



REPORT

## The Unionized Campus

Understanding and working productively with academic labor

Visit the Store

The head-spinning saga began in 2012, when a team of five researchers claimed that three experiments they'd done separately, and combined into one paper, showed that when people signed an honesty pledge at the beginning of a form, versus the end, they

Case 1:23-cv-11775-MJJ Document 44-21 Filed 11/03/26 Page 4 of 9

were less likely to cheat on the form. This intuitive-sounding conclusion turned heads at [government agencies](#) and [companies](#).

But by 2020, it was falling apart. The researchers, plus two others, [reported in a new paper](#) that they were unable to replicate the effect after running essentially larger versions of experiments Nos. 1 and 2, which involved university students and employees filling out tax forms in a lab. Max H. Bazerman, a Harvard Business School professor, [has said](#) that the two experiments were written up by him, Gino, and Lisa Shu, then of Northwestern University.

Scientific findings often fail to replicate for [all kinds of reasons](#), not necessarily because they were fabricated. But in the summer of 2021, [a trio of data detectives](#) wrote on their blog that a close examination pointed to fraud in experiment No. 3, which, unlike the others, was based on auto-insurance customer data.

That experiment had been handled by two other authors: Nina Mazar, formerly of the University of Toronto, and Dan Ariely, a Duke University professor. The source of that fraud remains unclear. In 2021, Ariely [told](#) BuzzFeed News that he was the only author in touch with the insurance company that provided the data, but he denied fabricating it. At the same time, he gave conflicting answers about the origins of the data file that was the basis for the analysis. BuzzFeed News reported that the insurer was The Hartford, which confirmed doing a "small project" with Ariely but was unable to locate any data resulting from it.

It was [yet another blow](#) to the field of behavioral economics — which in the 2000s and 2010s [churned out](#) [headline-grabbing strategies](#) to [subtly influence people's](#) [behavior](#) for the better, and has since [walked back](#) [many of them](#). In September 2021, the *Proceedings of the National Academy of Sciences* [retracted](#) the 2012 paper. But that, it turned out, was not quite the end.

Case 1:23-cv-11775-MJJ   Document 44-21   Filed 11/08/23   Page 5 of 8
Case 1:23-cv-11775-MJJ   Document 49-21   Filed 11/03/26   Page 6 of 9

The alleged new problems involve experiment No. 1 — one of the two conducted in a lab with students. Bazerman told *The Chronicle* that on Tuesday, Harvard informed him that it believed fabricated data for this experiment made it invalid. According to Bazerman, Harvard provided a 14-page document with what he described as "compelling evidence" of data alterations. Their analysis found that somebody had accessed a database and added and altered data in the file, he said. "I did not have anything to do with the fabrication," he told *The Chronicle.*

According to Bazerman, Harvard is recommending to the *Proceedings of the National Academy of Sciences* that it update the study's retraction notice to reflect its new concerns. (A journal spokesperson said, "We are looking into the matter." A Harvard spokesperson declined to comment.)

## "The irony of this being a story about data fraud in a paper on inducing honesty is not lost on me."

Bazerman declined to discuss his co-authors. But in his [book](#) *Complicit: How We Enable the Unethical and How to Stop*, published in November, the Harvard professor reflected on the debacle of the 2012 study. How was it, he mused, that experiments Nos. 1 and 2 had both ended up being irreproducible?

"In retrospect, Gino reported that her lab manager at her prior university managed data collection for the two laboratory experiments in the 2012 paper," Bazerman wrote in a chapter about the risks of putting trust in relationships. "Thus, none of the authors, including me, provided sufficient supervision of these experiments. In addition, as I review emails from 2011 containing the dialogue between coauthors of

the 2012 paper, I see concerns raised about the methods. I failed to actively engage and deferred to the decisions of my colleagues, and that failure makes me complicit."

He added, "The irony of this being a story about data fraud in a paper on inducing honesty is not lost on me."

Bazerman told *The Chronicle* that his understanding is that the 2012 paper is one of four papers "of significant concern" to Harvard. He declined to identify the other three, but said he was not a co-author on them.

Gino joined the Harvard Business School faculty in 2010 after stints at the University of North Carolina and Carnegie Mellon University. She shot to academic stardom with her prolific, buzzy research on decision-making, leadership, and workplace behavior — including dishonesty and unethical behavior.

Her expertise has made her in demand as a consultant and speaker to some of the world's biggest companies and institutions — Bacardi, Google, Microsoft, Coca-Cola, Disney, Goldman Sachs, Honeywell, Novartis, Procter & Gamble, and the U.S. Air Force, Army, and Navy — and as a source to media outlets from *The New York Times* to *The Wall Street Journal*, according to her website. She has co-authored more than 135 academic articles and written books including 2018's *Rebel Talent: Why It Pays to Break the Rules at Work and in Life*. She's also been named one of the world's 40 best business-school professors under 40 and 50 most influential management thinkers.

And as of recently, her role at Harvard is unclear. Within the last month, her faculty website was updated to say that she is on administrative leave, according to screenshots captured by the Wayback Machine. The Harvard spokesperson declined to comment on Gino's status.

Shu, the third collaborator on the experiment in question, did not return a request for comment.

*We welcome your thoughts and questions about this article. Please <u>email the editors</u> or <u>submit a letter</u> for publication.*

SCHOLARSHIP & RESEARCH



### Stephanie M. Lee

Stephanie M. Lee is a senior reporter at *The Chronicle* covering research and society. Follow her on Twitter at <u>@stephaniemlee</u> or email her at <u>stephanie.lee@chronicle.com</u>.

---

**RECOMMENDED ARTICLES**

NEWS
**'Fragmented Ties: Salvadoran Immigrant Networks in America'**

NEWS
**'The Great Gatsby' in a Different Key**

---

## IN THE CHRONICLE STORE



**Rethinking Admissions and Enrollment**



**Fostering Students' Free Expression**



**College as a Public Good**



**The Accessible Campus**



1255 23rd Street, N.W. Washington, D.C. 20037
© 2023 The Chronicle of Higher Education