**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| FRANCESCA GINO,<br><br>Plaintiff,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE, SRIKANT DATAR, JOHN DOES 1-10, AND JANE DOES 1-10,<br><br>Defendants. | ) | Case No. 1:23-cv-11775-MJJ |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS RELATED TO PLAINTIFF'S MANIPULATION, CONCEALMENT, AND SPOLIATION OF EVIDENCE**

President and Fellows of Harvard College ("Harvard") and Srikant Datar (together, the "Defendants"), by and through their undersigned attorneys, bring this motion pursuant to Federal Rule of Civil Procedure 37, and this Court's inherent powers, seeking sanctions in the form of default judgment, or alternatively an adverse inference instruction for any claims surviving this motion and Defendants' motion for summary judgment, entered in favor of Defendants on all of Plaintiff's claims, as well as an award of attorneys' and expert fees and costs expended investigating Plaintiff's evidence concealment, manipulation, and spoliation, and other relief this Court may deem appropriate.

## INTRODUCTION

This motion is predicated on Plaintiff's manipulation and spoliation of probative evidence, concealment of the device she used to engage in that discovery misconduct, and then further spoliation to try to cover her tracks once the device had been uncovered by Defendants.

Plaintiff was placed on administrative leave in June 2023, after Harvard Business School ("HBS") found that she intentionally falsified and fabricated data in connection with four published studies. The discovery misconduct by Plaintiff relates to one of these studies, which was based on data collected in 2010 and was published in 2012 (the "2012 Paper"). After she was placed on leave and at or around the time she engaged counsel on June 17, 2023, Plaintiff purchased a new laptop (the "2023 Laptop") and moved all her research files, including those related to the 2012 Paper, to that device. In August 2023, Plaintiff filed suit, alleging she ***never*** falsified research data and that Harvard's investigation was so poorly conducted that it breached the implied covenant of good faith and fair dealing. Doc. No. 1 ¶¶ 3, 348–52.

- Less than two months later, Plaintiff used the 2023 Laptop to deliberately fabricate two research datasets (the "July 16 OG File" and "2023 Cover-Up File," respectively) and manually backdated those datasets to manufacture evidence to make it appear as though

she received the falsified data used in the 2012 Paper from a research assistant rather than, as HBS found, intentionally fabricating the dataset herself;

- The same day she created the 2023 Cover-Up File, she copied it over to a laptop HBS had issued her (the "2017 HBS Laptop"), deleting an existing, genuine version of the dataset;
- A week after that, she defamed Harvard by posting on her website the false claim that the HBS investigation had overlooked the July 16 OG File, the other dataset she had just manufactured;
- She then concealed the 2023 Laptop, the device she used to accomplish the evidence manipulation, through a year and a half of fact discovery; and
- Finally, as Defendants sought to review her devices and even after she had agreed to produce the 2023 Laptop, *see* Doc. No. 199 at 2–4, she deleted applications and logs from it.

Plaintiff's repeated and egregious discovery violations have risen to the level that a default judgment on her claims is an appropriate sanction.

## BACKGROUND

### A. Harvard's Discovery that Plaintiff Doctored and Spoliated Evidence on September 23, 2023.

On October 1, 2023, two months after she filed this action, Plaintiff launched a parallel public relations campaign by posting on her website—francesca-v-harvard.org—her "unequivocal conclusion" that Harvard had "used the wrong dataset" when investigating her for falsifying the data used in the 2012 Paper (the "October 1 Post"). Ex. 1 at 4–5.[1, 2] Plaintiff stated that HBS had failed to review what she dubbed the "July 16 OG File"—a version of the dataset she claimed dated to 2010 and proved that the data she had relied on in the 2012 Paper were accurate. *Id.* at 7. In reality, as explained herein, Plaintiff manufactured the July 16 OG File a week earlier on her 2023 Laptop as part of a larger effort to cover up that she had falsified the data.

---

[1] Unless otherwise noted, "Ex." refers to the numbered exhibits attached to the concurrently filed Declaration of Elena W. Davis.

[2] Plaintiff's October 1 Post has been filed previously as Doc. No. 118-2. For the Court's convenience, a copy of Doc. No. 118-2 has been attached hereto as Ex. 1.

