# Exhibit 46

**Patrick J. Hannon**

| | |
|---|---|
| **From:** | Travis, David <David.Travis@ropesgray.com> |
| **Sent:** | Friday, January 30, 2026 6:33 PM |
| **To:** | Steve York |
| **Cc:** | Brayley, Douglas; Cooper, Jenny K.; Davis, Elena; Patrick J. Hannon; Barbara Robb |
| **Subject:** | RE: Gino v. Harvard et al., No. 1:23-cv-1175-MJJ - Letter to Steve York Regarding Discovery Issues |
| **Attachments:** | Gino v. Harvard - Letter to Steve York_ Re Forensic Protocol.pdf |

Hello Steve,

Please find attached Defendants' proposal regarding the forensic imaging issue. Relatedly, Defendants would like clarification regarding the Court's 2/19 hearing date in light of the discovery deadline of February 28. Does the Court intend to address the forensic protocol issue at the hearing, or will it to so in advance? If the Court does not intend to address the forensic protocol proposals prior to the hearing, we are concerned that the discovery deadline of 2/28 will no longer be feasible, and we would ask that an earlier hearing be scheduled, if possible. Please let us know the Court's intentions on this issue.

Thanks,
David

**David E. Travis**
**ROPES & GRAY LLP**
T +1 617 951 7580
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
David.Travis@ropesgray.com
www.ropesgray.com
pronouns: they/them/their

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

---

**From:** Steve York <Steve_York@mad.uscourts.gov>
**Sent:** Monday, January 26, 2026 12:41 PM
**To:** Travis, David <David.Travis@ropesgray.com>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>; Davis, Elena <Elena.Davis@ropesgray.com>; Patrick J. Hannon <phannon@hmrhlaw.com>; Barbara Robb <brobb@hmrhlaw.com>
**Subject:** RE: Gino v. Harvard et al., No. 1:23-cv-1175-MJJ - Letter to Steve York Regarding Discovery Issues

Hi Counsel,

We just scheduled a further conference for 2/19 at 2:45pm. Please go ahead and submit your respective proposals, as directed at the January 14 Conference.

Thank you,

*Steve.*

***Steve York***
***Courtroom Deputy to***
***The Hon. Myong J. Joun***
***United States District Court***
***District of Massachusetts***
***1 Courthouse Way - Suite 2300***
***Boston, MA 02210***
***(617) 748-4354***
www.mad.uscourts.gov

---

**From:** Travis, David <David.Travis@ropesgray.com>
**Sent:** Friday, January 23, 2026 10:32 PM
**To:** Steve York <Steve_York@mad.uscourts.gov>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>; Davis, Elena <Elena.Davis@ropesgray.com>; Patrick J. Hannon <phannon@hmrhlaw.com>; Barbara Robb <brobb@hmrhlaw.com>
**Subject:** RE: Gino v. Harvard et al., No. 1:23-cv-1175-MJJ - Letter to Steve York Regarding Discovery Issues

**CAUTION - EXTERNAL:**

Hello Mr. York,

Please find attached a joint letter by the parties in the above-captioned matter regarding the parties' efforts to agree on a forensic search protocol, as discussed with the Court in the parties' January 14, 2026 conference.

Thanks,
David

**David E. Travis**
**ROPES & GRAY LLP**
T +1 617 951 7580
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
David.Travis@ropesgray.com
www.ropesgray.com
pronouns: they/them/their

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

---

**From:** Steve York <Steve_York@mad.uscourts.gov>
**Sent:** Wednesday, December 31, 2025 10:38 AM
**To:** Travis, David <David.Travis@ropesgray.com>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>; Davis, Elena <Elena.Davis@ropesgray.com>; Patrick J. Hannon <phannon@hmrhlaw.com>; Barbara Robb <brobb@hmrhlaw.com>
**Subject:** RE: Gino v. Harvard et al., No. 1:23-cv-1175-MJJ - Letter to Steve York Regarding Discovery Issues

Hi David,

We will set a zoom conference for 1/14/26 at 3:30pm.

Thanks,

*Steve.*

***Steve York***
***Courtroom Deputy to***
***The Hon. Myong J. Joun***
***United States District Court***
***District of Massachusetts***
***1 Courthouse Way - Suite 2300***
***Boston, MA 02210***
***(617) 748-4354***
www.mad.uscourts.gov

---

**From:** Travis, David <David.Travis@ropesgray.com>
**Sent:** Tuesday, December 30, 2025 3:03 PM
**To:** Steve York <Steve_York@mad.uscourts.gov>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>; Davis, Elena <Elena.Davis@ropesgray.com>; Patrick J. Hannon <phannon@hmrhlaw.com>; Barbara Robb <brobb@hmrhlaw.com>
**Subject:** RE: Gino v. Harvard et al., No. 1:23-cv-1175-MJJ - Letter to Steve York Regarding Discovery Issues

**CAUTION - EXTERNAL:**

Mr. York,

My colleagues and I write on behalf of Defendants President and Fellows of Harvard College and Srikant Datar in the above-captioned matter regarding certain discovery issues that we would like to bring to the Court's attention, which are detailed in the attached letter. Please advise on when the Court may be available for another Zoom conference to discuss.

Thanks,
David

**David E. Travis**
**ROPES & GRAY LLP**
T +1 617 951 7580
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
David.Travis@ropesgray.com
www.ropesgray.com
pronouns: they/them/their

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

---

**From:** Steve York <Steve_York@mad.uscourts.gov>
**Sent:** Monday, November 10, 2025 3:47 PM
**To:** Travis, David <David.Travis@ropesgray.com>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>; Davis, Elena <Elena.Davis@ropesgray.com>; Patrick J. Hannon <phannon@hmrhlaw.com>; Barbara Robb <brobb@hmrhlaw.com>
**Subject:** RE: Gino v. Harvard et al., No. 1:23-cv-1175-MJJ - Letter to Steve York Regarding Discovery Issues

Ok, we'll set a hearing for 11/20 at 2:30 p.m.

*Thank you!*

*Steve.*

***Steve York***
***Courtroom Deputy to***
***The Hon. Myong J. Joun***
***United States District Court***
***District of Massachusetts***
***1 Courthouse Way - Suite 2300***
***Boston, MA 02210***
***(617) 748-4354***
www.mad.uscourts.gov

---

**From:** Travis, David <David.Travis@ropesgray.com>
**Sent:** Monday, November 10, 2025 3:32 PM
**To:** Steve York <Steve_York@mad.uscourts.gov>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>; Davis, Elena <Elena.Davis@ropesgray.com>; Patrick J. Hannon <phannon@hmrhlaw.com>; Barbara Robb <brobb@hmrhlaw.com>
**Subject:** Gino v. Harvard et al., No. 1:23-cv-1175-MJJ - Letter to Steve York Regarding Discovery Issues

**CAUTION - EXTERNAL:**

Mr. York,

My colleagues and I write on behalf of Defendants President and Fellows of Harvard College and Srikant Datar in the above-captioned matter regarding certain discovery issues that we would like to bring to the Court's attention, which are detailed in the attached letter. Please advise on when the Court may be available for a Zoom conference to discuss.

Thanks,
David

**David E. Travis**

**ROPES & GRAY LLP**
T +1 617 951 7580
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
David.Travis@ropesgray.com
www.ropesgray.com
pronouns: he/him/his

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

{This email originated from outside your Organization}

ROPES & GRAY LLP
PRUDENTIAL TOWER
800 BOYLSTON STREET
BOSTON, MA 02199-3600
WWW.ROPESGRAY.COM

January 30, 2026

Douglas E. Brayley
T +1 617 951 7119
douglas.brayley@ropesgray.com

**BY E-MAIL**

Steve York, Courtroom Clerk for the Honorable Myong J. Joun
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, Massachusetts 02210
steve_york@mad.uscourts.gov

Re: *Gino v. President and Fellows of Harvard College et al.*, No. 1:23-cv-11775-MJJ: Request for Zoom Conference Regarding Discovery Issues

Dear Mr. York:

We write on behalf of Defendants President and Fellows of Harvard College ("Harvard") and Srikant Datar (together, "Defendants") in connection with the above-captioned matter.