Plaintiff's statement came after Defendants initiated proceedings to revoke her tenure based on the HBS investigation's findings (the "Third Statute Proceeding"). Despite her public claims about the July 16 OG File, Plaintiff [redacted]. Ex. 2, F. Gino Dep. Tr. at 161:9–15, 173:11–24. Instead, during the Third Statute Proceeding, Plaintiff focused on other alleged shortcomings of HBS's investigation, including challenging the forensic soundness of the copy of files (the "Sequestered Materials") that Harvard preserved from the 2017 HBS Laptop. To support her allegations, she engaged an expert in January 2024 to create a forensic image of her 2017 HBS Laptop (the "2024 Laptop Copy"). Ex. 3 ("Ackert TS Rpt.") ¶ 14.[3]

[redacted]. Ex. 6 at 1–2. In reviewing the 2024 Laptop Copy, Harvard identified a file that was present on that image but was not included in the Sequestered Materials. Specifically, Harvard found a version of a data file named "Taxstudy.xlsx" that exhibited many of the characteristics Plaintiff had attributed to the July 16 OG File in the October 1 Post but with metadata indicating manipulation. The version of "Taxstudy.xlsx" in the Sequestered Materials (the "Taxstudy File") contained original, genuine data sent to Plaintiff by her research assistant and metadata consistent with the file being created and last modified in July 2010, when the study was conducted.[4] Ackert TS Rpt. Fig. 8 & ¶ 68. The version of the file on

[3] Around this time, Plaintiff also informed the expert that she had saved "relevant work-related documents," including "documents \ work in progress \ IRB (CMU, Harvard, UNC) \ [and] submission[s]," on the 2023 Laptop, *see* Ex. 4 at 13, but did not direct the expert to create an image of this device, and neither Plaintiff nor the expert disclosed in the Third Statute Proceeding that the 2023 Laptop existed. In fact, Plaintif [redacted] Ex. 5 ¶ 393 [redacted]

[4] As explained in Harvard's Counterclaim, the genuine Taxstudy File is an important piece of circumstantial evidence supporting that Plaintiff fabricated the data relied on in the 2012 Paper. Doc. No. 154 at 151, ¶ 48-50. On Friday, July 16, 2010, Plaintiff received the authentic data from her research assistant as an email attachment. *Id.* The Taxstudy File establishes that Plaintiff saw the dataset her research assistant sent and then downloaded the authentic data to her laptop on Saturday, July 17, 2010. *Id.* The next day, Sunday, July 18, Plaintiff sent a draft of the results

the 2024 Laptop Copy, which *deleted and replaced* the version in the Sequestered Materials, contained metadata that, on a cursory perusal, made it appear to be the same Taxstudy File found in the Sequestered Materials; but instead of containing the original data, it contained the falsified data Plaintiff reported in the 2012 Paper. Ackert TS Rpt. ¶¶ 1–3, 65–77. In its Counterclaim, Harvard called this new version of the Taxstudy File the "2023 Cover-Up File," Doc. No. 154 at 158, *et seq.*, ¶¶ 74-83 because, as explained herein, it was part of Plaintiff's poorly executed attempt to cover up that she had falsified this data in 2010.

On closer examination, however, the 2023 Cover-Up File exhibits telltale signs that it is not an authentic file. First, the author of the 2023 Cover-Up File is user "Gino, Francesca," not Plaintiff's research assistant, who was the author of the Taxstudy File in the Sequestered Materials. Second, the file system metadata for the 2023 Cover-Up File indicates that the file was last modified about 30 seconds *before it was created*, while the genuine Taxstudy File in the Sequestered Materials exhibits no such discrepancy. As discussed below, Harvard's expert has explained that this type of discrepancy only occurs if someone manually alters the metadata. Finally, the file system metadata[5] and Microsoft Excel metadata of the 2023 Cover-Up file diverge by over 13 years: while the file system metadata indicates the 2023 Cover-Up File was last modified on July 17, 2010, the Microsoft Excel metadata shows that the 2023 Cover-Up File was last saved on September 23, 2023—eight days before Plaintiff published the October 1 Post. Ex. 8 ("Ackert Rpt.") ¶¶ 44–45, 49–53.[6] As Harvard's expert has explained, metadata for files change

of the study to her co-authors that was based on the falsified data. *Id.* The only plausible explanation supported by this evidence is that Plaintiff downloaded the data on July 17, and then, by July 18, had falsified those data to support her hypothesis. *Id.*

[5] File system date/time metadata is recorded by the computer's operating system, while application metadata (also referred to as "embedded metadata"), like the Microsoft Excel metadata discussed herein, is recorded by a program or application on the computer. *See* Ex. 7 ¶¶ 79-81; Ackert Decl. ¶ 8 n.3.

[6] The Expert Report of J. Ackert (May 27, 2026) has been filed previously as an exhibit to Doc. No. 222-1. For the Court's convenience, a copy of Doc. No. 222-1 has been attached hereto as Ex. 8.

when a user accesses those files and makes changes to them. Ackert Rpt. ¶ 43. It is highly irregular, absent manual intervention, for the Microsoft Excel Last Saved metadata to be more than 13 years newer than the file system Last Modified metadata. *Id.* ¶ 45. [redacted] Ex. 9 at 144:16–21.