Defendants respectfully provide their proposal for a protocol to govern Defendants' Request for Production ("RFP") No. 32, which seeks forensic images of six specified devices and certain storage locations[1] in Plaintiff's possession used to store research records, as requested by the Court at the January 14, 2026 conference (the "January 14 Conference"). In this letter, Defendants provide: (i) relevant background; (ii) a brief history of the parties' negotiations; and (iii) an explanation of Defendants' proposal, a copy of which is attached hereto as Exhibit A. A true and accurate copy of Defendants' RFP No. 32 is attached hereto as Exhibit B.

***Overview***

Harvard first requested forensic images of Plaintiff's devices in August and September 2024, in connection with her tenure revocation proceeding (the "Tenure Proceeding"). In that proceeding, Plaintiff's expert identified the six devices and certain storage locations at issue here as the devices and storage locations that Plaintiff provided to him for review in connection with the research

[1] RFP No. 32 requests forensic images of the six devices and certain storage locations of which Defendants are aware, as well as "any other device on which [Plaintiff has] ever stored any Documents or Communications concerning the allegations in [Plaintiff's] Complaint, including [Plaintiff's] contention that [she] has never falsified or fabricated data, or otherwise committed research misconduct." *See* Ex. B.

misconduct allegations. Upon Harvard's request, Plaintiff ultimately produced a heavily redacted forensic image of just *one* of these devices, her HBS-issued laptop. Plaintiff made this forensic image in January 2024. Despite Plaintiff's broad redactions, by comparing (i) the January 2024 image of Plaintiff's HBS-issued laptop with (ii) the November 4, 2021 image of the same laptop, which HBS had made and sequestered at the start of its internal research misconduct investigation (the "HBS Investigation"), Harvard's expert was able to determine that, in or around the fall of 2023, Plaintiff fabricated an exculpatory dataset on an undisclosed other device and transferred it to her laptop using yet another device (a USB drive). When Harvard requested additional images and data from these two other devices, as well as from the HBS-issued laptop, so that it could further investigate this fabricated file, Plaintiff refused, asserting privilege and relevance objections without any elaboration, and which were not ruled upon, in the Tenure Proceeding.

In the meantime, Harvard's discovery of this file during the Tenure Proceeding caused it to understand that Plaintiff had lied about this file on her website by falsely claiming that HBS had missed a critical, exculpatory dataset—the very dataset that in fact Plaintiff had fabricated after the HBS Investigation had concluded. This lie forms the basis of Harvard's defamation counterclaim. Defendants now seek the information they were denied in the Tenure Proceeding to determine exactly how Plaintiff fabricated this dataset, and to engage in additional forensic analysis in support of Harvard's counterclaim and defenses, as discussed further below.

At a high level, Defendants' proposal consists of two phases: (1) heavily redacted forensic images of Plaintiff's relevant devices and storage locations would be provided directly to Defendants by a neutral third-party analyst; and (2) Defendants would then work with the third-party analyst to obtain additional information that had initially been redacted from the images on an ad hoc basis, subject to Plaintiff's right to object on the basis of privilege or other legitimate grounds. As elaborated below, Defendant's bifurcated approach accomplishes the goals of all parties. It enables Defendants to engage in dynamic forensic analysis of Plaintiff's system logs and metadata predating November 4, 2021 (prior to which Plaintiff had no legal counsel and thus no legitimate privilege objections), erasing any burden on Plaintiff's counsel to review the initial images or responsive documents, logs, or other data for privilege.[2] It additionally allows Defendants to obtain logs and metadata critical to their counterclaim and defenses—and to which they are entitled—that post-date Plaintiff's engagement of counsel (*i.e.*, logs and metadata generated after November 4, 2021) while protecting Plaintiff's right to object on the basis of legitimate privilege protections, thus narrowing the scope and burden of the parties' potential disputes.

By contrast, Plaintiff has proposed a protocol that does not provide Defendants with any direct access to forensic images but rather contemplates that Defendants' expert would ask a third party to run targeted searches on the data. Plaintiff's proposal is incompatible with forensic analysis, which by

---

[2] Logs are chronological, structured records of events, errors, and activities that are generated by a computer's operating system or a software application. Metadata is "data about data" that describes information such as a file's author, its creation date, and file size.

its nature involves looking for patterns or anomalies in broader data sets that then guide more targeted lines of inquiry. Plaintiff's proposal is akin to denying a forensic accountant direct access to a company's books and records in order to ascertain patterns and interconnected events and instead offering that the accountant look for isolated fraudulent transactions by posing targeted questions to a third party holding the books. This solution is plainly insufficient and should be rejected in favor of Defendants' balanced proposal, which is further detailed below.

## I. ***Relevant Background***

Defendants first requested images of Plaintiff's devices in August and September 2024 during the Tenure Proceeding. Plaintiff and her forensic expert identified six devices and certain storage locations—which included her HBS-issued laptop, three USB drives, an external hard drive, and a Google Drive account—used by her to store research records. Plaintiff further claimed that, in January 2024, her expert made a forensic image of one of these devices—her HBS-issued laptop—that was superior to the version that Harvard had made when it sequestered data as required at the outset of the HBS Investigation on November 4, 2021. When Harvard became aware of this supposedly superior forensic image of Plaintiff's HBS-issued laptop, it requested a copy of the image. In September 2024, Plaintiff provided a redacted copy of the image. The content of all files dating after November 4, 2021 were wholesale redacted or removed from this image, purportedly to protect Plaintiff's attorney-client privilege, although the file names and date metadata remained.

Despite the heavy redactions made to the forensic image of Plaintiff's HBS-issued laptop, Harvard's expert was able to determine that Plaintiff had tampered with an existing relevant dataset (which is evidence in this lawsuit) in an attempt to fabricate an exculpatory dataset (the so-called "July 16 OG File," which is also evidence in this lawsuit), and that she did so in the fall of 2023, after the HBS Investigation had ended and after Plaintiff had filed this lawsuit. Harvard's expert found that Plaintiff altered and backdated certain metadata of a file containing the falsified data used in one of the studies at issue to make it appear that the falsified data pre-dated Plaintiff's analysis of the data. In other words, Plaintiff made it look like she had received a dataset with falsified values from a research assistant or other collaborator before Plaintiff ever touched the data. However, Defendants' expert's additional forensic analysis of file metadata and system and application logs revealed that: (i) the file had been *manually backdated to appear as though it was last modified on July 17, 2010*, prior to Plaintiff's analysis of the data; (ii) this backdating was performed on a second, unknown device; and (iii) the file was then transferred to Plaintiff's laptop in September 2023 using a third device—a USB drive—that Plaintiff's expert previously had claimed did not contain any relevant data.