Harvard's forensic expert determined that the 2023 Cover-Up File had been copied from a portable USB device (the "Black USB") to Plaintiff's 2017 HBS Laptop on September 23, 2023, the month after she sued Harvard, into the exact directory where the genuine Taxstudy File had been saved in the Sequestered Materials. Ackert Rpt. ¶¶ 56–59. Because the Taxstudy File already existed in the directory where the 2023 Cover-Up File was copied, the 2023 Cover-Up File necessarily overwrote—and thereby deleted—the genuine file. *Id.* ¶ 59. After the 2023 Cover-Up File was copied, Terminal, a Mac system utility that allows the user to issue commands directly to the operating system, was opened on the 2017 HBS laptop and a single command entered that requested the computer to display the metadata for another data file related to the 2012 Paper located in the same folder. *Id.* ¶¶ 60–61. Plaintiff [redacted], but also testified that [redacted] Ex. 2 at 27:4–5, 41:3–21, 197:5–11, 197:18–20. Plaintiff also [redacted]. Ex. 10 at 10:20–11:6, 12:9–25, 15:5–8, 16:4–7, 19:3–22, 22:24–23:14. Plaintiff offers no explanation of how these actions could have occurred without a human in possession of the Black USB and 2017 HBS Laptop doing them. Her testimony [redacted].

Because the 2023 Cover-Up File had been copied to Plaintiff's 2017 HBS Laptop within a minute of the Black USB being connected to it and because metadata cannot be backdated on a USB device without that device being connected to a computer, Harvard's expert concluded that Plaintiff created and backdated the 2023 Cover-Up File on another device before placing it on the 2017 HBS Laptop.[7] Ackert Rpt. ¶ 62. After Harvard provided Plaintiff with its expert report explaining the evidence above, Plaintiff removed the October 1 Post from her website. Doc. No. 154 at 160, ¶ 84; *see also* Ex. 2 at 153:19–154:24.

Alarmed by these findings, Defendants wrote to Plaintiff on October 21, 2024, explaining that her actions had corrupted the evidentiary record and demanding that she preserve all relevant evidence going forward. Ex. 12. Defendants then filed a counterclaim for defamation because the October 1 Post contains knowingly false statements that HBS had "used the wrong file" and overlooked the July 16 OG File during its investigation. Doc. No. 154. In support of their counterclaim, Defendants primarily relied on the forensic evidence that Plaintiff had fabricated and backdated the 2023 Cover-Up File, which was similar to Plaintiff's description of the July 16 OG File, mere days before publishing the October 1 Post. *Id.*[8]

### B. Plaintiff Concealed the 2023 Laptop in Violation of Discovery Rules During the 18-Month Fact Discovery Period.

To identify the device on which Plaintiff fabricated and backdated the 2023 Cover-Up File and to locate the still-missing July 16 OG File, on April 18, 2025, Defendants served Plaintiff with

---

[7] In the Third Statute Proceeding, [redacted], but Plaintiff reported that [redacted] Ex. 11 at 1. As detailed below, this information was in fact available *to Plaintiff* herself.

[8] Given Plaintiff's failure to produce a copy of the July 16 OG File in the Third Statute Proceeding, Harvard stated in its Counterclaim that "*upon information and belief*, the 2023 Cover-Up File represents an abortive attempt by [Plaintiff] to intentionally manufacture evidence that would appear to exonerate her, which she later planned to and did disclose as the 'July 16 OG file.'" Doc. No. 154 at 160, ¶ 81 (emphasis added). However, as explained in this brief, forensic evidence located on the 2023 Laptop has since established that Plaintiff falsified and backdated the July 16 OG File on September 23, 2023, the same day she manufactured the 2023 Cover-Up File.

Interrogatory No. 14 (the "Device Interrogatory"), requesting she "[i]dentify all devices, external drives, and cloud storage platforms" on which she had stored data related to the studies HBS had investigated. Defendants also served Request for Production No. 32 (the "Forensic Imaging Request"), seeking "[a] forensically sound image or other complete digital copy [of] any . . . device" on which she had stored information related to the allegations in her Complaint. Ex. 13 at 7; Ex. 14 at 10. Plaintiff objected to the Device Interrogatory and Forensic Imaging Request but provided no substantive responses. Ex. 15 at 4; Ex. 16 at 10–11. On June 13, 2025, Defendants sent Plaintiff a letter explaining that her objections were not well-founded. Ex. 17 at 8–9. Despite multiple meet-and-confer calls and another letter, *see* Ex. 18, Plaintiff did not amend her responses.