Although Defendants' forensic expert was able to make these key findings using only the redacted image of Plaintiff's HBS laptop (which still contained file names and date metadata after November 4, 2021), his investigation in connection with the Tenure Proceeding was forced to end there. Plaintiff had redacted the log entries that would have revealed exactly how the file metadata was backdated, claiming without basis that the *log itself* was privileged, and Plaintiff thereafter refused to answer any questions about the backdated file on the grounds of privilege. Defendants disagreed that the

attorney-client privilege could possibly protect log entries revealing how Plaintiff herself modified this dataset and its metadata, but acknowledged that the Tenure Proceeding was not the appropriate forum in which to adjudicate Plaintiff's privilege objection.[3] When Defendants requested images of the other devices identified by Plaintiff as having been used to store research records, Plaintiff objected on relevance and privilege grounds, and never provided images of any of the other devices requested by Harvard. Ultimately, Defendants' forensic expert testified in the Tenure Proceeding that his further investigation was impeded by not having access to: (1) the USB drive; (2) any other devices that Plaintiff had used during the relevant time period, including the unknown device Plaintiff used to fabricate the dataset; and (3) certain system-level metadata and logs on the HBS laptop that had been redacted to conceal the precise methods by which Plaintiff fabricated the dataset.

In August 2025, Harvard filed a counterclaim for defamation against Plaintiff. As Defendants previously have explained, and as detailed in Harvard's counterclaim (Doc. No. 127), the counterclaim arises from Plaintiff's statements on her website that HBS supposedly overlooked an exculpatory file (the "July 16 OG File") during the HBS Investigation. Harvard alleges that the supposed exculpatory "July 16 OG File" to which Plaintiff was referring is in fact the same *fabricated* file found by its expert in the Tenure Proceeding. Harvard's forensic analysis during the Tenure Proceeding demonstrated that Plaintiff placed this backdated file on her laptop for the first time in *September 2023*, eight days before she made the false statement about it on her website.

The provenance of this file is thus central to Defendants' counterclaim in this litigation, in addition to being probative of the truthfulness of Plaintiff's repeated assertion in her Amended Complaint that she never committed research misconduct and Plaintiff's credibility more generally. Defendants now seek the information that their forensic expert testified was necessary to complete an investigation into this file. Defendants are entitled to seek this information to prove that Plaintiff fabricated and lied about this supposedly exculpatory dataset, and that she withheld critical additional information revealing how she did it on spurious privilege grounds.

## II. ***History of Negotiations***

Defendants first served a request for the production of forensic images of certain of Plaintiff's devices in this litigation on April 18, 2025, including the six devices and certain storage locations raised by Plaintiff's expert in the Tenure Proceeding. Ex. B. Over the following several months, counsel met and conferred regarding the request. On August 7, 2025, Defendants reiterated their request, and, in an attempt to address Plaintiff's concerns relating to privilege, sought confirmation of which devices contained purportedly protected information. In that August 7 meet-and-confer, Plaintiff's counsel

---

[3] Defendants vigorously contest the notion that log data revealing how a file was altered could possibly be subject to attorney-client privilege and expect that this dispute will eventually be ripe for the Court to decide. It is not necessary for the Court to rule on privilege at this juncture, however, as Defendants' proposal protects Plaintiff's right to object to producing metadata and log data on privilege grounds, at which point any narrow dispute may be brought to the Court's attention.

asserted that every single one of the devices *might* contain protected information.[4] Plaintiff's counsel asserted that certain metadata and log data were privileged because Plaintiff may have created certain folders or files at the direction of counsel. This is noteworthy in light of Plaintiff's privilege assertion and refusal to provide unredacted log files in the Tenure Proceeding given that the actions in question are falsifying and backdating a critical document. Defendants' counsel continued to follow up on Plaintiff's discovery obligations but received no response from Plaintiff's counsel regarding the forensic images for over four months.

Finally, at the November 20, 2025 conference with the Court, Plaintiff's counsel represented that he would provide Defendants with a proposed forensic protocol. Plaintiff's counsel provided a protocol on November 24, 2025 that was not responsive to Defendants' request for the production of forensic images. Instead, Plaintiff's proposed protocol contemplated only that a third-party analyst would hold the images and provide data responsive to Defendants' search parameters. Defendants attempted to address Plaintiff's assertions that metadata and log files may contain privileged information by making further revised proposals on December 9 and 22, 2025.

Defendants did not hear anything further from Plaintiff's counsel until January 14, 2026, when Defendants' counsel emailed Plaintiff's counsel to follow up after the January 14 Conference. *See* Emails Between Counsel, attached hereto as Exhibit C. Counsel conferred again on January 22, 2026. Plaintiff's counsel rejected Defendants' proposal, which contemplated that an independent third-party analyst would redact the substantive content of all emails and other documents on the forensic images received by Defendants, leaving only file, system, and application metadata and log data, which is critical to Defendants' counterclaim and defense. Plaintiff's counsel again asserted that metadata and log data may contain privileged information to the extent files or folders were created at the direction of counsel. Plaintiff's counsel further argued that Defendants' proposal thus would require Plaintiff's counsel to review all metadata and log data prior to production of the images—this was asserted to be an unreasonable burden.

Although Defendants strongly disagreed that metadata and log data were reasonably likely to contain privileged information, Defendants' counsel again attempted to address Plaintiff's concerns by providing a further revised proposal for a forensic search protocol. Ex. C. At a high level, this compromise proposal contemplated a bifurcated approach: First, an independent third-party analyst would create forensic images of Plaintiff's devices and apply blanket redactions to the substantive content of *all files created after November 4, 2021*,[5] including the file and system metadata and log

---

[4] It was only during a December 15, 2025 meet-and-confer that Plaintiff's counsel first asserted firmly that *each* device contains privileged information.

[5] This date was proposed for consistency with the earlier-provided forensic image. Defendants assumed that, because November 4, 2021 had been an acceptable redaction cut-off date with regard to the laptop, it would continue to be acceptable with regard to the other devices. Additionally, as November 4, 2021 predated Plaintiff's engagement of counsel, there could be no concerns regarding attorney-client privilege prior to that date.

data about which Plaintiff's counsel expressed concern. Those redacted images then would be provided to Defendants' counsel. Second, Defendants' counsel would be entitled to seek specific information that had been blanket-redacted by providing the third-party analyst with specific search terms, file or log names, or other criteria. The analyst would then provide any responsive data or information to Plaintiff's counsel, who would review it for attorney-client privilege, work product, or other protections before producing it to Defendants' counsel. The parties would also meet and confer over any disputed privilege claims and raise any unresolved disputes promptly to the court.

Plaintiff rejected this proposal, revising the protocol to: (a) remove the language providing that Defendants would receive any redacted forensic images at all; and (b) permit Plaintiff to review and object to Defendants' ad hoc search criteria *before* the analyst ran any searches, at which point Plaintiff would have the opportunity to review the responsive material and object again before providing it. In response, Defendants' counsel explained that a forensic protocol consisting only of ad hoc searches was not acceptable, as forensic analysis requires looking at records and data in a comprehensive manner, identifying patterns and anomalies, and relying solely on ad hoc searches would render this analysis impracticable. Ex. C. Defendants' counsel further explained that they believed Defendants' initial proposal of redacting the *substantive content* of all emails and other documents regardless of date (while leaving metadata and log data intact) is the most reasonable approach. Defendants' counsel also proposed that, in order to address Plaintiff's privilege concerns, all metadata and log data created after November 4, 2021 would be redacted. *Id.* In other words, where Defendants' December 22, 2025 proposal would redact the substantive content of all files on Plaintiff's devices (leaving metadata and log data intact), Defendants' January 23, 2026 proposal would additionally redact all metadata and log data post-dating November 4, 2021. Plaintiff's counsel rejected the proposal, confirming that the parties are at an impasse. *Id.*