At a status hearing on November 20, 2025, held after Harvard brought Plaintiff's refusal to respond to these and other requests to the Court's attention, the Court held, as to the Device Interrogatory, that "any objections you might have had are waived[,] I want this done. You're not going to object to anything." Ex. 19 at 5:13–6:4. The Court reiterated its ruling at another status hearing on January 14, 2026. Ex. 20 at 9:2–25. On January 23, 2026, Plaintiff finally amended and personally verified her response but still did not identify the 2023 Laptop. Ex. 21 at 1–2.[9] At her September 10, 2026 deposition, Plaintiff [redacted]

[9] This document is titled "Plaintiff's Amended Responses to Interrogatory 15," *see* Ex. 21, but responds substantively to both Interrogatories 14 and 15. *Compare* Ex. 13 at 7 ("14. Identify all devices, external drives, and cloud storage platforms on which You have ever stored data or other materials in connection with the four studies investigated by the Investigation Committee."), *with* Ex. 21 at 2 ("Plaintiff answers that the *following locations are where she believes she stored* 'data or other materials in connection with the four studies investigated by the Investigation Committee' . . . ." (emphasis added)). While Plaintiff submitted other amended responses, *see* Ex. 22, she did not otherwise respond to Interrogatory 14.

[redacted] Ex. 10 at 35:3–36:11; *id.* at 4:22–25 [redacted]

The Forensic Imaging Request similarly required Court intervention. Plaintiff asserted at the November 20 status hearing that targeted searches of her files on the relevant devices were appropriate. Ex. 19 at 8:14–24. Defendants provided her with a proposal requiring production of forensic images on December 22, 2025. On December 30, 2025, Defendants requested the Court schedule a status hearing to discuss the parties' dueling proposals. Ex. 23. At the January 14, 2026 status hearing, the Parties reported that they had reached an impasse. Ex. 20 at 5:14–6:15. Ultimately, the Court ruled in February 2026 that Defendants should receive the images through a forensic protocol where the content of Plaintiff's files would be redacted by a third-party forensic neutral (the "Analyst"). Ex. 24 at 3:14–5:8, 9:14–11:11. On March 5, 2026, the Parties executed the Forensic Search Protocol (the "Protocol"), pursuant to which Plaintiff agreed to provide forensic images of the devices she had provided to her expert, as well as "any device on which . . . the '2023 Cover-Up File' was, prior to December 31, 2023, stored, edited, or otherwise modified." Ex. 25 ¶ 2. Yet again, Plaintiff did not identify the 2023 Laptop or provide it to the Analyst.

In April 2026, Defendants uncovered evidence that Plaintiff had transferred all her research files to the 2023 Laptop in July 2023,[10] and demanded that Plaintiff produce the 2023 Laptop pursuant to the Protocol. Ex. 27. During a meet-and-confer call, Plaintiff's counsel agreed to image the 2023 Laptop and submit it to the Analyst. Ex. 28. After Defendants informed the Court

[10] On May 8, 2026, Plaintiff's husband, Gregory Burd, [redacted] Ex. 26 at 74:3–75:13. Plaintiff [redacted]. Ex. 2 at 195:2–196:16.

at a May 19, 2026 status conference that the 2023 Laptop still had not been submitted, Judge Hedges ordered Plaintiff to send the image of the 2023 Laptop to the Analyst that day. Ex. 29 at 15:6–16:2, 20:6–12, 32:16–17. Plaintiff complied with the Court's order but falsely maintained that "[the] device was not responsive to any of Defendants' discovery requests." Ex. 30.

**C. Evidence Bearing Directly on this Case Is Identified on the 2023 Laptop.**

Harvard first received tranches of files and metadata from the 2023 Laptop beginning on June 1, 2026, three days after the close of fact discovery. Ex. 31. Plaintiff resisted any further discovery into the 2023 Laptop, and Defendants sought relief from the Court to receive files and metadata responsive to a small number of targeted follow-up requests. *See* Ex. 32, Doc. No. 237; Ex. 33, Doc. No. 238. Even the limited evidence Defendants have received establishes that the 2023 Laptop is plainly responsive to the Device Interrogatory, the Forensic Imaging Request, and the Protocol.