## III. ***Defendants' Proposed Forensic Protocol***

As discussed above, Defendants' proposal consists, at a high-level, of two phases: (1) forensic images of Plaintiff's devices and storage locations used to store research records with large swaths of information redacted would be provided to Defendants by a third-party analyst; and (2) Defendants would work directly with the analyst to obtain additional information redacted from the images on an ad hoc basis, subject to Plaintiff's right to object on the basis of privilege or other legitimate grounds. The redactions applied to the images provided to Defendants would cover: (a) the contents of all emails, documents, or other files (excluding system, application and file metadata and log data created before November 4, 2021); and (b) the contents of all emails, documents or other files (including system, application and file metadata and log data) created after November 4, 2021. The only data not initially redacted on the devices would therefore be system, application and file metadata and log data created before November 4, 2021.[6]

---

[6] Defendants' forensic analysis would of course be aided by unredacted access to all metadata and log data from all time periods, but even access to such information from prior to November 4, 2021—

Defendants' forensic protocol is more than reasonable for several reasons. First, it is critical that Defendants' forensic expert obtain images of Plaintiff's devices and their system logs and metadata, and not simply the ability to request searches run by a third party. This is because data forensics is a complex, dynamic, and iterative process. It requires pattern recognition across numerous different files, system and application logs, and other data, which are not susceptible to a search term-based review. Defendants need to know how Plaintiff's research data was modified and when, and this analysis would not be possible if the forensic images in question were held only by a third-party analyst, and subject only to iterative search-based protocols. Plaintiff's proposal contemplates only the provision of data responsive to search parameters, subject to Plaintiff's right to object to both the terms and then to the data at each stage. This not only would eviscerate Defendants' expert's ability to conduct forensic analysis, just as an auditor would be hampered in their forensic accounting by being denied access to a company's books, but also would permit Plaintiff to grind the process to a halt with serial objections.

To address Plaintiff's concerns that Plaintiff's devices are supposedly replete with privileged information, Defendants' proposal contemplates the redaction of the contents of ***all emails and documents***, leaving only metadata and log data. And to address Plaintiff's spurious concern that even metadata and log data may be privileged, Defendants' proposal further contemplates blanket redactions to the metadata and log data from November 4, 2021 onward, which would redact any information that might possibly be subject to the attorney-client privilege. Indeed, this initial date-range-based redaction is consistent with the approach that Plaintiff advocated for and ultimately implemented in providing a forensic image of her HBS-issued laptop to Harvard in the course of the Tenure Proceeding.[7]

Second, Defendants must have the ability to work with the third-party analyst to request and obtain specific, targeted information from these forensic images that initially is redacted from the images. During the Tenure Proceeding, Defendants were able to discover the backdating of the so-called "July 16 OG File" only because their forensic expert was able to review certain portions of a system utility log that detailed, step-by-step, the commands that a user performed when using that system utility to alter the file metadata of the "July 16 OG File," while simultaneously cross-referencing multiple files, other logs, and metadata. Defendants' proposal preserves their expert's ability to seek this and other crucial forensic information (including the log entries that would show exactly how Plaintiff backdated the file metadata), while simultaneously providing Plaintiff the opportunity to review and object on the basis of privilege or similar protections before Defendants receive anything.

---

before which there categorically cannot be a plausible privilege claim—would allow Defendants' expert to make more tailored inquiries of the unredacted images held by the third-party analyst.

[7] Moreover, to the extent any privileged information is disclosed inadvertently, Defendants' proposal would permit the clawback of such information pursuant to the Stipulation and Order for the Production of Documents and Electronically Stored Information, entered in this matter on September 19, 2025 (Doc. No. 137).

Plaintiff's proposal, as reflected in counsel's discussions and exchanged protocol drafts, is not acceptable for several reasons. As discussed above, Defendants' expert cannot engage in a thorough forensic analysis without access to forensic images—ad hoc searches alone are not a reasonable approach. And allowing Plaintiff's counsel to review and approve every search Defendants request to be run on the forensic images, before the search is even run—as Plaintiff's counsel has proposed—would introduce considerable delay and inefficiency to this process. Plaintiff's counsel has stated that he believes this procedural step is necessary so that the searches do not yield more information than can be reasonably reviewed for privilege. But Defendants would seek through these ad hoc searches primarily research data, and metadata and log data, where information is highly unlikely to be privileged—and even if it were, Plaintiff already should be aware of any activities she theoretically conducted on these devices at the direction of counsel, if any. In any case, any disputes about the volume of data searched can be addressed after the search is run. Defendants first requested images of these devices in April 2024—almost two years ago—and their formal request for the production of forensic images of these devices in this litigation was served in April 2025—almost one year ago. Defendants respectfully submit that Plaintiff should not be entitled to further delay Defendants' analyses of these critical images with needless additional objections.

* * *

Accordingly, Defendants respectfully request that the Court enter an order directing the parties to enter a forensic protocol in substantially the form of Defendants' proposal attached hereto as Exhibit A. Defendants are available at the Court's convenience should the Court require any additional information.

Respectfully submitted,

*<u>/s/ Douglas E. Brayley</u>*
Douglas E. Brayley

cc: phannon@hmrh.law.com; brobb@hmrhlaw.com

**EXHIBIT A**

# [PROPOSED] FORENSIC SEARCH PROTOCOL

## I. Definitions

The Parties agree the following definitions shall apply to the Protocol:

1. "Analyst" means [INSERT EXPERT] which is a neutral, third-party computer forensic expert retained to perform the forensic inspection and remediation described below. For the avoidance of doubt, the Analyst must have expertise in Mac operating systems.

2. "ESI Repositories" means (i) Plaintiff's Harvard-issued MacBook Pro laptop bearing the serial number C02T2CB6GTF1; (ii) Plaintiff's black, unlabeled USB drive bearing the serial number 21013403D7FFA005; (iii) Plaintiff's MicroCenter USB drive bearing the serial number 067308185030; (iv) Plaintiff's USB drive with the HBS logo used by Plaintiff bearing the serial number OB7E18851060; (v) Plaintiff's SimpleTech USB drive bearing the serial number 0196019921036; (vi) Plaintiff's Western Digital 1TB external hard drive bearing the serial number WXG2ACoAZCUK; (v) Plaintiff's Google Drive for the francescabgino@gmail.com account (the "Google Drive"); and (vi) any other device or other storage location utilized by Plaintiff to store research records relevant to the four studies at issue in this matter.

3. The term "any" means, as applicable, "each and every" or "all."

4. The singular includes the plural and the plural includes the singular. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

5. The terms "and" and "or" should be read interchangeably. The terms are intended to be all inclusive and do not limit any part of the Protocol.

## II. Redaction Protocol

The Parties agree to work in good faith to complete the following as soon as practicable (unless other deadlines are otherwise stated below):

1. Within three (3) days of the execution of this Protocol, either the ESI Repositories or forensic images thereof shall be made available to the Analyst during normal business hours. To the extent that ESI Repositories are provided to the Analyst, the Analyst shall only access the ESI Repositories for the purpose of making a forensic image (collectively, the "Forensic Images").

2. Within five (5) days of receiving either the ESI Repositories or forensic images thereof, the Analyst shall (i) create a Forensic Image of each of the ESI Repositories not already imaged, and (ii) on the Forensic Images only, using X-Ways Forensics or any other appropriate computer forensic software, redact (a) the contents of all emails (including attachments), Spotlight .txt files, multi-document containers (*e.g.*, .zip, .tar, or .7z files), and any other documents contained on each Forensic Image (*e.g.*, .docx, .xlsx, .pptx, .pdf, etc.) (collectively, the "Redacted Files"), and (b) the file, application, or system metadata and logs ("Metadata and Logs") on the Forensic Images in their entirety to the extent such metadata or logs are dated November 4, 2021 or thereafter (together with the Redacted Files, the "Redacted Data"). For the avoidance of doubt, the Analyst shall not redact on the Forensic Images any Metadata and Logs on the Forensic Images that are dated prior to November 4, 2021. To the extent Plaintiff's counsel, in collaboration with the Analyst, determines that any unredacted Metadata or Log Data contain information protected by the attorney-client privilege, work product, or similar protections, the Analyst shall redact such information from the Forensic Images using X-Ways or any other appropriate computer forensic software ("Additional Redacted Data"). The Analyst shall not access or attempt to access any such cloud-based applications or information that may be accessible via those cloud-based applications in executing these Protocols other than the Google Drive.