The 2023 Laptop contains a number of files related to Plaintiff's spoliation on September 23, 2023, including copies of the 2023 Cover-Up File. These files, and the metadata associated with them, establish that it is highly probable that Plaintiff used the 2023 Laptop to create and backdate the 2023 Cover-Up File before transferring it via the Black USB to the 2017 HBS Laptop. *See generally* Declaration of Julian Ackert, dated September 11, 2026 ("Ackert Decl."). In addition, Defendants' expert located a copy of the July 16 OG File, and forensic analysis shows that it contains the exact same falsified data as the 2023 Cover-Up File. *Id.*[11] The metadata associated with the July 16 OG File establishes that Plaintiff created and backdated that file on the

[11] On January 23, 2026, Plaintiff produced an Excel file to Harvard that her counsel has identified as a copy of the July 16 OG File. Ex. 34. While this file contains the same falsified data as the July 16 OG File, the file's metadata do not match the metadata that Plaintiff publicly announced in the October 1 Post. *See* Ex. 35.

2023 Laptop on September 23, 2023. *Id.*[12] Finally, documents produced by Plaintiff during discovery have established that she created the first draft of the October 1 Post on September 24, 2023. Ex. 38.

### D. Evidence from the 2023 Laptop Shows Plaintiff Engaged in Further Acts of Spoliation While Concealing It.

The limited evidence Defendants have received from the 2023 Laptop shows that Plaintiff engaged in multiple additional acts of spoliation after destroying the authentic Taxstudy File on September 23 by overwriting it with the 2023 Cover-Up File on her 2017 HBS laptop.

#### 1. Plaintiff [redacted]

On January 12, 2026, two days before a scheduled status hearing to address the parties' dispute over the Forensic Imaging Request, Doc. No. 147, [redacted]. Ex. 39; Ex. 40. [redacted] Ex. 39; Ex. 40; Ackert Decl. ¶ 28. [redacted] Ackert Decl. ¶ 27 n.13. [redacted]

[12] Plaintiff's expert has acknowledged that [redacted] Ex. 36 at 153:5–17. In his report submitted in this litigation, Plaintiff's expert also stated that "[f]or my analysis of [the 2012 Paper] . . . , I relied on the [Taxstudy File] in the Sequestered Materials, which Harvard preserved in October 2021. *It is more reliable forensic evidence of what occurred in 2010-2012 than versions dating from 2023*" but did not otherwise discuss the 2023 Cover-Up File or July 16 OG File. Ex. 37 ¶ 292 (emphasis added).

[redacted]. *Id.* [redacted] Ex. 10 at 5:13–6:16. [redacted] Ex. 10 at 25:1–3, [redacted] *Id.* at 26:1–5. [redacted] *See* Ackert Decl. ¶¶ 20-22.

**2. Plaintiff [redacted].**

[redacted] Ex. 41 at 2; Ex. 42.[13] [redacted] Ex. 41 at 2; Ex. 42. [redacted]

---

[13] [redacted] Ackert Decl. ¶ 23 n.21. [redacted] *Id.*

Ackert Decl. ¶ 23(a). [redacted], Ex. 10 at 6:23–7:17, but [redacted] *id*. at 32:24–33:19.

## LEGAL STANDARD

Spoliation is "the intentional, negligent, or malicious destruction of relevant evidence." *E.E.O.C. v. Chipotle Mexican Grill*, 98 F. Supp. 3d 198, 209 (D. Mass. 2015). A finding of spoliation requires four elements: "(1) an act of destruction; (2) discoverability of the evidence; (3) intent to destroy the evidence; and (4) occurrence of the act after commencement of litigation[.]" *Gordon v. DreamWorks Animation SKG, Inc.*, 935 F. Supp. 2d 306, 313 (D. Mass. 2013). Once these elements and resulting prejudice are shown, the Court has broad discretion to select a sanction "molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Sharp v. Hylas Yachts, LLC*, 872 F.3d 31, 42 (1st Cir. 2017).

Federal Rule of Civil Procedure 37(e) governs spoliation of ESI. Upon a finding of prejudice, the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Upon a finding of intent to deprive, the Court may "presume that the lost information was unfavorable," instruct the jury accordingly, or "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2)(A)-(C).

## ARGUMENT

### I. The 2023 Laptop Was Relevant and Discoverable, and Plaintiff Intentionally Withheld It During Discovery.

In her Complaint, Plaintiff alleged that she "*never*" falsified or fabricated data." Doc. No. 1 ¶ 3 (emphasis added). From that point forward, any research data related to the studies that HBS had investigated was relevant to prove or disprove this contention. *See Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D. Mass. 2015). Plaintiff unquestionably knew when she filed this action on

August 2, 2023 that the 2023 Laptop contained relevant evidence because [redacted] Ex. 26 at 74:3–75:13. "The duty to preserve evidence arises when litigation is reasonably anticipated." *Gordon*, 935 F. Supp. 2d at 314. [redacted]. *See* Ex. 43 at GINO_021788. Thus, even before filing this lawsuit, Plaintiff had a duty to preserve the 2023 Laptop, identify it in response to Defendants' discovery requests, and search it for evidence responsive to Defendants' requests and produce such evidence. *See, e.g.*, *Traverse v. Gutierrez Co.*, No. 18-10175, 2020 WL 9601830, at *2–4 (D. Mass. June 26, 2020).