3. Within three (3) days of the creation of the Forensic Images with Redacted Data (the "Redacted Forensic Images"), Plaintiff will (i) authorize the Analyst to produce the Redacted

Forensic Images to the Defendants within three (3) days of such authorization; and (ii) produce a privilege log consistent with the Stipulation and Order for the Production of Documents and Electronically Stored Information, entered in this matter on September 19, 2025 ("ESI Protocol"), identifying any Additional Redacted Data on the Redacted Forensic Images, which Plaintiff objects to producing on the basis of privilege, work product, or similar protections pursuant to Paragraph 3 (the "Contested Data").

4. Thereafter, upon Defendants' request, the Parties agree to meet and confer by video conference regarding the Contested Data and whether Plaintiff will withdraw her objections to one or more of the Contested Data. If the Parties are unable to reach agreement regarding the Contested Data within five (5) days of Plaintiff's production of the Redacted Images, Defendants may file a motion to compel the Contested Data.

**III. Additional Ad Hoc Review and Production**

Through the close of discovery, counsel for Defendants shall be permitted to work with Plaintiff and the Analyst in order to identify any additional material contained on the Forensic Images (which for the avoidance of doubt includes the Redacted Data) for production to Defendants' counsel as follows:

1. Counsel for Defendants shall provide the Analyst with search terms, specific file names, application or system logs, or other data or metadata that Defendants wish to obtain from the Forensic Images.

2. Within a reasonable time following any such request, not to exceed three (3) business days, the Analyst shall provide to Plaintiff's counsel any data or other information responsive to Defendants' counsel's request found on the Forensic Images, which communications shall not include Defendants' counsel.

3. Within a reasonable time following the provision of such data or other information by the Analyst to Plaintiff's counsel, not to exceed three (3) business days, Plaintiff's counsel shall provide the Analyst with instructions on whether any or all such data or information must be redacted or withheld on the basis of attorney-client privilege, work product, or similar protections, or would otherwise disclose information of a personal or sensitive nature unrelated to this litigation, and will provide to the Analyst a privilege log consistent with the ESI Protocol indicating the basis for such redaction or withholding.

4. Within one (1) business day after receiving such instructions from Plaintiff's counsel, the Analyst shall provide the privilege log and any data or information from the Forensic Images that Plaintiff has not objected to being produced to Defendants' counsel.

5. Thereafter, the Parties agree to meet and confer by video conference regarding the privilege log and related data or other information. If the Parties are unable to reach agreement regarding the Contested Data within five (5) days of Plaintiff's production of the privilege log referenced in the preceding paragraph, Defendants may file a motion to compel challenging the withholding of any data or information as stated on the privilege log.

**IV. Additional Agreements of the Parties**

5. The Parties agree that production of the ESI Repositories and/or forensic images thereof to the Analyst does not waive any rights of confidentiality or privilege.

6. Defendants shall pay all reasonable, pre-approved, and documented fees and costs of the Analyst related to the work performed under this Protocol, up to a maximum of five thousand dollars ($5,000). Any reasonable, pre-approved, and documented fees and costs of the Analyst related to the work performed under this Protocol that exceed five thousand dollars ($5,000) shall be split equally between the parties. Defendants will not pay fees and costs related to any work

performed by the Analyst that is not set forth in this Protocol, unless Defendants have consented to such work in writing.

7. Nothing herein shall preclude the Analyst from independently proposing appropriate steps to accomplish the Protocol for consideration by the Parties. Any modification or extension of the Protocol or work product provided by the Analyst must be agreed upon in writing by all of the Parties.

8. Any disputes concerning or arising under this Protocol shall be resolved by the Court.

9. For the avoidance of doubt, Plaintiff shall be entitled to seek claw back of materials subject to attorney-client privilege or work product protections that are inadvertently disclosed under the same terms and procedures as set forth in the ESI Protocol.

The attorneys' signatures on this document are evidence of their intent that this document be a binding agreement, enforceable as between the Parties.

**ROPES & GRAY LLP**

/s/ ______________________________

Douglas E. Brayley
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199-3600
(617) 951-7000
Douglas.Brayley@ropesgray.com
*Attorneys for Defendants President and Fellows of Harvard College and Srikant Datar*

Dated: ________, 2026

**HARTLEY, MICHON, ROBB, HANNON LLP**

/s/ ______________________________

Patrick J. Hannon
Hartley Michon Robb Hannon LLP
101 Federal Street, Suite 1810
Boston, MA 02110
Direct: (617) 447-2819
Fax: (617) 447-2800
phannon@hmrhlaw.com
*Attorneys for Plaintiff*

Dated: January ________, 2026

**EXHIBIT B**

you received or sought treatment in connection with any alleged damages caused by Harvard at any time between October 27, 2021 and the present.

28. All of Your internet and social media postings, or other media, publications, or public comments relating to Harvard, this Action, and/or the *2020 JPSP Paper,* the *2015 Psychological Science Paper*, the *2014 Psychological Science Paper*, or the *2012 PNAS Paper* (each as identified in Your Complaint) including, but not limited to, postings on Facebook, LinkedIn, X or Twitter, Threads, Reddit, YouTube, Instagram, Snapchat, TikTok, EJMR, PubPeer, Retraction Watch, or any other blogs, forums, wikis, or social media sites, and comments or interviews made or given by You to any newspapers, magazines, podcasts, or other media or news sites (including without limitation the New York Times, the Washington Post, Poets & Quants, the Harvard Crimson, and Medium).

29. All Documents and Communications exchanged with any Person concerning Your internet and social media postings, or other media, publications, or public comments relating to Harvard, this Action, and/or the *2020 JPSP Paper,* the *2015 Psychological Science Paper*, the *2014 Psychological Science Paper*, or the *2012 PNAS Paper* (each as identified in Your Complaint) including, but not limited to, postings on Facebook, LinkedIn, X or Twitter, Threads, Reddit, YouTube, Instagram, Snapchat, TikTok, EJMR, PubPeer, Retraction Watch, or any other blogs, forums, wikis, or social media sites, and comments or interviews made or given by You to any newspapers, magazines, podcasts, or other media or news sites (including without limitation the New York Times, the Washington Post, Poets & Quants, the Harvard Crimson, and Medium).

30. All Documents and Communications concerning the Francesca v Harvard Website and any content currently or previously on the Francesca v Harvard Website at any time, including all Documents relating to the claims that "HBS used the wrong dataset" and "failed to conduct a

**EXHIBIT C**

## Travis, David

**From:** Patrick J. Hannon <phannon@hmrhlaw.com>
**Sent:** Friday, January 23, 2026 7:51 PM
**To:** Brayley, Douglas
**Cc:** Cooper, Jenny K.; Travis, David; Davis, Elena; Brayley, Douglas
**Subject:** Re: Gino production and ESI protocol

**THIS MESSAGE IS FROM AN EXTERNAL SENDER**
This message came from a sender outside of Ropes & Gray

Doug,

I'm tied up with family stuff until 9:30, but I think it's safe to say we are at an impasse. I'd suggest a joint communication to the Court informing of same and requesting leave to submit our respective proposals to the Court for consideration. How does that sound?