However, Plaintiff refused to identify the 2023 Laptop during discovery. For seven months after receiving the Device Interrogatory, Plaintiff baselessly refused to identify *any* of her devices. *See* Ex. 15 at 4; Ex. 16 at 10–11. Then, after this Court twice ruled she had waived all objections, Plaintiff amended her response but knowingly and falsely omitted the 2023 Laptop. Ex. 21 at 1. She further withheld it despite the Protocol requiring her to produce "any device on which . . . the "2023 Cover-Up File" . . . was, prior to December 31, 2023, stored, edited, or otherwise modified." Ex. 25 ¶ 2. Even after the Court ordered her to produce the 2023 Laptop to the Analyst, Plaintiff maintained it was "not responsive to any of Defendants' discovery requests." Ex. 29 at 15:6–16:2, 20:6–12, 32:16–17; Ex. 30.

The only logical conclusion is that Plaintiff intentionally concealed the 2023 Laptop from Defendants and this Court. *See McLaughlin v. Lenovo Glob. Tech. (U.S.) Inc.*, 682 F. Supp. 3d 149, 159–65 (D. Mass. 2023) (finding intent to deprive where plaintiff failed to disclose that he had wiped a relevant laptop despite multiple opportunities). Plaintiff acknowledged the existence of the 2023 Laptop only after Defendants confronted her with evidence of the July 2023 transfer

of research files. Plaintiff's belated compliance in response to undisputed evidence of her misconduct does not absolve her of that misconduct, particularly given that: Defendants received no discovery from the 2023 Laptop until after fact discovery had already closed; and, when Plaintiff finally produced the image of the 2023 Laptop in response to the Court's order, she did so only after deleting vast amounts of likely probative information from it.

Defendants cannot identify or describe the full universe of evidence on the 2023 Laptop that was withheld because Plaintiff refused to perform the search and production that the Rules required during the fact discovery period. The small number of files that Defendants received from the 2023 Laptop through the Protocol were responsive to targeted requests related to the events of September 23, 2023, but provide no insight into how many files on the device were responsive to Defendants' requests issued during fact discovery. Plaintiff's intentional non-compliance with her Rule 34 obligations—standing alone—warrants sanctions to cure the resulting prejudice. *See* Fed. R. Civ. P. 37(c), 37(e); *McLaughlin*, 682 F. Supp. 3d at 166–68; *Red Wolf Energy Trading, LLC v. BIA Cap. Mgmt., LLC*, 626 F. Supp. 3d 478, 495–501 (D. Mass. 2022).

## II. Plaintiff Used the 2023 Laptop to Doctor and Destroy Evidence and then Engaged in Additional Spoliation to Cover Up Her Misconduct.

Plaintiff intentionally doctored and destroyed discoverable, relevant evidence in September 2023 and, while concealing the 2023 Laptop, she engaged in additional acts of spoliation that destroyed evidence that would have shed light on her earlier misconduct.[14]

[14] Separately, Defendants also discovered from documents that rolled off Plaintiff's privilege log on May 4, 2026 that Plaintiff used the communications app WhatsApp to communicate about this litigation with her public relations firm and others. Ex. 44. Such messages were plainly responsive to Defendants' Requests for Production, which defined "Communication(s)" as including "WhatsApp messages." Ex. 14 at 2, ¶ 6. In a May 12, 2026 meet and confer, Plaintiff's counsel represented that Plaintiff had not taken steps to preserve WhatsApp messages and that they had automatically been deleted. *See* Doc. No. 199, Joint Mem. Regarding Discovery Disputes at 2. Plaintiff has [redacted], *see* Ex. 10 at 5:7–12, but these messages have neither been produced nor listed on Plaintiff's privilege log.

### A. Plaintiff Doctored Evidence and Destroyed the Taxstudy File on September 23, 2023.

The first instance of evidence doctoring and destruction occurred on September 23, 2023. The evidence adduced through discovery and the Protocol shows that, on that day:

- Plaintiff used the 2023 Laptop to fabricate and backdate the 2023 Cover-Up File.
- She used the Black USB to transfer the 2023 Cover-Up File to the 2017 HBS Laptop and then **overwrote the existing, authentic Taxstudy File, thereby destroying it**.
- She later returned to the 2023 Laptop to **backdate the July 16 OG File**.
- The next day, she began drafting the October 1 Post, which she published a week later.