Sent from my iPhone

On Jan 23, 2026, at 7:41 PM, Brayley, Douglas <Douglas.Brayley@ropesgray.com> wrote:

Patrick:

As we have tried to explain repeatedly, the Defendants intend to conduct a forensic analysis of the system logs and other metadata of the devices in question, for the purpose of gathering evidence relevant to the counter-claim regarding defamatory statements backed by data manipulation and relevant to the defense to the Amended Complaint's repeated assertion that your client did not manipulate research data. The nature of forensic analysis requires looking at records and data in a comprehensive manner, identifying patterns and anomalies. Analysis that can be reduced to specific search terms is not sufficient. You could analogize this to forensic analysis of a company's finances for evidence of accounting fraud – the forensic analyst would need access to the company's full set of books before being able to identify suspicious transactions for further analysis.

Defendants do not seek "unfettered access" to your client's digital files. Indeed, our original proposal was that the forensic images would be *entirely* redacted of content other than system logs, file structures, and other comparable metadata before being provided to us. In response to your concerns we have tried in good faith to craft alternative mechanisms, but we continue to think that our original proposal best balances your concerns about overbreadth (by shielding from us the content of all documents and files) while providing the Defendants the forensic information to which they are entitled.

You have raised concerns about privileged information contained in the metadata. We continue not to believe that such a privilege claim is proper without further substantiation, but are willing to modify our original proposal by stipulating that—as an initial matter—the forensic images may be redacted not only for all contents of documents and files but also for all system log and other metadata following Nov. 4, 2021 (subject to the process we have previously offered for your targeted review of any specific information for which we thereafter seek unredacted access). As you know, your client chose to provide system log and metadata for her laptop prior to that date during the Third Statute proceeding, so we

would expect that a similar date range solution would be both workable and sufficient from your perspective.

So, in sum, position is that our originally proposed protocol—subject to the further accommodations set forth in the preceding paragraph—is the most reasonable approach that protects all parties' rights.

We are mindful of the Court's instruction to provide a status update today and are available to discuss. If we do not hear from you or if you do not agree to our proposal, we are prepared to report to the court this evening that we have not been able to reach agreement (and to do so in joint communication with you if you would like) and to thereafter explain our position to the Court.

Doug

**Douglas E. Brayley**
**ROPES & GRAY LLP**
T +1 617 951 7119 | M +1 617 312 9489
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Douglas.Brayley@ropesgray.com
www.ropesgray.com

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

---

**From:** Patrick J. Hannon <phannon@hmrhlaw.com>
**Sent:** Friday, January 23, 2026 4:16 PM
**To:** Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>; Travis, David <David.Travis@ropesgray.com>; Davis, Elena <Elena.Davis@ropesgray.com>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>
**Subject:** RE: Gino production and ESI protocol

See my response to the three items below in Blue. I'm happy to hop on a call at your convenience.

Patrick J. Hannon
Hartley Michon Robb Hannon LLP
101 Federal Street, Suite 1810
Boston, MA 02110
Direct: (617) 447-2819
Fax: (617) 447-2800
www.hmrhlaw.com

---

**From:** Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>
**Sent:** Friday, January 23, 2026 3:37 PM
**To:** Patrick J. Hannon <phannon@hmrhlaw.com>; Travis, David <David.Travis@ropesgray.com>; Davis, Elena <Elena.Davis@ropesgray.com>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>
**Subject:** RE: Gino production and ESI protocol

Patrick,

Thank you for the comments to our proposal and for the follow-up. We are glad to discuss, though it seems based on your mark-up that we may have Plaintiff's final position on the following items. Could you please confirm whether it is correct that:

1. Your client will not provide forensic images to Defendants' counsel under any circumstances, including through the application of the same date range-based redactions that were applied to the forensic image of her laptop that was produced in the Third Statute proceeding;

That is not correct. To begin, we have agreed to provide forensic images of all relevant devices/accounts on the condition that the examination be conducted by a third-party analyst under the terms specified in the protocol. The draft I received from you this morning proposed that, in addition to the work being conducted by the third-party analyst, partially redacted copies of the images be provided directly to Defendants for unspecified purposes. I don't understand the need or desire for such additional searching and have serious concerns about the overbreadth of that request, as it would essentially give Defendants unfettered access to Professor Gino's entire digital life predating this dispute. If Defendants can articulate an appropriate reason for that request, we would certainly consider it, and if you have a good reason for the request, I think we would likely agree to some compromise.

2. You will not agree to drop your requirement to review our search criteria prior to the forensic expert applying that criteria and sending you the results for further privilege review. We believe this additional step of review is unnecessary given that you will receive the results of the application of any criteria and have the opportunity to object at that time before anything is produced to us. Additionally, providing you with our search criteria would compromise work product protections over such criteria, and may reveal our legal analysis and litigation strategy.

Our position remains that the search criteria need to be reasonable in scope. As I have stated many times, the search needs to be reasonable in scope to ensure that we are not being forced to review an unreasonable amount of materials for privilege. For example, your initial proposal called for the analyst to produce every single file on the images. You've since conceded that such an approach would be impractical, but have not provided any indication of what the scope of the search is that you wish to conduct (or even what you are looking for). Further, I don't see any work product issue here, as it's no different than any other discovery request---interrogatories, requests for production, deposition questions, etc. You need to ask in order to receive, and no party is entitled to conduct secret discovery. I would also take the position that we need to know what the searches are that yielded the information in order to fairly assess what has been retrieved (i.e., the results could be misleading because certain information was excluded from the scope of the search).

3. Your client will not agree to any fee splitting or cap on Defendants' agreement to pay fees for the analyst.

It is correct that Plaintiff will not agree to pay for any of this. Defendants are welcome to negotiate any kind of cap they wish with the Analyst.

Thank you,
Jenny

**Jenny K. Cooper**
**ROPES & GRAY LLP**
T +1 617 951 7048
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Jenny.Cooper@ropesgray.com
www.ropesgray.com
pronouns: she/her/hers

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

---

**From:** Patrick J. Hannon <phannon@hmrhlaw.com>
**Sent:** Friday, January 23, 2026 3:31 PM
**To:** Travis, David <David.Travis@ropesgray.com>; Davis, Elena <Elena.Davis@ropesgray.com>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>
**Subject:** RE: Gino production and ESI protocol

Following up on below. Please let me know if these revisions work on your end, as we are supposed to report back to the Judge today on status.

Patrick J. Hannon
Hartley Michon Robb Hannon LLP
101 Federal Street, Suite 1810
Boston, MA 02110
Direct: (617) 447-2819
Fax: (617) 447-2800
www.hmrhlaw.com

---

**From:** Patrick J. Hannon
**Sent:** Friday, January 23, 2026 12:41 PM
**To:** 'Travis, David' <David.Travis@ropesgray.com>; Davis, Elena <Elena.Davis@ropesgray.com>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>
**Subject:** RE: Gino production and ESI protocol

See attached with our revisions. I'm available to discuss at your convenience.

Patrick J. Hannon
Hartley Michon Robb Hannon LLP
101 Federal Street, Suite 1810
Boston, MA 02110

Direct: (617) 447-2819
Fax: (617) 447-2800
www.hmrhlaw.com

---

**From:** Travis, David <David.Travis@ropesgray.com>
**Sent:** Friday, January 23, 2026 1:56 AM
**To:** Davis, Elena <Elena.Davis@ropesgray.com>; Patrick J. Hannon <phannon@hmrhlaw.com>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>
**Subject:** RE: Gino production and ESI protocol

Hello Patrick,

I understand that you've been made aware that we're having some issues with our email service and that you did not receive the below. I'm attempting to send it to you again—please let me know if you do receive it.