Intentional manipulation and deletion of electronic evidence is spoliation. *See Plasse v. Tyco Elecs. Corp.*, 448 F. Supp. 2d 302, 308–10 (D. Mass. 2006). Plaintiff's intent to deprive Defendants of relevant evidence can be inferred from: (1) Plaintiff deleting an existing, genuine version of the Taxstudy File and replacing it with the fabricated and backdated 2023 Cover-Up File; (2) Plaintiff's backdating of the July 16 OG File the same day; and (3) Plaintiff publicly making the knowingly false statement that the July 16 OG File was genuine in order to discredit Harvard's investigation a little more than a week later. *See id.*; *cf. Nation–Wide Check Corp. v. Forest Hills*, 692 F.2d 214, 217–18 (1st Cir.1982) (loss or destruction of documents "is sufficient by itself to support an adverse inference even if no other evidence for the inference exists[,]" so long as a "party had notice that the documents were relevant at the time he failed to produce them or destroyed them.").

Plaintiff's September 23 manipulation and destruction of evidence served her larger plan to manufacture false evidence designed to mislead the public, Defendants, and the Court. By creating and manually backdating the 2023 Cover-Up File and then replacing—and thus destroying—the genuine Taxstudy File, Plaintiff intentionally corrupted the body of evidence from

which Defendants and the Court were to reconstruct relevant events. Plaintiff manufactured at least two files that falsely appeared to predate her falsification of the 2012 Paper data and then publicly identified one of those spurious data files to discredit Defendants' investigation. Plaintiff's evidence manipulation has compounded the prejudice because Defendants have been required not only to investigate the evidence that Plaintiff destroyed, but also to expend substantial resources separating authentic evidence from the evidence Plaintiff manufactured. *See CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497–502 (S.D.N.Y. 2016) (finding prejudice where a party manipulated electronic evidence to create an issue of fact); *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 139–42 (2d Cir. 2023) (affirming sanctions where the plaintiff fabricated electronic evidence and deprived the defendant of the devices necessary to test its authenticity).

**B. Plaintiff Spoliated Evidence [redacted]**

[redacted] is also spoliation. *McLaughlin*, 682 F. Supp. 3d at 161–66. Her intent to deprive Defendants of the evidence contained therein may be inferred: (1) [redacted]; and (2) [redacted].

The prejudice from Plaintiff's spoliation is obvious and severe: [redacted]. *See NuVasive, Inc. v. Day*, 2021 WL 9059745, at *8–10 (D. Mass. Aug. 23, 2021), *report and recommendation adopted*, 2022 WL 899244 (D.

Mass. Mar. 28, 2022) (finding prejudice and intent to deprive where defendants deleted potentially relevant electronic communications and recommending sanctions).

The timing intensifies the prejudice. Plaintiff [redacted]. Evidence destruction occurring near a forensic examination or compelled production is powerful evidence of intentional concealment. *See, e.g.*, *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 627–34 (2d Cir. 2018) (affirming sanctions where data-wiping programs were used during the litigation-hold period and near the commencement of a forensic examination).

### C. Plaintiff Spoliated Evidence [redacted]

Plaintiff's [redacted] also is spoliation. *See Plasse*, 448 F. Supp. 2d. at 308–10. Plaintiff's intent to deprive Defendants of this evidence can be inferred from [redacted].

[redacted] *See, e.g.*, *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1237–40 (N.D. Cal. 2022) (finding prejudice where loss of electronic logs impaired the opposing party's ability to understand and prove the scope and nature of the spoliator's conduct); *Charlestown Capital*

*Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 65–66 (S.D.N.Y. 2020) (recognizing prejudice from the loss of electronic records and associated metadata).

[redacted] was especially prejudicial. At the time she purged the records, Plaintiff had agreed to image the 2023 Laptop. By wiping these records before imaging, Plaintiff ensured that the image memorialized only the record she chose to leave behind. *See McLaughlin*, 682 F. Supp. 3d at 165–68; *DeCastro v. Kavadia*, 309 F.R.D. 167, 177–79 (S.D.N.Y. 2015) (imposing sanctions where the defendant installed a destruction program after the court authorized a motion to compel).

## III. Plaintiff's Misconduct Warrants Case-Dispositive Sanctions or, in the Alternative, an Adverse Inference Instruction.