Thanks,
David

**David E. Travis**
**ROPES & GRAY LLP**
T +1 617 951 7580
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
David.Travis@ropesgray.com
www.ropesgray.com
pronouns: they/them/their

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

---

**From:** Travis, David <David.Travis@ropesgray.com>
**Sent:** Thursday, January 22, 2026 7:30 PM
**To:** Davis, Elena <Elena.Davis@ropesgray.com>; Patrick J. Hannon <phannon@hmrhlaw.com>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>
**Subject:** RE: Gino production and ESI protocol

Patrick,

Please find attached a revised forensic protocol following our discussion this morning. This protocol contemplates a two-pronged approach that we believe is substantially consistent with the approach you articulated on our call: (1) a third-party neutral expert creates redacted forensic images of the devices applying blanket date range redactions starting on November 4, 2021, which is the same date we understand was used for the forensic image that was produced in the Third Statute proceeding; and (2) counsel for Defendants works with the third-party expert on an ad hoc basis to acquire additional information by submitting search parameters to that third-party expert, subject to your right to (1) first review any information to be shared from such forensic images pursuant to the search parameters, and (2) to instruct the redaction or withholding of privileged information, subject to your provision of a privilege log and the parties' subsequent obligation to meet and confer over any objections to such privilege claims.

Please let us know if you are amenable to this proposal, if you have any further changes, or if it would be helpful to discuss further. If you do not believe that agreement will be possible within this two-pronged framework, we will inform the court tomorrow, as directed.

Thanks,
David

---

**From:** Davis, Elena <Elena.Davis@ropesgray.com>
**Sent:** Tuesday, January 20, 2026 11:14 PM
**To:** Patrick J. Hannon <phannon@hmrhlaw.com>; Travis, David <David.Travis@ropesgray.com>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>
**Subject:** RE: Gino production and ESI protocol

Patrick,

We understood your client's position, as described below, in our initial meet and confer regarding our first proposal to the protocol. We responded with the proposal below, which you never responded to, which was intended to address your concerns by allowing the redaction of vast swathes of content, obviating any need for extensive privilege review prior to producing the images. As we have made clear in our proposals, and during last week's judicial conference, we are not seeking the production of information responsive to searches, but of ***forensic images*** of Plaintiff's devices because ***only through such images can we obtain the file and system metadata and log data critical to our clients' defenses and counterclaim***. After conferring with our forensic expert, in addition to the email, Spotlight .txt., and other multi-document container redactions discussed in our proposal below, we are willing to accept the redaction of the content of ***all standalone documents on the forensic images***. Thus, the only unredacted information on the produced images would be file and system metadata and log data. We have a difficult time imagining how file or system metadata or log data could possibly be privileged but have further proposed that it too be subject to redaction, so long as such redactions are logged, and we further propose that such data may be subject to a claw back protocol. That is the only privilege review our proposal would require prior to the production of the forensic images. Given that your client has already produced redacted forensic images in the Third Statute proceeding, including redactions of specific file and system metadata and log data, she should have no trouble identifying those and similarly purported privileged metadata and log data now. Once the redacted images are produced, our proposal only asks that your client produce responsive, non-privileged standalone documents, eliminating any need to review emails, Spotlight .txt files, or other multi-document containers on the devices at all, for privilege or otherwise.

We are available to discuss these issues on Thursday morning at 9:00 a.m.

Best,
Elena

**Elena Weissman Davis**
**ROPES & GRAY LLP**
T +1 617 951 7017
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Elena.Davis@ropesgray.com
www.ropesgray.com

**From:** Patrick J. Hannon <phannon@hmrhlaw.com>
**Sent:** Tuesday, January 20, 2026 8:27 PM
**To:** Davis, Elena <Elena.Davis@ropesgray.com>; Travis, David <David.Travis@ropesgray.com>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>
**Subject:** RE: Gino production and ESI protocol

Elena,

We have discussed this repeatedly, and your written communications continue to misrepresent and/or ignore the position that I have consistently communicated.

Again, my client is agreeable to the following: (1) We will provide the devices (or forensic images thereof) to a third party examiner, (2) the examiner will conduct searches as reasonably requested by Defendants, and (3) before the examiner produces the information found in the searches, we must be provided a reasonable opportunity to review the information found in the searches to protect against disclosure of privileged (or otherwise extremely sensitive) information.

Defendants have repeatedly rejected this approach, seeking instead to require Plaintiff to review thousands of files on her computer for privilege before any search is conducted. That is not a reasonable approach, and we cannot agree to it. Nor could it possibly be completed within the time remaining for discovery. Further, the scope of the search that you suggest below will eventually be conducted (after an exhaustive effort is made to remove privileged information) is unreasonable, as you have not articulated any basis for conducting a search of Plaintiff's emails.

I'm available to discuss this issue further tomorrow at 5pm or any time later. I am also available Thursday morning before 10 and after 5pm as well as any time on Friday. But to make significant progress on resolution, I think we have to reach agreement on one fundamental issue: That privilege review will occur after the searches are conducted. If we can reach agreement on that, I think the rest of this is pretty easy.

Patrick J. Hannon
Hartley Michon Robb Hannon LLP
101 Federal Street, Suite 1810
Boston, MA 02110
Direct: (617) 447-2819
Fax: (617) 447-2800
www.hmrhlaw.com

---

**From:** Davis, Elena <Elena.Davis@ropesgray.com>
**Sent:** Thursday, January 15, 2026 11:08 AM
**To:** Patrick J. Hannon <phannon@hmrhlaw.com>; Travis, David <David.Travis@ropesgray.com>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>
**Subject:** RE: Gino production and ESI protocol

Patrick:

You have not made your position clear, let alone "repeatedly." We took the time in good faith to develop a detailed proposal that we believe will appropriately address your privilege concerns, sent it to you over three weeks ago, and were met with total silence until the court conference yesterday afternoon. And still, it is not clear to us that you have even read the proposal that we sent on December 22, as you haven't responded to it; neither in the hearing nor in your note below have you indicated why the below proposal does not meet your needs.

We are available tomorrow between 3:30-5pm to meet and confer. Please let us know if a time in that window works for you. We would appreciate your letting us know in advance precisely what portions of the below proposal do not work for you, so that we can have a productive discussion and try to work together to come to a mutually agreeable protocol.

Alternatively, if your position is that Plaintiff is unwilling to agree to any proposal that involves the production of a forensic image (as opposed to the production of specific files), please let us know immediately so that we can move forward with bringing this dispute to the Court per the Court's guidance yesterday.

Best,
Elena

**Elena Weissman Davis**
**ROPES & GRAY LLP**
T +1 617 951 7017
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Elena.Davis@ropesgray.com
www.ropesgray.com

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

---

**From:** Patrick J. Hannon <phannon@hmrhlaw.com>
**Sent:** Wednesday, January 14, 2026 8:57 PM
**To:** Travis, David <David.Travis@ropesgray.com>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>; Davis, Elena <Elena.Davis@ropesgray.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>
**Subject:** Re: Gino production and ESI protocol

Hi David,

Happy to chat any time. Again, I think I've made my position clear repeatedly. Happy to do so again.

Sent from my iPhone

> On Jan 14, 2026, at 8:51 PM, Travis, David <David.Travis@ropesgray.com> wrote:
>
> Hello Patrick,

In light of the Court's direction at our hearing today, we wanted to follow up on our proposal below with respect to the forensic imaging issue. Please let us know your position as to this proposal as soon as you are able, or if it would be helpful to find a time to discuss.