Given Plaintiff's extensive misconduct, the Court must impose sanctions "molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Sharp*, 872 F.3d at 42 (1st Cir. 2017). A showing, by clear and convincing evidence, of intentional concealment and repeated manipulation and destruction of evidence opens a litigant to the most severe of sanctions, including imposition of a default judgment or an adverse inference instruction. *See Hull v. Mun. of San Juan*, 356 F.3d 98, 100–01, 103–04 (1st Cir. 2004).

Default judgment as a sanction for spoliation is reserved for "extreme cases," *Sharp*, 872 F.3d at 42, but is warranted where, as here, the spoliating party's conduct is willful and the resulting prejudice to the non-offending party is severe. *See Collazo-Santiago*, 149 F.3d at 29. No sanction less than entering a default judgment on Plaintiff's claims suffices to ameliorate their prejudice described above. Plaintiff should not be allowed to maintain her claims against Harvard because she manufactured evidence to support those claims and, in the process, publicly defamed Harvard. She then concealed the 2023 Laptop, the device she used to manufacture this evidence, through the pendency of discovery, failing even to identify its existence despite multiple Court

orders. Once it became clear the Court would order forensic images of her devices, despite Plaintiff's years-long effort of resistance, Plaintiff destroyed additional evidence that would show what she had done.

This Court previously has found a strikingly similar pattern of egregious, bad-faith discovery misconduct warranted dismissal. In *Plasse v. Tyco Electronics Corp.*, 448 F. Supp. 2d 302 (D. Mass. 2006), the court dismissed the plaintiff's case after finding he had: fabricated a document to support his claim; modified the date-and-time settings on his laptop in order to alter the metadata of files he accessed, including files related to the fabricated document, to obscure when those documents were altered or deleted; concealed evidence related to the fabricated document on his laptop until forced to admit its existence while testifying under oath at deposition; and deleted files related to the fabricated document from his laptop in the lead up to a compelled forensic examination, including two days before a court-imposed production deadline. *Id.* at 308–10. Plaintiff's repeated misconduct during the pendency of this case warrants the same sanction. *See also Glob. NAPs, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 93 (1st Cir. 2010) (affirming default judgment on defendants' counterclaim where plaintiff's employees had destroyed two laptops containing financial records near the time that the devices were to be imaged and falsely testified about the plaintiff-company's record keeping practices); *Hull*, 356 F.3d at 102 (affirming entry of default judgment in negligence case where plaintiff deliberately concealed three prior injury incidents, all of which overlapped with the injuries he attributed solely to the slip and fall at issue in the case before the district court).

In the alternative, an adverse-inference instruction at trial is warranted, as the evidence Defendants have adduced above "permits a finding of bad faith destruction."[15] *United States v. Laurent*, 607 F.3d 895, 902 (1st Cir. 2010). The Court should instruct the jury at trial that Plaintiff has destroyed evidence and that the jury must infer that the evidence she destroyed would provide direct evidence that Plaintiff intentionally falsified research data after filing this lawsuit.

In addition to the above, Defendants are entitled to their fees and costs, including expert fees and the Analyst's fees, incurred in uncovering Plaintiff's manipulation, concealment, and destruction of evidence, and in bringing this motion. *See* Fed. R. Civ. P. 37(e)(1); *McLaughlin*, 682 F. Supp. 3d at 167 (ordering spoliating party to pay for forensic examinations of the device because "there would have been no need" absent the spoliation); *see also Collazo-Santiago*, 149 F.3d at 28 (district court has inherent power to remedy spoliation-related prejudice).

## CONCLUSION

For the reasons stated herein, the Court should grant Defendants' Motion for Sanctions and award the requested relief.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Defendants respectfully request a hearing on their Motion for Sanctions.

[15] Should the Court grant partial default judgment, it should nevertheless issue the adverse inference instruction requested herein with respect to the remaining claims.

Dated: September 11, 2026

Respectfully submitted,

/s/ Laura G. Hoey
Douglas E. Brayley (BBO# 674478)
Jenny K. Cooper (BBO# 646860)
Elena W. Davis (BBO# 695956)
Stephanie D. Porges (BBO# 703381)
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Douglas.Brayley@ropesgray.com
Jenny.Cooper@ropesgray.com
Elena.Davis@ropesgray.com
Stephanie.Porges@ropesgray.com

Laura G. Hoey (BBO# 650643)
ROPES & GRAY LLP
191 North Wacker Drive
32nd Floor
Chicago, IL 60606
Telephone: (312) 845-1200
Laura.Hoey@ropesgray.com

*Attorneys for Defendants President and Fellows of Harvard College and Srikant Datar*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2026, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: September 11, 2026

*/s/ Laura G. Hoey*
Laura G. Hoey