Thanks,
David

**David E. Travis**
**ROPES & GRAY LLP**
T +1 617 951 7580
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
David.Travis@ropesgray.com
www.ropesgray.com
pronouns: they/them/their

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

---

**From:** Travis, David
**Sent:** Monday, December 22, 2025 1:21 PM
**To:** 'Patrick J. Hannon' <phannon@hmrhlaw.com>; Davis, Elena <Elena.Davis@ropesgray.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>
**Cc:** Brayley, Douglas <Douglas.Brayley@ropesgray.com>
**Subject:** RE: Gino production and ESI protocol

Hello Patrick,

Thank you again for meeting with us last Monday to discuss the forensic protocol.

As we have explained, we are seeking a full forensic image of each of the devices. As you know, it is Harvard's position in this litigation that Plaintiff fabricated and/or falsified data on her HBS laptop and other devices over the course of approximately ten years in four separate studies. Harvard also contends that, after the HBS research misconduct proceeding ended, Plaintiff tampered with an existing relevant dataset (which is evidence in this proceeding) in an attempt to fabricate a dataset that would exculpate her, including by tampering with and back-dating certain of its metadata. It is our understanding that only a full forensic image of the device would include, and allow us to analyze, the system logs and other system metadata that are necessary to understand what was done to these files and when. Accordingly, it is not sufficient to run search terms over the devices and export the files hitting on those terms.

We recognize that a file-by-file review of every single file on these devices for privilege may not be practicable, and we are open to working through a solution; however, for the above reasons, the metadata of these devices are clearly relevant to the claims at issue in this case, and we do not think the need to review for privilege relieves your client of the obligation to produce these devices.

Accordingly, we propose that you identify those documents on these devices that are privileged as elaborated below. We do not believe this should require a file-by-file

analysis of each device. Rather, we expect that your client should have knowledge about the type of privileged information on each of these devices and where that information is stored, as well as search terms that would be helpful to locate them.

Recognizing that document ***content*** (*i.e.*, the contents of files), and not document ***context*** (*i.e.*, what is recorded in file and system log data, and file metadata), is what contains potentially privileged information, we propose the following:

1. An original forensic image of each device is created and used as a starting point (unless this has already been done, in which case that prior original image may be used).
2. Information is segregated on each image based on the type of data:
    1. Emails and Attachments: On each forensic image, all contents of emails and attachments are redacted using X-Ways in the same way as it was used during the Third Statute proceeding.
        1. To the extent such content has not already been reviewed and produced, such content would be extracted, reviewed, and produced through standard eDiscovery workflows to identify and exclude privileged material.
        2. However, the context (i.e., metadata) of such files would remain on each forensic image.
    2. Spotlight TXT / Other Multi-Document Containers: On each forensic image, all of the contents of these files are redacted. Additional limited categories of multi-document containers, such as .zip files, will be subject to the same treatment.
        1. Mac indexes the contents of the documents (e.g., Word, Excel, PowerPoint, PDF, etc.) and emails stored on a Mac so that they can be found using keywords and Mac "Spotlight" functionality.
        2. The contents of these files may be requested by Defendants on an as needed basis after an appropriate privilege review by Plaintiff's counsel.
    3. Standalone eDocs (Word, Excel, PowerPoint, etc.)
        1. These documents would be extracted from the forensic image and run through standard eDiscovery workflows to identify and exclude privileged documents before production of the content of this data, to the extent this has not already been done.
        2. Any documents that are confirmed to be privileged would have their contents redacted on the forensic image on an individual basis.
        3. The context (i.e., metadata) would remain available on the forensic image.

If you believe there is file or system log data or metadata that contains privileged information, we would further propose that we deal with redacting such log data or metadata on an ad hoc basis, which could equally be accomplished using X-Ways as was done in the Third Statute proceeding. If we were to proceed with a process along these lines, we would additionally be amenable to entering a clawback protocol by which we would agree to return, and not to use or otherwise rely on, any privileged or otherwise protected materials that may inadvertently remain on the forensic images.

We hope we can come to a resolution around a forensic imaging process. If we cannot, we reserve the right to seek prompt court intervention through a motion to compel. We are available to discuss if you think it would be productive.

Thanks,
David

---

**From:** Patrick J. Hannon <phannon@hmrhlaw.com>
**Sent:** Monday, December 15, 2025 3:31 PM
**To:** Davis, Elena <Elena.Davis@ropesgray.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>
**Cc:** Travis, David <David.Travis@ropesgray.com>; Brayley, Douglas <Douglas.Brayley@ropesgray.com>
**Subject:** RE: Gino production and ESI protocol

Yes, I could do 5 or 5:30. Just pick and let me know.

Patrick J. Hannon
Hartley Michon Robb Hannon LLP
101 Federal Street, Suite 1810
Boston, MA 02110
Direct: (617) 447-2819
Fax: (617) 447-2800
www.hmrhlaw.com

---

**From:** Davis, Elena <Elena.Davis@ropesgray.com>
**Sent:** Monday, December 15, 2025 1:05 PM
**To:** Patrick J. Hannon <phannon@hmrhlaw.com>; Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>
**Cc:** Travis, David <David.Travis@ropesgray.com>; Brayley, Douglas <Douglas.Brayley@ropesgray.com>
**Subject:** RE: Gino production and ESI protocol

Patrick—in light of the postponed deposition today, would you be available to speak about the forensic protocol at 5 or 5:30 today instead? If not, we can keep the scheduled 7pm time.

Elena

**Elena Weissman Davis**
**ROPES & GRAY LLP**
T +1 617 951 7017
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Elena.Davis@ropesgray.com
www.ropesgray.com

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**From:** Patrick J. Hannon <phannon@hmrhlaw.com>
**Sent:** Thursday, December 11, 2025 5:01 PM
**To:** Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>
**Cc:** Travis, David <David.Travis@ropesgray.com>; Davis, Elena <Elena.Davis@ropesgray.com>; Brayley, Douglas <Douglas.Brayley@ropesgray.com>
**Subject:** RE: Gino production and ESI protocol

Hi Jenny,

We are dutifully working towards meeting tomorrow's deadline but things are very tight given all of the recent depositions (and a couple of sick kids at home). If you would kindly give us until Monday, that would be greatly appreciated.

I just reviewed the draft protocol and think it would be helpful to talk through live. Would you perhaps have some time to discuss after tomorrow's deposition? I could also make some time over the weekend if easier (Saturday is better than Sunday).

Patrick J. Hannon
Hartley Michon Robb Hannon LLP
101 Federal Street, Suite 1810
Boston, MA 02110
Direct: (617) 447-2819
Fax: (617) 447-2800
www.hmrhlaw.com

---

**From:** Cooper, Jenny K. <Jenny.Cooper@ropesgray.com>
**Sent:** Thursday, December 11, 2025 11:40 AM
**To:** Patrick J. Hannon <phannon@hmrhlaw.com>
**Cc:** Travis, David <David.Travis@ropesgray.com>; Davis, Elena <Elena.Davis@ropesgray.com>; Brayley, Douglas <Douglas.Brayley@ropesgray.com>
**Subject:** Gino production and ESI protocol

Hi, Patrick,

We wanted to check in to ensure that we can expect Gino's production of all outstanding discovery tomorrow as ordered by the court, knowing that you will be in Mr. Kaplan's deposition tomorrow. We had also agreed to set tomorrow for resolving the forensic image protocol, though appreciate that we got comments to you Tuesday, and of course that there is a deposition tomorrow. Do you anticipate being able to review and circle up on any remaining issues by Monday?

Thank you,

Jenny

**Jenny K. Cooper**
**ROPES & GRAY LLP**
T +1 617 951 7048
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600

Jenny.Cooper@ropesgray.com
www.ropesgray.com
pronouns: she/her/hers

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

{This email originated from outside your Organization}

{This email originated from outside your Organization}

{This email originated from outside your Organization}

{This email originated from outside your Organization}

{This email originated from outside your Organization}

{This email originated from outside your Organization}

{This email originated from outside your Organization}